**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DAVID BURNETT, MICHAEL PARADISE, and DAVID NELSON, as representatives of a class of similarly situated persons and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-270-RGA |
| PRUDENT FIDUCIARY SERVICES LLC, MIGUEL PAREDES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, WGA TRUST DATED 8/16/13, and JOHN DOES 1-10, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PURSUANT TO SECTIONS 3 AND 4 OF THE FEDERAL ARBITRATION ACT, OR, IN THE ALTERNATIVE, TO DISMISS**

RICHARDS, LAYTON & FINGER, P.A.
Jennifer C. Jauffret (#3689)
Christine D. Haynes (#4697)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
jauffret@rlf.com
haynes@rlf.com


OF COUNSEL:

Jeffrey S. Russell
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Robert M. Lewis, Jr.
1201 West Peachtree St., N.W.
14th Floor
Atlanta, Georgia 30309-3471

*Attorneys for Defendants James K. Neff, Carmit P.
Neff, James K. Neff Revocable Trust dated 11/15/12,
Carmit P. Neff Revocable Trust dated 11/15/12, and
WGA Trust dated 8/16/13*


Dated: April 29, 2022

CHIPMAN BROWN CICERO & COLE
Joseph B. Cicero (#4388)
Mark L. Desgrosseilliers (#4083)
Aidan T. Hamilton (#6729)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
cicero@chipmanbrown.com
desgross@chipmanbrown.com
hamilton@chipmanbrown.com

OF COUNSEL:

Lars C. Golumbic
Sean C. Abouchedid
Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006-5811

*Attorneys for Defendants Prudent
Fiduciary Services LLC and Miguel
Paredes*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL AND LEGAL BACKGROUND .................................................. 2

      A.     Statutory Background, Parties, and Claims in Plaintiffs' Complaint ................... 2

      B.     Relevant Terms in the Plan Document ................................................. 4

III.    ARGUMENT AND CITATION OF AUTHORITY ......................................... 6

      A.     The Federal Arbitration Act Requires Courts to Enforce Arbitration Provisions .. 6

      B.     The FAA's Enforcement Mandate Includes Individualized Arbitration of Federal Statutory Claims ................................................................. 6

      C.     Agreements to Arbitrate ERISA Claims Must Be Enforced Under the FAA ......... 7

      D.     The Plan Document Contains a Valid and Enforceable Arbitration Provision ...... 9

      E.     Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision ................ 12

      F.     The Plan's Class Action Waiver Provision Requires Individualized Arbitration of Plaintiffs' Claims ................................................................. 13

      G.     Enforcement of the Plan Document's Arbitration Provision Would Allow Plaintiffs to Effectively Vindicate Their Claims Under ERISA ......................... 15

      H.     The Court Should Stay This Case Pending Arbitration or, in the Alternative, Dismiss the Case ......................................................................... 18

IV.    CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*American Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013)...................................... passim

*Armendariz v. Ace Cash Express*,
  No. 3:13-CV-00590, 2013 WL 3791438 (D. Or. Jul. 19, 2013)..................................... 2

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 3339 (2011) ............................................ passim

*Barzanty v. Verizon Pa., Inc.*, 361 Fed. Appx. 411 (3d Cir. 2010)................................................. 3

*Bertram v. Beneficial Consumer Disc. Co.*, 286 F. Supp. 2d 453 (M.D. Pa. 2003) ..................... 5

*Chappel v. Lab. Corp of Am.*, 232 F.3d 719 (9th Cir. 2000) ........................................ 15

*CIGNA Corp. v. Amara*, 563 U.S. 421 (2011)................................................................. 14

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) .............................................. 8

*Conkright v. Frommert*, 559 U.S. 506 (2020)................................................................... 24

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) ...................................... 12

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) .............................................. 3

*Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019)........................... 11, 15, 18

*Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019)................................. 11

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)........................................................... passim

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)................................... 9, 17

*Gonzalez v. Citigroup*, Civ. No. 10-181-SLR, 2011 WL 2148711 (D. Del. May 31, 2022)........ 23

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000) .............................................. 2

*Heimeshoff v. Hartford Life & Accident. Ins. Co.*, 571 U.S. 99 (2013)...................................... 12

*Henry ex. rel BCS Ventures Holdings Inc. ESOP v. Wilmington Trust NA*,
  No. 19-1925 (MN), 2021 WL 4133622 (D. Del. Sept. 10, 2021)................................ 14, 15, 19

*Holmes v. Baptist Health S. Fla. Inc.*,
  No. 21-22986-Civ-Scola, 2022 WL 180638 (S.D. Fla. Jan. 20, 2022)........................ 13, 19, 22

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566 (3d Cir. 2006)........................................... 15

*Jaludi v. Citigroup*,  No. 3:15-cv-02076, 2020 WL 7086142 (M.D. Pa. Aug. 12, 2020).............. 3

*John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132 (3d Cir. 1998)................................ 2, 16

*Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281 (3d Cir. 1995).................................................. 15

*Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. Appx. 604 (10th Cir. 2011) .............. 2

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) ........................................ 19, 21

*Liveware Publ'g. Inc. v. Best Software Inc.*, 252 F. Supp. 2d 74 (D. Del. 2003)........................ 23

*Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004)........................................... 22

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) .............................................................. 3

*Matthews v. Sears Pension Plan*, 144 F.3d 461 (7th Cir. 1998)....................................... 11, 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614 (1985) .................. 9, 20

*Pratt v. Petrol. Prod. Mgmt. Inc. Emp. Sav. Plan & Tr.*, 920 F.2d 651 (10th Cir. 1990) ........... 15

*Pritzker v. Merrill Lynch, Pierce, Fenner and Smith, Inc*, 7 F.3d 1110 (3d Cir. 1993) ............. 11

*Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253 (4th Cir. 2021) ............ 24

*S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*,
  840 F.3d 138 (3d Cir. 2016).......................................................................................... 2

*Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000 (D. Minn. 2006)...................... 13

*Shaw v. Delta Air Line, Inc.*, 463 U.S. 85 (1983) ........................................................................ 10

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021) ...................................... 22

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ...................................................... 12

*U.S. Airways Inc. v. McCutchen*, 569 U.S. 88 (2013) ........................................................ 2, 12, 14

*Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229 (3d Cir. 2020)........................... 21, 22

**Statutes**

29 U.S.C § 1104(a)(1) .................................................................................................................... 3

29 U.S.C. § 1001(a) ...................................................................................................................... 18

29 U.S.C. § 1001(b) ...................................................................................................................... 18

29 U.S.C. § 1104 ........................................................................................................................... 12

29 U.S.C. § 1105(a)(3) .................................................................................................................... 3

29 U.S.C. § 1107(d)(6)(4) ............................................................................................................... 2

29 U.S.C. § 1110 ............................................................................................................................. 3

29 U.S.C. § 1132(a)(2).......................................................................................................... 5, 15, 16

29 U.S.C. § 1144(a) ................................................................................................................. 10, 11

29 U.S.C. § 1144(d) ........................................................................................................................ 8

29 U.S.C. §§ 1106(a)-(b) ................................................................................................................ 3

29 U.S.C. §1102(a)(1)...................................................................................................................... 9

9 U.S.C. § 2 ..................................................................................................................................... 6

9 U.S.C. § 3 ............................................................................................................................. 18, 19

9 U.S.C. § 4 ................................................................................................................................... 12

ERISA § 404(a)(1) ........................................................................................................................... 3

ERISA § 405(a)(1) ........................................................................................................................... 3

ERISA § 406 .................................................................................................................................... 3

ERISA § 409 ........................................................................................................................ 5, 14, 15

ERISA § 409(a) ....................................................................................................................... 12, 15

ERISA § 410 .................................................................................................................................... 3

ERISA § 410(a) ............................................................................................................................. 12

ERISA § 502 .................................................................................................................................. 15

ERISA § 502(a)(2) .................................................................................................................... 5, 14

ERISA § 514(d) ............................................................................................................................... 8

ERISA §§ 406(a)-(b)........................................................................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 12..................................................................................................................... 2, 18

H.R. Rep. No. 93-533, 1, 9 (1973) 2 Leg. Hist. 2348, 2356 and 120 Cong. Rec. 29949 (1974), 3
Leg. Hist. 4791).......................................................................................................................... 19

National Center for Employee Ownership, LEVERAGED ESOPS AND EMPLOYEE
BUYOUTS 5-9 (6th Ed. 2017) ..................................................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................. 1, 2, 18, 19

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 2, 18, 19

Defendants Prudent Fiduciary Services, LLC, Miguel Paredes, James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust dated 11/15/12, Carmit P. Neff Revocable Trust dated 11/15/12, and WGA Trust dated 8/16/13 ("Defendants") submit this memorandum in support of their Motion to Compel Arbitration, and respectfully request that the Court stay the lawsuit or, alternatively, dismiss it for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Federal Rules") or for failure to state a claim upon which relief can be granted under Federal Rule 12(b)(6).

## I.    <u>INTRODUCTION</u>

Plaintiffs seek to litigate claims that they must arbitrate.  Plaintiffs assert claims under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), seeking relief on behalf of the Western Global Airlines, Inc. Employee Stock Ownership Plan (the "ESOP" or "Plan").  The ESOP was formed in 2020 and, at all times, has been sponsored by World Global Airlines, Inc. ("WGA").   The ESOP Plan Document requires individual arbitration of a participant's or beneficiary's ERISA claims and provides access to a full range of remedies in arbitration.

The Complaint not only disregards the express terms of the Plan Document's arbitration provisions, but also seeks to circumvent two federal laws: the Federal Arbitration Act ("FAA"), which mandates enforcing arbitration provisions, and ERISA, which mandates enforcing the terms of governing plan documents.  Under controlling authority, the FAA requires district courts to "rigorously enforce" arbitration provisions as written, and to compel arbitration where (1) the arbitration provision is valid and enforceable, and (2) the claim falls within the scope of the arbitration provision.  *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998).  Further, ERISA requires

1

that governing plan terms be followed.  *See U.S. Airways Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) ("The plan, in short, is at the center of ERISA.").  Here, the FAA's directive to enforce arbitration agreements and ERISA's directive to enforce plan terms are both fulfilled by enforcing the arbitration provision in the Plan Document.

The Court should reject Plaintiffs' efforts to flout the Plan Document's plain language, the statutory provisions of the FAA and ERISA, and binding Supreme Court precedent.  Defendants respectfully request an order compelling Plaintiffs to arbitrate all of their claims on an individual basis, and either staying this lawsuit or alternatively, dismissing the case under Federal Rules 12(b)(1) or 12(b)(6).[1]

## II.     FACTUAL AND LEGAL BACKGROUND

### A.     Statutory Background, Parties, and Claims in Plaintiffs' Complaint

This case involves an employee stock ownership plan, or ESOP, an ERISA-regulated defined contribution plan under 29 U.S.C. § 1107(d)(6)(4) that allows participating employees to acquire a beneficial interest in the stock of their employer.  Congress intended that ESOPs would provide a tax-favored way for employers to fund retirement benefits for employees and function

---

[1]   Federal courts agree that a defendant who is seeking to enforce an arbitration agreement may file a motion to compel arbitration in lieu of an answer to the complaint. *See, e.g.*, *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 Fed. Appx. 604, 607-08 (10th Cir. 2011) ("[R]equiring a party to file an answer denying material allegations in the complaint and asserting potential affirmative defenses—in short, formally engaging in the merits of the litigation—in order to enforce its right not to litigate is a non-sequitur."); *Armendariz v. Ace Cash Express*, No. 3:13-CV-00590, 2013 WL 3791438, at *4 (D. Or. Jul. 19, 2013) (collecting cases); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 83 (2000) (noting in the procedural history without comment that the defendant had filed a motion to compel arbitration "[i]n lieu of an answer"); *South Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance. Co.*, 840 F.3d 138, 142 (3d Cir. 2016) (same).  Further, Defendants reserve their other grounds for dismissal under Federal Rule 12, which they would expect to raise in the event the present motion is denied. *See Jaludi v. Citigroup*, Civ. Act. No. 3:15-cv-02076, 2020 WL 7086142, *5 (M.D. Pa. Aug. 12, 2020) (citing *Barzanty v. Verizon PA, Inc.*, 361 Fed. Appx. 411, 415 (3d Cir. 2010)).

as a "'technique of corporate finance' that would encourage employee ownership." *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992). Unlike a 401(k) or 403(b) plan, the participating employees generally do not contribute money to fund the ESOP; the ESOP acquires the employer stock by borrowing money from a lender or the employer and buying stock from former shareholders of the company. *See Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir. 1983) (describing the mechanics of a typical ESOP transaction); Vaughn Gordy, et al., National Center for Employee Ownership, LEVERAGED ESOPS AND EMPLOYEE BUYOUTS 5-9 (6th Ed. 2017). The employer then pays off the loan by contributing cash to the ESOP. *See id.*

Having first filed this putative class action in the U.S. District Court for the Central District of California on December 13, 2021, Plaintiffs dismissed that action and re-filed their complaint in this Court on February 28, 2022 (D.I. No. 1) ("Complaint" or "Compl."). The core allegation is that Defendants violated ERISA when the ESOP purchased 37.5% of WGA's stock for $510 million, a price Plaintiffs contend was in excess of fair market value. The Complaint asserts the following ERISA violations: that Defendants Prudent Fiduciary Services, LLC and Miguel Paredes (collectively, the "Trustee Defendants") caused the Plan to engage in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b) [Count I]; that the Trustee Defendants and Defendants James K. Neff and Carmit P. Neff (the "Neffs") breached their fiduciary duties of prudence and loyalty, in violation of ERISA § 404(a)(1), 29 U.S.C § 1104(a)(1) [Count II]; that the Neffs failed to monitor fiduciaries they allegedly appointed [Count III]; that the Neffs are liable as co-fiduciaries under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(3) [Count IV]; that the Neffs and certain trusts engaged in or knowingly participated in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106 [Count V]; and that certain indemnification provisions are void under ERISA § 410, 29 U.S.C. § 1110.

RLF1 27278685v.1

The Complaint alleges that WGA adopted the Plan with an effective date of January 6, 2020. Compl. ¶ 25. Plaintiffs have been Plan participants since the Plan was first adopted. Compl. ¶¶ 33-35. Their claims are premised on duties that arise under – and benefits allegedly due pursuant to – the Plan Document, which mandates that Plan participants, like the Plaintiffs, bring such claims only in individualized, binding arbitration.[2] Nowhere, however, in the Plaintiffs' 48-page Complaint do they acknowledge the Plan's mandatory arbitration provisions.

### B.    Relevant Terms in the Plan Document

Since the Plan's inception, the governing Plan Document has included the same arbitration provisions. These provisions, in a section titled "Mandatory and Binding Arbitration Procedure ('Arbitration Procedure')", first provide a definition for "Covered Claims" – that is, which claims fall within the arbitration provisions' scope:

> **Covered Claims**: Any claim by a Claimant which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, any claim for benefits under the Plan, Trust or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan, or Trust; and ***any claim asserting a breach of, or failure to follow any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty***, ERISA § 510 claims, and claims for failure to timely provides notices or information required by ERISA or the Code (collectively "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect.

Ex. A, Plan Doc., § 18.7(a) (emphasis added). Under the Plan Document, Plaintiffs are "Claimants," and each count of their Complaint is a "Covered Claim."

---

[2]    The Plan Document is attached as Exhibit A. On a motion to compel arbitration, or stay pending arbitration, courts may consider a plan document containing relevant arbitration provisions. *See, e.g.*, *Bertram v. Beneficial Consumer Discount Co.*, 286 F. Supp. 2d 453 (M.D. Pa. 2003).

Next, the Plan Document provides that all "Covered Claims" must be brought solely in an individual capacity, and that the Claimant cannot seek relief on a class-wide or representational basis. A Claimant can seek individual relief for their respective Plan accounts, but is prohibited from seeking class-wide relief or asserting claims "on behalf of the Plan" under 29 U.S.C. § 1132(a)(2). Specifically, the Plan Document states:

> **No Group, Class or Representative Arbitrations**: All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

Ex. A, Plan Doc., § 18.7(b) (emphases in original).

Finally, the Plan's arbitration procedures apply whether or not the ERISA claim is against a fiduciary or a non-fiduciary:

> **Covered Claims Includes Claims Against Fiduciaries and/or Non-Fiduciaries**. This Arbitration Procedure shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims (i) are asserted against one or more of the Plan's fiduciaries, including but not limited to the Administrator and/or Trustee; and/or (ii) are asserted against the Employer or any other non-fiduciary (e.g., a Plan service provider or selling shareholder).

5

Exhibit A, Plan Doc., § 18.7(k).

III.   **ARGUMENT AND CITATION OF AUTHORITY**

    A.   **The Federal Arbitration Act Requires Courts to Enforce Arbitration Provisions**

The starting point in the legal analysis is the FAA.  In the FAA, Congress enacted "a liberal policy favoring arbitration" that was specifically designed to counteract prior "widespread judicial hostility to arbitration[.]"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344.  Therefore, federal courts "must rigorously enforce arbitration agreements," including for "claims that alleged a violation of a federal statute[.]"  *Italian Colors*, 570 U.S. at 233.

According to the plain text of the FAA and controlling Supreme Court precedent, enforcement of arbitration agreements is mandatory.  The FAA states that arbitration agreements "*shall* be valid, irrevocable, and enforceable."  9 U.S.C. § 2 (emphasis supplied).  Section 4 of the FAA authorizes parties seeking to enforce arbitration provisions to file a petition to compel arbitration.  *Id.* § 4.  Consistent with the statute's cornerstone principle, courts must compel arbitration "in accordance with the terms of the agreement" upon the motion of either party, *see id.* § 4, and courts faced with such a motion must "stay the trial until such arbitration has been had in accordance with the terms of the agreement[,]" *Id.* § 3.  *Accord Concepcion*, 563 U.S. at 344.

    B.   **The FAA's Enforcement Mandate Includes Individualized Arbitration of Federal Statutory Claims**

The FAA represents Congress's clear directive to the federal courts to enforce arbitration provisions as written.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).  This enforcement mandate includes arbitration provisions that require federal statutory claims to be adjudicated on an individualized basis – like those in the ESOP Plan Document.  *See id.* at 1619.

Within the past decade, the Supreme Court has twice addressed this issue and, both times, has upheld individualized arbitration of federal statutory claims.  In *Italian Colors*, the Court addressed whether the FAA authorized courts to invalidate arbitration agreements that precluded class arbitration of federal antitrust claims.  570 U.S. at 232.  To begin, the Court reinforced that the FAA required courts to compel arbitration of federal statutory claims, "unless the FAA's mandate has been 'overridden by a contrary congressional command.'"  *Id.* at 233 (quoting *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668-69 (2012)).  Next, the Court examined the Sherman and Clayton Acts, and held that neither law evinces a congressional intent "'to preclude a waiver' of class-action procedure."  *Id.* at 234 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 628 (1985)).  *See also Concepcion*, 563 U.S. at 344 (invalidating state law that required availability of class-wide arbitration and enforcing class action waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims under the Age Discrimination in Employment Act).

Five years later, in *Epic Systems*, the Court addressed whether federal courts must enforce arbitration agreements that require individualized adjudication of claims under the National Labor Relations Act ("NLRA").  138 S. Ct. at 1619.  The Court, again, reinforced that the FAA requires enforcement of arbitration agreements as written unless there is a "clear and manifest" congressional intent to deviate from that mandate.  *Id.* at 1623-24.  After closely examining the NLRA, the Court could not find any such intent to preclude individualized claims under the statute. *Id.* at 1624-27.

### C.     Agreements to Arbitrate ERISA Claims Must Be Enforced Under the FAA

The Supreme Court has held that arbitrators are competent to interpret and apply federal law and, therefore, claims for violations of a federal statute may be arbitrated unless "the FAA's

mandate has been overruled by a contrary congressional command[.]"  *See Italian Colors*, 570 U.S. at 233 (quotation omitted).  "In many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the [FAA] and federal statutes," and "[t]hroughout, we have made it clear that *even a statute's express provision for collective legal actions* does not necessarily mean that it precludes 'individual attempts at conciliation' through arbitration."  *Epic Sys. Corp.*, 138 S. Ct. at 1627-28 (collecting cases) (emphasis supplied).  Not one of these efforts has been successful at the Supreme Court.  *Id.* at 1627.

ERISA contains no contrary congressional command precluding the arbitration of ERISA claims.  Congress was explicit in ERISA § 514(d) that the statute does not override other federal laws: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States[.]"  29 U.S.C. § 1144(d).  This language makes clear that ERISA does not limit the FAA's force or applicability.  ERISA does not "modify" or "impair" the FAA's mandate that arbitration agreements should be enforced according to their terms.  *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102 (1983) (construing section 514(d) as preventing "a disruption of the enforcement scheme contemplated by" another federal statute).

In light of the statute's language, it is unsurprising that no court has recognized any "clearly expressed congressional intention" in ERISA to override the FAA, nor identified any reason why ERISA should be unique among federal statutes as somehow exempt from the Supreme Court's clear directives in *Italian Colors* and *Epic Systems*.  Further, each circuit to consider the question – including the Third Circuit – has concluded that Congress, through the FAA, did not intend to prohibit arbitration of ERISA claims.  In *Pritzker v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,*, 7 F.3d 1110 (3d Cir. 1993), the Third Circuit reversed its earlier precedent and held that statutory claims under ERISA are subject to arbitration.  *Id.* at 1111-12.  *See also Matthews v.*

*Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998); *Dorman v. Charles Schwab Corp.*, 780 F.

App'x 510, 513-14 (9th Cir. 2019) (*Dorman II*)[3] (collecting cases).

Moreover, in *Dorman II*, the Ninth Circuit reversed a district court's refusal to compel

arbitration based on a provision contained in an ERISA plan document.  There, as here, the

plaintiff-employee asserted claims for breach of fiduciary duty under ERISA.  Holding that the

plan's arbitration and class action waiver provisions were enforceable and binding, the court

concluded that both the plan and the plaintiff agreed to arbitration on an individual basis.  As the

court explained, "the Plan expressly agreed in the Plan document that all ERISA claims should be

arbitrated," and "[a] plan participant agrees to be bound by a provision in the plan document when

he participates in the plan while the provision is in effect."  *Id.* at 512-14 (citation omitted).  The

court enforced the arbitration provision as written.

### D.      The Plan Document Contains a Valid and Enforceable Arbitration Provision

Consistent with the FAA and the caselaw described above, ERISA requires the

enforcement of the Plan Document's arbitration provision.  ERISA directs courts to enforce plan

documents as written.  *See McCutchen*, 569 U.S. at 101.  Employers have "large leeway to design

[employee benefit plans] as they see fit."  *Heimeshoff v. Hartford Life & Acidentc. Ins. Co.*, 571

U.S. 99, 108 (2013).  The Plan Document is the guidepost of plan participants' and beneficiaries'

ERISA rights; ERISA requires employee benefits plans to "be established and maintained pursuant

to a written instrument."  29 U.S.C. §1102(a)(1). The written Plan Document binds participants,

beneficiaries, and employers, and governs claims made under the plan.  *See Curtiss-Wright Corp.*

---

[3]      *Dorman II* was the second of two concurrently-issued opinions addressing whether a district
court erred in refusing to enforce an arbitration provision contained in an ERISA-regulated
retirement plan.  In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (*Dorman I*),
the Ninth Circuit overruled its prior precedent on the arbitrability of ERISA claims based on the
Supreme Court's decision in *Italian Colors*.

9

*v. Schoonejongen*, 514 U.S. 73, 83 (1995) (holding that ERISA's statutory scheme is "built around reliance on the fact of written plan documents"). Indeed, if employers cannot be confident that their benefit plans will be enforced as written, they may be deterred from offering benefits at all, to the detriment of employees and contrary to Congress's express goals. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) ("For us to sanction informal 'plans' would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place.").

Since its inception, the Plan Document here has provided that any "Covered Claim" made by or on behalf of an Eligible Employee, Participant, or Beneficiary "shall be settled by binding arbitration[.]" This provision means what it says: the Plan Document binds Plaintiffs and requires arbitration of their claims.[4]

Plaintiffs allege that each is a vested participant, and that each has participated in the Plan since the Plan's inception. *See* Compl. ¶¶ 33-35. Consequently, they have agreed to be bound by the Plan Document (just as the Plan Document binds the Plan to the Plaintiffs' benefit). *See Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1007 (D. Minn. 2006) (ERISA plan terms, like forum selection clauses, bind participants, even when the participants do not negotiate or affirmatively consent to terms).[5] In short, the Plan's arbitration provision is valid and binds Plaintiffs with respect to the forum in which they can bring their Covered Claims.

---

[4]    Federal common law governs the determination of whether the Plan Document's arbitration provision binds Plaintiffs. *See Matthews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998) (When interpreting the terms of an ERISA plan, "the relevant principles of contract interpretation are not those of any particular state's contract law, but rather are a body of federal common law tailored to the policies of ERISA."). This is because ERISA contains a broad preemption provision. *See* 29 U.S.C. § 1144(a).

[5]    To the extent Plaintiffs may argue that the arbitration provision in the Plan Document is not binding on them because they did not receive notice of it, they would be mistaken. Plaintiffs' counsel, Nichols Kaster, was provided a copy of the Plan Document before the lawsuit was filed

RLF1 27278685v.1

While a recent decision from this District declined to enforce an arbitration provision in an ERISA case, the decision is distinguishable. *See Henry ex. rel BCS Ventures Holdings Inc. ESOP v. Wilmington Trust NA*, No. 19-1925 (MN), 2021 WL 4133622, at *1 (D. Del. Sept. 10, 2021). In *Henry*, which currently is on appeal in the Third Circuit, the court found that an arbitration provision that was *added* to an ESOP's plan document could not be enforced against a participant who allegedly never gave voluntary and knowing consent to arbitration.[6]  The plan was amended

---

in response to a request for Plan-related documents on behalf of Plaintiff David Burnett.  More crucially, by participating in the Plan, Plaintiffs are bound to abide by the Plan's terms regardless of notice or consent. *See Schoemann*, 447 F. Supp.2d at 1007; *Holmes v. Baptist Health S. Fla. Inc.*, No. 21-22986-Civ-Scola, 2022 WL 180638, at *4 (S.D. Fla. Jan. 20, 2022).

Likewise, Plaintiffs would be wrong to argue that arbitration should not be compelled because the Plan Document's arbitration provision is not repeated in the Plan's summary plan description ("SPD").  It is well-settled law that a plan document controls and governs the plan's terms.  The Supreme Court has explained that statements in an SPD "communicate with beneficiaries about the plan, but . . . do not themselves constitute the terms of the plan." *U.S. Airways Inc.*, 569 U.S. at 92 n.1 (alterations omitted); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011). Because the Plan Document unequivocally requires Plaintiffs to arbitrate, Supreme Court precedent requires enforcing the Plan Document's arbitration provision, even if not referenced or reflected in the SPD.

[6]  Notably, unlike here, the defendants in *Henry* took the position that Virginia state law governed the arbitration provision.  If the defendants had argued that federal law applied and that the doctrine of direct benefits estoppel should apply to avoid the necessity of showing that the participant had the requisite knowledge of the added arbitration and class-related provision, the court might have reached a different decision.  As noted above, because ERISA creates national uniform standards for employee benefit plans, federal law applies, in tandem with ERISA's broad preemption of state law. *See* 29 U.S.C. § 1144(a); *Matthews*, 144 F.3d at 465.

To the extent *Henry* found, based on bilateral contract principles, that a plan participant must receive advance notice and consent to the inclusion of an arbitration clause in a plan document, Defendants respectfully submit that the case was incorrectly decided.  2021 WL 4133622, at *5. Insofar as contract principles may apply at all in ERISA's comprehensive regulatory scheme, an ERISA plan, at least of the type at issue here, is akin to a unilateral contract, not a bilateral contract. *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 (3d Cir. 2006); *see also Kemmerer v. ICI Ams. Inc.*, 70 F.3d 281, 287 (3d Cir. 1995) ("A pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.") (internal quotation marks omitted).  The arbitration provision is binding on Plaintiffs by virtue of their carrying out their employment responsibilities and participating in the Plan – regardless of whether they received notice or provided consent. *See Kemmerer,* 70 F.3d at 287 ("Under unilateral contract principles, once the employee performs, the

after the initial ESOP formation transaction, adding a section titled "ERISA Arbitration and Class Action Waiver."  The plaintiff worked for the defendant *before* the plan adopted the arbitration provision.  This critical factual difference renders *Henry* inapplicable to this case.  Indeed, *Henry* supports enforcement of arbitration provisions with respect to statutory claims under ERISA, citing to *Epic Systems*, where the Supreme Court explained that "very little will satisfy the [plaintiff's] burden to [displace the FAA], except a clear and express command by Congress that an arbitration provision requiring a class action waiver is void."  *Id.* at *6 n.9 (citing *Epic Sys. Corp.*, 138 S. Ct. at 1614, 1628).  *Henry* found no basis for "ERISA §§ 409(a) and 410 (a) [to] clear this hurdle." *Id.*  ERISA does not even whisper, much less voice, such a clear and express command, and the Complaint supplies no basis to overcome this hurdle.

### E.    Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision

When courts consider whether claims are subject to arbitration, the relevant inquiry is whether "a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of that agreement."  *John Hancock*, 151 F.3d at 137.  If a court answers both questions in the affirmative, the FAA requires that the dispute be subject to arbitration.  *Id.* (citing 9 U.S.C. § 4).  As demonstrated above, the Plan Document's arbitration provision is valid and enforceable.  Plaintiffs' claims also easily fit within plain language of

---

offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain."); *Dorman II*, 780 F. App'x at 512-13 ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect.") (citing *Chappel v. Lab. Corp of Am.*, 232 F.3d 719, 723-24 (9th Cir. 2000)); *Pratt v. Petrol. Prod. Mgmt. Inc. Emp. Sav. Plan & Tr.*, 920 F.2d 651, 661 (10th Cir. 1990) ("A pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.") (internal quotation marks omitted).  Moreover, a plan document cannot be maintained in secret; every participant has a statutory right to obtain the plan document (29 U.S.C. § 1104), and one Plaintiff, through his counsel, exercised that right prior to filing suit.

"Covered Claims" in the arbitration provision.  The Complaint's six counts fall within the "Covered Claims" definition because each "assert[s] a breach of, or failure to follow, [a] provision of ERISA." Ex. A, Plan Doc. § 18.7(a); Compl. ¶¶ 128-177. Moreover, the Plan Document's arbitration provision applies to all Defendants.  The requirement to arbitrate "shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims (i) are asserted against one or more of the Plan's fiduciaries or alleged fiduciaries, including but not limited to the Administrator and/or Trustee; and/or (ii) are asserted against the Employer or any other non-fiduciary (e.g., a Plan service provider or selling shareholder)."  Ex. A, Plan Doc. § 18.7(k).

F.    **The Plan's Class Action Waiver Provision Requires Individualized Arbitration of Plaintiffs' Claims**

The ESOP's Plan Document contains an express class action waiver requiring Plaintiffs to arbitrate their claims on an individual basis: "All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis." Ex. A, Plan Doc. § 18.7(b).  Buttressing this waiver, the Plan Document also states: "Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant."  *Id.*

The Supreme Court has held that class action waivers in arbitration provisions are valid and enforceable. "In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms – *including terms for individualized proceedings.*"  *Epic Sys. Corp.*, 138 S. Ct. at 1619 (emphasis added).  The Court repeatedly has held that individualized arbitration proceedings are enforceable even for claimants who seek to vindicate important statutory rights.  *Italian Colors*, 570 U.S. at 244 (upholding individual arbitration of antitrust claims); *Concepcion*, 563 U.S. at 344 (invalidating California state law that required availability

of class-wide arbitration and enforcing class arbitration waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (upholding individual arbitration of age discrimination claims brought under the ADEA).

These decisions consistently reflect that the enforcement of arbitration provisions "is a matter of contract" that courts "rigorously enforce . . . according to their terms." *Italian Colors*, 570 U.S. at 233. *See also Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individual basis.") (citation omitted). As such, the Supreme Court has enforced these prohibitions on class-wide arbitration even when doing so might mean that the resulting recovery in an individual arbitration could be small. *See Italian Colors*, 570 U.S. at 232; *AT&T*, 563 U.S. at 531 (rejecting argument that class arbitration was needed for claims "that might otherwise slip through the legal system").

Further, in *Epic Systems*, the Supreme Court explained that a party seeking to avoid arbitration by "suggest[ing] that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow[,]" and Congress's intention "must be 'clear and manifest.'" *Id.* at 1624. By refusing to arbitrate their claims on an individual basis, Plaintiffs are asking the Court to find that ERISA and the FAA cannot be harmonized. Specifically, Plaintiffs seek to inject disharmony between on the one hand, ERISA §§ 502(a)(2) and 409, which provide a private right of action and variety of remedies for an alleged breach of fiduciary duty, and on the other hand the FAA, which requires enforcement of the arbitration provisions under the Plan Document by their terms. Plaintiffs cannot satisfy their "heavy burden" of showing a "clearly expressed congressional intention" that ERISA and the FAA cannot be harmonized. Nothing in the plain language of

ERISA §§ 502 or 409 expressly prohibits (or even references) individual arbitration. *See, e.g.,* *Henry*, 2021 WL 4133622, at *6 n.9 (observing that "very little will satisfy [the plaintiff's] burden [under Epic Systems], except a clear and express command by Congress that an arbitration provision requiring a class action waiver is void," and that "[t]he Court cannot see that ERISA [§] 409(a) . . . clear[s] this hurdle").

Notably, enforcing the ESOP's class action waiver would provide Plaintiffs with the remedies they could obtain under ERISA. The class action waiver, along with providing that all Covered Claims must be brought solely in an individual capacity and not in representative capacity, describes remedies available for claims under 29 U.S.C. § 1132(a)(2). As discussed further below, whether Plaintiffs proceeded in arbitration or federal court, they personally would recover an account limited only to the purportedly adverse impact on their individual Plan accounts. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).[7]

### G. Enforcement of the Plan Document's Arbitration Provision Would Allow Plaintiffs to Effectively Vindicate Their Claims Under ERISA

In some cases, would-be class action plaintiffs have sought to avoid arbitration by asserting that an arbitration provision, if implemented, would not permit "effective vindication" of their right to pursue a federal statutory claim. *See Italian Colors*, 570 U.S. at 233, 236. In *Italian Colors*, the Supreme Court described the effective vindication doctrine as a "judge-made exception to the FAA" and made clear that the doctrine is narrow and originated in the Court's dictum. 570

---

[7]    To the extent that the class action waiver provision can be read to preclude certain non-economic remedies, such as the removal of fiduciaries, such a waiver of class-wide remedies is permissible under ERISA and the FAA. *See Holmes*, 2022 WL 180638, at *3. And, as discussed below in Section G, such a waiver would not implicate the effective vindication doctrine.

U.S. at 235 n.2.[8]   Indeed, the Supreme Court has *never* applied the effective vindication "exception" to invalidate an arbitration agreement.  *Id.* at 235.[9]

Even if the effective vindication exception were applicable, the Plan Document's arbitration provision does not abrogate any participant's *right* to assert a fiduciary breach claim, a prohibited transaction claim, or any other claim under ERISA.  *See Epic Systems,* 138 S. Ct. at 1626-28; *Italian Colors*, 570 U.S. at 234.  In fact, enforcing the Plan Document's arbitration provision allows Plaintiffs to effectively vindicate their claims under ERISA.  Each of Plaintiffs' claims can be asserted in the context of individual arbitration, just as each could be pursued in court in the absence of the arbitration provision.  Whether Plaintiffs proceeded in arbitration or federal court, they personally would recover an account limited only to the purportedly adverse impact on their individual Plan accounts.  *See LaRue*, 552 U.S. at 256 (29 U.S.C. § 1132(a)(2) in the context of defined contributions plans (like ESOPs) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a particular individual's account").

While the Third Circuit has applied the effective vindication doctrine, the cases where it has done so to avoid arbitration provisions are plainly distinguishable on their terms.  In the most recent decision, for example, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229 (3d Cir. 2020), the Third Circuit found that the district court correctly denied the defendants' motion to

---

[8]    The Court first introduced the concept now known as the "effective vindication doctrine" in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614 (1985).  The Court stated in a footnote that if the contract's arbitration provision operated "as a prospective waiver of a party's right to pursue [federal] statutory remedies for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy."  *Id.* at 637 n.19; *see also Italian Colors*, 570 U.S. at 235 (recognizing that this language in *Mitsubishi Motors* was *dictum*).

[9]    The Court in *Italian Colors* explained: "The class-action waiver limits arbitration to the two contracting parties.  It no more eliminates those parties' rights to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938."  570 U.S. at 236.

compel arbitration where the arbitration provision at issue (in payday loan agreements) allowed the plaintiffs to assert claims only under tribal law and "stripped Plaintiffs of their right to assert [federal] statutory claims." *Id.* at 232. The court held that agreements limiting a party's substantive causes of action to those under tribal law, and thus forbidding federal law claims, are unenforceable. *Id.* at 238, 242 ("by flatly and categorically renounc[ing] the authority of the federal statutes to which [Defendants are] and must remain subject, the agreement takes the step plainly forbidden by Supreme Court precedent") (internal quotation marks and citation omitted). In contrast to *Williams*, the ESOP Plan Document does nothing to displace ERISA as the operative law or prevent Plaintiffs from asserting claims under ERISA. Rather, the controlling body of law in arbitration would remain ERISA – no different than if Plaintiffs' claims were litigated in this Court.[10]

---

[10]   We note for the Court a recent Seventh Circuit opinion that is largely inconsistent with the Third Circuit authority of *Williams* and the Supreme Court precedents discussed above. In *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021), the Seventh Circuit correctly held that ERISA claims are arbitrable and that class action waivers requiring individualized arbitration of ERISA claims are valid and enforceable. *Id.* at 620, 622. The court, however, held that the arbitration provision at issue was unenforceable under the effective vindication doctrine because it contained a class action waiver allegedly precluding one of the remedies available under ERISA – the removal of plan fiduciaries. *Id.* at 621-22. Both the Supreme Court and the Third Circuit have made clear that the effective vindication theory is narrow and rarely-invoked and applies only where an arbitration clause "strip[s] Plaintiffs of their right to assert [federal] statutory claims," and "flatly and categorically renounc[es] the authority of the federal statutes to which [Defendants are] and must remain subject." *Williams*, 965 F.3d 232, 242. That is plainly not the case here. The Plan Document's arbitration clause does not, for example, displace ERISA with tribal law, state trust law, or any other body of law – rather, Plaintiffs are free to pursue all of their ERISA causes of action in arbitration. Indeed, a recent decision from the Southern District of Florida declined to follow *Smith* in similar circumstances, holding that the effective vindication doctrine did not invalidate an arbitration provision in an ERISA plan that prohibited certain plan-wide remedies. *See Holmes*, 2022 WL 180638, at *3 ("Given the FAA's pro-arbitration policy, as well as the rarity with which courts apply the effective vindication doctrine, the Court declines to follow the *Smith* rationale and holds that the arbitration agreement at issue is valid and enforceable.").

17

**H.     The Court Should Stay This Case Pending Arbitration or, in the Alternative, Dismiss the Case**

Section 3 of the FAA mandates that courts must stay proceedings where, as here, a plaintiff's claims are arbitrable and a party has asked for a stay.  *See* 9 U.S.C. § 3 (providing that, where an issue is to be referred to arbitration, courts "shall on application of one of the parties stay the trial of the action . . . .") (emphasis supplied). *See also Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (granting stay and holding that the FAA "clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded"); *Liveware Publ'g. Inc. v. Best Software Inc.*, 252 F. Supp. 2d 74 (D. Del. 2003)  (ordering stay pending arbitration).  For the reasons discussed above, the Plan Document requires arbitration of all claims asserted here.   Accordingly, Defendants request that the Court stay this case while the parties proceed with arbitration.

Alternatively, because the Plan Document requires Plaintiffs' claims to be arbitrated rather than asserted in court, should the Court not grant a stay, the Court should dismiss the lawsuit under Federal Rule 12.   A district court lacks subject matter jurisdiction over disputes covered by an arbitration agreement, and dismissal under Federal Rules 12(b)(1) and/or 12(b)(6) is appropriate, if there is a valid and enforceable arbitration agreement.  *See, e.g.*, *Gonzalez v. Citigroup*, No. 10-181-SLR, 2011 WL 2148711, at *2 (D. Del. May 31, 2022) (dismissing the plaintiffs' claims under Rule 12(b)(1) for lack of subject matter jurisdiction where there was a valid and enforceable agreement requiring arbitration of the claims); *Liveware*, 252 F. Supp. 2d at 78-9 (describing legal standard and applicability of Rule 12(b)(6) in similar situation).

## IV.   <u>CONCLUSION</u>

ERISA's fundamental purpose is to protect the employee benefits of employee benefit plan participants and beneficiaries. *See* 29 U.S.C. §§ 1001(a), (b). In enacting ERISA, Congress, for

good reason, also "was concerned lest the cost of federal standards discourage the growth of private pension plans." *See Conkright v. Frommert*, 559 U.S. 506, 517 n.2 (2020) (Congress sought a balance between "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans") (citing H.R. Rep. No. 93-533, 1, 9 (1973) 2 Leg. Hist. 2348, 2356 and 120 Cong. Rec. 29949 (1974), 3 Leg. Hist. 4791)).  Individualized arbitration harmonizes both objectives and concerns by providing a faster and less-expensive method of resolving disputes. *See Rowland v. Sandy Morris Fin. & Est. Plan. Services LLC*, 993 F.3d 253, 257 (4th Cir. 2021).

Consistent with federal statutes (both ERISA and the FAA), the Plan Document, and the weight of the caselaw, this Court should enforce the Plan's mandatory arbitration provision and compel the Plaintiffs to individualized arbitration.  Section 3 of the FAA directs courts to stay proceedings where, as here, alleged claims are arbitrable and a party has asked for a stay.  *See* 9 U.S.C. § 3.  Therefore, the Court should stay this lawsuit pursuant to Section 3 of the FAA, or in the alternative, dismiss the case under Federal Rules 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim upon which relief can be granted.

RLF1 27278685v.1

RICHARDS, LAYTON & FINGER, P.A.

/s/ Jennifer C. Jauffret
Jennifer C. Jauffret (#3689)
Christine D. Haynes (#4697)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
jauffret@rlf.com
haynes@rlf.com


OF COUNSEL:

Jeffrey S. Russell
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Robert M. Lewis, Jr.
1201 West Peachtree St., N.W.
14th Floor
Atlanta, Georgia 30309-3471

*Attorneys for Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust dated 11/15/12, Carmit P. Neff Revocable Trust dated 11/15/12, and WGA Trust dated 8/16/13*


Dated: April 29, 2022

CHIPMAN BROWN CICERO & COLE

/s/ Mark L Desgrosseilliers
Joseph B. Cicero (#4388)
Mark L. Desgrosseilliers (#4083)
Aidan T. Hamilton (#6729)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
cicero@chipmanbrown.com
desgross@chipmanbrown.com
hamilton@chipmanbrown.com

OF COUNSEL:

Lars C. Golumbic
Sean C. Abouchedid
Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006-5811


*Attorneys for Defendants Prudent Fiduciary Services LLC and Miguel Paredes*