# EXHIBIT A

# WESTERN GLOBAL AIRLINES, INC.

# EMPLOYEE STOCK OWNERSHIP PLAN

**Effective June 6, 2020**

US-DOCS\118319799.2

CONFIDENTIAL

# CONTENTS

**Section**                                                                                                    **Page**

**ARTICLE I** DEFINITIONS .................................................................................................2

**ARTICLE II** ELIGIBILITY ...............................................................................................12

**ARTICLE III** PARTICIPATION IN ALLOCATION OF BENEFITS.....................................13

**ARTICLE IV** EMPLOYER CONTRIBUTIONS ...................................................................15

**ARTICLE V** INVESTMENT OF TRUST ASSETS...............................................................16

**ARTICLE VI** ALLOCATIONS TO ACCOUNTS ..................................................................18

**ARTICLE VII** EXPENSES OF THE PLAN AND TRUST.....................................................20

**ARTICLE VIII** VOTING AND TENDERING COMPANY STOCK........................................21

**ARTICLE IX** ALLOCATION OF EMPLOYER CONTRIBUTIONS AND
        FORFEITURES ..............................................................................................22

**ARTICLE X** DETERMINATION OF PLAN BENEFIT VESTING  AT DEATH,
        DISABILITY OR RETIREMENT ....................................................................29

**ARTICLE XI** OTHER TERMINATION OF SERVICE AND VESTING ................................30

**ARTICLE XII** DISTRIBUTION OF PLAN BENEFITS .......................................................34

**ARTICLE XIII** HOW PLAN BENEFITS WILL BE DISTRIBUTED.....................................41

**ARTICLE XIV** RIGHTS AND OPTIONS ON DISTRIBUTED SHARES OF
        COMPANY STOCK .......................................................................................44

**ARTICLE XV** SPECIAL PROVISIONS................................................................................46

**ARTICLE XVI** ADMINISTRATION ...................................................................................48

**ARTICLE XVII** AMENDMENT AND TERMINATION. .......................................................55

**ARTICLE XVIII** MISCELLANEOUS...................................................................................57

**ARTICLE XIX** TOP-HEAVY RULES. .................................................................................63

CONFIDENTIAL

WGA_Ruxton000002

# WESTERN GLOBAL AIRLINES, INC.
# EMPLOYEE STOCK OWNERSHIP PLAN

## NATURE OF PLAN.

The purpose of this Plan is to enable participating Employees of the Company to share in the growth and prosperity of the Company and to provide Participants with an opportunity to accumulate capital for their future economic security. A primary purpose of the Plan is to enable Participants to acquire a proprietary interest in the Company. Consequently, Employer Contributions made to the Trust will be primarily invested in Employer Securities. This Plan is effective as of June 6, 2020.

The Plan is intended to qualify as an Employee Stock Ownership Plan, as defined in Section 4975(e)(7) of the Internal Revenue Code (the "Code") and as a stock bonus plan under Section 401(a) of the Code.

All Trust assets acquired under this Plan as a result of Employer Contributions, income and other additions to the Trust will be administered, distributed, forfeited and otherwise governed by the provisions of this Plan which is administered by the Committee for the exclusive benefit of Participants in the Plan and their Beneficiaries. It is intended that all benefits, rights and features of this Plan be uniformly available to all Participants.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000003

# ARTICLE I

## DEFINITIONS

In this Plan, whenever the context so indicates, the singular or plural number shall each be deemed to include the other; words used in the masculine, feminine, or neuter shall each be deemed to include other genders; and the capitalized words shall have the following meanings:

1.1 **"ACCOUNT"** means one of several Accounts maintained to record the interest of a Participant in the Plan.

1.2 **"AFFILIATED COMPANY"** means any company which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Employer, any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Employer, any affiliated service group which includes the Employer (as defined in Section 414(m) of the Code), and any other entity required to be aggregated with the Employer under Section 414(o) of the Code. For purposes of Section 415 of the Code limits, the definition of Affiliated Company shall be expanded in accordance with Section 415(h) of the Code.

1.3 **"ALTERNATE PAYEE"** means a spouse, former spouse, child or other dependent of a Participant who is recognized by a Domestic Relations Order as having a right to receive all or a portion of the benefits otherwise payable to a Participant.

1.4 **"ANNIVERSARY DATE"** means the 31st day of December of each year.

1.5 **"ANNUAL ADDITIONS"** means the aggregate of amounts credited to a Participant's Accounts each year from Employer Contributions, Forfeitures, and a Participant's voluntary contributions (if any) under all defined contribution plans of an Employer or Affiliated Company. Amounts allocated to an individual medical account (as defined in Section 415(l)(2) of the Code) which is part of a pension or annuity plan maintained by the Company shall be treated as an Annual Addition. Any amounts attributable to postretirement medical benefits allocated to the separate account of a Key Employee (as defined in Section 419A(d)(3) of the Code) under any Welfare Benefit Plan (as defined in Section 419(e) of the Code) shall be treated as an Annual Addition. A restored Forfeiture, a transfer from another qualified pension plan, a rollover contribution (if any), and an S Corporation Distribution shall not be counted as an Annual Addition.

Notwithstanding the foregoing, Employer Contributions made with respect to a C Corporation Year which are applied to the payment of interest on a Securities Acquisition Loan and Forfeitures of Employer Securities purchased with the proceeds of a Securities Acquisition Loan shall be excluded if no more than one third (1/3) of the Employer Contributions deductible under Section 404(a)(9) of the Code for that year is allocated to the Accounts of Highly Compensated Employees.

US-DOCS\118319799.2

CONFIDENTIAL WGA_Ruxton000004

Notwithstanding any other provision in the Plan, Annual Additions shall not include any allocation attributable to proceeds from the sale of Employer Securities by the Trust or to appreciation (realized or unrealized) in the fair market value of Company Stock.

**1.6** **"ANNUAL ELECTION PERIOD"** means the period beginning on each January 1 during the Participant's Qualified Election Period and ending 90 days after the date the fair market value determined by the Trustee for the preceding Plan Year is communicated to the Participant.

**1.7** **"BENEFICIARY"** means the person or persons entitled to receive any benefits under the Plan in the event of a Participant's death.

**1.8** **"BOARD OF DIRECTORS"** means the board of directors of the Company.

**1.9** **"BREAK IN SERVICE"** means a Plan Year during which a Participant has not completed more than 500 Hours of Service. Notwithstanding the foregoing, no Participant will incur a Break in Service for vesting purposes solely by reason of temporary absence from work not exceeding 12 months resulting from illness, layoff, or other cause if authorized in advance by Employer pursuant to its uniform leave policy, if the Participant's employment shall not otherwise be terminated during the period of such absence.

**1.10** **"C CORPORATION YEAR"** means a taxable year of the Company in which it is a C Corporation, as defined in Section 1361(a)(2) of the Code.

**1.11** **"CODE"** means the Internal Revenue Code of 1986, as amended from time to time.

**1.12** **"COMMITTEE"** also known as the "Plan Committee", means the committee that may be appointed by the Board of Directors to administer the Plan and to give instructions to the Trustee. In the event a Committee is not appointed by the Board of Directors, the Company, acting through its Board of Directors or its delegate, shall administer the Plan and give instructions to the Trustee and shall act as the Committee.

**1.13** **"COMPANY"** means Western Global Airlines, Inc., which as of the Effective Date is a Florida corporation.

**1.14** **"COMPANY STOCK"** means shares of common stock, which are issued by the Company or by any affiliate of the Company, which meet the requirements of Section 407(d) of ERISA and Section 409(l) of the Code. During any S Corporation Year, the Company shall have only one class of stock within the meaning of Section 1361(b)(1)(D) of the Code.

**1.15** **"COMPANY STOCK ACCOUNT"** means the Account of a Participant which is credited with the shares of Company Stock purchased and paid for by the Trust or contributed to the Trust.

**1.16** **"CONTRIBUTIONS"** means the Employer contributions which are deductible by an Employer under Section 404(a) of the Code.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000005

1.17 **"COVERED COMPENSATION"** means a Participant's wages within the meaning of Section 3401(a) of the Code and all other payments of compensation to an Employee by the Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee a written statement under Sections 6041(d), 6051(a)(3) and 6052 of the Code and before reduction for any deferrals or other amounts excluded from taxable income under Sections 125, 132(f)(4), 402(e)(3), 402(g)(3), 402(h), 403(b) or 457 of the Code.

For a Participant's initial year of participation, Covered Compensation shall be recognized as of such Employee's effective date of participation, as provided in Section 2.2.

Covered Compensation for a Plan Year in excess of $285,000 shall be disregarded for all purposes. If the period consists of fewer than 12 months, the annual compensation limit will be an amount equal to the otherwise applicable limit multiplied by a fraction, the numerator of which is the number of months in the short determination period and the denominator of which is 12. Such amount shall be adjusted after 2020 for increases in the cost of living in accordance with Section 401(a)(17)(B) of the Code.

Covered Compensation shall be included in a Plan Year only if actually paid or made available during such Plan Year.

Covered Compensation shall include amounts paid to an individual who does not currently perform services for the Employer by reason of qualified military service (within the meaning of Section 414(u)(1) of the Code) to the extent the Covered Compensation does not exceed the amounts the individual would have received if the individual had continued to perform services for the Employer rather than entering qualified military service.

1.18 **"DEFERRED RETIREMENT"** means the Termination of service subsequent to attainment of the Normal Retirement Date.

1.19 **"DIRECT ROLLOVER"** means a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

1.20 **"DISABILITY"** means the Participant's entitlement to Social Security disability benefits as determined by the Social Security Administration.

1.21 **"DISQUALIFIED PERSON"** means a person who is a fiduciary with respect to the Plan; a person providing services to the Plan; an Employer any of whose employees are covered by the Plan; an employee organization any of whose members are covered by the Plan; an owner, directly or indirectly, of fifty percent (50%) or more of (i) the total combined voting power of all classes of voting stock or of the total value of all classes of the stock of a corporation, (ii) the capital interest or the profits interest of a partnership, or (iii) the beneficial interest of a trust or unincorporated enterprise, which is an Employer or an employee organization any of whose employee or members are covered by the Plan; a member of the family of any Disqualified Person; a corporation, partnership, trust or estate of which (or in which) fifty percent (50%) or more of (i) the combined voting power of all classes of stock entitled to vote or the total value of all classes of stock of such corporation,

-4-

CONFIDENTIAL

(ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust or estate is owned, directly or indirectly, or held by Disqualified Persons; an employee, officer, director (or any individual having powers, similar powers and responsibilities), a ten percent (10%) or more shareholder, or a highly compensated employee (earning ten percent (10%) or more of the yearly wages of an employer) of a Disqualified Person; or a ten percent (10%) or more (in capital or profits) partner or joint venturer of a Disqualified Person. Notwithstanding anything in this definition of "Disqualified Person" to the contrary, solely for purposes of Article IX, the term "Disqualified Person" shall have the meaning set forth in Section 409(p)(4) of the Code.

1.22 **"DISTRIBUTEE"** means a Participant, the Participant's surviving spouse, a non-spouse Beneficiary and the Participant's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code and ERISA Section 206(d)(3).

1.23 **"DOMESTIC RELATIONS ORDER"** means any judgment, decree, or order (including approval of a property settlement agreement) which is made pursuant to a State domestic relations law and which relates to the provision of child support, alimony payments or marital property rights to a spouse, former spouse, child or other dependent of a Participant.

1.24 **"EFFECTIVE DATE"** means June 6, 2020.

1.25 **"ELIGIBLE RETIREMENT PLAN"** means any of the following that accepts the Distributee's Eligible Rollover Distribution: (i) an individual retirement account described in Section 408(a) of the Code; (ii) an individual retirement annuity described in Section 408(b) of the Code; (iii) an annuity plan described in Section 403(a) of the Code; (iv) a qualified trust described in Section 401(a) of the Code; (v) an annuity contract described in Section 403(b) of the Code; (vi) an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan; or (vii) a Roth IRA described in Section 408A of the Code. Notwithstanding the foregoing, for distributions to a non-spouse Beneficiary, an eligible retirement plan shall include only an individual retirement account described in Section 408(a) of the Code or an individual retirement annuity described in Section 408(b) of the Code; provided that such individual retirement account or individual retirement annuity satisfies the requirements of Section 402(c)(11) of the Code (i.e., an "inherited IRA").

1.26 **"ELIGIBLE ROLLOVER DISTRIBUTION"** means any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: any hardship distribution, any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated Beneficiary, or for a specified period of ten (10) years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includable in

US-DOCS\118319799.2

CONFIDENTIAL  WGA_Ruxton000007

gross income (determined without regard to the exclusion for net unrealized appreciation with respect to Employer Securities).

1.27 **"EMPLOYEE"** means a person, employed by an Employer, any portion of whose income is subject to withholding of income tax and/or for whom Social Security contributions are made by an Employer, as well as any other person qualifying as a common law employee of an Employer. Employee shall include Leased Employees unless: (i) such Employee is covered by a money purchase pension plan providing: (1) a non-integrated Employer contribution rate of at least ten percent (10%) of compensation, as defined in Section 415(c)(3) of the Code, but including amounts contributed pursuant to a salary reduction agreement which are excludable from the Employee's gross income under Section 125, Section 402(e)(3), Section 402(h) or Section 403(b) of the Code; (2) immediate participation; and (3) full and immediate vesting; and (ii) Leased Employees do not constitute more than twenty percent (20%) of the Company's non-highly compensated work force.

"Employee" shall not include any individual who is either (i) engaged by the Company as an independent contractor or (ii) not reflected on the payroll records of the Company as a common law employee solely on account of the reclassification of such individual by the Internal Revenue Service, a court or administrative agency as a common law employee.

1.28 **"EMPLOYER"** means Western Global Airlines, Inc. and any other affiliate of the Company, as defined in Section 407(d) of the ERISA, or any predecessor or successor corporation, which has been designated by the Company as an Employer participating in the Plan, and which has accepted such designation and has agreed to be bound by the terms of the Plan and Trust Agreement.

1.29 **"EMPLOYER SECURITIES"** means the common stock issued by the Company or by any affiliate of the Company, which meet the requirements of Section 407(d) of ERISA and Section 409(l) of the Code, having a combination of voting power and dividend rights equal to (i) that class of common stock of the Company having the greatest voting power and (ii) that class of common stock of the Company having the greatest dividend rights. During any S Corporation Year, the Company shall have only one class of stock within the meaning of Section 1361(b)(1)(D) of the Code.

1.30 **"EMPLOYMENT COMMENCEMENT DATE"** means the date on which the Employee shall first perform an Hour of Service for the Employer.

1.31 **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended from time to time.

1.32 **"FIVE-YEAR BREAK IN SERVICE"** means any five (5) consecutive one year Breaks in Service.

1.33 **"FORFEITURES"** means the portion of a Participant's Accounts which does not become part of the Participant's Plan Benefit. See Article XI of the Plan.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000008

**1.34** **"HIGHLY COMPENSATED EMPLOYEE"** means: (a) a Highly Compensated Former Employee of the Company as well as (b) a Highly Compensated Current Employee. The term "Highly Compensated Current Employee" shall mean any Employee who: was a five percent (5%) owner at any time during the year or the preceding year, or for the preceding year, had Total Compensation from the Company and/or from an Affiliated Company in excess of one hundred and thirty thousand dollars ($130,000) (indexed after 2020 at such time and in such manner as the Secretary of the Treasury may provide).

The determination of who is a Highly Compensated Employee will be made in accordance with the provisions of Section 414(q) of the Code and the regulations thereunder.

A former employee shall be treated as a "Highly Compensated Former Employee" if such employee was a Highly Compensated Employee when he separated from service or was a Highly Compensated Employee at any time after attaining age fifty-five (55).

**1.35** **"HOUR OF SERVICE"** means each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer or any Affiliated Company during the applicable computation period.

An "Hour of Service" also includes each hour for which an Employee is paid, or entitled to payment, by the Employer or any Affiliated Company on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. Notwithstanding the preceding sentence, (1) no more than 501 Hours of Service will be credited under this paragraph to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period); (2) an hour for which an Employee is directly or indirectly paid, or entitled to payment, during a period in which no duties are performed, will not be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workmen's compensation, unemployment compensation or disability insurance laws; and (3) Hours of Service will not be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee. For purposes of this paragraph, a payment shall be deemed to be made by or due from an Employer or an Affiliated Company regardless of whether such payment is made by or due from the Employer or an Affiliated Company directly or indirectly through, among others, a trust fund, or insurer, to which the Employer or an Affiliated Company contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer or other entity are for the benefit of particular Employees or are on behalf of a group of Employees in the aggregate.

Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or an Affiliated Company

The determination of Hours of Service for reasons other than the performance of duties, and the crediting of Hours of Service to computation periods, shall be in accordance with

US-DOCS\118319799.2

CONFIDENTIAL WGA_Ruxton000009

U.S. Department of Labor Regulations Section 2530.200b-2 (b) and (c). There shall be no duplication of Hours of Service under any of the foregoing provisions.

In the case of a salaried Employee who is not paid on an hourly basis, Hours of Service shall be based on any available records which accurately reflect the actual number of hours worked by such Employee. If such records do not exist, such Employee shall be credited with Hours of Service on the basis of 45 hours for each week for which the Employee would be credited with at least one Hour of Service.

For purposes of determining whether a Participant has incurred a one-year Break in Service, a Participant will be credited with Hours of Service for (i) a leave of absence covered by the Family and Medical Leave Act of 1993, or (ii) certain periods of absence from work by reason of the Participant's pregnancy, the birth of a Participant's child, the adoption of a Participant's child, or caring for a Participant's child during the period immediately following the birth or adoption of such child. If the Participant's normal work hours are known, such Participant will be credited with the number of hours that normally would have been credited for such absence. If the Participant's normal work hours are not known, such Participant will be credited with eight Hours of Service for each normal workday during such absence. Not more than 501 Hours of Service shall be credited for such purposes in the Plan Year in which such absence commences if the Participant would otherwise incur a Break in Service in such Plan Year; otherwise, such Hours of Service shall be credited in the following Plan Year if such absence continues in such Plan Year.

**1.36** **"INDEPENDENT APPRAISER"** means any appraiser, appointed by the Plan Committee, who is independent of the Company and who meets requirements similar to the requirements of the regulations prescribed under Section 170(a)(1) of the Code.

**1.37** **"INDEPENDENT FIDUCIARY"** shall refer to any entity or individual which may be appointed from time to time by the Trustee to act on behalf of the Plan and/or Trust with respect to any issue involving a real or perceived conflict of interest among the parties to the Plan and/or Trust, or for such other purposes as the Trustee may determine to be in the best interest of the Plan and/or Trust.

**1.38** **"LEASED EMPLOYEE"** means any person (other than an Employee of the Company) who pursuant to an agreement between the Company and any other person ("leasing organization") has performed services for the Company (or for the Company and related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full-time basis for a period of at least one (1) year, and such services are performed under primary direction or control by the Company. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the Company shall be treated as provided by the Company.

**1.39** **"LIMITATION YEAR"** means for purposes of the limitations imposed by Section 415 of the Code, the Limitation Year shall be the Plan Year.

US-DOCS\118319799.2

CONFIDENTIAL

**1.40 "NORMAL RETIREMENT"** means the termination of service upon attainment of the Normal Retirement Date.

**1.41 "NORMAL RETIREMENT DATE"** means the later of (i) the date on which a Participant attains age sixty-five (65), or (ii) the 5th anniversary of the date the Participant commenced participation in the Plan.

**1.42 "OTHER INVESTMENTS ACCOUNT"** means the Account of a Participant which is credited with a share of the net income (or loss) of the Trust and Employer Contributions and Forfeitures in other than Company Stock.

**1.43 "PARTICIPANT"** means any Employee who is participating in this Plan as defined in Article II of the Plan or former Employee for whom an Account is maintained. A Participant ceases to be a Participant when such Participant's Account is closed after all amounts have been distributed or Forfeited.

**1.44 "PLAN"** means the Western Global Airlines, Inc. Employee Stock Ownership Plan, which includes the Plan and Trust Agreement.

**1.45 "PLAN BENEFIT"** means the vested amount of a Participant's Accounts.

**1.46 "PLAN YEAR"** means the twelve (12) month period ending on each Anniversary Date.

**1.47 "PROFIT SHARING PLAN"** means the Western Global Airlines 401(k) Profit Sharing Plan.

**1.48 "QUALIFIED ELECTION PERIOD"** means the six (6) Plan Year period beginning with the first Plan Year in which the Participant first became a Qualified Participant.

**1.49 "QUALIFIED EMPLOYER SECURITIES"** means Employer Securities which are issued by a domestic C Corporation that has no securities outstanding that are readily tradable on an established securities market, have been held for at least three (3) years by the seller and were not received by the seller in a distribution from a plan qualified under Section 401(a) of the Code or in a transfer pursuant to an option or other right to acquire stock under Sections 83, 422, 422A, 423 or 424 of the Code.

**1.50 "QUALIFIED PARTICIPANT"** means any Participant who (i) is an Employee, (ii) has attained age fifty-five (55), and (iii) has completed ten (10) years of participation under the Plan.

**1.51 "RETIREMENT"** means the termination of service due to Normal Retirement, Deferred Retirement or Disability.

**1.52 "S CORPORATION"** means a small business Corporation as defined in Section 1361(a) of the Code.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000011

**1.53** **"S CORPORATION DISTRIBUTION"** means a distribution of property made by an S Corporation pursuant to Section 1368 of the Code.

**1.54** **"S CORPORATION YEAR"** means a taxable year of the Company in which it is an S Corporation, as defined in Section 1361(a)(1) of the Code.

**1.55** **"SECURE ACT"** means the Setting Every Community Up for Retirement Enhancement Act of 2019, as amended from time to time.

**1.56** **"SECURITIES ACQUISITION LOAN"** means a loan which is used to purchase Employer Securities and which meets the requirements of Article V.

**1.57** **"SUSPENSE ACCOUNT"** means the account maintained by the Committee to which shall be credited all shares of Employer Securities purchased with the proceeds of a Securities Acquisition Loan.

**1.58** **"TOTAL COMPENSATION"** means for purposes of Section 415 of the Code and the Top Heavy provisions in Article IX of this Plan, the term "Total Compensation" includes those items of remuneration set forth in Treasury Regulation § 1.415(c)-2(b) and excludes those items of remuneration set forth in Treasury Regulation § 1.415(c)-2(c). The definition of "Total Compensation" shall be subject to the timing rules of Treasury Regulation § 1.415(c)-2(e) and the dollar limitation of Treasury Regulation § 1.415(c)-2(f).

**1.59** **"TRUST"** means the Trust created by the Trust Agreement entered into between the Company and the Trustee.

**1.60** **"TRUST AGREEMENT"** means the agreement between the Company and the Trustee or any successor Trustee establishing the Trust and specifying the duties of the Trustee.

**1.61** **"TRUSTEE"** means the Trustee (or Trustees) designated by the Company's Board of Directors (and any successor Trustee). The Board of Directors may provide that any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan (including service as both Trustee and Committee member).

**1.62** **"VALUATION DATE"** means the Anniversary Date, and such other date or dates that may be designated by the Plan Committee, coinciding with or immediately preceding the date of actual distribution of Plan Benefits. For purposes of the top heavy provisions of this Plan, the Valuation Date is the most recent Anniversary Date within a twelve (12)-month period ending on a Determination Date.

**1.63** **"YEAR OF SERVICE"** means the computation period of twelve (12) consecutive months herein set forth during which an Employee has at least 1,000 Hours of Service for purposes of vesting and allocation of Employer contributions and forfeitures hereunder. For purposes of vesting under Article XI, the computation period shall be the Plan Year, including any Plan Year during which the Participant has not yet become eligible to participate in the Plan. Notwithstanding anything in the Plan to the contrary, an Employee shall not be credited with a Year of Service for any purposes under the Plan for any Hours

-10-

CONFIDENTIAL

of Service occurring prior to the Effective Date. Notwithstanding the foregoing, service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000013

# ARTICLE II

## ELIGIBILITY

2.1 <u>Initial Eligibility.</u> Subject to Section 2.3 below, any Employee as of the Effective Date shall be a Participant in the Plan as of the Effective Date. An Employee, who is not a Participant as of the Effective Date, shall become a Participant as of January 1st or July 1st coincident with or next following the completion of 1,000 Hours of Service during an applicable 12-month period and has attained at least age 21. For this purpose, the "applicable 12-month period" is the 12-month period following his hire date, and each Plan Year beginning after his hire date.

2.2 <u>Eligibility</u>. Upon the Employee becoming a Participant, any allocation for his first Plan Year of participation shall be based upon his total Covered Compensation for the portion of such Plan Year during which he was a Participant. If an Employee who has met the eligibility requirements leaves the service of the Employer and returns to service without incurring a one-year Break in Service, the Employee shall commence participation immediately upon returning to Service.

2.3 <u>Ineligible Employees</u>.

    A. <u>Leased Employee.</u> An Employee who is a Leased Employee shall not be eligible to participate in this Plan. Notwithstanding the foregoing, in the event an Employee ceases to be a Leased Employee, Years of Service for purposes of eligibility and vesting shall include all Years of Service with the Employer.

    B. <u>Non-Resident Alien</u>. An Employee who is a Non-Resident Alien Employee shall not be eligible to participate in this Plan. Notwithstanding the foregoing, in the event an Employee ceases to be a Non-Resident Alien Employee, Years of Service for purposes of eligibility and vesting shall include all Years of Service with the Employer.

    C. <u>Collective Bargaining</u>. An Employee whose terms of employment with the Employer are covered by a collective bargaining agreement shall not be eligible to participate in the Plan. Notwithstanding the foregoing, in the event any such Employees cease to be subject to the collective bargaining agreement, Years of Service for purposes of eligibility and vesting shall include years during which an Employee is covered by a collective bargaining agreement.

    D. <u>Employees on non-U.S. Payrolls</u>. An Employee who is on a non-U.S. payroll shall not be eligible to participate in this Plan.

-12-

CONFIDENTIAL

# ARTICLE III

## PARTICIPATION IN ALLOCATION OF BENEFITS

### 3.1 Participation.

A.    In General. Except in the case of death, Disability, or Retirement, a Participant will share in the allocation of Employer Contributions and Forfeitures only if the Participant has accrued a Year of Service during the Plan Year. Except in the case of death, Disability, or Retirement, a Participant who does not accrue a Year of Service during such Plan Year will not share in the allocation of Employer Contributions and Forfeitures under Article IX for such Plan Year, will not be given a Year of Service for purposes of vesting under Article XI, and shall become an inactive Participant for that Plan Year.

A Participant reemployed following a Break in Service shall again resume participation in the Plan as of the date of reemployment for purposes of vesting under Article XI and for purposes of participating in Employer Contributions and Forfeitures under Article IX. However, if the Participant is reemployed after a Break in Service and has no vested rights under the Plan and the number of consecutive one-year Breaks in Service equals or exceeds five (5) years, the Participant shall be treated as a new Employee for purposes of participation.

B.    Leave of Absence. A Participant's employment is not considered terminated for purposes of the Plan if the Participant has been on leave of absence with the consent of the Company, provided that the Participant returns to the employ of the Company within thirty (30) days after the leave (or within such longer period as may be prescribed by law). Leave of absence shall mean a leave granted by the Company, in accordance with rules uniformly applied to all Participants, for reasons of health or public service or for reasons determined by the Company to be in its best interests. Solely for purposes of preventing a Break in Service, a Participant on such leave of absence shall be credited with eight (8) Hours of Service for each business day of the leave. A Participant who does not return to the employ of the Company within the prescribed time following the end of the leave of absence shall be deemed to have terminated employment as of the date when the leave began, unless such failure to return was the result of death, Disability or Retirement.

C.    Omission of Eligible Employee. If, in any Plan Year, any Employee who should be included as a Participant in the Plan is erroneously omitted, and discovery of such omission is not made until after a Contribution by the Employer for the Plan Year has been made, the Employer shall make a subsequent Contribution with respect to the omitted Employee in the amount which the Company would have contributed if he or she had not been omitted. Such Contribution shall be made regardless of whether or not it is deductible in whole or in part in any taxable year under the applicable provisions of the Code.

-13-

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000015

D.     Inclusion of Ineligible Employee. If, in any Plan Year, any Employee who should not have been included as a Participant in the Plan is erroneously included, and discovery of such incorrect inclusion is not made until after a Contribution by the Company for the year has been made, the Company shall not be entitled to recover the Contribution made with respect to the ineligible Employee regardless of whether a deduction is allowable with respect to such Contribution. In such event, the amount contributed with respect to the ineligible Employee shall constitute a Forfeiture for the Plan Year in which the discovery is made.

E.     Suspended Participation. A Participant who ceases to be an eligible Employee as described in Article II of the Plan, shall become a suspended Participant. During the period of suspension, no amounts shall be credited to the Participant's Accounts which are based on the Participant's Covered Compensation from and after the date of suspension. However, amounts previously credited to a Participant's Accounts shall continue to vest as long as the Participant remains employed by an Employer or Affiliated Company.

F.     Inactive Participation. A Participant who has more than 500 Hours of Service in any Plan Year, but who fails to complete a Year of Service in such Plan Year, shall be an inactive Participant for that Plan Year. No amounts shall be credited to such Participant's Accounts which are based on the Participant's Covered Compensation for that Plan Year unless the Participant terminates employment due to death, Disability or Retirement.

G.     Qualified Military Service. For purposes of this section, "Qualified Military Service" means any service in the uniformed services (as defined in Chapter 43 of Title 38 of the United States Code) by any individual if such individual is entitled to reemployment rights under Chapter 43 with respect to such service. In addition,

    (i)     Contributions, benefits and service credit with respect to Qualified Military Service will be provided in accordance with the provisions of Code § 414(u);

    (ii)     In the event a Participant dies while performing Qualified Military Service, the survivors of the Participant shall be entitled to any additional benefits (other than benefit accruals relating to the period of Qualified Military Service) that would have been provided under the Plan had the Participant resumed employment and then terminated employment on account of death; and

    (iii)     In the event an individual is receiving a "differential wage payment" as defined in Code § 3401(h)(2), such individual shall be treated as the employee of the employer making the payment, and the differential wage payment shall be treated as "compensation" for purposes of Code § 415.

-14-

CONFIDENTIAL

## ARTICLE IV

## EMPLOYER CONTRIBUTIONS

**4.1** **Amount of Contribution**. Employer Contributions shall be made to the Trust in such amounts as may be determined by the Company's Board of Directors, provided that such Contributions shall not exceed the maximum amounts deductible under Section 404(a)(3) of the Code. Notwithstanding the foregoing, Employer Contributions may not be made in amounts which would permit the limitation described in Section 9.3(b) to be exceeded.

**4.2** **Time for Making Contribution**. Employer Contributions for each year must be established by resolution of the Company's Board of Directors and paid to the Trust not later than the due date for filing the Company's federal income tax return for that year, including extensions of such date.

**4.3** **Form of Contribution**. Employer Contributions may be paid in cash, shares of Company Stock or other property as the Company's Board of Directors may from time to time determine. Shares of Company Stock and other property will be valued at their then fair market value.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000017

**ARTICLE V**

**INVESTMENT OF TRUST ASSETS**

5.1   <u>Authorized Investments</u>. Employer Contributions in cash received by the Trust will be applied to pay any outstanding obligations of the Trust incurred for the purchase of Employer Securities, or may be applied to purchase additional shares of Company Stock from current shareholders, treasury shares, or newly issued shares from the Company. Pursuant to the terms of the Trust Agreement, the Trustee may invest funds under the Plan in other prudent investments as deems desirable for the Trust, or such funds may be held in non-interest-bearing bank accounts as necessary on a temporary basis, all in accordance with the Trust Agreement.

5.2   <u>Duties of Committee</u>. Except as otherwise provided in Section 16.2 of the Plan, all investments will be made by the Trustee in accordance with the terms of the Trust Agreement. Except in the case of a purchase from a Disqualified Person, all purchases of Company Stock shall be made at no more than fair market value, as determined by an Independent Appraiser as of the most recent Anniversary Date. In the case of a purchase from a Disqualified Person, all purchases of Company Stock shall be made at prices which, in the judgment of the Independent Appraiser, do not exceed the fair market value of such shares as of the date of the transaction.

5.3   <u>Plan Loans</u>.

    A.    <u>Securities Acquisition Loans</u>. The Committee may direct the Trustee to incur Plan loans from time to time to carry out the purposes of the Trust, provided that if the loan is a Securities Acquisition Loan, the terms of the loan must comply with the following requirements: Any such loan shall be for a specified term, shall bear a reasonable rate of interest, and may only be secured by a collateral pledge of the Employer Securities so acquired. Any such loan shall be primarily for the benefit of Plan Participants and their Beneficiaries. No other Trust assets may be pledged as collateral by the Trustee, and no lender shall have recourse against Trust assets other than any shares of Employer Securities remaining subject to pledge. Any pledge of Employer Securities must provide for the release of shares so pledged pursuant to either the "General Rule" or the "Special Rule" set forth in Section 6 of the Plan. Shares of Employer Securities released from the Suspense Account shall be allocated to Participants' accounts in shares of stock or other non-monetary units. In making repayments of principal and interest on any Securities Acquisition Loan, the Trustee (as directed by the Committee) shall use Employer Contributions and earnings attributable to Employer Contributions (including both dividends paid on unallocated Employer Securities and dividends paid on allocated Employer Securities), and such contributions and earnings shall be accounted for separately in the books of account of the Plan until the Securities Acquisition Loan is repaid. The proceeds of a Securities Acquisition Loan may be used only to acquire Employer Securities, to repay such loan or to repay a prior Securities Acquisition Loan. The Plan may not obligate itself to acquire securities from a particular

-16-

CONFIDENTIAL      WGA_Ruxton000018

security holder at an indefinite time determined upon the happening of an event such as the death of the holder. The protections and rights described in Article XIV are non-terminable. Should this Plan cease to be an employee stock ownership plan, or should the Securities Acquisition Loan be repaid, all Employer Securities will continue to be subject to the provisions of Article XIV. If securities acquired with the proceeds of a Securities Acquisition Loan available for distribution consist of more than one class, a Distributee must receive substantially the same portion of each such class.

B. <u>Default</u>. In the event of default upon a Securities Acquisition Loan, the value of Plan assets transferred in satisfaction of the loan must not exceed the amount of default. If the lender is a Disqualified Person, a loan must provide for a transfer of Plan assets upon default only upon and to the extent of the failure of the Plan to meet the payment schedule of the loan.

5.4 <u>S Corporation Year</u>. The non-recognition provisions of Section 1042 of the Code shall not apply to any sale of Employer Securities to the Plan during any S Corporation Year.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000019

# ARTICLE VI

## ALLOCATIONS TO ACCOUNTS

**6.1** **Individual Accounts**. The Committee shall establish and maintain individual Accounts for each Participant in the Plan. Individual Accounts shall also be maintained for all former Participants who still have an interest in the Plan. Except as provided in Article XV, such individual Accounts shall not require a segregation of the Trust assets and no Participant, former Participant or Beneficiary shall acquire any right to or interest in any specific asset of the Trust as a result of the allocation provided for in the Plan

**6.2** **Company Stock Account**. The Company Stock Account of each Participant will be credited as of each Anniversary Date with the Participant's allocated share of Company Stock (including fractional shares) purchased and paid for by the Trust or contributed in kind by the Company, with Forfeitures of Company Stock and with stock dividends on Company Stock held in the Participant's Company Stock Account. Allocations of Company Stock shall be reflected separately for each class of such stock, and the Committee shall maintain adequate records of the aggregate cost basis of Company Stock allocated to each Participant's Company Stock Account.

    A.    Securities Acquired With Securities Acquisition Loan. Employer Securities acquired by the Trust with the proceeds of a Securities Acquisition Loan shall be credited to a Suspense Account. For each Plan Year during the duration of the loan, the number of shares of Employer Securities to be released from said Suspense Account and allocated to the Company Stock Accounts of Participants shall be determined pursuant to either the "General Rule" or the "Special Rule" described below as selected by the Committee for each Securities Acquisition Loan. Once the Committee has selected either the General Rule or the Special Rule, that Rule shall be used exclusively for the allocation of shares of Employer Securities purchased with the proceeds of a particular Securities Acquisition Loan.

    B.    General Rule: For each Plan Year during the duration of the loan, the Committee shall withdraw from the Suspense Account a number of shares of Employer Securities equal to the total number of such shares held in the Suspense Account immediately prior to the withdrawal multiplied by a fraction:

        (i)    The numerator of which is the amount of principal and interest paid for the Plan Year; and

        (ii)    The denominator of which is the sum of the numerator plus the principal and interest to be paid for all future years.

    C.    Special Rule: For each Plan Year, the Committee shall withdraw from the Suspense Account a number of shares of Employer Securities equal to the total number of such shares held in the Suspense Account immediately prior to the withdrawal multiplied by a fraction:

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000020

(i)     The numerator of which is the amount of principal paid for the Plan Year; and

(ii)    The denominator of which is the sum of the numerator plus the principal to be paid for all future Plan Years.

The Committee may select the Special Rule only if: (a) at a cumulative rate which is not less rapid at any time than level annual payments; (b) the Securities Acquisition Loan provides for annual payments of principal and interest of such amounts for ten (10) years; (c) the interest included in any payment is disregarded only to the extent that it would be determined to be interest under standard loan amortization tables; and (d) by reason of a renewal, extension or refinancing, the sum of the expired duration of the original loan, any renewal period, any extension period and the duration of any new loan does not exceed 10 years.

D.    <u>Shares to Be Released</u>. In determining the number of shares to be released for any Plan Year under either the General Rule or the Special Rule the following must be satisfied:

(i)    The number of future years under the Loan must be definitely ascertainable and must be determined without taking into account any possible extensions or renewal periods;

(ii)    If the Loan provides for a variable interest rate, the interest to be paid for all future Plan Years must be computed by using the interest rate applicable as of the end of the Plan Year for which the determination is being made; and

(iii)    If the Employer Securities allocated to the Suspense Account includes more than one class of shares, the number of shares of each class to be withdrawn for a Plan Year from the Suspense Account must be determined by applying the applicable fraction provided for above to each such class.

**6.3**    <u>**Other Investments Account**</u>. The Other Investments Account of each Participant will be credited in accordance with Section 9 of the Plan.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000021

# ARTICLE VII

## EXPENSES OF THE PLAN AND TRUST

Normal brokerage charges which are included in the cost of securities purchased (or charged to proceeds in the case of sales) shall be paid by the Trust. The Company shall pay all expenses in connection with the design, establishment, or termination of the Plan. The Trust shall pay all costs of administering the Plan and Trust, unless such expenses are paid by the Company.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000022

# ARTICLE VIII

## VOTING AND TENDERING COMPANY STOCK

**8.1** <u>In General</u>. The voting of Company Stock held in the Trust, and if a tender offer is made for Company Stock, the tendering of such shares, shall be subject to the provisions of ERISA, the Code, and this Article VIII, to the extent such provisions are not inconsistent with ERISA or the Code, as applicable. In carrying out its responsibilities, the Trustee may rely on information furnished to it by the Company, including the names and current addresses of Participants, the number of shares of Company Stock allocated to their Accounts, and the number of shares of Company Stock held by the Trustee that have not yet been allocated.

**8.2** <u>Allocated Shares</u>. For purposes of this Article, shares of Company Stock shall be deemed to be allocated and credited to a Participant's ESOP Stock Account in an amount to be determined based on the balance in such account on the Accounting Date coincident with or next preceding the record date of any vote or tender offer.

**8.3** <u>Voting of Company Stock</u>. Generally, the Trustee will vote shares of Company Stock in accordance with the Trust Agreement; provided, however, that, with respect to any corporate matter which involves the voting of Company Stock which is a registration-type class of securities, or which involves the voting of Company Stock which is not a registration type class of securities with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets of a trade or business, or such other transactions which may be prescribed by regulation, each Participant may be entitled to direct the Trustee as to the exercise of any shareholder voting rights attributable to shares of Company Stock then allocated to his Accounts, but only to the extent required by Sections 401(a)(22) and 409(e) of the Code and the regulations thereunder. For purposes of the foregoing sentence, each Participant shall be a Named Fiduciary of the Plan as described in Section 402(a)(2) of ERISA. The Company shall have the responsibility for determining when a corporate matter has arisen that involves the voting of Company Stock under this provision. If a Participant is entitled to so direct the Trustee, all allocated Company Stock as to which such instructions have been received (which may include an instruction to abstain) shall be voted by the Trustee in accordance with such instructions, provided that the Trustee may vote the shares as it determines is necessary to fulfill its fiduciary duties under ERISA. Any allocated shares of Company Stock as to which no voting instructions have been received and any shares of Company Stock held in the Loan Suspense Account shall be voted by the Trustee in the same proportion as the allocated Company Stock for which voting instructions are received from Participants, subject to its fiduciary duties under ERISA.

**8.4** <u>Tender Offer</u>. In the event of a tender offer or other offer to purchase shares of Company Stock held by the Trust, the Trustee shall tender or sell the shares in its sole discretion, subject to the fiduciary duties under ERISA.

US-DOCS\118319799.2

CONFIDENTIAL

# ARTICLE IX

## ALLOCATION OF EMPLOYER CONTRIBUTIONS AND FORFEITURES

**9.1** **Allocation of Employer Contributions and Forfeitures**. The allocation will be made as follows

    A.    **Employer Contributions**. Employer Contributions will be allocated as of each Anniversary Date among the Accounts of Participants who meet the requirements of Article III of the Plan, in the proportion that each such Participant's Covered Compensation bears to the total Covered Compensation of all such Participants for that year. Shares of Employer Securities released from the Suspense Account by reason of the payment of interest and principal on a Securities Acquisition Loan shall be allocated as of each Anniversary Date among the Accounts of Participants in the Plan who meet the requirements of Article III of the Plan, in the proportion that each such Participant's Covered Compensation bears to the total Covered Compensation of all such Participants for that year.

    B.    **Forfeitures**. Forfeitures shall be allocated in the same manner as Employer Contributions are allocated.

**9.2** **Net Income (or Loss) of the Trust**.

    A.    **In General**. The net income (or loss) of the Trust will be determined annually as of each Anniversary Date. Any stock dividends on shares of Company Stock held by the Trust shall be allocated to each Participant's Company Stock Account in the ratio in which the cumulative number of shares allocated to the Participant's Company Stock Account as of the preceding Anniversary Date bears to the total cumulative number of shares of Company Stock allocated to the Company Stock Accounts of all Participants as of that date.

    B.    **Other Investment Account**. Trust income attributable to S Corporation Distributions paid on allocated shares of Company Stock, which is not used to make payments on a Securities Acquisition Loan, shall be allocated to each Participant's Other Investments Account in the ratio in which the cumulative number of shares allocated to the Participant's Company Stock Account as of the preceding Anniversary Date bears to the total cumulative number of shares of Company Stock allocated to the Company Stock Accounts of all Participants as of that date. For this purpose, the number of shares allocated to the Participant's Company Stock Account shall be reduced by amounts forfeited or distributed to Participants during the Plan Year.

    C.    **Income Used For Securities Acquisition Loan**.

        (i)    Trust income attributable to S Corporation Distributions paid on allocated shares of Company Stock, which is used to make payments on a Securities Acquisition Loan, shall release shares of Employer Securities which shall

-22-

US-DOCS\118319799.2

WGA_Ruxton000024

be allocated to each Participant's Account in the ratio in which the cumulative number of shares allocated to the Participant's Company Stock Account as of the preceding Anniversary Date bears to the total cumulative number of shares of Company Stock allocated to the Company Stock Accounts of all Participants as of that date; provided that a minimum number of shares of Company Stock released from the Suspense Account due to the payment of the S Corporation Distribution (with a fair market value equal to the amount of S Corporation Distributions paid) shall be allocated to Participants' Company Stock Accounts. For this purpose, the number of shares allocated to the Participant's Company Stock Account shall be reduced by amounts forfeited or distributed to Participants during the Plan Year.

(ii) Trust income attributable to S Corporation Distributions paid on unallocated shares of Company Stock and not used to make payments on a Securities Acquisition Loan, shall be allocated to each Participant's Other Investments Account in the same manner as described under Subsection 9.1(A) above. Trust income attributable to S Corporation Distributions paid on unallocated shares of Company Stock and used to make payments on a Securities Acquisition Loan, shall release shares of Employer Securities which shall be allocated in same manner under Subsection 9.1(A).

(iii) The following rules shall apply during any C Corporation Year. Trust income attributable to any cash dividends paid on shares of Company Stock (whether or not allocated) and not used to make payments on a Securities Acquisition Loan shall be allocated to each Participant's Other Investments Account in the ratio in which the cumulative number of shares allocated to the Participant's Company Stock Account as of the preceding Anniversary Date bears to the total cumulative number of shares of Company Stock allocated to the Company Stock Accounts of all Participants as of that date. Trust income attributable to any cash dividends paid on unallocated shares of Company Stock and used to make payments on a Securities Acquisition Loan, shall release shares of Employer Securities from the Suspense Account, which shall be allocated in accordance with Subsection 9.1(A) above. Trust income attributable to any cash dividends paid on allocated shares of Company Stock and used to make payments on a Securities Acquisition Loan, shall release shares of Employer Securities from the Suspense Account, which shall be allocated to each Participant's Company Stock Account in the ratio in which the cumulative number of shares allocated to the Participant's Company Stock Account as of the preceding Anniversary Date bears to the total cumulative number of shares of Company Stock allocated to the Company Stock Accounts of all Participants as of that date.

D.     Gain or Loss on Sale of Company Stock.  Trust income attributable to any gain from the sale of unallocated shares of Employer Securities shall be allocated to each

-23-

CONFIDENTIAL

WGA_Ruxton000025

Participant's Other Investments Account in the ratio in which the cumulative number of shares allocated to the Participant's Company Stock Account as of the preceding Anniversary Date bears to the total cumulative number of shares of Company Stock allocated to the Company Stock Accounts of all Participants as of that date. All other net income (or loss) will be allocated to each Participant's Other Investments Account in the ratio in which the balance of the Participant's Other Investments Account on the preceding Anniversary Date bears to the sum of the balances of the Other Investments Accounts of all Participants on that date. For this purpose, Account balances shall be reduced by amounts forfeited or distributed to Participants during the Plan Year.

E.    Income Not Attributable to Company Stock. The net income (or loss) includes the increases (or decreases) in the fair market value of assets of the Trust, interest, dividends, other income and expenses attributable to assets in the Other Investments Accounts since the preceding Anniversary Date. Net income (or loss) does not include the interest paid under any installment contract for the purchase of Company Stock by the Trust or on any loan obtained by the Trust to purchase Company Stock. Notwithstanding the foregoing, no income (or loss) shall be allocated to a terminated Participant's Account for the Plan Year in which any amounts are forfeited or the Participant receives final distribution of the Plan Benefit.

## 9.3   Allocation Limitations.

A.    In General. Except to the extent permitted under Section 414(v) of the Code, if applicable, the Annual Addition that may be contributed or allocated to a Participant's Account under the Plan for any Limitation Year shall not exceed the lesser of:

(i)    $57,000, as adjusted after 2020 for increases in the cost-of-living under Section 415(d) of the Code, or

(ii)   100 percent of the Participant's Total Compensation for the Limitation Year.

The compensation limit referred to in (ii) shall not apply to any Contribution for medical benefits after separation from service (within the meaning of Section 401(h) or Section 419(A)(f)(2) of the Code) which is otherwise treated as an Annual Addition.

B.    Employer Securities. The Annual Additions with respect to Employer Securities released from the Suspense Account (by reason of Employer Contributions used for payments on a Securities Acquisition Loan) and allocated to Participants' Company Stock Accounts shall be based upon the lesser of (i) the amount of such Employer Contributions, or (ii) the fair market value of such Employer Securities (determined by an Independent Appraiser) as of the Allocation Date.

-24-

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000026

C.     Other Defined Contribution Plans.  If an Employer is contributing to another defined contribution plan, as defined in Section 414(i) of the Code, for Employees of the Company or any Affiliated Company, some or all of whom may be Participants in this Plan, then any such Participant's Annual Additions in such other plan shall be aggregated with the Participant's Annual Additions derived from this Plan for purposes of the limitation in Subsection 9.3(A).

D.     Special Rules for C Corporation.  In the case of a sale in which a seller elects non-recognition of gain under Section 1042 of the Code during a C Corporation Year, no portion of such Qualified Employer Securities may be allocated to the Account of (i) the seller (or the seller's family) during the non-allocation period or (ii) any other person who owns (after application of the family attribution rules) more than twenty-five percent (25%) of any class of outstanding Company Stock, or more than twenty-five percent (25%) of the total value of any class of outstanding Company Stock, at any time during the one (1) year period preceding the purchase of such Qualified Employer Securities by the Plan, or on any subsequent date when such Qualified Employer Securities are allocated to Participants in the Plan.  For purposes of this paragraph, the seller's family shall include the seller's spouse, ancestors, lineal descendants, and brothers and sisters.  Notwithstanding the foregoing, lineal descendants of a seller shall be permitted to share in the allocation of Qualified Employer Securities, provided that the aggregate amount of such stock allocated for the benefit of all such lineal descendants does not exceed more than five percent (5%) of such stock purchased from the seller.  For purposes of this paragraph, a person shall be considered to be a more than twenty-five percent (25%) shareholder if the amount of Company Stock which such person owns (whether outright or as a Plan Participant), together with the amount of Company Stock owned by such person's spouse, children, grandchildren and parents (whether outright or as Plan Participants), exceeds twenty-five percent (25%) of any class of outstanding Company Stock or twenty-five percent (25%) of the total value of any class of outstanding Company Stock.  For purposes of this paragraph, the "non-allocation period" means the period beginning on the date of the sale and ending on the later of (i) the date which is ten (10) years after the date of sale, or (ii) the date of the Plan allocation attributable to the final payment of the Securities Acquisition Loan.

E.     Corrections.  If the Annual Additions to a Participant's Accounts would exceed the limitation described in Subsection 9.3(A)(i) or (A)(ii) above, corrections shall be made in accordance with the applicable terms of the Employee Plans Compliance Resolution System set forth in Rev. Proc. 2019-19 or any superseding IRS guidance.

**9.4   Special Non-Allocation Rule.**

A.     In General.  Notwithstanding the preceding provisions of this Article IX, no allocation of Company Stock of an S Corporation (or other assets in lieu of such Company Stock) may be made to any "Disqualified Person" (solely for purposes of

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000027

this Article IX, within the meaning of Section 409(p)(4) of the Code) during any "Non-allocation Year" (within the meaning of Section 409(p)(3) of the Code). For purposes of this Section 9.4 of the Plan, the following definitions shall apply:

(i)     "*S Corporation*" shall mean a corporation as defined at Section 1361(a) of the Code for which an election under Section 1362(a) of the Code is in effect.

(ii)    "*Non-allocation Year*" shall mean any Plan Year if at any time during the Plan Year:

   (a)     The Plan holds Employer Securities consisting of stock in an S Corporation; and

   (b)     Disqualified Persons own at least fifty percent (50%) of the number of shares of stock in the S Corporation.

For these purposes, the rules of Section 318(a) of the Code shall apply for purposes of determining ownership, except that in applying Section 318(a)(1) of the Code, the members of an individual's family shall include members of the family described in paragraph (v) below, and Section 318(a)(4) of the Code regarding options shall not apply In addition, notwithstanding the employee trust exception in Section 318(a)(2)(B)(i) of the Code, an individual shall be treated as owning Deemed Owned Shares of the individual. Solely for purposes of applying paragraph (vi)(a) below, this paragraph shall be applied after the attribution rules of paragraph (vi)(a) below have been applied.

(iii)   "*Disqualified Person*" shall mean any person if:

   (a)     The aggregate number of Deemed Owned Shares of such person and the members of such person's family is at least twenty percent (20%) of the number of Deemed-Owned Shares of stock in the S Corporation. For these purposes, any member of such person's family with Deemed Owned Shares shall be treated as a Disqualified Person if not otherwise treated as a Disqualified Person under this (iii).

   (b)     In the case of a person not described in subparagraph (a) above the number of Deemed-Owned Shares of such person is at least ten percent (10%) of the number of Deemed-Owned Shares of stock in such S Corporation

(iv)    "*Deemed-Owned Shares*" shall mean with respect to any person:

   (a)     The stock in the S Corporation constituting Employer Securities of the Plan which is allocated to such person under the Plan; and

-26-

CONFIDENTIAL                                                                                    WGA_Ruxton000028

(b) Such person's share of the stock in such S Corporation which is held by the Plan but which is not allocated under the Plan to the Participants. For these purposes, a person's share of unallocated S Corporation stock held by the Plan is the amount of the unallocated stock which would allocated to such person if the unallocated stock were allocated to all Participants in the same proportions as the most recent stock allocation under the Plan.

(v) *"Member of the family"* shall mean with respect to any individual:

(a) The spouse of the individual;

(b) An ancestor or lineal descendant of the individual or the individual's spouse:

(c) A brother or sister of the individual or the individual's spouse and any lineal descendant of the brother or sister; and

(d) The spouse of any individual described in (a) or (b) above.

(e) A spouse of an individual who is legally separated from such individual under a decree of divorce or separate maintenance shall not be treated as such individual's spouse for purposes of this paragraph (v).

(vi) "Synthetic Equity" shall mean any stock option, warrant, restricted stock, deferred issuance stock right, or similar interest or right that gives the holder the right to acquire or receive stock of the S Corporation in the future. Except to the extent provided in Regulations, Synthetic Equity also includes a stock appreciation right, phantom stock unit, non-qualified deferred compensation or similar right to a future cash payment based on the value of such stock or appreciation in such value.

(a) For purposes of this Section 9.4 of the Plan, in the case of a person who owns Synthetic Equity in the S Corporation, except to the extent provided in Treasury Regulations, the shares of stock in the corporation on which such Synthetic Equity is based shall be treated as outstanding stock in such corporation and Deemed-Owned Shares of such person if such treatment of Synthetic Equity of one or more such persons results in:

(b) The treatment of any person as a Disqualified Person; or

(c) The treatment of any Plan Year as a Non-allocation Year.

(d) For purposes of this paragraph, Synthetic Equity shall be treated as owned by a person in the same manner as stock is treated as owned

-27-

CONFIDENTIAL

WGA_Ruxton000029

by a person under Sections 318(a)(2) and 318(a)(3) of the Code. If, without regard to this paragraph a person is treated as a Disqualified Person or a Plan Year is treated as a Non-allocation Year, this paragraph shall not be construed to result in the person or Plan Year not being so treated.

(vii) "Impermissible allocation" is any contribution or other annual addition (e.g. forfeiture allocation) in the ESOP or other qualified plan (including a release and allocation from an ESOP suspense account) that would have otherwise been added to the disqualified person's account and invested in employer securities consisting of S corporation stock. (Treas. Reg. 1.409(p)-1T(b)(2)(iii));

(viii) "*Impermissible accrual*" includes all S corporation shares that are employer securities and other ESOP assets attributable to such shares (including Section 1368 of the Code distributions, sale proceeds and earnings on either the distribution or the proceeds) held for a Disqualified Person's account, whether attributable to current or prior year contributions.

US-DOCS\118319799.2

CONFIDENTIAL WGA_Ruxton000030

## ARTICLE X

## DETERMINATION OF PLAN BENEFIT VESTING
## AT DEATH, DISABILITY OR RETIREMENT

**10.1** **In General**. A Participant who, while employed with the Company, dies or attains any of the following Retirement dates will be one hundred percent (100%) vested.

    A.    <u>Normal Retirement</u>. A Participant reaches his or her Normal Retirement Date.

    B.    <u>Disability Retirement</u>. If a Participant terminated employment because of a Disability, such Participant will be given a Disability Retirement without regard to age or length of service, and the termination benefit shall be one hundred percent (100%) of the amounts in all of such Participant's Accounts.

**10.2** **Deferred Retirement**. If a Participant continues in the service of the Employer beyond the Normal Retirement Date, such Participant shall continue to participate in the Plan during any period of employment following the Normal Retirement Date.

**10.3** **Year of Death**. Any amount credited to a Participant's Accounts with respect to the Employer's Contribution for the Plan Year in which such Participant dies, incurs a Disability or attains any of the above Retirement dates shall also be completely vested at the time of such contribution; provided that, in the case of a Participant's death or Disability, the Participant is continuously employed by an Employer through the date of death or Disability.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000031

# ARTICLE XI

## OTHER TERMINATION OF SERVICE AND VESTING

**11.1** **Vesting Schedule**.

A.    In General. The vesting of such Participant's Plan Benefit will be based upon Years of Service in accordance with the following vesting schedule:

| Years of Service | Percentage of Accounts Vested |
|---|---|
| Less than Two Years | 0% |
| Two Years | 20% |
| Three Years | 40% |
| Four Years | 60% |
| Five Years | 80% |
| Six or More Years | 100% |

The computation of a Participant's non-forfeitable percentage of the Participant's interest in the Plan shall not be reduced as the result of any direct or indirect amendment to this Plan. For this purpose, the Plan shall be treated as having been amended if the Plan provides for an automatic change in vesting due to a change in top heavy status. In the event that the Plan is amended to change or modify any vesting schedule, a Participant with at least three (3) Years of Service as of the expiration date of the election period may elect to have such Participant's non-forfeitable percentage computed under the Plan without regard to such amendment. If a Participant fails to make such election, then such Participant shall be subject to the new vesting schedule. The Participant's election period shall commence on the adoption date of the amendment and shall end sixty (60) days after the latest of:

(i)    the adoption date of the amendment,

(ii)    the effective date of the amendment, or

(iii)    the date the Participant receives written notice of the amendment from the Employer or Committee.

**11.2** **Vesting Upon Reemployment**. If a Participant is reemployed by the Company following a Break in Service, such Participant's Accounts shall be vested as follows:

A.    Vesting of Prior Account Balances. If a Participant has had five consecutive one-year Breaks in Service, Years of Service after such five-year period will not be taken into account for purposes of determining a Participant's vested interest in the

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000032

Participant's pre-break Account balances and new Accounts will be established to record the Participant's interest in the Plan for service after such five-year period.

B.    <u>Vesting of Subsequent Account Balances</u>.

    (i)     In the case of a Participant who, at the time of a Break in Service, does not have any vested right under Subsection 11.2(A), Years of Service before such Break in Service shall not be taken into account unless such Participant returns to work for the Employer and completes one (1) Year of Service. Notwithstanding the foregoing, Years of Service before such Break in Service shall not be taken into account for purposes of determining a Participant's vested interest in the Participant's post-break Accounts if the number of consecutive one-year Breaks in Service equals or exceeds five (5) years.

    (ii)     If a Participant had any degree of vested interest at the time of the Participant's Break in Service, such Participant shall participate retroactively to the Participant's reemployment date for purposes of determining a Participant's vested interest in the Participant's post-break Account balances. Upon resuming participation, such Participant's Years of Service shall include all Years of Service prior to the Break in Service.

C.    <u>Forfeitures</u>.   Forfeitures shall be charged first against a Participant's Other Investments Account, second against Company Stock which was not acquired with the proceeds of a Securities Acquisition Loan, and third against Company Stock acquired with a Securities Acquisition Loan. If a portion of a Participant's Account is to be forfeited and interests in more than one class of Employer Securities have been allocated to a Participant's Account, the Participant shall forfeit the same percentage of each such class. The disposition of such Forfeitures shall be as follows:

    (i)     If a Participant has incurred five consecutive one-year Breaks in Service and has not received a "cash-out distribution" (as defined below), the non-vested balance of the Participant's Accounts shall be allocated as a Forfeiture as soon as possible after the close of the Plan Year in which the Participant incurs a Five-Year Break in Service.

    (ii)     If a Participant who is not one hundred percent (100%) vested receives a distribution of a Plan Benefit, which is not a "cash-out distribution" (as defined below), prior to the occurrence of a Five-Year Break in Service, and such Participant returns to work for the Employer, the portion of the Participant's Accounts which was not vested shall be maintained separately (from any additional contributions to this Plan) until such Participant becomes one hundred percent (100%) vested. Such Participant's vested and non-forfeitable percentage in such separate Accounts upon any subsequent termination of service shall be equal to:

-31-

CONFIDENTIAL

WGA_Ruxton000033

$$\frac{X - Y}{100\% - Y}$$

For purposes of applying this formula, X is the vested percentage at the time of the subsequent termination, and Y is the vested percentage at the time of the prior termination. Separate Accounts shall share in the allocation of Trust income or loss on every Anniversary Date prior to Forfeiture, but such accounts shall not share in allocation of Trust income or loss on the Anniversary Date on which they are forfeited.

(iii)    If a Participant receives a "cash-out distribution" (as defined below), such Participant shall incur a Forfeiture immediately upon receipt of the "cash-out distribution." The non-vested balance of the Participant's Accounts shall be allocated as a Forfeiture as of the Anniversary Date coinciding with or following the date such Participant incurred a Five-Year Break in Service or received the cash-out distribution, whichever is later.

## 11.3   Cash-Out Distribution.

A.    In General.  If a partially vested Participant receives a cash-out distribution, the cash-out distribution will result in a Forfeiture of the non-vested portion of the Participant's Accounts. A "cash-out distribution" is a distribution of the entire vested portion of a Participant's Accounts that is made before the Participant incurs five (5) consecutive one-year Breaks in Service.

B.    Re-employment.  If any former Participant shall be reemployed by the Employer before five (5) consecutive one-year Breaks in Service, and such former Participant had received a cash-out distribution prior to reemployment, the forfeited portion of such Participant's Accounts shall be reinstated only if the Participant repays the full amount distributed to such Participant. Such repayment must be made by the former Participant before the Participant incurs five (5) consecutive one-year Breaks in Service following the date of distribution and before the five-year anniversary of his reemployment date. In the event the former Participant does repay the full amount distributed to such Participant, the undistributed portion of the Participant's Accounts must be restored in full, unadjusted by any gains or losses occurring subsequent to the Anniversary Date preceding the Participant's termination. Restoration of a Participant's Accounts shall include restoration of all Section 411(d)(6) of the Code protected benefits with respect to such restored amounts.

C.    Repayment of Distribution.  If the Participant repays the amount distributed to such Participant within the required time period, the Committee shall restore the forfeited portion of the Participant's Accounts as of the Anniversary Date coinciding with or following the repayment. Such amount shall be restored, to the extent necessary, in the following manner:

-32-

US-DOCS\118319799.2

CONFIDENTIAL                                    WGA_Ruxton000034

<table>
<tr><td>(i)</td><td>first from current-year Forfeitures;</td></tr>
<tr><td>(ii)</td><td>second from current-year Trust earnings; and</td></tr>
<tr><td>(iii)</td><td>third from current-year Contributions.</td></tr>
</table>

To the extent the amounts described in clauses (i), (ii) and (iii) are insufficient to enable the Committee to make the required restoration, the Employer must contribute the additional amount necessary to enable the Committee to make the required restoration.

D. <u>Zero Cash Out</u>. A terminated Participant who is zero percent (0%) vested shall be deemed to have received a cash-out distribution as of the day on which the Participant separates from service with the Employer. For purposes of applying the restoration provisions of this paragraph, the Committee will treat a zero percent (0%) vested Participant as repaying the Participant's cash-out distribution on the first day of reemployment with the Employer.

US-DOCS\118319799.2

CONFIDENTIAL

## ARTICLE XII

### DISTRIBUTION OF PLAN BENEFITS

**12.1** <u>In General</u>. Except as provided in Article XII, a Participant shall not be permitted to withdraw any portion of his or her interest under the Plan while he or she is employed by the Company. Except in the case of dividends distributed in cash to Participants under Article 16 and distributions required by law, all distributions shall be made in accordance with this Article XII.

A. <u>Withholding</u>. All distributions shall be subject to mandatory withholding rules as may be in effect under the Code and accompanying regulations unless a Distributee elects a rollover set forth in Section 12.8.

B. <u>Required Distributions</u>. Notwithstanding any other provision of the Plan to the contrary, the form and timing of distributions under the Plan shall be made in accordance with Section 401(a)(9) of the Code and the regulations issued thereunder, including the incidental death benefit requirements of Section 401(a)(9)(G) of the Code and Treas. Reg. §§ 1.401(a)(9)-2 through 1.401(a)(9)-9 thereunder. There are no preretirement death benefits provided by the Plan.

**12.2** <u>Time of Distribution to Participants</u>. In the event of the Participant's death, Disability, or Retirement, while in the employ of an Employer, distributions of the Participant's Account will commence not later than the last day of the Plan Year following the Plan Year in which the Participant's death, Disability or Retirement occurs. A Participant who terminates employment for reasons other than death, Disability or Retirement may elect to commence distribution of his or her Account by the end of the sixth Plan Year following the Plan Year in which such termination occurs.

**12.3** <u>Mode of Distribution</u>.

A. Distributions from the Plan shall be made pursuant to a uniform, nondiscriminatory policy adopted by the Committee that complies with the requirements of Code Section 409(o)(1)(C), as amended from time to time (the "Payment Policy"). If at any time no such Payment Policy is in effect, distributions of the Participant's Plan Benefit shall be distributed in substantially equal annual installments over a period of time not to exceed five (5) years; provided, however, that if the Plan Benefit exceeds $1,150,000, as indexed for years after 2020, the term of the distribution may be five (5) years, plus one (1) year (but not more than five (5) additional years) for each $230,000 (or fraction thereof), as indexed, by which the Plan Benefit exceeds $1,150,000, as indexed for years after 2020. However, each such installment shall be in an amount at least equal to the lesser of $5,000 or the remaining balance in the Participant's Accounts, even if this results in a complete distribution in a period less than 5 years. If a Participant whose installment distributions have commenced but not terminated returns to employment, such distributions shall be discontinued.

-34-

CONFIDENTIAL

B.    Notwithstanding the provisions of this Article, the account balance of a Participant shall not include any Company Stock acquired with the proceeds of a Securities Acquisition Loan until the earlier of: (i) the close of the Plan Year in which such Loan is repaid in full, and (ii) the date which is eight years from the origination date of such Securities Acquisition Loan. The foregoing sentence shall not apply with respect to any distribution required pursuant to the terms of Section 12.7 of the Plan.

## 12.4 Death Distribution.

A.    <u>Death Before Distribution Begins</u>. If a Participant dies before distribution of the Participant's Plan Benefit has commenced, such Participant's entire Plan Benefit shall be distributed in accordance with Article XIII, within the time limits required by Section 12.9 of the Plan.

B.    <u>Death After Distributions Began</u>. If a Participant dies after the distribution of the Plan Benefit has commenced, any remaining portion of the Plan Benefit shall be distributed in accordance with this Article XIII within the time limits required by Section 12.9 of the Plan.

## 12.5 Valuation Date. 
All Accounts shall be valued as of the appropriate Valuation Date. The Company or the Committee may require other valuations from time to time as necessary. Any valuation of Company Stock contributed to or purchased by the Plan shall be determined by the Plan Committee based on a valuation by the Independent Appraiser who meets the requirements similar to the requirements of the regulations under Code § 170(a)(1).

## 12.6 Consent and Notice Requirements.

A.    <u>In General</u>. If the value of the Plan Benefit exceeds five thousand dollars ($5,000) at the time of the distribution, any distribution prior to the Participant's Normal Retirement Date may be made only with the written consent of the Participant. If the value of the Plan Benefit is five thousand dollars ($5,000) or less at the time of the distribution, a mandatory distribution shall be made as soon as practicable after the event giving rise to the distribution, without the Participant's consent. If Participant consent is required with respect to a distribution, the Committee shall provide the Participant with a written notice which explains the consent provisions of Section 411(a)(11) of the Code. Such notice must be given at least thirty (30) days but no more than one hundred eighty (180) days before the distribution date.

B.    <u>Special Rule</u>. Notwithstanding the foregoing, a distribution may commence less than thirty (30) days after the required notice is given, provided that:

(i)    the Committee clearly informs the Participant that the Participant has a right to a period of at least thirty (30) days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000037

(ii)     the Participant, after receiving the notice, affirmatively elects a distribution.

Failure of a Participant to consent to an immediate distribution within the applicable time limit may be treated by the Employer as an election by the Participant to defer benefits to the Normal Retirement Date of the Participant.

**12.7    Required Commencement of Benefit Distribution.**

A.     In General.  Distribution of a Participant's Plan Benefit shall commence no later than sixty (60) days after the Anniversary Date coinciding with or next following the latest of: (A) the Participant's Normal Retirement Date, (B) the tenth (10th) anniversary of the date on which the Participant began participation hereunder, or (C) the Participant's termination of service with the Company and all Affiliated Companies.

If the amount of a Participant's Plan Benefit cannot be determined by the Committee by the date on which a distribution is to commence, or the Participant cannot be located, distribution of the Participant's Plan Benefit shall commence within sixty (60) days after the date on which the Participant's Plan Benefit can be determined or after the date on which the Committee locates the Participant.

B.     Required Beginning Dates.  The distribution of the Plan Benefit of any Participant who attains age seventy and one-half (70½) as of December 31, 2019 shall commence no later than April 1 of the next calendar year (even if the Participant has not terminated employment) and must be made in accordance with the regulations under Section 401(a)(9) of the Code. The distribution of the Plan Benefit of any Participant who attains age seventy and one-half (70½) after of December 31, 2019, shall commence no later than April 1 of the calendar year in which he attains age 72 (even if the Participant has not terminated employment) and must be made in accordance with the regulations under Section 401(a)(9) of the Code. Notwithstanding the above, a Participant who is not a 5% owner and who is an Employee after attainment of age seventy and one-half (70½) or seventy two (72), as applicable, may elect to defer the commencement of benefits until after Retirement.

Effective for purposes of determining required minimum distributions, the provisions of Section 12.9 of the Plan shall be applicable.

**12.8    Optional Direct Transfer of Eligible Rollover Distributions.**

A.     Optional Rollover.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this section, a Distributee may elect, at the time and in the manner prescribed by the Plan Committee, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

-36-

US-DOCS\118319799.2

CONFIDENTIAL                                                    WGA_Ruxton000038

B.     <u>Automatic Direct Rollovers</u>. In the event of a mandatory distribution greater than one thousand dollars ($1,000), if the Participant does not elect (i) to have such distribution paid directly to an Eligible Retirement Plan specified by the Participant in a Direct Rollover or (ii) to receive the distribution directly in accordance with Section 12.1, then the distribution will be made in the form of a Direct Rollover to an individual retirement plan designated by the Committee or its delegate.

## 12.9  <u>Minimum Distribution Requirements</u>.

A.     <u>General Rules</u>. The requirements of this Section 12.9 will take precedence over any inconsistent provisions of the Plan, and all distributions required under this Section 12.9 will be determined and made in accordance with the Treasury Regulations under Section 401(a)(9) of the Code.

B.     <u>Time and Manner of Distribution</u>.

    (i)    <u>Required Beginning Date</u>. The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's required beginning date. For purposes of Section 12.9(D) below, unless paragraph (iv) thereof applies, distributions are considered to begin on the Participant's required beginning date. If subparagraph (a) above applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under subparagraph (a).

    (ii)    <u>Forms of Distribution</u>. Unless the Participant's interest is distributed in the form of a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Subsections 12.9(C) and 12.9(D) below.

C.     <u>Required Minimum Distributions During Participant's Lifetime</u>.

    (i)    <u>Amount of Required Minimum Distribution For Each Distribution Calendar Year</u>. During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

        (a)    the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

        (b)    if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000039

(ii) <u>Lifetime Required Minimum Distributions Continue Through Year of Participant's Death</u>. Required minimum distributions will be determined under this section beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

D. <u>Required Minimum Distributions After Participant's Death</u>.

    (i) <u>Death On or After Date Distributions Begin</u>. If the Participant dies on or after the date distributions begin, the Participant's Beneficiary shall receive a lump sum no later than the end of the first distribution calendar year after the year of the Participant's death, which lump sum satisfies the minimum distribution requirements.

    (ii) <u>Death Before Date Distributions Begin</u>. If the Participant dies before distributions begin, the Participant's entire interest will be distributed no later than as follows, subject to the SECURE Act:

        (a) <u>Participant's Sole Designated Beneficiary is the Surviving Spouse</u>. If the Participant's surviving spouse is the Participant's sole designated beneficiary, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth (5th) anniversary of the Participant's death.

        (b) <u>Participant's Designated Beneficiary is not Solely the Surviving Spouse</u>. If the Participant's surviving spouse is not the Participant's sole designated beneficiary, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth (5th) anniversary of the Participant's death.

        (c) <u>No Designated Beneficiary</u>. If there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth (5th) anniversary of the Participant's death.

        (d) <u>Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin</u>. If the Participant's surviving spouse is the Participant's sole designated beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this subparagraph (ii) will apply as if the surviving spouse were the Participant.

E. <u>Definitions</u>.

    (i) <u>Designated beneficiary</u>. The individual who is designated as the Beneficiary under Article XIII and is the designated beneficiary under

-38-

CONFIDENTIAL        WGA_Ruxton000040

Section 401(a)(9) of the Code and Treasury Regulation § 1.401(a)(9) 4, Q&A-1.

(ii) Distribution calendar year. A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Subsection 12.9(B)(ii) above. The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's required beginning date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's required beginning date occurs, will be made on or before December 31 of that distribution calendar year.

(iii) Life expectancy. Life expectancy as computed by use of the Single Life Table in Treasury Regulation § 1.401(a)(9)-9.

(iv) Participant's account balance. The Plan Benefit as of the last Valuation Date in the calendar year immediately preceding the distribution calendar year ("valuation calendar year") increased by the amount of any contributions made and allocated or forfeitures allocated to the Account as of dates in the valuation calendar year after the Valuation Date and decreased by distributions made in the valuation calendar year after the Valuation Date. The Participant's account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(v) Required beginning date. The date specified in Section 12.7(B).

**12.10 Inactive Participants Stock Accounts**. For a Participant who (i) terminates employment for reasons other than death, Disability or Retirement and (ii) fails to consent to a distribution of his or her Plan Benefit ("Inactive Participant"), the Committee may invest such inactive Participant's Company Stock Account in cash or investments prior to each Anniversary Date occurring before the Participant's commencement of such Participant's Plan Benefit. The investment shall be accomplished by the Committee exchanging any cash or liquid assets in the Other Investment Accounts of Participants who are actively employed by the Company ("Active Participants") for the shares of the Company Stock held in the inactive Participant's Company Stock Account based on the most recent Valuation Date prior to the exchange. Such exchange shall be made on a pro rata basis among Active Participants' Other Investment Accounts in a uniform and non-discriminatory manner. This investment may be limited to the extent the Trust fund has sufficient assets in the Other Investments Accounts of the active Participants, including

-39-

CONFIDENTIAL

WGA_Ruxton000041

taking into account plan expenses and distributions. In the event the Trust fund assets are insufficient to reinvest the Company Stock from each inactive Participant's Company Stock Account based upon the applicable percentage as determined by the Committee, a pro rata portion of the inactive Participant's Stock Account shall be exchanged and reinvested. Other Investments Account assets in an Active Participant's Account will not be exchanged for Company Stock to the extent the allocation of Company Stock to the Active Participant's Account would result in (i) a Non-allocation Year or cause the Active Participant to become a Disqualified Person and such event would cause a Non-allocation Year, or (ii) the transfer of Company Stock was subject to a diversification election by the Active Participant pursuant to Section 401(a)(28) of the Code. The assets of the Other Investments Account of an Inactive Participant will be invested in accordance with the terms of the Plan.

CONFIDENTIAL

# ARTICLE XIII

## HOW PLAN BENEFITS WILL BE DISTRIBUTED

**13.1** **Form of Distribution**.

A.     <u>In General</u>. Distribution will be made in the form of cash or shares of Employer Securities at the discretion of the Company; provided, however, that if the Company is a C Corporation, each Participant shall have the right to elect to receive his or her distribution in the form of Employer Securities. However, if the Company's charter or bylaws restrict ownership of substantially all of the outstanding Employer Securities to Employees and the Trust, or if the Company has elected to be taxed as an "S corporation," the Participant's Accounts will be distributed in cash, or if the Administrator elects, shares of Employer Securities subject to a requirement that the shares of Employer Securities be sold to the Company immediate upon distribution. During any S Corporation Year, the Trustee may distribute the Participant's Plan Benefit entirely in cash or entirely in the form of Employer Securities. During any S Corporation Year, Participants shall not be entitled to demand distribution of their Plan Benefits in the form of Employer Securities. If a distribution is made in the form of Employer Securities, such distribution shall be made in the form of whole shares of Employer Securities with the value of any fractional shares paid in cash. During any S Corporation Year, Employer Securities distributed by the Trustee shall be subject to the requirement that the Employer Securities be sold to the Employer (or the Trust) immediately upon distribution.

B.     <u>Purchase of Distributed Shares</u>.

    (i)     Any shares purchased by the Employer (or the Trust) pursuant to this paragraph is purchased at their fair market value. For purposes of this Section 13.1, fair market value shall be based upon the appraised fair market value determined as of the Anniversary Date coinciding with or immediately preceding the date such shares are purchased. The appraised fair market value shall be determined by an Independent Appraiser and shall be based on all relevant factors for determining the fair market value of securities. In the case of a purchase from a Disqualified Person, all purchases of Company Stock shall be made at prices which, in the judgment of an Independent Appraiser, do not exceed the fair market value of such shares as of the date of the transaction. Such shares shall be purchased by notifying the Participant (or Beneficiary) in writing.

    (ii)     The terms of payment for the purchase of such shares of stock shall be set forth in the written statement delivered to the Participant (or Beneficiary) and may be either in a single payment or in up to five (5) equal annual installments (with interest on the unpaid principal balance at a reasonable rate of interest), as determined by the Plan Committee. Payment for the

US-DOCS\118319799.2

CONFIDENTIAL      WGA_Ruxton000043

purchase of such shares must commence within thirty (30) days after the Employer (or the Trust) notifies the Participant (or Beneficiary) of its intent to purchase the shares. If payment is made in installments, adequate security and a reasonable rate of interest must be provided. Notwithstanding the foregoing, distribution shall not be made in the form of Company Stock during an S Corporation Year if it would cause the Company to fail to constitute a 'small business Corporation' within the meaning of Section 1361(b)(1) of the Code.

C.  <u>Trustee Direction</u>.  The Trustee will make distributions from the Trust in accordance with the instructions from the Committee.

## 13.2 <u>Beneficiaries</u>.

A.  <u>Designation</u>. Distribution will be made to the Participant if living, and if not, to the Participant's Beneficiary.  A Participant may designate a Beneficiary upon becoming a Participant and may change such designation at any time by filing a written designation with the Committee. Notwithstanding anything in this section to the contrary, if a Participant is married, a Participant shall not designate anyone other than the Participant's spouse as primary Beneficiary of the Participant's Plan Benefit unless such spouse consents in writing to such designation, such spouse acknowledges the effect of such election, and such writing is witnessed by a Plan representative or notary public and filed with the Plan Committee.

B.  <u>Absence of Valid Designation</u>. If, upon the death of a Participant, former Participant or Beneficiary, there is no valid designation of a Beneficiary on file with the Company or the benefit is not claimed by any Beneficiary within a reasonable period of time after the death of the Participant, the benefit shall be paid to the Participant's surviving spouse.  If the Participant is not married or if the Participant's spouse does not survive the Participant, the benefit shall be paid to the Participant's estate.

C.  <u>Location of Participant or Beneficiary Unknown</u>. If a Participant who is entitled to a distribution cannot be located and the Plan Committee has made reasonable efforts to locate the Participant, the Participant's interest shall be forfeited and treated as a Forfeiture in accordance with Article XI at the time specified below. The Plan Committee will be deemed to have made reasonable efforts to locate the Participant if the Plan Committee is unable to locate the Participant (or, in the case of a deceased Participant, his or her Beneficiary) after having made two successive certified or similar mailings to the last address on file with the Plan Committee, having made reasonable use of free internet search tools such as public record data bases, obituaries and social media and after the Plan Committee has undertaken such further search efforts as may be warranted in light of the size of the Account and the additional costs of additional search efforts. The Participant's Account(s) shall be forfeited as of the last day of the Plan Year in which occurs the close of the 12 calendar month period following the later of the two successive mailings and

-42-

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000044

the completion of the further search efforts. If the Participant or Beneficiary makes a written claim for the Account(s) subsequent to the forfeiture, the Employer shall cause the Account(s) to be reinstated, first from current year Forfeitures, if any, and then from an additional Employer Contribution.

D.    Distribution for a Minor or Incompetent Beneficiary. In the event a distribution is to be made to a minor or incompetent Beneficiary, then the Committee may direct that such distribution be paid to the legal guardian, or if none in the case of a minor Beneficiary, to a parent of such Beneficiary or a responsible adult with whom the Beneficiary maintains residence, or to the custodian for such Beneficiary under the Uniform Gift to Minors Act or Gift to Minors Act, if such is permitted by the laws of the state in which such Beneficiary resides. Such a payment to the legal guardian, custodian, or parent of a minor Beneficiary shall fully discharge the Trustee, Employer, and Plan from further liability on account thereof.

E.    Receipt and Release for Payment. Any payment to any Participant, his legal representative, his Beneficiary, or to any guardian or committee appointed for such Participant or his Beneficiary in accordance with the provisions of the Plan shall, to the extent thereof, be in full satisfaction of all claims hereunder against the Trustee and the Employer, either of whom may require such Participant, legal representative, Beneficiary, guardian, or committee, as a condition precedent to such payment, to execute a receipt and release thereof in such form as shall be determined by the Trustee or Employer.

-43-

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000045

# ARTICLE XIV

## RIGHTS AND OPTIONS ON DISTRIBUTED SHARES OF COMPANY STOCK

### 14.1 "Put" Option.

A. <u>Distribution of Company Stock</u>. If the distribution of the Plan Benefit is made in the form of shares of Company Stock, and if such Company Stock is not immediately repurchased by the Company (or the Trust), then the "Qualified Holder" (as defined below) of such stock shall be granted, at the time that such shares are distributed to the Qualified Holder, an option to put the shares to the Company; provided, however, that all such shares are so put; and provided, further, that the Trust shall have the option to assume the rights and obligations of the Company at the time the put option is exercised. The term "Qualified Holder" shall mean the Participant or Beneficiary receiving the distribution of such shares, and any other party to whom the shares are transferred by gift or by reason of death. A put option shall provide that, for a period of sixty (60) days after such shares are distributed to a Qualified Holder (as defined above) (and, if the put is not exercised within such sixty (60) day period, for an additional period of sixty (60) days in the following Plan Year), the Qualified Holder would have the right to have the Company purchase such shares at their fair market value. Such put option shall be exercised by notifying the Company in writing.

B. <u>S-Corporation</u>. Notwithstanding the foregoing, distribution shall not be made in the form of Company Stock during an S Corporation Year if it would cause the Company to fail to constitute a "small business Corporation" within the meaning of Section 1361(b)(1) of the Code.

C. <u>Payment of Put Option Price</u>. In the case of a lump sum distribution of Company Stock, the terms of payment for the purchase of such shares of stock shall be as set forth in the put and may be paid either in a single payment or in up to five (5) equal annual installments (with interest on the unpaid principal balance at a reasonable rate of interest), as determined by the Committee. Payment for the purchase of such shares must commence within thirty (30) days after the put is exercised. The period during which the put option is exercisable does not include any time during which the Distributee is unable to exercise it because the party bound by the put option is prohibited from honoring it by applicable federal or state law. If payment is made in installments, adequate security and a reasonable rate of interest must be provided. In the case of an installment distribution, payment must be made within thirty (30) days after the put option is exercised with respect to any installment distribution of Company Stock.

D. <u>Amount Diversified</u>. The requirements of this Section 14.1 shall not apply to the distribution of any portion of a Participant's Plan Benefit which has been diversified, distributed or transferred to another plan pursuant to the provisions of Article XV.

-44-

CONFIDENTIAL

WGA_Ruxton000046

**14.2** <u>**Right of First Refusal**</u>.

    A.    <u>In General</u>. If the distribution of the Plan Benefit is made in the form of shares of Company Stock, and if such Company Stock is not immediately repurchased by the Company (or the Trust), then such shares of Company Stock distributed by the Trustee may, as determined by the Company or the Committee, be subject to a right of first refusal, until such time as such shares are publicly traded. Such a right shall provide that prior to any subsequent transfer, the shares must first be offered by written offer to the Trust, and then, if refused by the Trust, to the Company. In the event that the proposed transfer constitutes a gift or other such transfer at less than fair market value, the price per share shall be determined by an Independent Appraiser (appointed by the Board of Directors) as of the Anniversary Date coinciding with or immediately preceding the date of exercise, except in the case of a transfer to a Disqualified Person.

    B.    <u>Bona Fide Offer</u>. In the event of a proposed purchase by a prospective bona fide purchaser, the offer to the Trust and the Company shall be at the greater of fair market value, as determined by an Independent Appraiser as of the Anniversary Date coinciding with or immediately preceding the date of exercise (except in the case of a purchase by a Disqualified Person), or at the price offered by the prospective bona fide purchaser. In addition, such offer must equal or exceed the other terms of the offer made by the prospective bona fide purchaser. In the case of a purchase by or transfer to a Disqualified Person, fair market value shall be determined as of the actual date of the transaction. Valuations must be made in good faith and based on all relevant factors for determining the fair market value of securities. The Trust may accept the offer at any time during a period not exceeding fourteen (14) days after receipt of such offer. In the event the Trust does not accept such offer, the Company may accept such offer at any time during said fourteen (14) day period.

    C.    <u>Fair Market Value</u>. In the case of a purchase from a Disqualified Person, all purchases of Company Stock shall be made at prices which, in the judgment of an Independent Appraiser, do not exceed the fair market value of such shares as of the date of the transaction.

**14.3** <u>**Other Options**</u>. Except as otherwise provided in this Article 14, no security acquired with the proceeds of a Securities Acquisition Loan may be subject to a put, call, buy-sell or similar arrangement while held by or when distributed from the Plan.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000047

**ARTICLE XV**

**SPECIAL PROVISIONS**

**15.1** <u>Diversification of Investments</u>.

A.    <u>Qualified Participant Election</u>. Each Qualified Participant may elect during each Annual Election Period within the Qualified Participant's Qualified Election Period to direct the Plan as to the investment of not more than twenty-five percent (25%) of the shares of Employer Securities allocated to the Participant's Company Stock Account (including shares that the Qualified Participant previously elected to diversify pursuant to this Subsection), less the number of shares previously diversified pursuant to such Participant's election under this Subsection. In the case of the sixth (6th) year of the Qualified Election Period, the preceding sentence shall be applied by substituting "fifty percent (50%)" for "twenty-five percent (25%)." The Participant's direction shall be completed no later than ninety (90) days after the close of the ninety (90) day election period.

B.    <u>Diversified Investments</u>. If a Qualified Participant makes an election under this Section 15.1, the amount subject to diversification shall be transferred to the Profit Sharing Plan, which permits Participants to direct their investments among a large number of alternative funds.

The provisions of this section shall not apply to any Participant if the value of the Participant's ESOP Stock Account (determined as of the regular Accounting Date immediately preceding the first day on which the Participant would otherwise be entitled to make an election under this section) is $500 or less.

**15.2** <u>C Corporation Cash Dividends</u>. For any C Corporation Year, cash dividends, if any, on shares of Company Stock allocated to Participants' Accounts may be accumulated in the Trust or may be paid to Participants currently as determined in the sole discretion of the Committee, exercised in a uniform and non-discriminatory manner. For any C Corporation Year, it is intended that the Company shall be allowed a deduction with respect to any dividends paid on allocated shares of Company Stock of any class held by the Plan on the record date to the extent such dividends are paid in cash directly to the Participants, or their Beneficiaries, or are paid to the Plan and are distributed from the Plan to the Participants or their Beneficiaries not later than ninety (90) days after the close of the Plan Year in which paid; provided, however, that the Company shall not be required to pay or distribute any dividends with respect to the non-vested portion of the Company Stock Account of a Participant who has terminated employment prior to the date such dividends are paid directly to Participants, or are distributed from the Plan to the Participants. For any C Corporation Year, it is also intended that the Company shall be allowed a deduction for any dividends used to make payments on a Securities Acquisition Loan the proceeds of which were used to acquire the Employer Securities (whether or not allocated) with respect to which the dividend is paid, provided that in the case of dividends paid on allocated shares, Employer Securities in an amount equal to such dividends are allocated to such

-46-

CONFIDENTIAL

Participants for the year in which such dividends would otherwise have been allocated to such Participants. The Company shall be allowed a deduction for dividends paid only in the taxable year of the Company in which the dividend is either paid to a Participant or Beneficiary or held to make payments on a Securities Acquisition Loan. Notwithstanding anything in this Article XV to the contrary, the Company shall not be allowed a deduction for any dividends paid during an S Corporation Year.

US-DOCS\118319799.2

CONFIDENTIAL

# ARTICLE XVI

## ADMINISTRATION

**16.1** **Named Fiduciaries for Administration of Plan and for Investment and Control of Plan Assets**.

    A.    <u>Board of Directors</u>. The Board of Directors shall have the following duties and responsibilities in connection with the administration of the Plan:

        (i)    Making decisions with respect to amending or terminating the Plan.

        (ii)    Making decisions with respect to the selection, retention or removal of the Trustee and the Committee.

        (iii)    Periodically reviewing the performance of the Trustee, the members of the Committee, persons to whom duties have been allocated or delegated and any advisers.

        (iv)    Determining the form and amount of Employer Contributions.

The Board of Directors may by written resolution allocate its duties and responsibilities to one or more of its members or delegate such duties and responsibilities to any other persons or to a Committee; provided, however, that any such allocation or delegation shall be terminable upon such notice as the Board of Directors deems reasonable and prudent under the circumstances.

    B.    <u>Plan Committee</u>.

        (i)    <u>In General</u>. The Company shall administer the Plan and is designated as the "Plan Administrator" within the meaning of Section 3(16) of ERISA and Section 414(g) of the Code. Except as provided in Section 8.2 with respect to a Participant who is considered a Named Fiduciary of the Plan, the Committee and the Company shall each be a "named fiduciary" within the meaning of Section 402 of ERISA, but each party's role as a named fiduciary shall be limited solely to the exercise of its own authority and discretion, as defined under this Plan, to control and manage the operation and administration of this Plan. A named fiduciary may designate other persons who are not named fiduciaries to carry out its fiduciary duties hereunder, and any such person shall become a fiduciary under the Plan with respect to such delegated responsibilities. The members of the Committee shall be appointed by the Board of Directors and shall serve, without compensation, until such time as they resign, die or become incapable of exercising their duties or are removed by the Board of Directors. All members of the Committee are designated as agents of the Plan for purposes of service of legal process. The Company shall certify to the Trustee the names and specimen signatures of the members of the

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000050

Committee. Any member may resign at any time by submitting an appropriate written instrument to the Company, and while any vacancy exists, the remaining members of the Committee may perform any act which the Committee is authorized to perform. Any vacancy on the Committee shall be filled by appointment by the Board of Directors. All decisions required to be made by the Committee involving the interpretation, application and administration of the Plan shall be resolved by action of the Committee either at a meeting or in writing without a meeting.

(ii)     <u>Duties and Responsibilities</u>. The Committee shall have the following duties and responsibilities in connection with the administration of the Plan:

(a)     Implementing the funding policy described in subparagraph (c) below.

(b)     Determining the eligibility of Employees for participation in the Plan.

(c)     Determining the eligibility of Employees for benefits provided by the Plan including such duties and responsibilities as are necessary and appropriate under the Plan's claims procedures.

(d)     Making recommendations to the Board of Directors with respect to amendment or termination of the Plan, including recommendations with respect to contributions under the Plan.

(e)     Assuring that bonding requirements imposed by ERISA are satisfied.

(f)     Authorizing, allocating and reviewing expenses incurred by the Plan.

(g)     Communicating with Participants and other persons.

(h)     Reviewing periodically any allocation or delegation of duties and responsibilities and any appointment of advisers.

(i)     Directing the Trustee with respect to the investment and management of Plan assets.

(j)     Directing the Trustee with respect to voting shares of Company Stock, in accordance with the provisions of Article IX.

(k)     Interpreting and construing the terms of the Plan and Trust Agreement.

-49-

CONFIDENTIAL

The Committee may establish rules and regulations and may take any other necessary or proper action to carry out its duties and responsibilities. Notwithstanding the foregoing provisions, the Trustee shall have the primary responsibility for the withholding of income taxes from Plan distributions, for the payment of withheld income taxes on Plan distributions to the Internal Revenue Service, and for notification to Participants of their right to elect not to have income tax withheld from Plan distributions. Compliance with record keeping and reporting requirements of ERISA shall be the primary responsibility of the Company.

The Plan Committee shall have full discretion to construe and interpret the terms and provisions of this Plan, which interpretation or construction shall be final and binding on all parties including, but not limited to, the Company and any Participant or Beneficiary, except as otherwise provided by law. The Plan Committee shall administer such terms and provisions in a uniform and non-discriminatory manner and in full accordance with any and all laws applicable to the Plan. When making a determination or calculation, the Plan Committee shall be entitled to rely upon information furnished by the Employer or anyone acting on behalf of the Employer.

C.    <u>Allocation and Delegation of Responsibilities</u>. The Committee may, by written resolution, allocate its administrative duties and responsibilities to one or more of its members or it may delegate such duties and responsibilities to any other persons; provided, however, that any such allocation or delegation shall be terminable upon such notice as the Committee deems reasonable and prudent under the circumstances.

## 16.2  <u>Investment of Plan Assets</u>.

A.    <u>In General</u>. The Plan assets shall be invested and controlled at the direction of the Committee; provided, however, that the actual management of Trust investments, other than Company Stock, may be delegated to the Trustee or may be delegated to one or more investment managers appointed by the Committee. Any investment manager appointed hereunder shall have the power to manage, acquire or dispose of assets of the Plan and shall be either an investment adviser registered under the Investment Advisers Act of 1940, or a bank, as defined in that Act, or an insurance company qualified to perform such services under the laws of one or more states. If an investment manager has been appointed, the Trustee shall neither be liable for acts or omissions of such investment manager nor be under any obligation to invest or otherwise manage any asset of the Trust fund, nor shall the Committee be liable for any act or omission of the investment manager in carrying out such responsibility. The custody of Plan assets shall at all times be retained by the Trustee, unless they consist of insurance contracts or policies issued and held by an insurance company authorized to conduct an insurance business in a state. In addition to appointment of investment managers, the Committee shall have the following duties and responsibilities:

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000052

(i) Periodically reviewing the investment of Plan assets and the performance of the Trustee and any investment managers. With respect to the Trustee, the Committee shall advise the Board of Directors of any matters which might be relevant to the decision as to whether the services of the Trustee should be retained. Based on its review, the Committee shall determine the desirability of appointing or retaining investment managers.

(ii) Determining an investment policy to be followed with respect to the Plan assets and communicating this policy to the person or persons responsible for investing the Plan assets.

The Committee may by written resolution, in accordance with ERISA Section 405(c), allocate its investment duties and responsibilities to one or more of its members or delegate such duties and responsibilities to any other persons; provided, however, that any such allocation or delegation shall be terminable upon such notice as the Committee deems reasonable and prudent under the circumstances.

**16.3** **Funding Policy**. The funding policy of the Plan is to invest trust assets primarily in Company Stock over the life of the Plan. The Committee shall, from time to time, establish such investment methods as may be necessary to accomplish this funding policy.

**16.4** **Claims Procedures**.

A. <u>Procedure for Initial Claims</u>. Claims for benefits under the Plan shall be made in writing to the Plan Committee. The Plan Committee shall have full discretion to render a decision with respect to any claim. The initial determination shall be made within ninety (90) days of the receipt of the claim, except that the period for providing the notice shall be extended by up to an additional ninety (90) days in the event that special circumstances exist (in the event of a delay, the claimant will receive a written notice of the delay within the original ninety (90)-day period; such notice will include the reason for the delay and the date by which a decision is expected to be rendered).

If a claim for benefits is wholly or partially denied by the Plan Committee, the claimant shall receive written notice of the adverse decision. The notice shall be written in a manner calculated to be understood by the claimant and shall set forth the specific reason or reasons for the adverse decision with reference to the specific Plan provisions on which the adverse decision is based; a description of additional material or information, if any, necessary to perfect such claim and a statement of why such material or information is necessary; and an explanation of the Plan's review procedures, including any time limits applicable to such procedures. The notice will also include a statement of the claimant's right to bring an action under ERISA Section 502(a) following an adverse benefit determination on review.

US-DOCS\118319799.2

CONFIDENTIAL

B.  <u>Procedure for Review of a Denied Claim</u>. In the event of an initial adverse decision, either in whole or in part, as to the payment of benefits or amounts, the claimant shall have the right to request a review by the Plan Committee of such decision. Such request must be made within sixty (60) days of receipt of the written notice of claim denial. In connection with such review, (i) the claimant shall have the right to submit written comments, documents, records, and other information relating to the claim for benefits; and (ii) the claimant shall be provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information that is relevant to the claim for benefits.

C.  <u>Decision on Review</u>. The Plan Committee shall submit its decision in writing within sixty (60) days after the request for review, or in special circumstances such as where the Plan Committee determines that there is a need to hold a hearing, within one hundred and twenty (120) days of the request for review (in which case written notice of the delay will be provided to the claimant during the initial sixty (60)-day period; such notice will include the reason for the delay and the date by which the Plan Committee expects to render a final decision). The review by the Plan Committee shall take into account all comments, documents, records, and other information submitted by the claimant, without regard to whether such information was submitted or considered in the initial benefit determination.

The decision on review will be binding on all parties. In the event that the claim is denied on review, the decision shall set forth, in a manner calculated to be understood by the claimant, specific reasons for the decision and specific references to the pertinent Plan provisions upon which the decision is based. In addition, the written notice of the decision denying a claim shall contain (i) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information that is relevant to the claimant's claim for benefits, and (ii) a statement of the claimant's right to bring an action under ERISA Section 502(a).

**16.5 <u>Qualified Domestic Relations Orders</u>.**

A.  <u>In General</u>. In the case of any Domestic Relations Order received by the Plan, the Committee or its delegate shall promptly notify the Participant and any Alternate Payee of the receipt of such order and of the Plan's procedures for determining the qualified status of Domestic Relations Orders. Any Alternate Payee shall be permitted to designate a representative for the receipt of copies of notices that are sent to the Alternate Payee with respect to such order. The amount that would be payable to the Alternate Payee shall be segregated in a separate account. Such segregated account shall continue to be treated in the same manner as the affected Accounts of the Participant, but will not be credited with any further Contributions or Forfeitures unless otherwise provided in the Domestic Relations Order. If the Domestic Relations Order is determined to be qualified within the eighteen (18)-month period beginning with the date on which the first payment would be required to be made under the Domestic Relations Order, the segregated amount (including

-52-

CONFIDENTIAL

any interest or earnings thereon) shall continue to be treated as a segregated account in the name of the Alternate Payee. If it is ultimately determined that the order is not qualified, or if the Committee or its delegate (or the appropriate court) is not able to resolve the issue within such eighteen (18)-month period, the segregated amount (including any interest or earnings thereon) shall be restored to the Participant.

B.    <u>Review of Domestic Relations Order</u>.  In determining whether a Domestic Relations Order is qualified, the Committee or its delegate shall follow the procedures that the Committee has established.

C.    <u>QDRO</u>. A Domestic Relations Order will constitute a qualified Domestic Relations Order only if such order (i) does not require the Plan to provide any type or form of benefit (or any option) not otherwise provided under the Plan, (ii) does not require the Plan to provide increased benefits, and (iii) does not require the payment of benefits to an Alternate Payee which are required to be paid to another Alternate Payee under another order previously determined to be a qualified order. In addition, a Domestic Relations Order will constitute a qualified order only if such order clearly specifies (i) the name and last known mailing address of the Participant and of each Alternate Payee covered by the order, (ii) the amount or the percentage of a Participant's Plan Benefit that is to be paid to each Alternate Payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or the period to which such order applies, and (iv) each plan to which such order applies.

D.    <u>Participant Employed</u>.  In the case of an Alternate Payee of a Participant who has not separated from service, the Plan may make a payment to such Alternate Payee prior to the date on which the Participant attains (or would have attained) the Earliest Retirement Age, if the qualified Domestic Relations Order so permits. For this purpose, the term "Earliest Retirement Age" means the earlier of (i) the date on which the Participant is entitled to a distribution under the Plan, or (ii) the later of the date the Participant attains age fifty (50) or the earliest date on which the Participant could begin receiving benefits if the Participant separated from service.

E.    <u>Expenses</u>.  Any specific expenses that relate directly to a Domestic Relations Order shall be allocated to the Account to which such expenses relate, rather than being allocated to the Accounts of all Participants. In the case of expenses that are allocated after an Account has been split pursuant to a Domestic Relations Order that has been determined to be qualified, those expenses shall be allocated between the Account of the Participant and the Account of the alternate payee in proportion to their respective Account balances as of the date of such split.

## 16.6 <u>General</u>.

A.    The Board of Directors, the Committee or any person to whom duties and responsibilities have been allocated or delegated, may employ other persons for

US-DOCS\118319799.2

CONFIDENTIAL    WGA_Ruxton000055

advice in connection with their respective responsibilities, including actuaries, plan consultants, investment advisers, attorneys and accountants.

B.    Any person may serve in more than one capacity with respect to the Plan.

C.    The Board of Directors, the Committee or any person to whom duties and responsibilities have been allocated or delegated shall be indemnified and held harmless by the Company from any expense or liability hereunder unless due to or arising from fraud, dishonesty, gross negligence, or misconduct of the Board of Directors, the Committee, or such person, as the case may be.

D.    The Board of Directors and the Committee shall have complete control with respect to the duties and responsibilities allocated to them under the terms of the Plan, with all power and discretion necessary to carry out any of their duties described herein.

E.    The decisions of the Board of Directors and the Committee in matters within their jurisdiction shall be final, binding and conclusive upon each Employer, each Employee, Beneficiary and every other interested or concerned person or party.

**16.7**  **Independent Fiduciary**. An Independent Fiduciary may be appointed from time to time for such purposes as shall be determined by the Board of Directors or the Committee. An Independent Fiduciary may be appointed to serve in such capacity as may be deemed appropriate to act on behalf of the Plan and Trust with respect to issues which involve a real or perceived conflict of interest among certain parties, or for such other purposes as the Trustee may determine to be in the best interest of the Plan and Trust. The Independent Fiduciary shall be granted such power, authority and discretion as may be necessary and appropriate for it to carry out its duties and responsibilities, including, but not limited to, any and all powers and discretion granted the Committee and the Trustee under the Plan and Trust.

US-DOCS\118319799.2

CONFIDENTIAL

# ARTICLE XVII

## AMENDMENT AND TERMINATION.

**17.1** **Amendment**.  To provide for contingencies which may require or make advisable the clarification, modification or amendment of this Agreement, the Company reserves the right to amend the Plan at any time and from time to time, in whole or in part, including without limitation, retroactive amendments necessary or advisable to qualify the Plan and Trust under the provisions of Sections 401(a) and 4975(e)(7) of the Code or any successor or similar statute hereafter enacted.  Any such amendment to the Plan or Trust must be adopted by resolution of the Company's Board of Directors.  However, no such amendment shall (a) cause any part of the assets of the Plan and Trust to revert to or be recoverable by the Company or be used for or diverted to purposes other than the exclusive benefit of Participants, former Participants and Beneficiaries, (b) deprive any Participant, former Participant or Beneficiary of any Plan Benefit already vested, except to the extent that such amendment may be necessary to permit the Plan or the Trust to qualify or continue to qualify as tax-exempt, (c) terminate the protections and rights described in Article XIV, (d) alter, change or modify the duties, powers or liabilities of the Trustee hereunder without its written consent, or (e) with respect to any benefit previously accrued, eliminate or reduce any early retirement benefit or retirement type subsidy, or eliminate any optional form of benefit, except to the extent permitted by Section 411(d)(6) of the Code.

**17.2** **Changes in the Code**.  Any other provision of this Plan to the contrary notwithstanding, if any amendment to the Code requires that a conforming Plan amendment must be adopted effective as of a stated effective date in order for this Plan to continue to be a qualified plan, this Plan shall be operated in accordance with the requirement of such amendment to that law until the date when a conforming Plan amendment is adopted, or the date when a clear and unambiguous non-conforming Plan amendment is adopted, whichever occurs first.

**17.3** **Termination, Partial Termination or Complete Discontinuance of Contributions**.  Although the Company has established the Plan with the bona fide intention and expectation that it will be able to make contributions indefinitely, nevertheless, the Company shall not be under any obligation or liability to continue its contributions or to maintain the Plan for any given length of time.  The Company may in its sole discretion discontinue such contributions or terminate the Plan in whole or in part in accordance with its provisions at any time without any liability for such discontinuance or termination.  In the event of a termination (as defined in Treasury Regulation Section 1.401-6(b)(1)) or complete discontinuance of contributions, then the Accounts of all Participants affected by the termination or discontinuance of contributions will become non-forfeitable.  In the event of a partial termination, the Accounts of all Participants affected by the partial termination will become non-forfeitable.  After termination of the Plan, the Trust will be maintained until the Plan Benefits of all Participants have been distributed.  Plan Benefits may be distributed following termination of the Plan or distributions may be deferred and distributed as provided in Article XII, as the Company shall determine.  If Plan Benefits will be distributed after the Plan is terminated, the distribution may be delayed until Internal

-55-

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000057

Revenue Service approval is received. In the event that Company Stock is sold in connection with the termination of the Plan or the amendment of the Plan to become a qualified employee plan that is not a stock bonus plan, all Plan Benefits will be distributed in cash.

**17.4** **Determination by Internal Revenue Service**. Notwithstanding any other provision of the Plan, if the Internal Revenue Service shall fail or refuse to issue a favorable written determination or ruling with respect to the continued qualification of the Plan and exemption of the Trust from tax under Section 501(a) of the Code, all Employer Contributions under Section 401(a) of the Code, together with any income received or accrued thereon less any benefits or expenses paid shall, upon the written direction of the Company, be deemed held by the Trustee under the Employee Stock Ownership Plan as it existed prior to the adoption of this Plan and this Plan and the Trust shall terminate.

**17.5** **Return of Employer's Contribution**. Except as otherwise provided in Article III, any Contribution by the Employer is conditioned upon its deductibility by the Employer under the Code. Notwithstanding any other provision of the Plan, if a deduction is disallowed in whole or in part with respect to a Contribution, or if a Contribution is made due to a mistake of fact, such Contribution may be returned to the Employer if such return occurs within one (1) year thereafter and if the amount returned does not exceed the excess of the actual Contribution over the amount that would have been contributed had there been no error in determining the deduction or mistake of fact. Earnings of the Plan attributable to the excess Contribution may not be returned to the Employer, but any losses attributable thereto must reduce the amount so returned.

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000058

## ARTICLE XVIII

## MISCELLANEOUS

**18.1** **Participation by Affiliated Company**.

A.     <u>In General</u>. Any Affiliated Company presently existing or hereafter acquired may, with the consent of the Company, adopt the Plan and Trust and thereby enable its employees to participate herein.

B.     <u>Transfer to Affiliate</u>. In the event any Participant is transferred to an Affiliated Company which is a participating Employer, such Participant shall continue to participate hereunder in the allocation of Employer Contributions and the Participant's Accounts shall continue to vest in accordance with Article XI. Any Participant who is transferred to an Affiliated Company which is not a participating Employer shall be treated as a suspended Participant in Section 3.1(e).

**18.2** **Limitation of Rights; Employment Relationship**. All Plan Benefits will be paid only from the Trust assets and neither the Company nor any Employer nor the Committee nor the Trustee shall have any duty or liability to furnish the Trust with any funds, securities or other assets except as expressly provided in the Plan. Nothing herein shall be construed to obligate any Employer to continue to employ any Employee

**18.3** **Merger; Transfer of Assets**.

A.     <u>In General</u>. In no event shall this Plan be merged or consolidated with any other employee benefit plan, nor shall there be any transfer of assets or liabilities from this Plan to any other such plan, unless immediately after such merger, consolidation or transfer, each Participant's benefits, determined as if the plan had terminated, are at least equal to or greater than the benefits which the Participant would have been entitled to had this Plan been terminated immediately before such merger, consolidation or transfer.

B.     <u>Prohibition Against Assignment</u>. The Plan Benefits may not be assigned or alienated; provided, however, that a qualified Domestic Relations Order shall not be construed as an assignment or alienation. Except for indebtedness to the Trust and orders to make payments or assign benefits to an Alternate Payee under a qualified Domestic Relations Order, and except as otherwise permitted by law, neither the Company nor the Trustee shall recognize any transfer, mortgage, pledge, hypothecation, order or assignment by any Participants or Beneficiaries of all or part of their interest hereunder, and such interest shall not be subject in any manner to transfer by operation of law, and shall be exempt from the claims of creditors or other claimants from all orders, decrees, levies, garnishment and/or executions and other legal or equitable process or proceedings against such Participants or Beneficiaries to the fullest extent which may be permitted by law. Notwithstanding anything in this Subsection to the contrary, in accordance with the provisions of

-57-

CONFIDENTIAL

WGA_Ruxton000059

Section 401(a)(13) of the Code as amended by the Taxpayer Relief Act of 1997, Plan Benefits may be reduced to satisfy a Participant's liability to the Plan due to the Participant's conviction of a crime involving the Plan, a judgment, consent order, or decree in an action for violation of fiduciary standards; or a settlement involving the Department of Labor or the Pension Benefit Guaranty Corporation.

18.4 **Applicable Law; Severability**. The Plan hereby created shall be construed, administered and governed in all respects in accordance with ERISA and to the extent not superseded by federal law, in accordance with the laws of the State of Delaware (including its statute of limitations provisions, but excluding its choice of law provisions); provided, however, that if any provision is susceptible of more than one interpretation, such interpretation shall be given thereto as is consistent with the Plan being a qualified employee stock ownership plan within the meaning of the Code. If any provision of this instrument shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective.

18.5 **Use of Electronic Media; Adjustment of Certain Time Periods**. Notwithstanding any provision herein which requires notices, consents, elections, or other actions under the Plan to be effectuated through a writing, such notices, consents, elections, or other actions may be effectuated through the use of electronic media, if so provided in procedures established by the Committee consistent with Department of Labor or Internal Revenue Service pronouncements or other applicable law. Moreover, any time periods set forth herein for providing notices, making elections, granting consents, or taking other actions which are based upon time limits established under applicable law shall be deemed to be automatically amended, without the necessity of a formal amendment, to reflect any subsequent modification of those deadlines through Department of Labor or Internal Revenue Service pronouncements or other changes in applicable law.

18.6 **Headings**. The headings and subheadings of this Plan have been inserted for convenience of reference and are to be ignored in any construction of the provisions hereof.

18.7 **Mandatory and Binding Arbitration Procedure ("Arbitration Procedure")**. As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant, or Beneficiary continuing to participate in the Plan, (iii) any Claimant asserting a claim related to the Plan or any benefits under the Plan, (iv) any Employee, Participant, or Beneficiary receiving any contributions to his or her Plan account, and/or (v) any Employee, Participant, or Beneficiary receiving any benefit under this Plan, such Employee, Participant, or Beneficiary shall be bound, and hereby is bound, to follow and comply with the provisions of this Arbitration Procedure to resolve all Covered Claims.

(a) **Covered Claims.** Any claim by a Claimant which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, any claim for benefits under the Plan, Trust, or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of

-58-

CONFIDENTIAL

fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect. Under no circumstances are the AAA Supplementary Rules for Class Arbitrations to be used. If the Covered Claims solely involve (i) claims under ERISA § 502(a)(1)(B) to recover benefits due to the Claimant under the terms of the Plan, to enforce the Claimant's rights under the terms of the Plan, or to clarify the Claimant's rights to future benefits under the terms of the Plan, and/or (ii) claims for penalties under ERISA § 502(c), the Covered Claims shall be submitted to and decided under the claims procedure set forth in Section 16.4. If Covered Claims described in the preceding sentence proceed to arbitration, they shall be submitted to and decided by only one (1) arbitrator. For all other disputes, the Covered Claims shall be submitted to and decided by three (3) arbitrators. Claimant shall assert all claims for benefits under the Plan, Trust, or Trust Fund in the same arbitration and shall not split such claims. The judgment on the final award rendered by the arbitrator may be entered in any court having jurisdiction thereof and shall be res judicata as to all Covered Claims the Claimant asserted or could have asserted in the arbitration demand but shall have no effect on the claims of any other employee, participant or beneficiary and shall not have any binding effect on the Administrator or Trustee except as to the individual Claimant only.

(b) **No Group, Class, or Representative Arbitrations.** All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's *individual* Plan account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's *individual* Plan account, and/or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant. The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section 18.7, Mandatory and Binding Arbitration Procedure

-59-

CONFIDENTIAL

("Arbitration Procedure"). In the event that the requirements of this subsection (the "Class Action Waiver") were to be found unenforceable or invalid by the court specified in Section 18.8, then the entire Arbitration Procedure (i.e., all of Section 18.7) shall be rendered null and void in all respects. Except as to the applicability and enforceability of the foregoing Class Action Waiver, the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to this Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability, or performance of this Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the Class Action Waiver shall be determined solely by the court specified in Section 18.8. Moreover, nothing in this Arbitration Procedure shall preclude a party from seeking interim or provisional relief or remedies in aid of arbitration from the court specified in Section 18.8.

(c) **Selection of Arbitrator(s).** The arbitrator(s) shall be mutually acceptable to all parties to the dispute and must be attorney(s) with prior experience with ERISA claims. The arbitrator(s) need not be selected from the AAA's panel of arbitrators if the parties to the dispute can reach agreement on the selection of the arbitrator(s). If, however, the parties cannot agree on the selection of the arbitrator(s) within twenty-one (21) days of the demand for arbitration, then the arbitrator(s) shall be selected pursuant to the AAA's National Rules for the Resolution of Employment Disputes; provided, however, that (i) the list of potential arbitrators provided by the AAA shall be limited to attorneys with prior ERISA experience; (ii) for an arbitration to be heard by one arbitrator, the AAA shall provide a list of names of seven (7) potential arbitrators from which the two sides (Claimant on one side and all Respondents on the other side) shall alternatively strike names until only one name remains, with the Claimant striking first; and (iii) for an arbitration to be heard by three (3) arbitrators, the AAA shall provide a list of names of eleven (11) potential arbitrators from which the two sides shall alternatively strike names until only three names remain, with the Claimant striking first.

(d) **Location and Administration of Arbitration.** The arbitration proceedings shall be held in Wilmington, Delaware, or at such other place as may be selected by mutual agreement of the parties. A Claimant may initiate arbitration by serving a demand for arbitration on the Administrator and, if applicable, the Trustee and by filing such demand for arbitration with the appropriate office of the AAA. In order to save time and expenses, the parties may agree to have the arbitrator(s), and not the AAA, administer the arbitration. In the absence of such an agreement, however, the AAA will administer the arbitration. Any demand for arbitration involving a claim under ERISA § 502(a)(1)(B) shall be served on the Administrator and, if applicable, Trustee, and filed with the AAA within twelve (12) months of the date on which the Denial of Claim is issued by the Appropriate Named Fiduciary or the ERISA § 502(a)(1)(B) claim shall be barred as untimely.

-60-

CONFIDENTIAL

(e) **Rules of Arbitration.** The arbitrator(s) will apply the same standards of review as would apply to the Covered Claims as if they were asserted in court specified in Section 18.8. For example, it is intended that in any arbitration over an ERISA § 502(a)(1)(B) claim, including a claim for benefits under the Plan, discovery will be limited to the Plan documents and the record developed during the administrative review process, and that the determination made by the Appropriate Named Fiduciary during the administrative review process will be reviewed under an "abuse of discretion" (a/k/a "arbitrary and capricious") standard of review. Similarly, it is intended that in any arbitration over a claim involving the review of any action, inaction, or determination by a Plan fiduciary for which action, inaction, or determination the fiduciary has been granted discretionary authority, the fiduciary's action, inaction, or determination will also be reviewed under an "abuse of discretion" (a/k/a "arbitrary and capricious") standard of review, even if such alleged action, inaction, or determination involves an alleged breach of fiduciary duty or violation of ERISA or the Code. Subject to these limitations, the arbitrator(s) shall have the discretion to order such discovery as permitted under the National Rules for the Resolution of Employment Disputes of the AAA. All disputes regarding discovery shall be decided by the arbitrator(s).

(f) **Arbitration Award.** The arbitration award shall be in writing. In rendering the award, the arbitrator(s) shall determine the respective rights and obligations of the parties under federal law, or, if federal law is not applicable, the laws of the State of Delaware. The arbitration award shall be binding on all parties solely with respect to the Claimant's individual claims and it shall have no effect with respect to claims of any other participant or beneficiary including the Plan accounts of any other participant or beneficiary.

(g) **Fees and Expenses.** Except as may be awarded by the arbitrator(s) in a final award: (i) the fees and expenses of the arbitrator(s) and arbitration shall be advanced by the Sponsoring Employer; and (ii) except as may be otherwise provided in this Plan, each party shall bear the expense of his, her or its own counsel, experts, witnesses, and preparation and presentation of evidence. The arbitrator(s) may include in his, her or their final award an award of arbitration fees and expenses and/or attorneys' fees and expenses to the extent allowed under ERISA.

(h) **Confidentiality.** Neither the Claimant nor the arbitrator(s) may disclose the existence, content, subject matter, or results of any arbitration without the prior written consent of the Sponsoring Employer. This nondisclosure provision shall apply to all aspects of the arbitration proceeding, including without limitation, discovery, testimony, other evidence, briefs, and the award. In the event of a breach or threatened breach of this confidentiality provision, the Sponsoring Employer may seek temporary, preliminary and/or permanent injunctive relief to prevent such breach or threatened breach, as well as any damages suffered by the Sponsoring Employer, Administrator, or Trustee. In the event the Sponsoring

US-DOCS\118319799.2

CONFIDENTIAL

WGA_Ruxton000063

Employer brings an action to enforce this confidentiality provision and receives any remedy (whether temporary or permanent), the Claimant or arbitrator responsible for the breach or threatened breach shall pay the Sponsoring Employer's attorneys' fees and expenses. In any action to confirm or set aside the arbitration award, the parties shall cooperatively seek to file the arbitration award under seal or for an *in camera* inspection by the court without the award being filed in the public record.

(i)   **Arbitrator Independence.** The parties intend that the arbitrator(s) be independent and impartial. To this end, the arbitrator(s) shall disclose to the parties, both before and during the arbitration proceedings, any professional, family, or social relationships, past or present, with any party or counsel.

(j)   **Application of Federal Arbitration Act.** This Arbitration Procedure, as set forth in all of Section 18.7 of the Plan, shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"). Subject to the provisions of the FAA, the final award rendered by the arbitrator(s) shall be final and binding on the parties to the arbitration with respect to the Claimant's individual claims only.

(k)   **Covered Claims Includes Claims Against Fiduciaries and/or Non-Fiduciaries.** This Arbitration Procedure shall apply to all Covered Claims asserted by a Claimant, whether such Covered Claims (i) are asserted against one or more of the Plan's fiduciaries or alleged fiduciaries, including but not limited to the Administrator and/or Trustee; and/or (ii) are asserted against the Employer or any other non-fiduciary (e.g., a Plan service provider or selling shareholder).

**18.8   Restriction on Venue.** If a Claimant wishes to pursue any Covered Claim, that Claimant shall comply with the Arbitration Procedure, set forth in Section 18.7 of the Plan, and shall not file any such claim in a state or federal court. To the extent, however, any Claimant fails or refuses to comply with the Arbitration Procedure, wishes to challenge the legal enforceability of the Arbitration Procedure, or to the extent the Arbitration Procedure is invalidated, such action or challenge shall be filed exclusively in the United States District Court for the District of Delaware or any Delaware State Court, which is where the Plan is administered. In the event a Claimant makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure in any court, the Claimant shall, to the maximum extent permitted by law, reimburse the defendants in that action for all attorneys' fees, costs, and expenses incurred by them in defending against the Claimant's unsuccessful court challenge.

US-DOCS\118319799.2

CONFIDENTIAL   WGA_Ruxton000064

## ARTICLE XIX

## TOP-HEAVY RULES.

**19.1  Purpose and Effect.**

A.  <u>In General</u>.  The purpose of this Article XIX is to comply with the requirements of Section 416 of the Code.  The provisions of this article are effective for each Plan Year beginning on or after the Effective Date in which the Plan is a "Top-Heavy Plan" within the meaning of Section 416(g) of the Code.

**19.2  Top-Heavy Plan.**

A.  <u>In general</u>.  The Plan will be a Top-Heavy Plan for any Plan Year if, as of the "Determination Date" (that is, the last day of the preceding Plan Year), the sum of the amounts in paragraphs (i), (ii) and (iii) below for Key Employees exceeds sixty percent of the sum of such amounts for all Employees who are covered by this Plan or by a defined contribution plan or defined benefit plan that is aggregated with this Plan in accordance with Subsection 19.2(D):

    (i)  The aggregate Account balances of Participants under this Plan.

    (ii)  The aggregate Account balances of Participants under any other defined contribution plan included under Subsection 19.2(D).

    (iii)  The present value of the cumulative accrued benefits of Participants calculated under any defined benefit plan included in Subsection 19.2(D).

B.  <u>Top-Heavy Determination</u>.  In making the foregoing determination:  (i) a Participant's Account balances or cumulative accrued benefits shall be increased by the aggregate distributions, if any, made with respect to the Participant during the 5-year period (or, for Plan Years commencing after 2001, the 1-year period, except with respect to distributions made for a reason other than severance from employment, death, or disability, for which the 5-year period shall continue to apply) ending on the Determination Date, including distributions under a terminated plan that, if it had not been terminated, would have been required to be included in the aggregation group, (ii) the Account balances or cumulative accrued benefits of a Participant who was previously a Key Employee, but who is no longer a Key Employee, shall be disregarded, (iii) the Account balances or cumulative accrued benefits of a Beneficiary of a Participant shall be considered Accounts or accrued benefits of the Participant, (iv) the Account balances or cumulative accrued benefits of a Participant who has not performed services for an Employer or an Affiliated Company at any time during the 5-year period (or, for Plan Years commencing after 2001, the 1-year period) ending on the Determination Date shall be disregarded and (v) any rollover contribution (or similar transfer) from a plan maintained by a corporation other than an Employer under this Plan initiated by a

-63-

CONFIDENTIAL

Participant shall not be taken into account as part of the Participant's aggregate Account balances under this Plan.

C.  <u>Key Employee</u>. In general, a "Key Employee" is an Employee (or a former or deceased Employee) who, at any time during the Plan Year, is or was:

    (i)    an officer of the Employer having annual compensation greater than $185,000, as adjusted for years after 2020 by the Internal Revenue Service; provided that, for purposes of this paragraph, no more than fifty Employees of the Employer (or, if lesser, the greater of three Employees or ten percent of the Employees) shall be treated as officers;

    (ii)    a five percent or greater owner of an Employer; or

    (iii)    a one percent or greater owner of an Employer having annual compensation from the Employer of more than $150,000.

For purposes of this Article XIX, the term "compensation" means Total Compensation.

D.  <u>Aggregated Plans</u>. Each other defined contribution plan and defined benefit plan maintained by an Employer that covers a Key Employee as a Participant or that is maintained by an Employer in order for a plan covering a Key Employee to satisfy Section 401(a)(4) or 410 of the Code shall be aggregated with this Plan in determining whether this Plan is top-heavy. In addition, any other defined contribution or defined benefit plan of an Employer may be included if all such plans that are included, when aggregated, will not discriminate in favor of officers, shareholders or Highly Compensated Employees and will satisfy all of the applicable requirements of Sections 401(a)(4) and 410 of the Code.

E.  <u>Minimum Vesting</u>. For any Plan Year in which the Plan is a Top-Heavy Plan, the vested percentage of a Participant's Accounts shall continue to be determined in accordance with the vesting schedule that is set forth in Article XI.

F.  <u>Minimum Employer Contribution</u>. Subject to the following provisions, for any Plan Year in which the Plan is a Top-Heavy Plan, the Employer Contribution credited to each Participant who is not a Key Employee shall not be less than 3 percent of such Participant's compensation from the Employers for that year. In no event, however, shall the total Employer Contribution credited in any year to a Participant who is not a Key Employee (expressed as a percentage of such Participant's compensation from the Employers) be required to exceed the maximum total Employer Contribution credited in that year to a Key Employee (expressed as a percentage of such Key Employee's compensation from the Employers). Contributions made by an Employer under the Plan pursuant to Participants' income deferral authorizations shall not be deemed Employer Contributions for purposes of this section. For Plan Years commencing after 2001, employer matching contributions (as defined in Section 401(m)(4)(A) of the Code)

-64-

CONFIDENTIAL

shall be taken into account for purposes of this Subsection. The amount of minimum Employer Contribution otherwise required to be allocated to any Participant for any Plan Year under this section shall be reduced by the amount of Employer Contributions allocated to such Participant for a Plan Year ending with or within that Plan Year under any other tax-qualified defined contribution plan maintained by an Employer.

[Signature page follows]

US-DOCS\118319799.2

**IN WITNESS WHEREOF**, Western Global Airlines, Inc., intending to be legally bound, has caused this Plan to be executed by its duly authorized officer this 23rd day of October, 2020.

**WESTERN GLOBAL AIRLINES, INC.**

By _James K. Neff_

James K. Neff, President

*[Signature Page for ESOP]*

CONFIDENTIAL