EXHIBIT A

Execution Version

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID BURNETT and DAVID NELSON as representatives of a class of similarly situated persons, and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | |
| Plaintiffs, | C.A. No. 1:22-cv-00270-RGA/JLH |
| v. | |
| PRUDENT FIDUCIARY SERVICES, LLC, MIGUEL PARADES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, KELLY S. NEFF TRUST DATED 1/1/10, DANIELLE J. NEFF TRUST DATED 1/1/10, and WGA TRUST DATED 8/16/13, | |
| Defendants. | |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (this "Settlement Agreement") is entered into by and among Plaintiffs David Burnett and David Nelson (the "Named Plaintiffs"), individually and as representatives of a proposed class of similarly situated persons and on behalf of the Western Global Airlines, Inc. Employee Stock Ownership Plan and related Trust (collectively, the "Plaintiffs"), and Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust

Dated 8/16/13 (collectively, the "Shareholder Defendants" and, together with the Plaintiffs, the "Settling Parties").

## RECITALS

WHEREAS, prior to and until October 22, 2020, Western Global Airlines, Inc., a Delaware corporation, formerly Western Global Airlines, LLC (referred to herein, along with Western Global Airlines, Inc. and Western Global Airlines Holdings Inc., as "WGA") was a closely-held company that the Shareholder Defendants exclusively owned;

WHEREAS, WGA owned no airplanes or engines until June 2020 when the Shareholder Defendants contributed to WGA their two leasing companies, Keldann Air LLC and Jimsunn Air LLC (together, the "Leasing Companies"), inclusive of their entire fleet of large wide body freighter aircraft, engines and parts, which those leasing companies owned and had leased to WGA since its founding;

WHEREAS, as a result of the Shareholder Defendants' contribution of the Leasing Companies, WGA became the owner of Leasing Companies and their assets and no longer had to make lease payments on account of such assets;

WHEREAS, in June 2020, WGA established the Western Global Airlines, Inc. Employee Stock Ownership Plan and associated Trust (the "ESOP") to grant beneficial ownership in WGA to all of its eligible employees, at no out-of-pocket cost and without modification to existing employee benefit programs, such as the 401(k);

WHEREAS, in June 2020, the WGA Trustee Selection Committee, consisting of members of WGA's senior management and excluding the Shareholder Defendants, selected Prudent Fiduciary Services, LLC ("PFS") and Miguel Paredes ("Mr. Paredes") to

serve as the independent trustee of the ESOP. In his role as Trustee of the ESOP, Mr. Paredes was tasked with (1) evaluating a proposed purchase of company stock by the ESOP; (2) performing due diligence with respect to WGA and the proposed "ESOP Transaction" (hereinafter defined) that closed on October 23, 2020; and (3) acting independently of WGA and its agents and representatives to negotiate, on behalf of the ESOP, the price, terms, and conditions of an ESOP Transaction, and ultimately, if so determined, also deciding what percentage of WGA stock the ESOP should purchase;

WHEREAS, the Settling Parties dispute whether the ESOP paid more than Fair Market Value ("adequate consideration" under the Employee Income Retirement Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA")) as determined by the independent ESOP Trustee, for 37.5% of WGA stock that it purchased from the Shareholder Defendants in October 2020 (the "ESOP Transaction");

WHEREAS, the ESOP Transaction closed on October 23, 2020 (the "Closing Date");

WHEREAS, on February 28, 2022, Plaintiffs, as representatives of a class of similarly situated persons and on behalf of the ESOP, filed a class action complaint against the Defendants in the United States District Court for the District of Delaware, C.A. No. 1:22-cv-00270-RGA/JLH (the "Action") alleging that Defendants violated ERISA, 29 U.S.C. §§ 1001 *et seq.*, in connection with the ESOP Transaction;

WHEREAS, on October 20, 2023, Plaintiffs filed the Amended Class Action Complaint in the Action [ECF No. 86, the "Amended Complaint"], which is now the operative pleading in the Action;

3

WHEREAS, on November 3, 2023, the Trustee Defendants filed an Answer to the Amended Complaint [ECF No. 105], and on December 7, 2023, the Shareholder Defendants filed an Answer to the Amended Complaint [ECF No. 117], denying the allegations of the Amended Complaint, any and all liability thereunder, and asserting affirmative defenses;

WHEREAS, the Shareholder Defendants continue to deny all material allegations in the Amended Complaint and, more generally, deny any wrongdoing or liability with respect to the ESOP or the ESOP Transaction;

WHEREAS, on March 27, 2024, the Settling Parties participated in a full-day, arm's-length mediation with Robert A. Meyer of JAMS, and reached an agreement in principle regarding a settlement of the claims against the Shareholder Defendants in the Action;

WHEREAS, this Settlement Agreement embodies the Settling Parties' agreement to compromise disputed claims, and nothing in this Settlement Agreement is intended to, or may be interpreted or deemed to, constitute any finding or admission of liability, fault, responsibility, guilt, or wrongdoing of any kind by the Shareholder Defendants, whether under ERISA or any other statute, regulation, case law, common law doctrine, or other legal authority, or give rise to any inference of liability in the Action or any other proceeding, judicial process or investigation; and

WHEREAS, the claims asserted against the Shareholder Defendants in the Action were not proven. Notwithstanding the Shareholder Defendants' belief that they will prevail in the Action, they have agreed to this Settlement Agreement to fulfill their expressed

intention of providing consideration to the ESOP participants and their beneficiaries and to avoid the significant time and expense attendant in protracted litigation that will distract from focusing their efforts on WGA's success.

NOW, THEREFORE, it is agreed by the Settling Parties, in consideration of the promises, covenants, and agreements herein stated, and for other good and valuable consideration, the receipt and sufficiency of which is duly acknowledged by each of the Settling Parties, that all of the claims asserted against the Shareholder Defendants in the Action, and all claims that could have been asserted therein, shall be settled and dismissed on the merits and with prejudice in accordance with the following terms and conditions, all subject to the approval of this Court.

## Section 1: Additional Definitions.

As used in this Settlement Agreement, the following terms have the meanings set forth below, unless a section of this Settlement Agreement specifically provides otherwise. Capitalized terms used in this Settlement Agreement, but not defined in this Section 1, will have the meaning ascribed to them elsewhere in this Settlement Agreement.

1.1     "Class Member" shall mean a member of the Settlement Class.

1.2     "Class Notice" shall mean the form of notice of the Settlement provided to the Settlement Class that is approved by the Court and in compliance with Rule 23 of the Federal Rules of Civil Procedure, explaining the Settlement terms and the claims and objection process.

1.3     "Court" shall refer to the United States District Court for the District of Delaware.

1.4       "Shareholder Defendants' Counsel" shall mean Morris James LLP and Hawkins Parnell & Young LLP.

1.5       "Discovery Reserve" shall mean the funds designated and reserved to reimburse the Shareholder Defendants for reasonably incurred attorneys' fees and other costs and expenses incurred by the Shareholder Defendants in responding to Plaintiffs' requests or demands for discovery responses and/or other information and documentation from the Shareholder Defendants in connection with their continued prosecution of claims against Defendants PFS and Mr. Paredes in the Action.

1.6       "Fairness Hearing" shall mean the hearing at which this Court will consider whether the Settlement should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure.

1.7       "Final" shall mean: (i) the time has expired to file an appeal, motion for reargument or reconsideration, motion for rehearing, petition for a writ of certiorari or other writ ("Appeal Proceeding") with respect to a judicial ruling or order with no such Appeal Proceeding having been filed; or (ii) if an Appeal Proceeding has been filed with respect to such judicial ruling or order, (a) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (b) such Appeal Proceeding has been denied or dismissed with no further right of review.

1.8       "Final Approval Order" shall mean a final judgment and order of dismissal of claims against the Shareholder Defendants, which is to be entered by this Court finally approving the terms of this Settlement Agreement and dismissing the Action with

prejudice against the Shareholder Defendants. Absent any Appeal Proceeding, the Final Approval Order shall be Final thirty (30) days after its entry by the Court.

1.9    "Objection Deadline" shall mean the date by which all objections to the Settlement ("Objections") and all written notices of intent to appear as described in Section 8.2 below must be filed with this Court and submitted to the Settlement Administrator, who will forward any such Objections to Plaintiffs' Counsel and Shareholder Defendants' Counsel.

1.10    "Plaintiffs' Counsel" shall mean Cooch and Taylor, PA, Stris & Maher LLP, Cohen Milstein Sellers & Toll PLLC, and Nichols Kaster PLLP.

1.11    "Plan" shall mean Western Global Airlines, Inc. Employee Stock Ownership Plan and Trust.

1.12    "Plan of Allocation" shall mean the plan for the determination and distribution of the proceeds of the Settlement Amount (net of any attorneys' fee and expense awards and Service Awards approved by the Court and any other costs or expenses authorized by this Settlement Agreement or Court Order) as proposed by Plaintiffs' Counsel and subject to approval of this Court. The Shareholder Defendants shall have no responsibility for preparing the Plan of Allocation, or any right to provide input into the Plan of Allocation, and will take no position on the Plan of Allocation except to the extent that the Plan of Allocation would result in adverse tax or other consequences to WGA or the Shareholder Defendants.

1.13    "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement substantially in the form attached as Exhibit 1 hereto.

1.14    "Settlement" shall mean the settlement to be consummated under this Settlement Agreement.

1.15    "Settlement Administrator" shall mean a third-party administrator chosen by Plaintiffs' Counsel, and subject to this Court's approval, who will be responsible for, among other things, (a) preparing and disseminating the Class Notice to Class Members; (b) tracking returned Class Notice packets or settlement payments; (c) sending cure letters and making follow-up telephone calls to Class Members, if necessary; (d) notifying the Settling Parties of timely, untimely and deficient Objections received; (e) calculating the amounts due to each Class Member pursuant to this Settlement; (f) notifying the Settling Parties of, and helping to resolve, any disputes regarding claims by the Class Members; (g) providing settlement payments, along with IRS Forms 1099-MISC, to the Class Members and to the taxing authorities if required under applicable Internal Revenue Code of 1986, as amended, rules and Treasury Regulations; (h) utilizing mail-forwarding information and/or skip tracing methods, as reasonable, to update the Class mailing list and taking steps to send Class Notice packets to current mailing and/or e-mail addresses; and (i) performing such other duties as are described herein.

1.16    "Settlement Amount" shall mean $7,500,000.

1.17    "Settlement Class" shall mean the non-opt out class under Federal Rule of Civil Procedure 23(b)(1) consisting of all participants and beneficiaries of the Plan at any time since its inception, excluding Defendants, their family members or beneficiaries.

1.18    "Settling Parties" means Plaintiffs and the Shareholder Defendants, and a "Party" means any of the Settling Parties.

1.19      "Service Awards" shall mean the amounts requested by Plaintiffs to be awarded to them in recognition of their service as class representatives.

1.20      "Shareholder Defendants" shall mean Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13.

1.21      "Trustee Defendants" shall mean Miguel Paredes and his operating company Prudent Fiduciary Services, LLC.

1.22      "Trustee Defendants' Counsel" shall mean Chipman Brown Cicero & Cole LLP, and The Groom Law Group, Chartered.

## Section 2: Conditions to Finality of Settlement.

The Settlement shall be unconditional and Final when each of the following conditions in Sections 2.1 through 2.5 have been satisfied. The Settling Parties will use reasonable, good faith efforts to cause each of the conditions to occur within the times indicated.

2.1      Condition #1: Class Certification for Purposes of Settlement. This Court shall certify the Settlement Class as a non-opt-out class for settlement purposes pursuant to Rule 23(a)(l)–(4), 23(b)(1) and/or 23(e) of the Federal Rules of Civil Procedure, with Plaintiffs as the named class representatives and Plaintiffs' Counsel as Class counsel for Plaintiffs and the Settlement Class. The Settling Parties agree to certification of the Settlement Class for settlement purposes only and only if the Settlement becomes Final, and the Shareholder Defendants agree not to challenge certification of the Settlement Class

9

for settlement purposes only. The Settling Parties also agree that if the Settlement does not become Final, then no Settlement Class will be deemed to have been certified and the Action (and the claims asserted against the Shareholder Defendants therein) will revert to their status as of the day immediately before the execution of this Settlement Agreement.

2.2    <u>Condition #2: Court Approval</u>. The Settlement shall have been approved by this Court in accordance with the following steps 2.2.1 through 2.2.6:

2.2.1    <u>Motion for Preliminary Approval of Settlement and of Notices</u>. Within thirty (30) days after the execution of the Settlement Agreement, Plaintiffs will file a motion for entry of the Preliminary Approval Order in the form attached as Exhibit 1 hereto ("Preliminary Approval Motion").

2.2.2    <u>Service of Notice under the Class Action Fairness Act</u>. The Shareholder Defendants shall cause WGA to prepare and serve the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) ("CAFA"), as specified by 28 U.S.C. § 1715, within ten (10) days of the Preliminary Approval Motion is filed with the Court.

2.2.3    <u>Preliminary Approval Order; Issuance of Class Notice</u>. The Plaintiffs, with the consent, non-objection, or other response by the Shareholder Defendants, shall request that this Court enter the Preliminary Approval Order, substantially in the form attached as Exhibit 1 hereto. Plaintiffs shall provide to the Shareholder Defendants their proposed motion at least seven (7) days in advance of filing so that the Settling Parties may make good-faith efforts to reasonably agree upon the language thereof. Prior to submitting a motion for the Preliminary Approval Order, the Settling Parties also shall agree in good faith on the content of the Class Notice, which shall

10

include, among other things, a brief description of the claims advanced and the Shareholder Defendants' objections to these claims, a summary of the terms of this Settlement Agreement, the Shareholder Defendants' intention in settling the Action as expressed in Section 5.1 of this Settlement Agreement, information on the attorneys' fees and costs sought by Plaintiffs' Counsel, a description of the proposed Plan of Allocation of the Settlement Amount to the Class, and information about the Fairness Hearing. If, for any reason, the Settling Parties are unable to agree in good faith upon the language of the Class Notice, then the matter shall be resolved by this Court in a manner otherwise consistent with the terms of this Settlement Agreement. The Settlement Administrator shall cause the Class Notice to be disseminated to the Class Members by: (a) either electronic communication (if available and approved by the Court) or by mailing via first class U.S. mail to all Class Members, and (b) posting the Class Notice on a website or websites maintained by Plaintiffs' Counsel or the Settlement Administrator (which website or websites shall be consistent with the terms of this Settlement Agreement and accessible to the Shareholder Defendants) for the Settlement Class within thirty (30) days of the entry of the Preliminary Approval Order. In the event that a Class Notice sent by email or by U.S. mail is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid alternative mailing address or email address and promptly re-send the Class Notice to such Class Member. The Settling Parties will request that the Fairness Hearing occur at least ninety (90) days after the entry of the Preliminary Approval Order. The Shareholder Defendants shall cause WGA to provide the names and last known addresses of the Class Members in electronic format ("the Class Contact List"), within ten

(10) days of the entry of the Preliminary Approval Order. The Class Contact List shall be treated at all times as confidential information subject to the confidentiality order in the Action and may not be disclosed or used for any other purpose. The Shareholder Defendants also shall cause WGA to provide the number of vested shares of WGA stock allocated to the ESOP account of each of the Class Members both (1) as of the most recent date available and (2) if the Class Member received a prior distribution of the Class Member's account balance or any portion thereof, the number of vested shares of WGA stock allocated to their ESOP account as of the date of all prior distributions and the amount of the prior distribution. The information in the preceding sentence shall be provided to the Settlement Administrator in electronic format, within twenty-one (21) days of the entry of the Preliminary Approval Order.[1] Within thirty (30) days after the date on which the Class Notice is required to be sent, the Settlement Administrator will file a declaration with the Court confirming that the Class Notice and related information was sent to all Class Members in accordance with the Preliminary Approval Order.

        2.2.4      <u>Motion for Final Approval of Settlement</u>. At least forty-five (45) days before the Fairness Hearing, Plaintiffs will file a motion seeking final approval of the Settlement (the "Final Approval Motion") and a separate motion for approval of attorneys' fees and expenses and Service Awards to the class representatives. The Shareholder Defendants will either join in, not oppose, abstain from opposing, or otherwise respond to the Final Approval Motion. Class counsel shall provide the Shareholder Defendants at least

---

[1] The Settling Parties acknowledge that any information provided by WGA pursuant to this Section shall be treated as "Confidential" under the Stipulated Protective Order [ECF No. 99].

seven (7) days to review the Final Approval Motion before filing the same. The Final

Approval Motion will seek entry by this Court of a Final Approval Order in a form to be

agreed upon by the Settling Parties that will include, among other provisions, that this

Court:

        2.2.4.1    Order Final Approval of the Settlement set forth in this
Settlement Agreement;

        2.2.4.2    Determine and adjudge that this Settlement Agreement is
entered into in good faith and represents a fair, reasonable,
and adequate settlement that is in the best interests of the
Class in accordance with Rule 23(e) of the Federal Rules of
Civil Procedure;

        2.2.4.3    Approve the Plan of Allocation;

        2.2.4.4    Adjudicate Objections raised by Class Members, if any;

        2.2.4.5    Dismiss the Action against the Shareholder Defendants
with prejudice and without costs to any of the Settling
Parties, except as contemplated by this Settlement
Agreement;

        2.2.4.6    Adjudge that Plaintiffs and the Class will be deemed
conclusively to have released and waived any and all
Released Claims against the Shareholder Defendant
Released Parties as provided in this Settlement Agreement;

        2.2.4.7    Bar and permanently enjoin the Settling Parties, including
the Class, from asserting or prosecuting any and all
Released Claims, as provided in this Settlement
Agreement, against any party released pursuant to this
Settlement Agreement;

        2.2.4.8    Determine that all applicable CAFA requirements have
been satisfied;

        2.2.4.9    Adjudge that Class Members will be barred from asserting
any claims against the Shareholder Defendants or the

Shareholder Defendant Released Parties arising out of the allocation of the Settlement Amount as calculated by the Settlement Administrator or based on actions by the Shareholder Defendants or the Shareholder Defendant Released Parties that were consistent with the Plan of Allocation, this Settlement Agreement, an Order of the Court, or the direction of the Settlement Administrator or Plaintiffs' Counsel; and

2.2.4.10  Preserve the Court's continuing and exclusive jurisdiction over the Settling Parties to administer, implement, construe, and enforce this Settlement Agreement in accordance with its terms, including the release provisions, for the mutual benefit of the Settling Parties, but without affecting the finality of the Final Approval Order.

2.2.5  The Fairness Hearing. At or after the Fairness Hearing, this Court will determine: (i) whether to enter the Final Approval Order approving the Settlement and dismissing with prejudice the Action as to the Shareholder Defendants; (ii) what attorneys' fees and expenses should be granted to Plaintiffs' Counsel out of the Settlement Amount; and (iii) what, if any, Service Awards should be awarded to the class representatives out of the Settlement Amount.

2.2.6  Entry of Final Approval Order. This Court shall have entered the Final Approval Order. Absent any Appeal Proceeding, the Final Approval Order shall be Final thirty (30) days after its entry by this Court.

2.3  Condition #3: Independent Fiduciary Approval. Plaintiffs' Counsel shall select a qualified Independent Fiduciary to review the Settlement on behalf of the Plan. The Independent Fiduciary shall have the following responsibilities, including, without

limitation, whether to approve and authorize the settlement of Released Claims on behalf of the ESOP:

2.3.1    The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39") in making its determination.

2.3.2    The Independent Fiduciary shall notify the Shareholder Defendants' Counsel and Plaintiffs' Counsel of its determination in writing, which notification shall be delivered no later than twenty-one (21) calendar days before the deadline for Plaintiffs' Counsel to file the Final Approval Motion. If the Independent Fiduciary does not approve all aspects of this Settlement Agreement, then the Shareholder Defendants and Plaintiffs will each have the right, but not the obligation, to withdraw from the Settlement Agreement so long as such right is exercised within seven (7) days of the receipt of the Independent Fiduciary's determination. If any Settling Party elects to exercise such right of withdrawal under this provision, then before such withdrawal shall be deemed effective, the Settling Parties shall meet and confer in good faith in an effort to resolve any issues raised, and/or bring the matter before the Court on an expedited basis to determine if a mutual resolution can be reached prior to the effectiveness of such withdrawal. If any Settling Party exercises such right of withdrawal under this provision and thirty (30) days expires without an agreed modification, then the entire Settlement Agreement will be null

and void and the Settling Parties will revert to their respective positions in the Action as of the day immediately before execution of the Settlement Agreement (*See* Section 10).

      2.3.3     The Shareholder Defendants' Counsel and Plaintiffs' Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement. Any such information provided to the Independent Fiduciary shall be confidential under this Settlement Agreement. Providing such information shall be deemed not to violate ERISA and not to be an ERISA fiduciary action by anyone, including, without limitation, the Shareholder Defendants.

      2.3.4     Selection of the Independent Fiduciary shall be made by Plaintiffs' Counsel, however, the person or entity hired as Independent Fiduciary shall have substantial experience evaluating similar settlements and PTE 2003-39. In the event of a dispute about the person or entity who should be hired as the Independent Fiduciary, this Court will resolve the dispute and appoint an Independent Fiduciary consistent with the terms of this Settlement Agreement.

      2.3.5     If the Settlement becomes Final, the fees and costs of the Independent Fiduciary will be paid out of the Settlement Amount. If the Settlement does not become Final, the fees and costs of the Independent Fiduciary shall be paid in equal

16

shares by the Settling Parties, with fifty percent (50%) being paid by the Plaintiffs and fifty percent (50%) being paid by WGA.

2.4     Condition #4: Funding of Settlement Amount. The Settlement Amount shall have been deposited into the Settlement Fund Account by the Shareholder Defendants in accordance with Section 6.

2.5     Condition #5: Finality of Final Approval Order. The Final Approval Order has become Final. Absent any Appeal Proceeding, the Final Approval Order shall be Final thirty (30) days after its entry by this Court.

2.6     If Plaintiffs and Shareholder Defendants disagree as to whether each and every condition set forth in Section 2 herein has been satisfied or waived, they shall promptly confer in good faith and, if unable to promptly resolve their differences, shall present their disputes to this Court for determination consistent with the terms of this Settlement Agreement.

## Section 3: Releases.

3.1     Releases. Subject to Section 10 (Termination of Settlement Agreement) below, and upon the Final Approval Order becoming Final, and provided that each Settling Party has performed all of its respective obligations under this Settlement Agreement, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all Released Claims.

3.2     Class Release.   The Plaintiffs, on their own behalf, on behalf of all members of the Settlement Class, and on behalf of the Plan, shall dismiss with prejudice the Action against the Shareholder Defendants, and the Plaintiffs and the Settlement Class,

on behalf of themselves, their beneficiaries, heirs, executors, representatives, and assigns, absolutely and unconditionally release and forever discharge any and all claims, actions and/or liabilities against the Shareholder Defendants and their respective family members, trusts, beneficiaries, affiliates, entities, and/or successors, and WGA and Western Global Airlines Holdings and their respective subsidiaries, any and all affiliates, former and current directors and officers (collectively, the "Shareholder Defendant Released Parties"),[2] based on, arising out of, or pertaining in any way to the Action, the Plan, or matters related to the Plan, including, without limitation, any and all known or unknown claims, actions, and/or liabilities that Plaintiffs or the stipulated class actually asserted, or which they could have asserted (the "Class Release").

      3.2.1    For the avoidance of doubt, any claims of Plaintiffs and the Shareholder Defendants against PFS and Mr. Paredes, and their respective agents, employees, trustees, trustors, beneficiaries, receivers, corporations, parents, affiliates, subsidiaries, predecessors, successors, assigns, shareholders, officers, directors, partners, partnerships, members, attorneys, representatives, insurers, heirs, spouses, executors, administrators, affiliated or related entities and their respective owners, officers, and directors, are expressly reserved.

---

[2] For the avoidance of doubt, the Shareholder Defendant Released Parties shall include each Shareholder Defendant and Western Global Airlines, Inc., Western Global Airlines Holdings, Inc., and, in each instance and as applicable, their respective agents, employees, trustees, trustors, trusts, beneficiaries, receivers, corporations, parents, affiliates, subsidiaries, predecessors, successors, assigns, shareholders, officers, directors, partners, partnerships, members, attorneys, representatives, insurers, heirs, spouses, executors, administrators, affiliated or related entities and their respective owners, officers, and directors, except as provided in Section 3.2. The Shareholder Defendant Released Parties shall not include Defendants PFS and Mr. Paredes, and their respective agents, employees, trustees, trustors, beneficiaries, receivers, corporations, parents, affiliates, subsidiaries, predecessors, successors, assigns, shareholders, officers, directors, partners, partnerships, members, attorneys, representatives, insurers, heirs, spouses, executors, administrators, affiliated or related entities and their respective owners, officers, and directors.

3.2.2    For the avoidance of doubt, the Class Release includes any individual ESOP participant's or beneficiary's claim for benefits under Section 502(a)(1)(B) of ERISA except to the extent that such claim is related to a Class Member's entitlement to a recovery in connection with this Settlement Agreement. In the event that any court with original or appellate jurisdiction over the Action issues a final determination that any portion of Section 3 herein is not enforceable, the Settling Parties will jointly modify Section 3 herein to conform with such determination, and in any event, portions of Section 3 herein that are enforceable shall remain enforceable.

3.2.3    Plaintiffs hereby expressly waive, on their own behalf and on behalf of all members of the Settlement Class and the ESOP, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR THE RELEASING PARTY.**

3.3    <u>General Release</u>. The Shareholder Defendants and WGA on the one hand and the Named Plaintiffs on the other hand mutually release each other from any and all known or unknown claims, actions, and/or liabilities accruing before the date of this Settlement Agreement (the "General Release" together with the Class Release, the "Released Claims").

## Section 4: Representations and Warranties.

4.1     <u>Plaintiffs' Representations and Warranties</u>. Each Plaintiff represents and warrants on behalf of themselves and all members of the Settlement Class as follows:

4.1.1     That Plaintiffs and Plaintiffs' Counsel have conducted an appropriate investigation into and discovery of the claims in the Action, and have diligently litigated the Action. Named Plaintiffs represent that they have met personally with Plaintiffs' Counsel on several occasions and have reviewed and organized considerable documents pertaining to the ESOP. Plaintiffs and Plaintiffs' Counsel have propounded discovery in the Action, received substantial evidence from the Shareholder Defendants in connection with the mediation, and have monitored the WGA bankruptcy action, *In re: Western Global Airlines, Inc.*, No. 1:23-bk-11093, in the United States Bankruptcy Court for the District of Delaware, including review of the documents therein. Plaintiffs and Plaintiffs' Counsel are of the opinion, based upon their own independent investigation and evaluation, and the mediator's proposal, that this Settlement is the best the Settlement Class could accomplish without protracted litigation and an uncertain outcome and, as a result is fair, reasonable, and adequate and is in the best interests of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by the Shareholder Defendants, the Shareholder Defendants' denial of the allegations asserted by Plaintiffs, and potential appellate issues. The Plaintiffs also are mindful of the inherent risks in establishing and proving liability and overcoming potential defenses to the claims asserted in the Action. In light of these considerations, Plaintiffs and Plaintiffs'

Counsel believe that this Settlement Agreement confers substantial benefits and is in the best interests of the Plaintiffs and the Settlement Class.

4.1.2    That the Settlement Class, including Plaintiffs, shall not have any surviving claims or causes of action against any of the Shareholder Defendant Released Parties with respect to the Class Release.

4.2    <u>Settling Parties' Representations and Warranties</u>. The Settling Parties, and each of them, represent and warrant:

4.2.1    That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among Plaintiffs' Counsel and Shareholder Defendants' Counsel and that in executing this Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent, and duration of their rights, obligations, and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. With respect to the Settlement Agreement, each of the Settling Parties assumes the risk of mistake as to facts and/or law.

4.2.2    That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each person executing this Settlement Agreement on behalf of such Party. The Settling Parties, and each of them, also represent and warrant to each other that they have made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as they deem necessary or appropriate.

4.3     <u>Signatories' Representations and Warranties</u>. Each person executing this Settlement Agreement on behalf of themselves or in a representative capacity does hereby personally represent and warrant that, to the best of their information and knowledge formed after reasonable inquiry, they have the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal for whom such individual represents or purports to represent.

## <u>Section 5: No Admission of Liability.</u>

5.1     The claims asserted against the Shareholder Defendants in the Action were not proven. Notwithstanding the Shareholder Defendants' belief that they will prevail in the Action, they have agreed to this Settlement Agreement to fulfill their expressed intention of providing consideration to the Plan participants and their beneficiaries and to avoid the significant time and expense attendant in protracted litigation that will distract from focusing their efforts on WGA's success.

5.2     Shareholder Defendant Released Parties may file this Settlement Agreement and/or the Final Approval Order in any action that may be brought against them in order to enforce the terms of this Settlement Agreement and/or Final Approval Order, including, without limitation, a defense based in principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies. Likewise, Plaintiffs may file this Settlement Agreement and/or the Final Approval Order in any action that the Shareholder

Defendants may bring against them to enforce the terms of this Settlement Agreement and/or the Final Approval Order.

## Section 6: The Settlement Fund Account.

6.1   The Settlement Administrator, at the direction of Plaintiffs' Counsel, shall establish at a federally chartered financial institution reasonably acceptable to the Shareholder Defendants (the "Financial Institution") an interest-bearing escrow account (the "Settlement Fund Account"). The Settling Parties agree that the Settlement Fund Account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. 26 C.F.R. § 1.468B-1. Plaintiffs' Counsel shall provide to the Shareholder Defendants: (i) written notification of the date of establishment of the Settlement Fund Account and the following information regarding the Financial Institution and the Settlement Fund Account: bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number; and (ii) any additional information needed to deposit the Settlement Amount into the Settlement Fund Account. The Settlement Administrator, at the direction of Plaintiffs' Counsel, shall direct the Financial Institution to make distributions by wire transfer or check from the Settlement Fund only in strict accordance with the Settlement Agreement and Court Orders. No other disbursements may be authorized by Plaintiffs' Counsel or the Settlement Administrator.

6.2   No later than thirty (30) calendar days after the Final Approval Order becomes Final, the Shareholder Defendants shall cause the Settlement Amount to be deposited into the Settlement Fund Account; provided, however, that if Plaintiffs' Counsel has not yet

provided the Shareholder Defendants with the notifications and information required in the preceding paragraph, then the deadline for the Shareholder Defendants to make the deposit into the Settlement Fund Account, shall be extended to ten (10) calendar days after the date on which Plaintiffs' Counsel provides the requisite notifications and information.

6.3    Out of the Settlement Amount that the Shareholder Defendants deposit into the Settlement Fund Account pursuant to Section 6.2, $50,000 will be designated as, and reserved for, the Discovery Reserve.

6.4    The Settlement Amount deposited into the Settlement Fund Account will be considered to be in the legal custody of the Court until such time as such funds may be distributed pursuant to further order of the Court or pursuant to the terms of this Settlement Agreement. The Settling Parties acknowledge and agree that Shareholder Defendants shall have no authority, control or liability in connection with the design, management, administration, investment, maintenance, or control of the Settlement Fund Account, notwithstanding the Discovery Reserve, or for any expenses the Settlement Fund Account may incur or any taxes that may be payable by, or otherwise due in connection with, the Settlement Fund Account.

6.5    The Settlement Amount shall be the full, total, and sole monetary contribution required from, and made by or on behalf of, the Shareholder Defendants in connection with the Settlement. The Settlement Amount specifically covers any claims for attorneys' fees and litigation expenses by Plaintiffs and any Service Awards to them. Except as otherwise specified in this Settlement Agreement, notwithstanding the Discovery Reserve, the Settling Parties shall bear their own costs and expenses (including attorneys' fees) incurred

in connection with the Action and effectuating this Settlement Agreement and securing necessary Court orders and approvals with respect to the same.

### Section 7: Payments from the Settlement Fund Account.

7.1    <u>Administration Expenses</u>. After the Final Approval Order becomes Final, Plaintiffs' Counsel may direct the Settlement Administrator in writing to disburse from the Settlement Fund Account: (i) the amount required for payment of any taxes owed on the Settlement Fund Account, (ii) the fees and costs of the Independent Fiduciary, and (iii) amounts for the reasonable expenses of administering the Settlement Fund Account, including (a) reasonable expenses associated with the preparation and filing of all tax reports and tax returns required to be filed; (b) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the Settlement Fund Account; (c) fees charged and expenses incurred by the Financial Institution associated with the administration of the Settlement Fund Account; (d) fees, charges and expenses incurred by the Settlement Administrator, including reasonable costs incurred in preparing and mailing the Class Notice and for other settlement administration and in disbursing funds from the Settlement Fund Account. Upon the Shareholder Defendants' request, Plaintiffs' Counsel shall promptly provide a copy of the written disbursement instructions made to the Settlement Administrator in accordance with this paragraph. If the Settlement Agreement is terminated or does not become Final for any reason, Plaintiffs' Counsel shall be obligated to instruct the Settlement Administrator (or an escrow agent, successor trustee, or other person with authority to disburse the funds), with notice to the Shareholder Defendants, to return all monies, if any, in the Settlement Fund Account,

including any interest earned, to the Shareholder Defendants within ten (10) business days of the earlier of the termination date or the date of the Order upon which the Settlement Agreement does not become Final.

7.2     <u>Disbursements from Settlement Fund</u>. Plaintiffs' Counsel shall be entitled to the following disbursements from the Settlement Fund Account after the Final Approval Order becomes Final as follows:

7.2.1     <u>For Attorneys' Fees and Litigation Expenses</u>. As provided in Section 9.1 herein.

7.2.2     <u>For payment of any Service Awards approved by the Court</u>. Any Service Award granted by the Court.

7.2.3     <u>For the Discovery Reserve</u>. The Settlement Administrator shall hold in reserve $50,000 from the Settlement Fund. To the extent that Plaintiffs request or otherwise demand discovery responses or other information and documentation from the Shareholder Defendants or WGA in connection with their continued prosecution of claims against Defendants PFS and Mr. Paredes, up to $50,000 of any incurred fees and other costs incurred by the Shareholder Defendants and/or WGA in responding to such requests (the "Litigation Discovery Costs") shall be recoverable from the Discovery Reserve. The Settlement Administrator shall promptly reimburse the Shareholder Defendants for their Litigation Discovery Costs up to this amount. Any amount remaining in the Discovery Reserve at the conclusion of this Action (including the conclusion of all claims in this Action against or by Defendants PFS and Mr. Paredes or by any other parties) shall be paid to the Settlement Class.

7.2.4    <u>For Payment to the Settlement Class</u>. Upon the Final Approval Order becoming Final, and after the amounts payable pursuant to Sections 7.1, 7.2.1, 7.2.2, and 7.2.3 have been determined, disbursed, and reserved, the net amount remaining in the Settlement Fund Account (the "Net Proceeds") shall be calculated by the Settlement Administrator. The Settlement Administrator shall implement the Plan of Allocation and, thereby, determine how much of the Net Proceeds should be allocated to each Class Member, using the records available to it. The allocable portion of the Net Proceeds for each Class Member shall be distributed to those Class Members directly by the Settlement Administrator either (a) by check or (b) deposited into an individual retirement account or other eligible retirement plan, at the Class Member's election. Plaintiffs, Plaintiffs' Counsel, Shareholder Defendants, and Shareholder Defendants' Counsel shall have no responsibility or liability for or in connection with the calculations and distributions of the Net Proceeds among and to the members of the Settlement Class.

7.3    <u>Taxation of Settlement Amounts</u>. If required by applicable Internal Revenue Code of 1986, as amended, rules and Treasury Regulations, Class Members will be issued IRS Forms 1099-MISC for the portion of the payments paid to them, and no payroll or tax withholdings will be made from these payments (if the Settlement Administrator determines that is the proper course).

7.3.1    Neither Plaintiffs' Counsel nor Shareholder Defendants' Counsel intend anything contained in this Settlement Agreement to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall anything in this Settlement Agreement be relied upon as such.

## Section 8: Objections to Settlement and Claims Process.

8.1     To be timely, an Objection must be filed with the Court and submitted to the
Settlement Administrator or Class counsel by U.S. Mail or e-mail at least twenty-one (21)
calendar days before the Fairness Hearing. To be valid, Objections must set forth, in clear
and concise terms: (a) the case name and number (*Burnett, et al. v. Prudent Fiduciary
Services, LLC, et al.*, C.A. No. 1:22-cv-00270-RGA/JLH); (b) the name, address, and
telephone number of the objector objecting and, if represented by counsel, of his or her
counsel; (c) the complete basis for objection; (d) a statement of whether the objector
intends to appear at the Fairness Hearing, the name of the objector's counsel; (e) a
statement of whether the objection applies only to the objector, to a specific subset of the
Settlement Class, or to the entire Settlement Class, and (f) copies of all supporting
documents.

8.1.1   Class Members who submit Objections and also wish to speak at the
Fairness Hearing must indicate in their Objection that they intend to appear and speak at
the Final Approval Hearing. The failure to so indicate will constitute a waiver of the right
to appear at the hearing.

8.1.2   Class Members who wish to object to any request for attorneys' fees,
expenses, settlement administrative costs, or Service Awards may do so by following the
same procedure as described above.

8.1.3   If any Settlement Class Member objects to this Settlement and the
Settling Parties, or any of them, wish to conduct discovery from the objector, the Settling
Parties will meet and confer with the objector (through the objector's counsel, if any)

regarding any such discovery sought and any objections thereto. If they are unable to resolve the dispute informally, the Settling Parties will contact the Court for further direction.

8.1.4 The Settlement Administrator is required to notify counsel for all Parties about Objections to the Settlement. A Class Member who does not submit an Objection in the manner set forth above and by the deadline specified above shall be deemed to have waived all objections and will be foreclosed from making any objection to this Settlement, any requested attorneys' fees, expenses, settlement administrative costs, Service Awards, whether by appeal or otherwise, absent a contrary order of the Court.

8.1.5 Responses to Objections shall be filed seven (7) days before the Fairness Hearing. With respect to any Objections not previously filed with this Court, Plaintiffs' Counsel will file any such Objections with the Court upon receipt.

8.2 Calculation of Class Members' Settlement Payments.

8.2.1 If a Class Member who receives notice of this Settlement wishes to dispute the calculations of his or her share of the Settlement, he or she may do so as described below.

8.2.2 If a Class Member believes that the Settlement Administrator does not have accurate information regarding the Class Member's ESOP account, that Class Member may submit additional proof to the Settlement Administrator in writing. Any additional information must be submitted in writing to the Settlement Administrator not later than sixty (60) days after the date the Settlement Administrator first mails the notice of this Settlement. If a person believes that he or she was wrongly excluded from the

Settlement Class, the Settling Parties will endeavor to resolve the issue informally. If they are unable to do so, the Settling Parties will refer the matter to the Court for a final determination on whether relief should be provided to such individual.

### Section 9: Attorneys' Fees and Litigation Expenses and Service Awards.

9.1    Payment of Plaintiffs' Attorneys' Fees and Litigation Expenses and Service Awards. Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees in an amount not exceeding one-third of the Settlement Amount, and for reimbursement of the costs and expenses of the litigation of the Action, including any consultant or counsel retained by Plaintiffs' Counsel to protect the Class's interest. The aggregate amount of the attorneys' fees and litigation expenses shall be paid out of, and not in addition to, the Settlement Amount. Plaintiffs also may apply to the Court for Service Awards to the class representatives, which shall be paid out of, and not in addition to, the Settlement Amount. Plaintiffs' Counsel shall file their application for attorneys' fees and litigation expenses and for Service Awards no later than forty-five (45) days before the Fairness Hearing. Following issuance of a Final Approval Order and the expiration of sufficient time to make it Final, Plaintiffs' Counsel shall be entitled to receive attorneys' fees and litigation expenses and the class representatives shall be entitled to Service Awards from the Settlement Fund Account to the extent awarded by the Court.

9.2    Separate Consideration. The procedure for and allowance or disallowance by the Court of Plaintiffs' application for attorneys' fees and litigation expenses and for Service Awards are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement. Any order or

proceeding relating to any application for attorneys' fees or litigation expenses in an amount less than the amount requested by Plaintiffs' Counsel or request for Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, nor shall it affect or delay the finality of the Final Approval Order approving the Settlement set forth herein. If at the time of any disbursement from the Settlement Fund Account, there shall be a pending application for attorneys' fees or expenses or Service Awards, there shall be reserved in the Settlement Fund Account an amount equal to the amount of the pending application, until such time as the Court shall rule upon such application and such ruling shall become Final.

## Section 10: Termination of the Settlement Agreement.

10.1    <u>Termination</u>. This Settlement Agreement may be terminated by any Settling Party if (i) this Court declines to approve the Settlement by entering the Final Approval Order, or (ii) the Final Approval Order entered by the Court is reversed or modified in any material respect (except for any reversal or modification of the amount of attorneys' fees, costs and expenses, or Service Awards) by any Appeal Proceeding, provided that the terminating party, within fourteen (14) calendar days from the date of such event, furnishes written notice to Plaintiffs' Counsel or Shareholder Defendants' Counsel, as the case may be, of the termination of this Settlement, specifying the terms modified or not approved that give rise to the right to terminate.

10.2    <u>Consequences of Termination of this Settlement Agreement</u>. If this Settlement Agreement is terminated, the following shall occur:

10.2.1    The Action shall for all purposes revert to its status as of the day immediately before the execution of this Settlement Agreement, and within three (3) days of the written notice referenced in Section 10.1, the Settling Parties shall request a scheduling conference with this Court. In any subsequent proceeding, the terms of this Settlement Agreement shall not constitute nor be construed as an admission by any Settling Party, nor be used against any Settling Party, in any manner, whether as evidence or argument.

10.2.2    The Settlement shall be deemed null and void and of no further force and effect.

## Section 11: Returned or Uncashed Settlement Checks.

11.1    <u>Returned Checks</u>. If a Settlement Payment check is returned as undeliverable, the Settlement Administrator will use its discretion to take all steps necessary to locate an updated mailing address for the Class Member, including without limitation, enhanced skip tracing methods before attempting to resend the check.

11.2    <u>Uncashed Checks</u>. If a Class Member has not cashed his or her Settlement Payment check within ninety (90) days of issuance, the Settlement Administrator shall mail that Class Member a letter reminding him or her of the deadline to cash such check and providing information as to how to obtain a reissued check in the event the check was lost, stolen or misplaced.

11.3    Any checks issued to Class Members shall remain valid and negotiable for one hundred fifty (150) days from the date of their issuance and may thereafter automatically be cancelled; and the uncashed funds may be distributed to the Settlement

Class at the same time that funds remaining in the Discovery Reserve, if any, are distributed, according to the Plan of Allocation.

11.4    Administration of the first phase of the Settlement (up to and including the first distribution of funds to Class Members) shall be completed no later than one hundred eighty (180) days after this first phase of the Settlement becomes Final. Upon completion of administration of this Settlement, the Settlement Administrator shall provide written certification of such completion to the Shareholder Defendants' Counsel. The second phase of the Settlement consists of a distribution of any remaining funds in the Settlement Fund Account, including funds in the Discovery Reserve, pursuant to the Plan of Allocation, and a final distribution of any residual funds, if any, to the *cy pres* recipient, the Pension Rights Center. Upon completion of administration of this second phase of the Settlement, the Settlement Administrator shall again provide written certification of such completion to the Shareholder Defendants' Counsel.

## Section 12: Miscellaneous Provisions.

12.1    <u>Continuing Jurisdiction of this Court</u>. This Court shall retain jurisdiction over the Action to resolve any dispute that may arise regarding this Settlement Agreement, the Class Notice, the Final Approval Order, or any other matters relating thereto, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement.

12.2    <u>Non-disparagement</u>. Upon execution of this Settlement Agreement, the Named Plaintiffs and their representatives shall immediately remove and shall not make in the future, references to the Plan, this Settlement Agreement, any Shareholder Defendant,

and/or WGA (and in each respect any affiliates), in any communication, including online and social media platform, chatrooms, websites, external mailings, publications, marketing materials, e-mails, and generally any mode of communication that is in their control, that disparages, defames, sullies or compromises the goodwill, name, brand, or reputation of the Shareholder Defendants and/or WGA (and in each respect any affiliates). The Named Plaintiffs and their representatives agree to refrain from referencing the Plan, this Settlement Agreement, any Shareholder Defendant and/or WGA (and in each respect any affiliates), in a manner inconsistent with the Settling Parties' agreed upon messaging as it relates to the Shareholder Defendants and their settlement of the Action, or that disparages the Shareholder Defendants and/or WGA (and in each respect any affiliates), and shall represent and warrant in writing (e-mail to suffice) to the Shareholder Defendants that such actions have been taken and fulfilled in satisfaction of their obligations under this provision. This provision shall not prevent the Plaintiffs from litigating their claims against PFS and Mr. Paredes, and the Settling Parties acknowledge that the litigating of such claims by Plaintiffs will not involve characterizing the Shareholders Defendants' settlement of the Action in a manner inconsistent with this Settlement Agreement or disparage the Shareholder Defendants and/or WGA and its affiliates. This Section 12.2 shall not be construed to require the spoliation of evidence that falls within the Plaintiffs' preservation obligations in this Action. To the extent the Shareholder Defendants become aware of or otherwise seek removal of public statements made by the Named Plaintiffs and/or their representatives following the date of this Settlement Agreement and prohibited by this Section 12.2, the Shareholder Defendants shall identify the text and location of such

statements by informing Plaintiffs' Counsel and will provide seven (7) days for the Named Plaintiff and/or its representatives to recant and, if in written form, remove such prohibited statements.

Annexed hereto as Exhibit 2 is a non-exhaustive list that identifies the Settling Parties' agreement with respect to guidance for obligations under this Section 12.2. To the extent the Named Plaintiffs or their representatives have made contrary or inconsistent statements, then such statements are to be immediately removed in accordance with this Section 12.2 to the extent that the removal of such statements is consistent with Plaintiffs' preservation obligations and does not require Plaintiffs to amend or correct prior pleadings filed in this Action. The Named Plaintiffs and their representatives shall not make statements contrary to the guidance set forth in Exhibit 2 on or after the date of this Settlement Agreement and engaging in such action will be considered a breach of Section 12.2. On or after entry of an order approving the Settlement Agreement on a preliminary basis, the Settling Parties may issue a joint press release.

12.3    <u>Nondisclosure</u>. Plaintiffs, including without limitation, Plaintiffs' Counsel and other representatives, shall not engage in any communications, make any announcements, or issue external third-party communications about this Settlement Agreement or the corresponding Settlement Term Sheet dated April 18, 2024, including its existence and its terms, prior to this Settlement Agreement being filed with this Court, without the prior written consent of the Shareholder Defendants. Notwithstanding anything to the contrary herein, this provision is not intended to, nor shall it, preclude (i) confidential attorney-client communications between Plaintiffs and Plaintiffs' Counsel concerning this

Settlement Agreement, or (ii) the prosecution of Plaintiffs' claims against PFS and Mr. Paredes, so long as such statements, representations or defenses do not disparage, defame, falsely accuse, misrepresent, and/or have similar effect of maligning the Shareholder Defendants and/or WGA.

If prior to execution of this Settlement Agreement, its terms or the corresponding Settlement Term Sheet dated April 18, 2024, or the terms hereof become public in any manner without the Shareholder Defendants' prior written consent as a result of direct or indirect actions or conduct by the Plaintiffs and/or Plaintiffs' Counsel, it shall constitute a material breach of this Settlement Agreement or the corresponding Settlement Term Sheet dated April 18, 2024, and the Shareholder Defendants may elect to terminate this Settlement Agreement, in their sole discretion, and reserve all rights, claims and causes of action in connection with such breach.

12.4    Cooperation. Plaintiffs and the Shareholder Defendants shall work cooperatively and in good faith to ensure that, to the extent Plaintiffs make any requests or demands for discovery, or other information and documentation from the Shareholder Defendants or WGA in connection with their continued prosecution of the other Defendants in the Action, that such requests or demands will not be unreasonable or burdensome.

12.5    Complete Resolution. The Settling Parties intend the Settlement of the Action to be the full, final, and complete resolution of the Released Claims amongst the Settling Parties. The Settling Parties agree that they and their respective counsel shall not make any applications for sanctions, pursuant to Rule 11 of the Federal Rules of Civil

Procedure or other court rule or any statute, with respect to any claim or defense in the Action. Nothing herein shall be construed as limiting the Shareholder Defendants' ability to seek coverage from their insurance carriers for coverage of the Settlement Amount and/or their attorneys' fees and costs and take all necessary actions to prosecute such claims, including filing a lawsuit.

12.6    <u>Governing Law</u>. The construction, interpretation, operation, effect and validity of this Settlement Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of Delaware, without giving effect to the choice of law provisions thereof, except to the extent the laws of the United States, including federal common law and ERISA, governs any matter set forth herein, in which case federal law shall govern.

12.7    <u>Severability</u>. The provisions of this Settlement Agreement are not severable, unless, and to the extent, it is expressly stated otherwise in this Settlement Agreement.

12.8    <u>Amendment of Settlement Agreement</u>. Before the entry of the Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following entry of the Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties and approved by the Court. Any such amendments or modifications may be made without notice to the Class Members unless notice is required by law or the Court.

12.9    <u>Waiver</u>. The provisions of this Settlement Agreement may be waived only in writing executed by the waiving party. The waiver by any Settling Party of any breach

of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

12.10    <u>Retention of Privilege</u>. Nothing in this Settlement Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

12.11    <u>Construction</u>. None of the Settling Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

12.12    <u>Principles of Interpretation</u>. The following principles of interpretation apply to this Settlement Agreement:

12.12.1    <u>Headings</u>. The headings of this Settlement Agreement are for purposes of reference only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

12.13    <u>Additional Assurances</u>. Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver to each other required documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement, so long as such documents and actions are consistent with the terms

of this Settlement Agreement and do not effectively result in a material modification of the terms of this Settlement Agreement.

12.14   Survival. All representations, warranties, and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement.

12.15   Entire Agreement. All of the recitals and Exhibits to this Settlement Agreement are material and integral parts hereof and are, unless specified otherwise, fully incorporated herein by this reference. The Settling Parties acknowledge that this Settlement Agreement specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing by any of the Settling Parties regarding the issues of the Settlement.

12.16   Counterparts. This Settlement Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument. Signatures sent by facsimile or by e-mail "PDF" shall be deemed originals.

12.17   Successors and Assigns. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

12.18   Binding Effect. This Settlement Agreement shall be binding when signed, but the Settlement shall be effective only on the condition that the Court approves this Settlement Agreement and satisfaction of Section 2 herein.

12.19   No Prior Assignment. The Settling Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim,

demand, action, cause of action, or right released and discharged in this Settlement Agreement.

12.20  <u>Notices</u>. Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), or delivered by reputable express overnight courier:

<u>IF TO PLAINTIFFS</u>:

Carmella P. Keener
R. Grant Dick IV
Cooch and Taylor, P.A.
1000 N. West St., Suite 1500
P.O. Box 1680
Wilmington, DE 19899-1680
Telephone: (302) 984-3816
ckeener@coochtaylor.com
gdick@coochtaylor.com

Peter K. Stris
Rachana A. Pathak
Victor O'Connell
John Stokes
Stris & Maher LLP
777 S. Figueroa St., Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
pstris@stris.com
rpathak@stris.com
voconnell@stris.com
jstokes@stris.com

Michelle C. Yau
Daniel R. Sutter
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave, NW

Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Eleanor Frisch
Cohen Milstein Sellers & Toll PLLC
400 South 4th Street # 401-29
Minneapolis, MN 55415
Telephone: (612) 807-1575
efrisch@cohenmilstein.com

and

Paul J. Lukas
Brock J. Specht
Laura A. Farley
Nichols Kaster, PLLP
4700 IDS Center, 80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
lukas@nka.com
bspecht@nka.com
lfarley@nka.com

IF TO SHAREHOLDER DEFENDANTS:

John H. Newcomer, Jr.
Morris & James, LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
Telephone: (302) 888-6975
Jnewcomer@morrisjames.com

and

David R. Johanson
Douglas A. Rubel
Hawkins Parnell & Young, LLP
1776 Second Street
Napa, California 94559

(707) 299-2470
djohanson@hpylaw.com
drubel@hpylaw.com

### **Section 13: Summary of Timeline.**

13.1. The Settling Parties will propose to this Court that the order granting preliminary approval of the Settlement (Exhibit 1) should include the following timeline regarding settlement:

| | |
|---|---|
| Last day to provide the notices required by 28 U.S.C. § 1715 to relevant state and federal officials | 10 days after filing of Preliminary Approval Motion |
| Last day for WGA to send Settlement Administrator Class data for notice distribution | 10 days after the "Preliminary Approval Date", i.e., entry of Preliminary Approval Order |
| Last day to send Class Notice to Settlement Class Members | 30 days after the Preliminary Approval Date |
| Last day for Independent Fiduciary to provide determination to Parties | 21 days before Deadline to file Final Approval Motion |
| Last day for Plaintiffs' Counsel to file motion for final approval of Settlement and motion for attorneys' fees, expenses and Service Awards | 45 days before the Fairness Hearing |
| Last day for Class Members to file objections and to file notices of intent to appear at the Fairness Hearing | 21 days before the Fairness Hearing |
| Last day for Plaintiffs' Counsel to file responses to Objections | 7 days before the Fairness Hearing |
| Hearing on motion for final approval of Settlement and application for attorneys' fees and costs (Fairness Hearing) | More than 90 days after the Preliminary Approval Date |

*Signature Page to Follow*

**AGREED TO BY THE SETTLING PARTIES** as of July 8, 2024.

**PLAINTIFFS:**

_____

DAVID BURNETT, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee Stock Ownership Plan


_____

DAVID NELSON, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee Stock Ownership Plan

SHAREHOLDER DEFENDANTS:


_____

James K. Neff


_____

Carmit P. Neff

James K. Neff Revocable Trust Dated 11/15/12:

By: _____
    Name: _____
    Title: Trustee

| Last day to send Class Notice to Settlement Class Members | 30 days after the Preliminary Approval Date |
|---|---|
| Last day for Independent Fiduciary to provide determination to Parties | 21 days before Deadline to file Final Approval Motion |
| Last day for Plaintiffs' Counsel to file motion for final approval of Settlement and motion for attorneys' fees, expenses and Service Awards | 45 days before the Fairness Hearing |
| Last day for Class Members to file objections and to file notices of intent to appear at the Fairness Hearing | 21 days before the Fairness Hearing |
| Last day for Plaintiffs' Counsel to file responses to Objections | 7 days before the Fairness Hearing |
| Hearing on motion for final approval of Settlement and application for attorneys' fees and costs (Fairness Hearing) | More than 90 days after the Preliminary Approval Date |

*Signature Page to Follow*

AGREED TO BY THE SETTLING PARTIES as of July 8, 2024.

PLAINTIFFS:

_____
DAVID BURNETT, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee Stock Ownership Plan

_____
DAVID NELSON, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee Stock Ownership Plan

AGREED TO BY THE SETTLING PARTIES as of July 8, 2024.

PLAINTIFFS:

_____
DAVID BURNETT, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee Stock Ownership Plan

_____
DAVID NELSON, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee Stock Ownership Plan

SHAREHOLDER DEFENDANTS:

_____
James Neff
James K. Neff

_____
Carmit Neff
Carmit P. Neff

James K. Neff Revocable Trust Dated 11/15/12:

By: James Neff
_____
Name: James Neff
_____
Title: Trustee

Carmit P. Neff Revocable Trust Dated 11/15/12:

By: _____

Name: _____

Title:  Trustee


Kelly S. Neff Trust Dated 1/1/10:

By: _____

Name:   James Neff

Title:  Trustee


Danielle J. Neff Trust Dated 1/1/10:

By: _____

Name:   James Neff

Title:  Trustee


WGA Trust Dated 8/16/13

By: _____

Name:   James Neff

Title:  Trustee

Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID BURNETT and DAVID NELSON as representatives of a class of similarly situated persons, and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> PRUDENT FIDUCIARY SERVICES, LLC, MIGUEL PARADES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, KELLY S. NEFF TRUST DATED 1/1/10, DANIELLE J. NEFF TRUST DATED 1/1/10, and WGA TRUST DATED 8/16/13, <br><br> Defendants. | C.A. No. 1:22-cv-00270-RGA/JLH |

## [PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

Plaintiffs David Burnett and David Nelson, as representatives of a class of similarly situated persons, and on behalf of the Western Global Airlines, Inc. Employee Stock Ownership Plan and related Trust (collectively, the "Plaintiffs"), have moved, pursuant to Federal Rule of Civil Procedure 23, for an order preliminarily approving the settlement of this Action and for certification of a settlement class, in accordance with the Class Action Settlement Agreement dated July 8, 2024 (the "Settlement Agreement"), which sets forth

the terms and conditions of a proposed settlement of this Action. The Court, having read and considered the Settlement Agreement, the Motion, and the exhibits thereto, HEREBY ORDERS THAT:

1.    **Settlement**. Plaintiffs, on behalf of themselves and all members of the Settlement Class, and Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13 (collectively, the "Shareholder Defendants" and, together with the Plaintiffs, the "Settling Parties"), have negotiated a full settlement of the claims asserted against the Shareholder Defendants to avoid the expense, uncertainties, and burden of protracted litigation, and to fully and finally resolve the Released Claims (as defined in the Settlement Agreement) against the Shareholder Defendants and the other Releasees (as defined in the Settlement Agreement).

2.    **Definitions.** This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used but not defined herein shall have the same meanings as in the Settlement Agreement.

3.    **Jurisdiction and Venue**. The Court has jurisdiction over the subject matter of this Action and over all parties to this Action, including all Class Members, and venue in the Court is proper. The Court has subject-matter jurisdiction over the claims asserted in the Action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), including, without limitation, jurisdiction to approve the proposed Settlement Agreement and all exhibits attached thereto, grant final certification of the Class for settlement purposes, settle and

release all claims arising out of the transactions alleged in this Action, and dismiss the Action with prejudice as between Plaintiffs and the Shareholder Defendants, and issue related orders. Additionally, venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. 1132(e)(2).

4.    **Preliminary Approval.** The Court hereby preliminarily approves the Settlement Agreement as fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing described below. The Court finds on a preliminary basis that the Settlement Agreement falls within the range of reasonableness and was the product of informed, good-faith, arm's-length negotiations between the Settling Parties and their counsel, and therefore meets the requirements for preliminary approval and is sufficient to warrant sending notice to the Class.

5.    **Settlement Class.** The Court certifies for settlement purposes only the Settlement Class as a non-opt out class under Federal Rule of Civil procedure 23(b)(1) consisting of all participants and beneficiaries of the Plan at any time since its inception, excluding Defendants, their family members or beneficiaries. The members of the Settlement Class are the "Class Members." As a non-opt out Class, the proposed Class Members shall have no right to exclude themselves from the Class, the Settlement, or the Final Judgment. If the Court finally approves the Settlement, each proposed Class Member will be a Settlement Class Member and forever bound by the Settlement and Final Judgment.

6.    **Class Representatives and Class Counsel.** The Court appoints Plaintiffs David Burnett and David Nelson as Class Representatives, and the law firms Cooch and

Taylor, PA, Stris & Maher LLP, Cohen Milstein Sellers & Toll PLLC, and Nichols Kaster PLLP as Class Counsel. The Court preliminarily finds that the Representative Plaintiffs are similarly situated to absent Class Members and therefore typical of the Class, and that they will be adequate class representatives. Plaintiffs' Counsel, whom the Court finds are experienced and adequate counsel for purposes of this Settlement approval proceeding, are hereby designated as Class Counsel.

7.      **Final Approval Hearing.** A hearing (the "Fairness Hearing") shall be held before the Court, on [DATE], 2024, at 2:00 p.m., at the United States District Court for the District of Delaware, in the courtroom of Judge Richard G. Andrews, located at the J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, DE 19801, to determine, among other things: (i) whether the proposed Settlement of this action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; (ii) whether a Final Approval Order as provided in Paragraph 1.8 of the Settlement Agreement should be entered; (iii) whether the Parties should be bound by the Releases set forth in Section 3 of the Settlement Agreement; and (iv) any amount of fees and expenses that should be awarded to Class Counsel and any Service Award to the Class Representatives for their representation of the Settlement Class. The Parties shall include the date of the Fairness Hearing in the Class Notice to be disseminated to the Settlement Class.

8.      **CAFA Notice.** The Shareholder Defendants shall confirm in writing that the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) ("CAFA"), as

specified by 28 U.S.C. § 1715, were sent within ten (10) days of the filing of the Motion for Preliminary Approval.

        9.    **Class Notice**. The Court approves the form and substance of the proposed Class Notice, attached to the Motion for Preliminary Approval as Exhibit [●], which it finds constitutes valid, due, and sufficient notice to all persons entitled to notice. The Court further finds that the form and content of the Class Notice meet the requirements of Rule 23 and due process, including 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the proposed notice plan represents the best notice practicable under the circumstances and is reasonably calculated, under all the circumstances, to apprise potential Class Members of the pendency of this Action, the terms of the Settlement Agreement, and of their right to object to the proposed Settlement, any requested attorneys' fees, reimbursement of litigation or settlement administration expenses, and service awards, as well as Class Members' right to appear at the Fairness Hearing.

        10.    **Settlement Administrator**. The Court appoints [NAME] ("Settlement Administrator") to supervise and administer the notice procedure as more fully set forth below:

        a.    The Shareholder Defendants shall cause Western Global Airlines, Inc. ("WGA") to provide the names and last known addresses of the Settlement Class Members in electronic format ("the Class Contact List"), within ten (10) days of the entry of this Order

        b.    Within thirty (30) days of the entry of this Order, Class Counsel or the Settlement Administrator shall cause the Class Notice to be disseminated to the Class Members and shall post the Class Notice, the operative

Second Amended Complaint in this action, and contact information for the Settlement Administrator, on a website for the Settlement Class, as set forth in the Settlement Agreement;

c.  The Class Notice shall be substantially in the form of Exhibit [●] to the Motion for Preliminary Approval; however, Class Counsel and the Settlement Administrator shall have discretion to make non-material edits to the format of the Class Notice that they deem reasonable to ensure an efficient notice program that minimizes mailing or administration costs;

d.  Following the issuance of the Class Notice, the Settlement Administrator shall provide written confirmation of such issuance in a declaration to be filed as set forth in the Settlement Agreement;

e.  The Shareholder Defendants shall cause WGA to provide the information (in electronic format) set forth in the Settlement Agreement that is reasonably necessary to carry out the plan of allocation within twenty-one (21) days of the entry of the Preliminary Approval Order; and

f.  The Settlement Administrator shall otherwise carry out its duties as set forth in the Settlement Agreement.

11.    **Independent Fiduciary**. Plaintiffs' Counsel shall promptly select a qualified Independent Fiduciary to review the Settlement on behalf of the Plan as required under and pursuant to the Settlement Agreement. The Independent Fiduciary shall notify the Shareholder Defendants' Counsel and Plaintiffs' Counsel in writing of its determination as to whether the Settlement meets the requirements of Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation." 68 Fed. Reg. 75,632. Such notification shall be delivered at least twenty-one (21) calendar days before the deadline for Class Counsel to file the Final Approval Motion.

12.    **Objections**. Any Class Member may object to the proposed Settlement or to the requested attorneys' fees, expenses, and Service Awards, by filing a written objection with the Clerk of Court, United States District Court for the District of Delaware at least

twenty-one (21) calendar days before the Fairness Hearing. A copy of the Objection must also be mailed to the Settlement Administrator and Class Counsel so that it is received on or before fifteen (21) days before the Fairness Hearing. To be valid, the Objection must set forth, in clear and concise terms: (a) the case name and number (*Burnett, et al. v. Prudent Fiduciary Services, LLC, et al.*, C.A. No. 1:22-cv-00270-RGA/JLH); (b) the name, address, and telephone number of the objector objecting and, if represented by counsel, of his or her counsel; (c) the complete basis for Objection; (d) a statement of whether the objector intends to appear at the Fairness Hearing, and the name of the objector's counsel; (e) a statement of whether the Objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and (f) copies of all supporting documents. Any Class Member who does not make his or her Objection in this manner shall be deemed to have waived such Objection and shall not be permitted to object to any terms of the Settlement at the Fairness Hearing, and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, and the award of attorneys' fees and expenses to Class Counsel, and the payment of a Service Award to the Class Representatives, unless otherwise ordered by the Court. Responses to objections shall be filed at least seven (7) days before the Fairness Hearing.

13.   **Appearance of Objectors at Fairness Hearing**. Any Class Member who files and serves a written Objection in accordance with this Order may appear, in person or as represented by counsel, at the Fairness Hearing, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, if the objector also:

(a) files with the Clerk of the Court a notice of intention to appear at the Fairness Hearing by the Objection Deadline ("Notice of Intention to Appear"); and (b) serves the Notice of Intention to Appear on the Settlement Administrator, Class Counsel and the Shareholder Defendants' Counsel by the Objection Deadline. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector will present to the Court at the Fairness Hearing. Any Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Settlement Agreement and this Order shall be deemed to have waived their right to appear at the Fairness Hearing.

14.    **Service of Motion for Final Approval**. The motion in support of final approval of the Settlement shall be filed no later than forty-five (45) days prior to the Fairness Hearing; any Objections to the Settlement shall be filed no later than twenty-one (21) days prior to the Fairness Hearing; and any response to any objections shall be filed no later than seven (7) days prior to the Fairness Hearing.

15.    **Fees, Expenses, and Awards**. Class Counsel's application for attorneys' fees and expenses and Class Representative Service Awards shall be filed and served no later than forty-five (45) days prior to the Fairness Hearing; any objections shall be filed no later than twenty-one (21) days prior to the Fairness Hearing; and any response to any objections shall be filed no later than seven (7) days prior to the Fairness Hearing. The Shareholder Defendants shall not have any responsibility for any application for attorneys' fees and expenses or Service Awards request submitted by Class Counsel, and such matters will be considered separately from the fairness, and reasonableness of the Settlement. The

Court's approval or disapproval of the Settlement, and the effectiveness of the Settlement

Agreement, shall not be contingent on the Court's approval or disapproval of the requested

attorneys' fees, expenses, or Service Awards. At or after the Fairness Hearing, the Court

shall determine whether any application for attorneys' fees and expenses, and any Service

Awards to the Class Representatives for their representation of the Settlement Class, should

be approved.

16.  **Termination of Settlement**. In the event the Court does not grant final

approval to the Settlement Agreement, or for any reason the Parties fail to obtain a Final

Approval Order and Final Judgment as contemplated in the Settlement Agreement, or the

Settlement Agreement is terminated pursuant to its terms for any reason or the Effective

Date does not occur for any reason, then the following shall apply:

a.  All orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force and effect whatsoever, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in this or any other proceeding;

b.  The conditional certification of the Class pursuant to this Order shall be vacated automatically, and the Action shall proceed as though the Class had never been certified pursuant to the Settlement Agreement and such findings had never been made;

c.  Nothing contained in this Order is, or may be construed as, a presumption, concession or admission by or against the Shareholder Defendants or the Representative Plaintiffs or the Class of any default, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or proceedings, whether civil, criminal or administrative, including, but not limited to, factual or legal matters relating to any effort to certify the Action as a class action;

d.  Nothing in this Order or pertaining to the Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any other

proceeding in this case, including, but not limited to, motions or proceedings seeking treatment of the Action as a class action;

e.      Nothing in this Order or pertaining to the Settlement Agreement is, or may be construed as, a presumption, concession or admission by or against the Shareholder Defendants that the Action meets the requisites for certification as a class action under federal law; and

f.      All of the Court's prior Orders having nothing whatsoever to do with the Settlement shall, subject to this Order, remain in force and effect, except that the Parties shall submit to the Court, jointly if they reach agreement thereon or separately if no such agreement is reached, a proposed new scheduling and case management order for the remaining discovery and other proceedings in this civil action.

17.      **Use of Order**. Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Shareholder Defendants. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this Action. In no event shall this Order, the fact that a settlement was reached, the Settlement Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in this action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties, and only the Parties, in a proceeding to enforce the Settlement Agreement.

18.      **No Merits Determination**. By entering this Order, the Court does not make any determination as to the merits of this case.

19.    **Alteration of Exhibits**. Class Counsel and the Shareholder Defendants' Counsel are hereby authorized to use all reasonable procedures to further the administration of the Settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, non-substantive changes to the form of the Notice, Exclusion Form, and other exhibits that they jointly agree are reasonable or necessary such as the inclusion of specific dates or other modifications.

20.    **Injunction**. Pending the Fairness Hearing, the Court hereby enjoins any Class Member from instituting, asserting, or prosecuting any of the Released Claims against the Shareholder Defendants in any federal or state court or any other forum.

21.    **Continuing Jurisdiction**. The Court retains jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement and the Settlement.

## IT IS SO ORDERED

**Exhibit 2**
**Section 12.2: Non-Disparagement**

**The below list identifies the Settling Parties' joint agreement with respect to a non-exhaustive yet instructional list to assist in satisfying Plaintiffs' and their representatives' obligations under Section 12.2 of the Settlement Agreement and in no event shall the below limit Plaintiffs' or their representatives' obligations thereunder. To the extent that Plaintiffs or their representatives have made statements contrary or otherwise inconsistent with the below, or make them after the date of entry into the Settlement Agreement, such statements are to be immediately removed and/or recanted in accordance with Section 12.2 of the Settlement Agreement.**

**This list is subject to Fed. R. Evid. 408 and Plaintiffs have accepted certain factual representations made by the Shareholder Defendants. <u>No part of this list is an admission with respect to Plaintiffs' claims against the Trustee Defendants.</u>**

1. The Majority Shareholders did not "pick the trustee to represent the ESOP." The ESOP Trustee was selected by a Committee that excluded the Shareholder Defendants.

2. The ESOP was an additional retirement benefit that did not permit or require employee contributions. The ESOP did not replace Western Global Airlines, Inc. ("WGA" or "Western Global") employees' existing 401(k) plan.

3. Western Global Airlines' 401(k) retirement savings program (the "Western Global Airlines 401(k) Profit Sharing Plan") is entirely separate from the ESOP, was not affected by the ESOP, and has remained in place with a company cash contribution match.

4. The ESOP participants did not purchase WGA shares of company stock, such shares were granted at no out of pocket cost from WGA employees.

5. The ESOP participants were not required or forced to purchase, and did not purchase, WGA shares of company stock through their accounts in the Western Global Airlines 401(k) Program which does not contain shares of WGA company stock and does not permit investment in WGA shares of company stock.

6. The ESOP borrowed from WGA all of the funds obligated by the ESOP Note, both the principal and interest. The ESOP Note provided that neither the ESOP nor the ESOP participants expended cash to satisfy the loan obligations.

7. Western Global's debt servicing obligations were offset by the elimination of $40 million of annual airplane/engine lease payments that WGA had been paying the Shareholder Defendants in the years prior to the ESOP plus the tax benefits to WGA from the contributions and dividends that WGA made to the ESOP.

8. No employee retirement contributions were used to address WGA debt service obligations.

9. Publicly available data reflects that WGA has fully complied with all safety standards and regulations and was granted extended maintenance intervals by the Federal Aviation Administration and unlimited fleet expansion authority by the Department of Transportation. Plaintiffs have encountered no evidence of any issues with WGA's safety record and no evidence that WGA violated or breached safety standards or regulations.

10. Neither Jim Neff nor any Shareholder Defendant has ever purchased or otherwise held at any point in time any Western Global bonds.

1

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID BURNETT and DAVID NELSON as representatives of a class of similarly situated persons, and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>               Plaintiffs,<br><br>v.<br><br>PRUDENT FIDUCIARY SERVICES, LLC, MIGUEL PAREDES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, KELLY S. NEFF TRUST DATED 1/1/10, DANIELLE J. NEFF TRUST DATED 1/1/10, and WGA TRUST DATED 8/16/13,<br><br>               Defendants. | C.A. No. 1:22-cv-00270-RGA/JLH |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (this "Settlement Agreement") is entered into by and among Plaintiffs David Burnett and David Nelson (the "Named Plaintiffs"), individually and as representatives of a proposed class of similarly situated persons and on behalf of the Western Global Airlines, Inc. Employee Stock Ownership Plan and related Trust (collectively, the "Plaintiffs"), and Defendants Prudent Fiduciary Services, LLC, and Miguel Paredes (collectively, the "Trustee Defendants" and, together with the Plaintiffs, the "Settling Parties").

## RECITALS

WHEREAS, prior to and until October 22, 2020, Western Global Airlines, Inc., a Delaware corporation, formerly Western Global Airlines, LLC (referred to herein, along with Western Global Airlines, Inc. and Western Global Airlines Holdings Inc., as "WGA") was a closely held company;

WHEREAS, in June 2020, WGA established the Western Global Airlines, Inc. Employee Stock Ownership Plan and associated Trust (the "ESOP");

WHEREAS, in June 2020, the Mr. Paredes was selected to serve as the trustee of the ESOP;

WHEREAS, in October 2020 Mr. Paredes authorized the ESOP to purchase 37.5% of the stock in WGA for the price of $510 million (the "ESOP Transaction");

WHEREAS, the Settling Parties dispute whether the ESOP paid more than fair market value for the shares of WGA stock that it purchased through the ESOP Transaction;

WHEREAS, on February 28, 2022, Plaintiffs, as representatives of a class of similarly situated persons and on behalf of the ESOP, filed a class action complaint against the Defendants in the United States District Court for the District of Delaware, C.A. No. 1:22-cv-00270-RGA/JLH (the "Action") alleging that Defendants violated ERISA, 29 U.S.C. §§ 1001 *et seq.*, in connection with the ESOP Transaction;

WHEREAS, on October 20, 2023, Plaintiffs filed the Amended Class Action Complaint in the Action [ECF No. 86, the "Amended Complaint"], which is now the operative pleading in the Action;

WHEREAS, on November 3, 2023, the Trustee Defendants filed an Answer to the Amended Complaint [ECF No. 105], denying the allegations of the Amended Complaint, any and all liability thereunder, and asserting affirmative defenses;

WHEREAS, the Trustee Defendants continue to deny all material allegations in the Amended Complaint and, more generally, deny any wrongdoing or liability with respect to the ESOP or the ESOP Transaction;

WHEREAS, on May 14, 2024, and July 29, 2024, the Settling Parties participated in full-day, arm's-length mediation sessions with Robert A. Meyer of JAMS and at the conclusion of the July 29 session reached an agreement in principle regarding a settlement of the claims against the Trustee Defendants in the Action; and

WHEREAS, this Settlement Agreement embodies the Settling Parties' agreement to compromise disputed claims, and nothing in this Settlement Agreement is intended to, or may be interpreted or deemed to, constitute any finding or admission of liability, fault, responsibility, guilt, or wrongdoing of any kind by the Trustee Defendants, whether under ERISA or any other statute, regulation, case law, common law doctrine, or other legal authority, or give rise to any inference of liability in the Action or any other proceeding, judicial process or investigation;

NOW, THEREFORE, it is agreed by the Settling Parties, in consideration of the promises, covenants, and agreements herein stated, and for other good and valuable consideration, the receipt and sufficiency of which is duly acknowledged by each of the Settling Parties, that all of the claims asserted against the Trustee Defendants in the Action, and all claims that could have been asserted therein, shall be settled and dismissed on the

merits and with prejudice in accordance with the following terms and conditions, all subject to the approval of the Court in the Action.

### Section 1: Additional Definitions.

As used in this Settlement Agreement, the following terms have the meanings set forth below, unless a section of this Settlement Agreement specifically provides otherwise. Capitalized terms used in this Settlement Agreement, but not defined in this Section 1, will have the meaning ascribed to them elsewhere in this Settlement Agreement.

1.1     "Class Member" shall mean a member of the Settlement Class.

1.2     "Class Notice" shall mean the form of notice of the Settlement provided to the Settlement Class that is approved by the Court and in compliance with Rule 23 of the Federal Rules of Civil Procedure. The Settling Parties shall make good-faith efforts to reasonably agree on the language of the Class Notice. If, for any reason, the Settling Parties are unable to agree in good faith upon the language of the Class Notice, then the matter shall be resolved by the Court in a manner otherwise consistent with the terms of this Settlement Agreement.

1.3     "Court" shall refer to the United States District Court for the District of Delaware.

1.4     "Fairness Hearing" shall mean the hearing at which this Court will consider whether the Settlement should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure.

1.5     "Final" shall mean: (i) the time has expired to file an appeal, motion for reargument or reconsideration, motion for rehearing, petition for a writ of certiorari or other

writ ("Appeal Proceeding") with respect to a judicial ruling or order with no such Appeal Proceeding having been filed; or (ii) if an Appeal Proceeding has been filed with respect to such judicial ruling or order, (a) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (b) such Appeal Proceeding has been denied or dismissed with no further right of review.

1.6        "Final Approval Order" shall mean a final judgment and order of dismissal of claims against the Trustee Defendants, which is to be entered by this Court finally approving the terms of this Settlement Agreement and dismissing the Action with prejudice against the Trustee Defendants. Absent any Appeal Proceeding, the Final Approval Order shall be Final thirty (30) days after its entry by the Court.

1.7        "Objection Deadline" shall mean the date by which all objections to the Settlement ("Objections") and all written notices of intent to appear as described in Section 8 below must be filed and submitted in the manner described in Section 8. .

1.8        "Plaintiffs' Counsel" shall mean Cooch and Taylor, PA, Stris & Maher LLP, Cohen Milstein Sellers & Toll PLLC, and Nichols Kaster PLLP.

1.9        "Plan" shall mean Western Global Airlines, Inc. Employee Stock Ownership Plan and Trust.

1.10        "Plan of Allocation" shall mean the plan for the determination and distribution of the proceeds of the Settlement Amount (net of any attorneys' fee and expense awards and Service Awards approved by the Court and any other costs or expenses authorized by this Settlement Agreement or Court Order) as proposed by Plaintiffs' Counsel and subject to approval of this Court.

1.11    "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement substantially in the form attached as Exhibit 1 hereto.

1.12    "Settlement" shall mean the settlement to be consummated under this Settlement Agreement.

1.13    "Settlement Administrator" shall mean a third-party administrator chosen by Plaintiffs' Counsel, and subject to the Court's approval, who will be responsible for, among other things, (a) preparing and disseminating the Class Notice to Class Members; (b) tracking returned Class Notice packets or settlement payments; (c) sending cure letters and making follow-up telephone calls to Class Members, if necessary; (d) notifying the Settling Parties of timely, untimely and deficient Objections received; (e) calculating the amounts due to each Class Member pursuant to this Settlement and the Plan of Allocation; (f) notifying the Settling Parties of, and helping to resolve, any disputes regarding claims by the Class Members; (g) providing settlement payments, along with IRS Forms 1099-MISC, to the Class Members and to the taxing authorities if required under applicable Internal Revenue Code of 1986, as amended, rules and Treasury Regulations; (h) utilizing mail-forwarding information and/or skip tracing methods, as reasonable, to update the Settlement Class mailing list and taking steps to send Class Notice packets to current mailing and/or e-mail addresses; and (i) performing such other duties as are described herein.

1.14    "Settlement Amount" shall mean $7,000,000.

1.15    "Settlement Class" shall mean the non-opt out class under Federal Rule of Civil Procedure 23(b)(1) consisting of all participants and beneficiaries of the Plan at any time since its inception, excluding Defendants, their family members or beneficiaries.

1.16    "Settling Parties" means Plaintiffs and the Trustee Defendants, and a "Party" means any of the Settling Parties.

1.17    "Service Awards" shall mean the amounts requested by Plaintiffs to be awarded to them in recognition of their service as class representatives.

1.18    "Shareholder Defendants" shall mean Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13.

1.19    "Trustee Defendants" shall mean Miguel Paredes and Prudent Fiduciary Services, LLC.

1.20    "Trustee Defendants' Counsel" shall mean Chipman Brown Cicero & Cole LLP, and Groom Law Group, Chartered.

## Section 2: Conditions to Finality of Settlement.

The Settlement shall be unconditional and Final when each of the following conditions in Sections 2.1 through 2.5 have been satisfied. The Settling Parties will use reasonable, good faith efforts to cause each of the conditions to occur within the times indicated.

2.1    Condition #1: Class Certification for Purposes of Settlement. This Court shall certify the Settlement Class as a non-opt-out class for settlement purposes pursuant

to Rule 23(a)(l)–(4), 23(b)(1) and/or 23(e) of the Federal Rules of Civil Procedure, with Plaintiffs as the named class representatives and Plaintiffs' Counsel as Class counsel for Plaintiffs and the Settlement Class. The Settling Parties agree to certification of the Settlement Class for settlement purposes only, and the Trustee Defendants agree not to challenge certification of the Settlement Class for settlement purposes only. The Settling Parties also agree that if the Settlement does not become Final, then no Settlement Class will be deemed to have been certified and the Action (and the claims asserted against the Trustee Defendants therein) will revert to their status as of the day immediately before the execution of this Settlement Agreement. In such event, the Trustee Defendants will not be deemed to have consented to the certification of any class, the agreements and stipulations in this Settlement Agreement or its Exhibits concerning class definition, class period, or class certification shall not be used in any way to support a class definition, any class period, class certification, or for any other purpose, and the Trustee Defendants will retain all rights to oppose class certification.

2.2    Condition #2: Court Approval. The Settlement shall have been approved by this Court in accordance with the following steps 2.2.1 through 2.2.6:

2.2.1    Motion for Preliminary Approval of Settlement and of Notices. Plaintiffs will file a motion for entry of the Preliminary Approval Order in the form attached as Exhibit 1 hereto ("Preliminary Approval Motion"). Plaintiffs shall provide the

Trustee Defendants with the draft Preliminary Approval Motion and the opportunity to provide input before filing.

2.2.2    Service of Notice under the Class Action Fairness Act. The Trustee Defendants shall cause the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) ("CAFA"), as specified by 28 U.S.C. § 1715, to be served within ten (10) days of when the Settlement Agreement is filed with the Court with the Preliminary Approval Motion.

2.2.3    Preliminary Approval Order; Issuance of Class Notice. The Court shall issue the Preliminary Approval Order, substantially in the form annexed as Exhibit 1 hereto.  Subject to modification by the Court, the Class Notice shall include, among other things, a brief description of the claims advanced, a summary of the terms of this Settlement Agreement, information on the attorneys' fees and costs sought by Plaintiffs' Counsel, a description of the proposed Plan of Allocation of the Settlement Amount to the Settlement Class, and information about the Fairness Hearing. Subject to the Preliminary Approval Order, Plaintiffs shall cause the Settlement Administrator to disseminate the Class Notice to the Settlement Class Members by: (a) either electronic communication (if available and approved by the Court) or by mailing via first class U.S. mail to all Settlement Class Members, and (b) posting the Class Notice on a website or websites maintained by Plaintiffs' Counsel or the Settlement Administrator within thirty (30) days of the entry of the Preliminary Approval Order. In the event that a Class Notice sent by email or by U.S. mail is returned as undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid alternative mailing address or email address and promptly re-send

the Class Notice to such Settlement Class Member. The Settling Parties will request that the Fairness Hearing occur at least ninety (90) days after the entry of the Preliminary Approval Order. The Trustee Defendants shall coordinate with the Shareholder Defendants to request WGA to provide the names and last known addresses of the Settlement Class Members in electronic format ("the Class Contact List"), within ten (10) days of the entry of the Preliminary Approval Order. The Class Contact List shall be treated at all times as confidential information subject to the confidentiality order in the Action and may not be disclosed or used for any other purpose. The Trustee Defendants shall also coordinate with the Shareholder Defendants to request WGA to provide the number of vested shares of WGA stock allocated to the ESOP account of each of the Settlement Class Members both (1) as of the most recent date available and (2) if the Settlement Class Member received a prior distribution of the Settlement Class Member's account balance or any portion thereof, the number of vested shares of WGA stock allocated to their ESOP account as of the date of all prior distributions and the amount of the prior distribution. The information in the preceding sentence shall be provided to the Settlement Administrator in electronic format, within twenty-one (21) days of the entry of the Preliminary Approval Order.[1] Within thirty (30) days after the date on which the Class Notice is required to be sent, the Settlement Administrator will file a declaration with the Court confirming that the Class Notice and

---

[1] The Settling Parties acknowledge that any information provided by the Trustee Defendants, Shareholder Defendants, or WGA pursuant to this Section shall be treated as "Confidential" under the Stipulated Protective Order [ECF No. 99]. The Settling Parties further acknowledge that the Class Contact List and the other information concerning the Settlement Class Members and their shares of WGA stock referenced in this Section are not in the possession, custody, or control of the Trustee Defendants, and that the Trustee Defendants have no ability to cause or require WGA or the Shareholder Defendants to provide such information.

related information was sent to all Settlement Class Members in accordance with the Preliminary Approval Order.

        2.2.4        <u>Motion for Final Approval of Settlement</u>. At least forty-five (45) days before the Fairness Hearing, Plaintiffs will file a motion seeking final approval of the Settlement (the "Final Approval Motion"). Plaintiffs shall provide the Trustee Defendants with a draft of the Final Approval Motion and the opportunity to provide input before filing. The Final Approval Motion will seek entry by the Court of a Final Approval Order in a form to be agreed upon by the Settling Parties that will include, among other provisions, that the Court:

        2.2.4.1     Order Final Approval of the Settlement set forth in this Settlement Agreement;

        2.2.4.2     Determine and adjudge that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Settlement Class in accordance with Rule 23(e) of the Federal Rules of Civil Procedure;

        2.2.4.3     Approve the Plan of Allocation;

        2.2.4.4     Adjudicate Objections raised by Settlement Class Members, if any;

        2.2.4.5     Dismiss the Action against the Trustee Defendants with prejudice and without costs to any of the Settling Parties, except as contemplated by this Settlement Agreement;

        2.2.4.6     Adjudge that Plaintiffs and the Settlement Class will be deemed conclusively to have released and waived any and all Released Claims against the Trustee Defendant Released Parties as provided in this Settlement Agreement;

        2.2.4.7     Bar and permanently enjoin the Settling Parties, including the Settlement Class, from asserting or prosecuting any and

all Released Claims, as provided in this Settlement Agreement, against any party released pursuant to this Settlement Agreement;

2.2.4.8    Determine that all applicable CAFA requirements have been satisfied;

2.2.4.9    Adjudge that Settlement Class Members will be barred from asserting any claims against the Trustee Defendants or the Trustee Defendants Released Parties arising out of the allocation of the Settlement Amount as calculated by the Settlement Administrator or based on actions by the Trustee Defendants that were consistent with the Plan of Allocation, this Settlement Agreement, an Order of the Court, or the direction of the Settlement Administrator or Plaintiffs' Counsel; and

2.2.4.10   Preserve the Court's continuing and exclusive jurisdiction over the Settling Parties to administer, implement, construe, and enforce this Settlement Agreement in accordance with its terms, including the release provisions, for the mutual benefit of the Settling Parties, but without affecting the finality of the Final Approval Order.

2.2.5    <u>The Fairness Hearing</u>. At or after the Fairness Hearing, the Court will determine: (i) whether to enter the Final Approval Order approving the Settlement and dismissing with prejudice the Action as to the Trustee Defendants; (ii) what attorneys' fees and expenses should be granted to Plaintiffs' Counsel out of the Settlement Amount; and

(iii) what, if any, Service Awards should be awarded to the class representatives out of the Settlement Amount.

    2.2.6  <u>Entry of Final Approval Order</u>. This Court shall have entered the Final Approval Order. Absent any Appeal Proceeding, the Final Approval Order shall be Final thirty (30) days after its entry by the Court.

   2.3  <u>Condition #3: Independent Fiduciary Approval</u>. Plaintiffs' Counsel shall select a qualified Independent Fiduciary to review the Settlement on behalf of the Plan. The Trustee Defendants will have the opportunity to review and approve Plaintiffs' Counsel's selection but shall not unreasonably withhold their consent. The Independent Fiduciary shall have the following responsibilities, including, without limitation, whether to approve and authorize the settlement of Released Claims on behalf of the ESOP:

    2.3.1  The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39") in making its determination.

    2.3.2  The Independent Fiduciary shall notify the Trustee Defendants' Counsel and Plaintiffs' Counsel of its determination in writing, which notification shall be delivered no later than twenty-one (21) calendar days before the deadline for Plaintiffs' Counsel to file the Final Approval Motion. If the Independent Fiduciary does not approve all aspects of this Settlement Agreement, then the Trustee Defendants and Plaintiffs will each have the right, but not the obligation, to withdraw from the Settlement Agreement so

long as such right is exercised within ten (10) days of the receipt of the Independent Fiduciary's determination. If any Settling Party elects to exercise such right of withdrawal under this provision, then before such withdrawal shall be deemed effective, the Settling Parties shall meet and confer in good faith in an effort to resolve any issues raised, and/or bring the matter before the Court on an expedited basis to determine if a mutual resolution can be reached prior to the effectiveness of such withdrawal. If any Settling Party exercises such right of withdrawal under this provision and thirty (30) days expires without an agreed modification, then the entire Settlement Agreement will be null and void and the Settling Parties will revert to their respective positions in the Action as of the day immediately before execution of the Settlement Agreement (*See* Section 10).

      2.3.3     The Trustee Defendants' Counsel and Plaintiffs' Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement. Any such information provided to the Independent Fiduciary shall be confidential under this Settlement Agreement. Providing such information shall be deemed not to violate ERISA and not to be an ERISA fiduciary action by anyone, including, without limitation, the Trustee Defendants.

      2.3.4     Selection of the Independent Fiduciary shall be made by Plaintiffs' Counsel and Trustee Defendants shall not unreasonably withhold their consent; however, the person or entity hired as Independent Fiduciary shall have substantial experience evaluating similar settlements and PTE 2003-39.

      2.3.5     If the Settlement becomes Final, the fees and costs of the

Independent Fiduciary will be paid out of the Settlement Amount. If the Settlement does not become Final, the fees and costs of the Independent Fiduciary shall be paid in equal shares by the Parties.

2.4    <u>Condition #4: Funding of Settlement Amount</u>. The Settlement Amount shall have been deposited into the Settlement Fund Account by the Trustee Defendants in accordance with Section 6.

2.5    <u>Condition #5: Finality of Final Approval Order</u>. The Final Approval Order has become Final. Absent any Appeal Proceeding, the Final Approval Order shall be Final thirty (30) days after its entry by this Court.

2.6    If Plaintiffs and the Trustee Defendants disagree as to whether each and every condition set forth in Section 2 herein has been satisfied or waived, they shall promptly confer in good faith and, if unable to promptly resolve their differences, shall present their disputes to this Court for determination consistent with the terms of this Settlement Agreement.

### <u>Section 3: Releases.</u>

3.1    <u>Releases</u>. Subject to Section 10 (Termination of Settlement Agreement) below, and upon the Final Approval Order becoming Final, and provided that each Settling Party has performed all of its respective obligations under this Settlement Agreement, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all Released Claims.

3.2    <u>Class Release</u>.    The Plaintiffs, on their own behalf, on behalf of all members of the Settlement Class, and on behalf of the Plan, shall dismiss with prejudice

the Action against the Trustee Defendants, and the Plaintiffs and the Settlement Class, on behalf of themselves, their beneficiaries, heirs, executors, representatives, and assigns, absolutely and unconditionally release and forever discharge any and all claims, actions and/or liabilities of any nature (including, but not limited to, claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief) (the "Released Claims") against the Trustee Defendants and their respective heirs, executors, representatives, assigns, affiliates, entities, and/or successors, including former and current directors, shareholders, officers, partners, members, employees, agents, attorneys, relations, representatives, assigns, insurers, and reinsurers (collectively, the "Trustee Defendant Released Parties"), based on, arising out of, or pertaining in any way to the Action, the Plan, or matters related to the Plan, including, without limitation, any and all known or unknown claims, actions, and/or liabilities that Plaintiffs or the Settlement Class actually asserted, or which they could have asserted (the "Class Release"). Plaintiffs and all members of the Settlement Class covenant and agree (i) not to file any lawsuit or claim against any Trustee Defendant Released Party based on a Released Claim; and (ii) that the foregoing covenant and agreement shall be a complete defense to any such lawsuit or claim against any of the Trustee Defendant Released Parties.

      3.2.1    For the avoidance of doubt, any claims against the Shareholder Defendants and their respective agents, employees, trustees, trustors, beneficiaries, receivers, corporations, parents, affiliates, subsidiaries, predecessors, successors, assigns, shareholders, officers, directors, partners, partnerships, members, attorneys,

representatives, insurers, heirs, spouses, executors, administrators, affiliated or related entities and their respective owners, officers, and directors, are not released by virtue of this agreement and are expressly reserved.

        3.2.2      Plaintiffs hereby expressly waive, on their own behalf and on behalf of all members of the Settlement Class and the ESOP, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR THE RELEASING PARTY.**

### Section 4: Representations and Warranties.

4.1    <u>Plaintiffs' Representations and Warranties</u>. Each Plaintiff represents and warrants on behalf of themselves and all members of the Settlement Class as follows:

        4.1.1      That Plaintiffs and Plaintiffs' Counsel have conducted an appropriate investigation into and discovery of the claims in the Action, and have diligently litigated the Action. Named Plaintiffs represent that they have conferred with Plaintiffs' Counsel on several occasions and have reviewed and organized considerable documents pertaining to the ESOP. Plaintiffs and Plaintiffs' Counsel have propounded discovery in the Action, received substantial evidence from the Trustee Defendants in connection with the mediation, and have actively participated in the WGA bankruptcy action, *In re: Western*

*Global Airlines, Inc.*, No. 1:23-bk-11093, in the United States Bankruptcy Court for the District of Delaware, including by retaining separate bankruptcy counsel to represent the interests of the Settlement Class therein. Plaintiffs and Plaintiffs' Counsel are of the opinion, based upon their own independent investigation and evaluation, and with the mediator's assistance, that this Settlement is the best the Settlement Class could accomplish without protracted litigation and an uncertain outcome and, as a result is fair, reasonable, and adequate and is in the best interests of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by the Trustee Defendants, the Trustee Defendants' denial of the allegations asserted by Plaintiffs, and potential appellate issues. The Plaintiffs also are mindful of the inherent risks in establishing and proving liability and overcoming potential defenses to the claims asserted in the Action. In light of these considerations, Plaintiffs and Plaintiffs' Counsel believe that this Settlement Agreement confers substantial benefits and is in the best interests of the Plaintiffs and the Settlement Class.

4.1.2    That the Settlement Class, including Plaintiffs, shall not have any surviving claims or causes of action against any of the Trustee Defendant Released Parties with respect to the Class Release.

4.2    <u>Settling Parties' Representations and Warranties</u>. The Settling Parties, and each of them, represent and warrant:

4.2.1    That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among Plaintiffs' Counsel and Trustee Defendants' Counsel and that in executing this Settlement Agreement, they are relying solely upon their

own judgment, belief, and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent, and duration of their rights, obligations, and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. With respect to the Settlement Agreement, each of the Settling Parties assumes the risk of mistake as to facts and/or law.

4.2.2    That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each person executing this Settlement Agreement on behalf of such Party. The Settling Parties, and each of them, also represent and warrant to each other that they have made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as they deem necessary or appropriate.

4.3    <u>Signatories' Representations and Warranties</u>. Each person executing this Settlement Agreement on behalf of themselves or in a representative capacity does hereby personally represent and warrant that, to the best of their information and knowledge formed after reasonable inquiry, they have the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal for whom such individual represents or purports to represent.

## **Section 5: No Admission of Liability.**

5.1    Nothing in this Settlement Agreement is intended to, or may be interpreted or deemed to, constitute any finding or admission of liability, fault, responsibility, guilt, or wrongdoing of any kind by the Trustee Defendants, whether under ERISA or any other statute, regulation, case law, common law doctrine, or other legal authority, or give rise to

any inference of liability in the Action or any other proceeding, judicial process, regulatory process, or investigation. Notwithstanding the Trustee Defendants' belief that they will prevail in the Action, they have agreed to this Settlement Agreement to avoid the significant time and expense attendant in protracted litigation.

5.2     Trustee Defendant Released Parties may file this Settlement Agreement and/or the Final Approval Order in any action that may be brought against them in order to enforce the terms of this Settlement Agreement and/or Final Approval Order, including, without limitation, a defense based in principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies. Likewise, Plaintiffs may file this Settlement Agreement and/or the Final Approval Order in any action that the Trustee Defendants may bring against them to enforce the terms of this Settlement Agreement and/or the Final Approval Order.

### Section 6: The Settlement Fund Account.

6.1   The Settlement Administrator, at the direction of Plaintiffs' Counsel, shall establish at a federally chartered financial institution (the "Financial Institution") an interest-bearing escrow account (the "Settlement Fund Account"). Plaintiffs shall select the Settlement Administrator and the financial institution for the Settlement Fund Account, and Defendants shall not unreasonably withhold their agreement to same. The Settling Parties agree that the Settlement Fund Account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. 26 C.F.R. § 1.468B-

1. The Settlement Administrator, at the direction of Plaintiffs' Counsel, shall provide to the Trustee Defendants: (i) written notification of the date of establishment of the Settlement Fund Account and the following information regarding the Financial Institution and the Settlement Fund Account: bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number; and (ii) any additional information needed to deposit the Settlement Amount into the Settlement Fund Account. The Settlement Administrator, at the direction of Plaintiffs' Counsel, shall direct the Financial Institution to make distributions by wire transfer or check from the Settlement Fund only in strict accordance with the Settlement Agreement and Court Orders. No other disbursements may be authorized by Plaintiffs' Counsel or the Settlement Administrator.

6.2   Within fourteen (14) days of the entry of the Preliminary Approval Order, Trustee Defendants will cause $100,000 of the Settlement Amount to be deposited into the Settlement Fund Account to cover the costs of settlement administration, the Independent Fiduciary, and Class Notice; provided, however, that if the Trustee Defendants have not yet been provided with the notifications and information required in the preceding paragraph, then the deadline for the $100,000 deposit into the Settlement Fund Account shall be extended to fourteen (14) days after the date on which the Settlement Administrator provides the requisite notifications and information. No later than thirty (30) calendar days after the Final Approval Order becomes Final, the Trustee Defendants shall cause the remainder of the Settlement Amount (which is $6,900,000, i.e., the Settlement Amount minus the $100,000 deposited for purposes of settlement administration pursuant to Section 2.2.3) to be deposited into the Settlement Fund Account.

6.3    The Settlement Amount deposited into the Settlement Fund Account will be considered to be in the legal custody of the Court until such time as such funds may be distributed pursuant to further order of the Court or pursuant to the terms of this Settlement Agreement. The Settling Parties acknowledge and agree that Trustee Defendants shall have no authority, control or liability in connection with the design, management, administration, investment, maintenance, or control of the Settlement Fund Account or for any expenses the Settlement Fund Account may incur or any taxes that may be payable by, or otherwise due in connection with, the Settlement Fund Account.

6.4    The Settlement Amount shall be the full, total, and sole monetary contribution required from, and made by or on behalf of, the Trustee Defendants in connection with the Settlement. The Settlement Amount specifically covers any claims for attorneys' fees and litigation expenses by Plaintiffs and any Service Awards to them. Except as otherwise specified in this Settlement Agreement, the Settling Parties shall bear their own costs and expenses (including attorneys' fees and expenses) incurred in connection with the Action and effectuating this Settlement Agreement and securing necessary Court orders and approvals with respect to the same.

### Section 7: Payments from the Settlement Fund Account.

7.1    <u>Administration Expenses</u>. Prior to the entry of the Final Approval Order, the Settlement Administrator shall pay from the Settlement Fund Account the following costs whether or not the Settlement is finally approved: (i) fees and costs associated with the Independent Fiduciary set forth in Sections 2.3.1 to 2.3.5 above; (ii) fees and cost associated with dissemination of the Class Notice to the Settlement Class Members,

including skip tracing and forwarding Class Notices to them; and (iii) any other Settlement Administration costs incurred prior to the entry of Final Approval. After the Final Approval Order becomes Final, the Settlement Administrator shall disburse from the Settlement Fund Account: (i) the amount required for payment of any taxes owed on the Settlement Fund Account, and (ii) all remaining expenses of administering the Settlement Fund Account, including (a) reasonable expenses associated with the preparation and filing of all tax reports and tax returns required to be filed; (b) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the Settlement Fund Account; (c) fees charged and expenses incurred by the Financial Institution associated with the administration of the Settlement Fund Account; and (d) fees, charges, and expenses incurred by the Settlement Administrator. If the Settlement Agreement is terminated or does not become Final for any reason, Plaintiffs' Counsel shall be obligated to instruct the Settlement Administrator (or an escrow agent, successor trustee, or other person with authority to disburse the funds), with notice to the Trustee Defendants, to return the remaining balance in the Settlement Fund Account (which would include any interest earned), to the Trustee Defendants within ten (10) business days of the earlier of the termination date or the date of the Order upon which the Settlement Agreement does not become Final.

      7.2      <u>Disbursements from Settlement Fund</u>. Plaintiffs' Counsel shall be entitled to the following disbursements from the Settlement Fund Account after the Final Approval Order becomes Final as follows:

7.2.1    <u>For Attorneys' Fees and Litigation Expenses</u>. As provided in Section 9.1 herein.

7.2.2    <u>For payment of any Service Awards approved by the Court</u>. Any Service Award granted by the Court, which Plaintiffs' Counsel will transmit to the Plaintiffs.

7.2.3    <u>For Payment to the Settlement Class</u>. Upon the Final Approval Order becoming Final, and after the amounts payable pursuant to Sections 7.1, 7.2.1, and 7.2.2 have been determined, disbursed, and reserved, the net amount remaining in the Settlement Fund Account (the "Net Proceeds") shall be calculated by the Settlement Administrator. The Settlement Administrator shall implement the Plan of Allocation and, thereby, determine how much of the Net Proceeds should be allocated to each Settlement Class Member, using the records available to it. The allocable portion of the Net Proceeds for each Settlement Class Member shall be distributed to those Class Members directly by the Settlement Administrator either (a) by check or (b) deposited into an individual retirement account or other eligible retirement plan, at the Settlement Class Member's election. Nothing herein shall constitute approval or disapproval of the Plan of Allocation by the Trustee Defendants, and the Trustee Defendants shall take no position for or against the Plan of Allocation. Plaintiffs, Plaintiffs' Counsel, Trustee Defendants, and Trustee Defendants' Counsel shall have no responsibility or liability for or in connection with the calculations and distributions of the Net Proceeds among and to the members of the Settlement Class.

7.3    <u>Taxation of Settlement Amounts</u>. If required by applicable Internal Revenue Code of 1986, as amended, rules and Treasury Regulations, Settlement Class Members will be issued IRS Forms 1099-MISC for the portion of the payments paid to them, and no payroll or tax withholdings will be made from these payments (if the Settlement Administrator determines that is the proper course).

7.3.1    Neither Plaintiffs' Counsel, the Trustee Defendants, or the Trustee Defendants' Counsel intend anything contained in this Settlement Agreement to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall anything in this Settlement Agreement be relied upon as such. Plaintiffs acknowledge that Trustee Defendant Released Parties have no responsibility or liability with respect to any taxes due on the Settlement Fund, taxes due on earnings on the Settlement Fund, or taxes due on any amounts that Plaintiffs receive from the Settlement Fund. Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

<u>**Section 8: Objections to Settlement and Claims Process.**</u>

8.1    To be timely, an Objection must be filed with the Court and submitted to the Settlement Administrator and Class counsel by U.S. Mail or e-mail at least twenty-one (21) calendar days before the Fairness Hearing (the "Objection Deadline"). The Settlement Administrator and/or Class counsel shall promptly forward any Objections they receive to the Trustee Defendants' counsel. To be valid, Objections must be in writing and must set forth, in clear and concise terms: (a) the case name and number (*Burnett, et al. v. Prudent Fiduciary Services, LLC, et al.*, C.A. No. 1:22-cv-00270-RGA/JLH); (b) the name, address, and telephone number of the objector objecting and, if represented by counsel, of his or her

25

counsel; (c) the complete basis for objection; (d) a statement of whether the objector intends to appear at the Fairness Hearing, and the name of the objector's counsel; (e) a statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and (f) copies of all supporting documents.

8.1.1   Settlement Class Members who submit Objections and also wish to speak at the Fairness Hearing must (a) file with the Clerk of the Court a notice of intention to appear at the Fairness Hearing by the Objection Deadline ("Notice of Intention to Appear"); and (b) serve the Notice of Intention to Appear on the Settlement Administrator, Class Counsel and Trustee Defendants' Counsel by the Objection Deadline. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector will present to the Court at the Fairness Hearing. The failure to file and serve a Notice of Intention to Appeal will constitute a waiver of the right to appear at the Fairness Hearing.

8.1.2   Settlement Class Members who wish to object to any request for attorneys' fees, expenses, settlement administrative costs, or Service Awards may do so by following the same procedure as described above.

8.1.3   If any Settlement Class Member objects to this Settlement and the Settling Parties, or any of them, wish to conduct discovery from the objector, the Settling Parties will meet and confer with the objector (through the objector's counsel, if any) regarding any such discovery sought and any objections thereto. If they are unable to resolve the dispute informally, the Settling Parties will contact the Court for further

direction.

8.1.4 The Settlement Administrator is required to notify counsel for all Parties about Objections to the Settlement. A Settlement Class Member who does not submit an Objection in the manner set forth above and by the deadline specified above shall be deemed to have waived all objections and will be foreclosed from making any objection to this Settlement, any requested attorneys' fees, expenses, settlement administrative costs, Service Awards, whether by appeal or otherwise, absent a contrary order of the Court.

8.1.5 Responses to Objections shall be filed seven (7) days before the Fairness Hearing.

8.2 Calculation of Settlement Class Members' Settlement Payments.

8.2.1 If a Settlement Class Member believes that the Settlement Administrator does not have accurate information regarding the Settlement Class Member's ESOP account, that Settlement Class Member may submit additional proof to the Settlement Administrator in writing. Any additional information must be submitted in writing to the Settlement Administrator not later than sixty (60) days after the date the Settlement Administrator first mails the notice of this Settlement. If a person believes that he or she was wrongly excluded from the Settlement Class, the Settling Parties will endeavor to resolve the issue informally. If they are unable to do so, the Settling Parties will refer the matter to the Court for a final determination on whether relief should be provided to such individual.

**<u>Section 9: Attorneys' Fees and Litigation Expenses and Service Awards.</u>**

9.1    <u>Payment of Plaintiffs' Attorneys' Fees and Litigation Expenses and Service Awards</u>. Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees in an amount not exceeding one-third of the Settlement Amount, and for reimbursement of the costs and expenses of the litigation of the Action, including any consultant or counsel retained by Plaintiffs' Counsel to protect the Class's interest. The aggregate amount of the attorneys' fees and litigation expenses shall be paid out of, and not in addition to, the Settlement Amount. Plaintiffs also may apply to the Court for Service Awards to the class representatives, which shall be paid out of, and not in addition to, the Settlement Amount. Plaintiffs' Counsel shall file their application for attorneys' fees and litigation expenses and for Service Awards no later than forty-five (45) days before the Fairness Hearing.  The Trustee Defendants shall take no position with respect to Plaintiffs' Counsel's application for attorneys' fees and litigation expenses or with respect to the Service Awards.  The Trustee Defendants do not agree or concede that the amount of attorneys' fees and/or any expenses that may be sought by Plaintiffs' Counsel, or the amount of the Service Awards sought for the class representatives, are appropriate or reasonable, but simply take no position. Following issuance of a Final Approval Order and the expiration of sufficient time to make it Final, Plaintiffs' Counsel shall be entitled to receive attorneys' fees and litigation expenses and the class representatives shall be entitled to Service Awards from the Settlement Fund Account to the extent awarded by the Court.

9.2    <u>Separate Consideration</u>. The procedure for and allowance or disallowance by the Court of Plaintiffs' application for attorneys' fees and litigation expenses and for

28

Service Awards are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement. Any order or proceeding relating to any application for attorneys' fees or litigation expenses in an amount less than the amount requested by Plaintiffs' Counsel or request for Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement, nor shall it affect or delay the finality of the Final Approval Order approving the Settlement set forth herein. If at the time of any disbursement from the Settlement Fund Account, there shall be a pending application for attorneys' fees or expenses or Service Awards, there shall be reserved in the Settlement Fund Account an amount equal to the amount of the pending application, until such time as the Court shall rule upon such application and such ruling shall become Final.

## Section 10: Termination of the Settlement Agreement.

10.1    <u>Termination</u>. This Settlement Agreement may be terminated by any Settling Party if (i) this Court declines to approve the Settlement by entering the Final Approval Order, or (ii) the Final Approval Order entered by the Court is reversed or modified in any material respect (except for any reversal or modification of the amount of attorneys' fees, costs and expenses, or Service Awards) by any Appeal Proceeding, provided that the terminating party, within fourteen (14) calendar days from the date of such event, furnishes written notice to Plaintiffs' Counsel or Trustee Defendants' Counsel, as the case may be, of the termination of this Settlement, specifying the terms modified or not approved that give rise to the right to terminate.

10.2    Consequences of Termination of this Settlement Agreement. If this Settlement Agreement is terminated, the following shall occur:

10.2.1    The Action shall for all purposes revert to its status as of the day immediately before the execution of this Settlement Agreement, and within three (3) days of the written notice referenced in Section 10.1, the Settling Parties shall request a scheduling conference with this Court. In any subsequent proceeding, the terms of this Settlement Agreement shall not constitute nor be construed as an admission by any Settling Party, nor be used against any Settling Party, in any manner, whether as evidence or argument.

10.2.2    The Settlement shall be deemed null and void and of no further force and effect.

10.2.3    The balance of the Settlement Fund Account will be returned to Trustee Defendants, less the amounts (if any) spent prior to Final Approval in connection with the Independent Fiduciary approval, settlement administration, and Class Notice.

**Section 11: Returned or Uncashed Settlement Checks.**

11.1    Returned Checks. If a Settlement Payment check is returned as undeliverable, the Settlement Administrator will use its discretion to take all steps necessary to locate an updated mailing address for the Settlement Class Member, including without limitation, enhanced skip tracing methods before attempting to resend the check.

11.2    Uncashed Checks. If a Settlement Class Member has not cashed his or her Settlement Payment check within ninety (90) days of issuance, the Settlement Administrator shall mail that Settlement Class Member a letter reminding him or her of the

deadline to cash such check and providing information as to how to obtain a reissued check in the event the check was lost, stolen or misplaced.

11.3    Any checks issued to Settlement Class Members shall remain valid and negotiable for one hundred fifty (150) days from the date of their issuance and may thereafter automatically be cancelled; and the uncashed funds may be distributed to the Settlement Class according to the Plan of Allocation.

11.4    Administration of the first phase of the Settlement (up to and including the first distribution of funds to Settlement Class Members) shall be completed no later than one hundred eighty (180) days after the Settlement becomes Final. The second phase of the Settlement consists of a distribution of any remaining funds in the Settlement Fund Account pursuant to the Plan of Allocation, and a final distribution of any residual funds, if any, to the *cy pres* recipient, the Pension Rights Center.

## Section 12: Miscellaneous Provisions.

12.1    Continuing Jurisdiction of this Court. This Court shall retain jurisdiction over the Action to resolve any dispute that may arise regarding this Settlement Agreement, the Class Notice, the Final Approval Order, or any other matters relating thereto, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement.

12.2    Nondisclosure. Except as permitted herein, the Settling Parties agree that neither they nor their agents, representatives, or counsel will publicize, announce, post, or disseminate the terms of the Settlement or the fact of its occurrence. This includes, but is not limited to, an agreement not to issue a press release, post on social media, or provide

31

information to the press regarding the Settlement. Nothing herein shall be construed as limiting the Settling Parties' ability to take actions necessary to effectuate the Settlement and facilitate payments to Settlement Class Members, including filing documents with the Court; drafting a mutually-agreeable, short, factual, and nonargumentative statement for the Settlement Administrator's website; and posting a mutually-agreeable, short, factual, and nonargumentative statement on Plaintiffs' counsel's websites indicating that the case has settled, the amount of the settlement, and a link to the Settlement Administrator's website. Notwithstanding anything to the contrary herein, this provision is not intended to, nor shall it, preclude (i) confidential attorney-client communications between Plaintiffs and Plaintiffs' Counsel concerning the Settlement or this Settlement Agreement, (ii) Plaintiffs' and/or the Trustee Defendants' disclosure of the fact of this Settlement and the existence of this Settlement Agreement to the extent necessary to issue requests for proposals from potential candidates to serve as Settlement Administrator or Independent Fiduciary; or (iii) confidential attorney-client communications between the Trustee Defendants and their Counsel or insurers concerning the Settlement or this Settlement Agreement.

12.3    Complete Resolution. The Settling Parties intend the Settlement of the Action to be the full, final, and complete resolution of the Released Claims amongst the Settling Parties. Nothing herein shall be construed as limiting the Trustee Defendants' ability to seek coverage, reimbursement, or recovery from their insurance carriers or other non-Plaintiffs for the Settlement Amount and/or their attorneys' fees and costs and take all necessary actions to prosecute such claims, including filing a lawsuit.

12.4    <u>Governing Law</u>. The construction, interpretation, operation, effect and validity of this Settlement Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of Delaware, without giving effect to the choice of law provisions thereof, except to the extent the laws of the United States, including federal common law and ERISA, governs any matter set forth herein, in which case federal law shall govern.

12.5    <u>Severability</u>. The provisions of this Settlement Agreement are not severable, unless, and to the extent, it is expressly stated otherwise in this Settlement Agreement.

12.6    <u>Amendment of Settlement Agreement</u>. Before the entry of the Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following entry of the Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties and approved by the Court. Any such amendments or modifications may be made without notice to the Settlement Class Members unless notice is required by law or the Court.

12.7    <u>Waiver</u>. The provisions of this Settlement Agreement may be waived only in writing executed by the waiving party. The waiver by any Settling Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

12.8    <u>Retention of Privilege</u>. Nothing in this Settlement Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any

applicable privilege or immunity, including, without limitation, attorney-client privilege, common interest or joint defense privilege, or work product protection.

12.9    Construction. None of the Settling Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

12.10    Headings. The headings of this Settlement Agreement are for purposes of reference only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

12.11    Additional Assurances. Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver to each other required documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement, so long as such documents and actions are consistent with the terms of this Settlement Agreement and do not effectively result in a material modification of the terms of this Settlement Agreement.

12.12    Survival. All representations, warranties, and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement.

12.13    Entire Agreement. All of the recitals and Exhibits to this Settlement Agreement are material and integral parts hereof and are, unless specified otherwise, fully incorporated herein by this reference. The Settling Parties acknowledge that this Settlement Agreement specifically supersedes any settlement terms or settlement agreements that were

previously agreed upon orally or in writing by any of the Settling Parties regarding the issues of the Settlement.

     12.14   <u>Counterparts</u>. This Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument. Signatures sent by facsimile or by e-mail "PDF" shall be deemed originals.

     12.15   <u>Successors and Assigns</u>. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

     12.16   <u>Binding Effect</u>. This Settlement Agreement shall be binding when signed, but the Settlement shall be effective only on the condition that the Court approves this Settlement Agreement and satisfaction of Section 2 herein.

     12.17   <u>No Prior Assignment</u>. The Settling Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement Agreement.

     12.18   <u>Notices</u>. Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is sent via e-mail and also addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), or delivered by reputable express overnight courier:

<u>IF TO PLAINTIFFS:</u>

Carmella P. Keener
R. Grant Dick IV
Cooch and Taylor, P.A.
1000 N. West St., Suite 1500
P.O. Box 1680
Wilmington, DE 19899-1680
Telephone: (302) 984-3816
ckeener@coochtaylor.com
gdick@coochtaylor.com

Peter K. Stris
Rachana A. Pathak
Victor O'Connell
John Stokes
Stris & Maher LLP
777 S. Figueroa St., Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
pstris@stris.com
rpathak@stris.com
voconnell@stris.com
jstokes@stris.com

Michelle C. Yau
Daniel R. Sutter
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave, NW
Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Eleanor Frisch
Cohen Milstein Sellers & Toll PLLC
400 South 4th Street # 401-29
Minneapolis, MN 55415
Telephone: (612) 807-1575
efrisch@cohenmilstein.com

and

36

Paul J. Lukas
Brock J. Specht
Laura A. Farley
Nichols Kaster, PLLP
4700 IDS Center, 80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
lukas@nka.com
bspecht@nka.com
lfarley@nka.com


IF TO TRUSTEE DEFENDANTS:


Lars C. Golumbic
Sean C. Abouchedid
Andrew D. Salek-Raham
Groom Law Group, Chartered
1701 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006
lgolumbic@groom.com
sabouchedid@groom.com
asalek-raham@groom.com


*Signature Page to Follow*

AGREED TO BY THE SETTLING PARTIES.

PLAINTIFFS:

Date: 9/20/24

DAVID BURNETT, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee
Stock Ownership Plan

Date: _____

DAVID NELSON, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee
Stock Ownership Plan

TRUSTEE DEFENDANTS:

Date: _____

Miguel Paredes

Prudent Fiduciary Services, LLC:

Date: _____

By: _____
    Name: _____
    Title: _____

38

AGREED TO BY THE SETTLING PARTIES.

PLAINTIFFS:

Date: _____

_____
DAVID BURNETT, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee
Stock Ownership Plan

Date: 19 SEP 2024

_____
DAVID NELSON, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee
Stock Ownership Plan

TRUSTEE DEFENDANTS:

Date: _____

_____
Miguel Paredes

Prudent Fiduciary Services, LLC:

Date: _____

By: _____
        Name: _____
        Title: _____

38

AGREED TO BY THE SETTLING PARTIES.

PLAINTIFFS:

Date: _____            _____

DAVID BURNETT, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee
Stock Ownership Plan

Date: _____            _____

DAVID NELSON, individually and as
representatives of a class of similarly
situated persons, and on behalf of the
Western Global Airlines, Inc. Employee
Stock Ownership Plan

TRUSTEE DEFENDANTS:

Date: 9/20/2024            _____

Miguel Paredes

Prudent Fiduciary Services, LLC:

Date: 9/20/2024            By: _____
                          Name: Miguel Paredes
                          Title: President

38

Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID BURNETT and DAVID NELSON as representatives of a class of similarly situated persons, and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>             Plaintiffs,<br><br>v.<br><br>PRUDENT FIDUCIARY SERVICES, LLC, MIGUEL PAREDES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, KELLY S. NEFF TRUST DATED 1/1/10, DANIELLE J. NEFF TRUST DATED 1/1/10, and WGA TRUST DATED 8/16/13,<br><br>             Defendants. | C.A. No. 1:22-cv-00270-RGA/JLH |

## [PROPOSED] ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

Plaintiffs David Burnett and David Nelson, as representatives of a class of similarly situated persons, and on behalf of the Western Global Airlines, Inc. Employee Stock Ownership Plan and related Trust (collectively, the "Plaintiffs"), have moved, pursuant to Federal Rule of Civil Procedure 23, for an order preliminarily approving the settlement of this Action and for certification of a settlement class, in accordance with the Class Action Settlement Agreement dated [DATE] (the "Settlement Agreement"), which sets forth the

terms and conditions of a proposed settlement of this Action. The Court, having read and considered the Settlement Agreement, the Motion, and the exhibits thereto, HEREBY ORDERS THAT:

1. **Settlement**. Plaintiffs, on behalf of themselves and all members of the Settlement Class, and Defendants Prudent Fiduciary Services, LLC, and Miguel Paredes (collectively, the "Trustee Defendants"), have negotiated a full settlement of the claims asserted against the Trustee Defendants to avoid the expense, uncertainties, and burden of protracted litigation, and to fully and finally resolve the Released Claims (as defined in the Settlement Agreement) against the Trustee Defendants and the Trustee Defendant Released Parties (as defined in the Settlement Agreement).

2. **Definitions.** This Order incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used but not defined herein shall have the same meanings as in the Settlement Agreement.

3. **Jurisdiction and Venue**. The Court has jurisdiction over the subject matter of this Action and over all parties to this Action, including all Class Members, and venue in the Court is proper. The Court has subject-matter jurisdiction over the claims asserted in the Action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), including, without limitation, jurisdiction to approve the proposed Settlement Agreement and all exhibits attached thereto, grant final certification of the Class for settlement purposes, settle and release all claims arising out of the transactions alleged in this Action, and dismiss the Action with prejudice as between Plaintiffs and the Trustee Defendants, and issue related orders. Additionally, venue is proper in this district pursuant to ERISA § 502(e)(2), 29

U.S.C. 1132(e)(2).

4.     **Preliminary Approval.** The Court hereby preliminarily approves the Settlement Agreement as fair, reasonable, and adequate, subject to further consideration at the Fairness Hearing described below. The Court finds on a preliminary basis that the Settlement Agreement falls within the range of reasonableness and was the product of informed, good-faith, arm's-length negotiations between the Settling Parties and their counsel, and therefore meets the requirements for preliminary approval and is sufficient to warrant sending notice to the Class.

5.     **Settlement Class.** The Court certifies for settlement purposes only the Settlement Class as a non-opt out class under Federal Rule of Civil procedure 23(b)(1) consisting of all participants and beneficiaries of the Plan at any time since its inception, excluding Defendants, their family members or beneficiaries. The members of the Settlement Class are the "Class Members." As a non-opt out Class, the proposed Class Members shall have no right to exclude themselves from the Class, the Settlement, or the Final Judgment. If the Court finally approves the Settlement, each proposed Class Member will be a Settlement Class Member and forever bound by the Settlement and Final Judgment.

6.     **Class Representatives and Class Counsel.** The Court appoints Plaintiffs David Burnett and David Nelson as Class Representatives, and the law firms Cooch and Taylor, PA, Stris & Maher LLP, Cohen Milstein Sellers & Toll PLLC, and Nichols Kaster PLLP as Class Counsel. The Court preliminarily finds that the Named Plaintiffs are similarly situated to absent Class Members and therefore typical of the Class, and that they

will be adequate class representatives. Plaintiffs' Counsel, whom the Court finds are experienced and adequate counsel for purposes of this Settlement approval proceeding, are hereby designated as Class Counsel.

7.    **Final Approval Hearing.** A hearing (the "Fairness Hearing") shall be held before the Court, on [DATE], 2024, at [TIME], at the United States District Court for the District of Delaware, in the courtroom of Judge Richard G. Andrews, located at the J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, DE 19801, to determine, among other things: (i) whether the proposed Settlement of this action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; (ii) whether a Final Approval Order as provided in Paragraph 1.8 of the Settlement Agreement should be entered; (iii) whether the Parties should be bound by the Releases set forth in Section 3 of the Settlement Agreement; and (iv) any amount of fees and expenses that should be awarded to Class Counsel and any Service Award to the Class Representatives for their representation of the Settlement Class. The Parties shall include the date of the Fairness Hearing in the Class Notice to be disseminated to the Settlement Class.

8.    **CAFA Notice.** The Trustee Defendants shall confirm in writing to Plaintiffs that the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) ("CAFA"), as specified by 28 U.S.C. § 1715, were sent within ten (10) days of the filing of the Motion for Preliminary Approval.

9.    **Class Notice.** The Court approves the form and substance of the proposed Class Notice, attached to the Motion for Preliminary Approval as Exhibit [●], which it

4

finds constitutes valid, due, and sufficient notice to all persons entitled to notice. The Court further finds that the form and content of the Class Notice meet the requirements of Rule 23 and due process, including 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the proposed notice plan represents the best notice practicable under the circumstances and is reasonably calculated, under all the circumstances, to apprise potential Class Members of the pendency of this Action, the terms of the Settlement Agreement, and of their right to object to the proposed Settlement, any requested attorneys' fees, reimbursement of litigation or settlement administration expenses, and service awards, as well as Class Members' right to appear at the Fairness Hearing.

10. **Settlement Administrator**. The Court appoints [NAME] ("Settlement Administrator") to supervise and administer the notice procedure as more fully set forth below:

   a. The Trustee Defendants shall coordinate with the Shareholder Defendants[1] to request Western Global Airlines, Inc. ("WGA") to provide the names and last known addresses of the Settlement Class Members in electronic format ("the Class Contact List"), within ten (10) days of the entry of this Order;

   b. Within thirty (30) days of the entry of this Order, Class Counsel or the Settlement Administrator shall cause the Class Notice to be disseminated to the Class Members and shall post the Class Notice, the operative Second Amended Complaint in this action, and contact information for

---

[1] The "Shareholder Defendants" include Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13.

the Settlement Administrator, on a website for the Settlement Class, as set forth in the Settlement Agreement;

c.  The Class Notice shall be substantially in the form of Exhibit [●] to the Motion for Preliminary Approval; however, Class Counsel and the Settlement Administrator shall have discretion to make non-material edits to the format of the Class Notice that they deem reasonable to ensure an efficient notice program that minimizes mailing or administration costs;

d.  Following the issuance of the Class Notice, the Settlement Administrator shall provide written confirmation of such issuance in a declaration to be filed as set forth in the Settlement Agreement;

e.  The Trustee Defendants shall coordinate with the Shareholder Defendants to request WGA to provide to the Settlement Administrator in electronic format the number of vested shares of WGA stock allocated to the ESOP account of each of the Class Members both (1) as of the most recent date available and (2) if the Class Member received a prior distribution of the Class Member's account balance or any portion thereof, the number of vested shares of WGA stock allocated to their ESOP account as of the date of all prior distributions and the amount of the prior distribution, and such information shall be provided within twenty-one (21) days of the entry of this Order; and

f.  The Settlement Administrator shall otherwise carry out its duties as set forth in the Settlement Agreement.

11.  **Independent Fiduciary**. Plaintiffs' Counsel shall promptly select a qualified Independent Fiduciary to review the Settlement on behalf of the Plan as required under and pursuant to the Settlement Agreement. The Trustee Defendants will have the opportunity to review and approve Plaintiffs' Counsel's selection but shall not unreasonably withhold their consent. The Independent Fiduciary shall notify Trustee Defendants' Counsel and Plaintiffs' Counsel in writing of its determination as to whether the Settlement meets the requirements of Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation." 68 Fed. Reg. 75,632. Such notification shall be delivered at least twenty-one (21) calendar days before the deadline for Class

Counsel to file the Final Approval Motion.

12.    **Objections**. Any Class Member may object to the proposed Settlement or to the requested attorneys' fees, expenses, and Service Awards, by filing a written objection with the Clerk of Court, United States District Court for the District of Delaware at least twenty-one (21) calendar days before the Fairness Hearing. A copy of the Objection must also be mailed to the Settlement Administrator and Class Counsel so that it is received on or before twenty-one (21) calendar days before the Fairness Hearing. The Settlement Administrator and/or Class counsel shall promptly forward any Objections they receive to the Trustee Defendants' counsel. To be valid, the Objection must set forth, in clear and concise terms: (a) the case name and number (*Burnett, et al. v. Prudent Fiduciary Services, LLC, et al.*, C.A. No. 1:22-cv-00270-RGA/JLH); (b) the name, address, and telephone number of the objector objecting and, if represented by counsel, of his or her counsel; (c) the complete basis for Objection; (d) a statement of whether the objector intends to appear at the Fairness Hearing, and the name of the objector's counsel; (e) a statement of whether the Objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; and (f) copies of all supporting documents. Any Class Member who does not make his or her Objection in this manner shall be deemed to have waived such Objection and shall not be permitted to object to any terms of the Settlement at the Fairness Hearing, and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, and the award of attorneys' fees and expenses to Class Counsel, and the payment of a Service Award to the Class Representatives, unless otherwise ordered by the Court. Responses to objections

shall be filed at least seven (7) days before the Fairness Hearing.

13.    **Appearance of Objectors at Fairness Hearing**. Any Class Member who files and serves a written Objection in accordance with this Order may appear, in person or as represented by counsel, at the Fairness Hearing, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, if the objector also: (a) files with the Clerk of the Court a notice of intention to appear at the Fairness Hearing by the Objection Deadline ("Notice of Intention to Appear"); and (b) serves the Notice of Intention to Appear on the Settlement Administrator, Class Counsel and Trustee Defendants' Counsel by the Objection Deadline. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objector will present to the Court at the Fairness Hearing. Any Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Settlement Agreement and this Order shall be deemed to have waived their right to appear at the Fairness Hearing.

14.    **Service of Motion for Final Approval**. The motion in support of final approval of the Settlement shall be filed no later than forty-five (45) days prior to the Fairness Hearing; any Objections to the Settlement shall be filed no later than twenty-one (21) days prior to the Fairness Hearing; and any response to any Objections shall be filed no later than seven (7) days prior to the Fairness Hearing.

15.    **Fees, Expenses, and Awards**. Class Counsel's application for attorneys' fees and expenses and Class Representative Service Awards shall be filed and served no later than forty-five (45) days prior to the Fairness Hearing; any objections shall be filed

no later than twenty-one (21) days prior to the Fairness Hearing; and any response to any objections shall be filed no later than seven (7) days prior to the Fairness Hearing. Trustee Defendants shall not have any responsibility for any application for attorneys' fees and expenses or Service Awards request submitted by Class Counsel, and such matters will be considered separately from the fairness and reasonableness of the Settlement. The Court's approval or disapproval of the Settlement, and the effectiveness of the Settlement Agreement, shall not be contingent on the Court's approval or disapproval of the requested attorneys' fees, expenses, or Service Awards. At or after the Fairness Hearing, the Court shall determine whether any application for attorneys' fees and expenses, and any Service Awards to the Class Representatives for their representation of the Settlement Class, should be approved.

16. **<u>Termination of Settlement</u>**. In the event the Court does not grant final approval to the Settlement Agreement, or for any reason the Parties fail to obtain a Final Approval Order and Final Judgment as contemplated in the Settlement Agreement, or the Settlement Agreement is terminated pursuant to its terms for any reason or the Effective Date does not occur for any reason, then the following shall apply:

    a. All orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force and effect whatsoever, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in this or any other proceeding;

    b. The conditional certification of the Class pursuant to this Order shall be vacated automatically, and the Action shall proceed as though the Class had never been certified pursuant to the Settlement Agreement and such findings had never been made;

   c.  Nothing contained in this Order is, or may be construed as, a presumption, concession or admission by or against Trustee Defendants or the Named Plaintiffs or the Class of any default, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or proceedings, whether civil, criminal or administrative, including, but not limited to, factual or legal matters relating to any effort to certify the Action as a class action;

   d.  Nothing in this Order or pertaining to the Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any other proceeding in this case, including, but not limited to, motions or proceedings seeking treatment of the Action as a class action;

   e.  Nothing in this Order or pertaining to the Settlement Agreement is, or may be construed as, a presumption, concession or admission by or against Trustee Defendants that the Action meets the requisites for certification as a class action under federal law; and

   f.  All of the Court's prior Orders having nothing whatsoever to do with the Settlement shall, subject to this Order, remain in force and effect, except that the Parties shall submit to the Court, jointly if they reach agreement thereon or separately if no such agreement is reached, a proposed new scheduling and case management order for the remaining discovery and other proceedings in this civil action.

17.   **<u>Use of Order</u>**. Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Trustee Defendants. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this Action. In no event shall this Order, the fact that a settlement was reached, the Settlement Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in this action, in any other action, or in any judicial, administrative,

regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties,

and only the Parties, in a proceeding to enforce the Settlement Agreement.

18.    **No Merits Determination**. By entering this Order, the Court does not make

any determination as to the merits of this case.

19.    **Alteration of Exhibits**. Class Counsel and Trustee Defendants' Counsel are

hereby authorized to use all reasonable procedures to further the administration of the

Settlement that are not materially inconsistent with this Order or the Settlement Agreement,

including making, without further approval of the Court, non-substantive changes to the

form of the Notice, Exclusion Form, and other exhibits that they jointly agree are

reasonable or necessary such as the inclusion of specific dates or other modifications.

20.    **Injunction**. Pending the Fairness Hearing, the Court hereby enjoins any

Class Member from instituting, asserting, or prosecuting any of the Released Claims against

the Trustee Defendants in any federal or state court or any other forum.

21.    **Continuing Jurisdiction**. The Court retains jurisdiction over this action to

consider all further matters arising out of or connected with the Settlement Agreement and

the Settlement.

**IT IS SO ORDERED**


_____, 2024        _____
                                          Hon. Richard G. Andrews
                                          UNITED STATES DISTRICT JUDGE
                                          FOR THE DISTRICT OF DELAWARE

EXHIBIT C

## PLAN OF ALLOCATION AND DISTRIBUTION OF
## SETTLEMENT PROCEEDS[1]

1.    **Phase I Gross Settlement Fund.**  The Approved Settlement Amount,[2] and the

interest and earnings thereon, minus any portion of the Discovery Reserve ($50,000) that is

unvested or withheld,[3] shall be the "Phase I Gross Settlement Fund."

2.    **Phase I Net Proceeds**. The Phase I Gross Settlement Fund, less certain amounts

described in the Settlement Agreements, including (i) the amount required for payment of any

taxes owed on the Settlement Fund Account, (ii) the fees and costs of the Independent Fiduciary,

(iii) settlement administration fees, costs, and expenses that have been incurred or are anticipated

to be incurred, (iv) Court-approved attorneys' fees and expenses, and (v) any Service Awards to

the Named Plaintiffs, shall constitute the "Phase I Net Proceeds." The Phase I Net Proceeds shall

be distributed to the Authorized Claimants as defined below and in accordance with the terms of

the Settlement Agreements and this Plan of Allocation.

3.    **Authorized Claimants.** An Authorized Claimant shall be any vested participant in

the ESOP at any time since its inception (or, alternatively, a beneficiary of that participant) who

was identified as such in data produced by the Shareholder Defendants and who is not excluded

---

[1] Unless otherwise defined in this Plan of Allocation, capitalized terms have the meanings ascribed to them in the Class Action Settlement Agreement dated July 8, 2024, between the Plaintiffs and Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13 (the "Shareholder Settlement Agreement"); and/or (2) the Class Action Settlement Agreement dated September 20, 2024, between the Plaintiffs and Defendants Prudent Fiduciary Services, LLC, and Miguel Paredes (the "Trustee Settlement Agreement"). Collectively, the Shareholder Settlement Agreement and the Trustee Settlement Agreement are referred to as the "Settlement Agreements" or the "Settlement."
[2] The "Approved Settlement Amount" is any portion of the Settlement Amount described in either of the Settlement Agreements that is approved by the Court in a Final Approval Order that has become Final.
[3] Any remaining funds in the Discovery Reserve shall become "vested" to the Settlement Class upon the "Discovery Reserve Vesting Date," which is the sooner of either 1) the date that a settlement or settlements that fully resolves all remaining claims in this Action becomes Final; or 2) the date that a final judgment has been entered that fully resolves all remaining claims in this Action and all avenues for appeal have been exhausted or the time for appeal has lapsed. If the Discovery Reserve Vesting Date occurs prior to the Phase I Distribution Date, then any amount remaining in the Discovery Reserve shall be included in the "Phase I Gross Settlement Fund."

1

from the definition of the Settlement Class per the terms of the Settlement Agreements.

**4.      Calculation of Authorized Claimants' Phase I Distributions**. The pro rata share of the Phase I Net Proceeds to be distributed to each Authorized Claimant will be calculated as follows:

Each Authorized Claimant shall have a "Weighting Factor" applied to them. The Weighting Factor shall be calculated as follows:

$$\frac{\text{Redeemed Shares} + \text{Outstanding Shares}}{\text{Total Aggregate Vested Shares}}$$

Each Authorized Claimant's "Phase I Individual Distribution" is an amount that shall be calculated as follows:

Weighting Factor x Phase I Net Proceeds

The following definitions shall apply:

a.   "Redeemed Shares" shall mean the total number of vested shares of WGA stock allocated to an individual Authorized Claimant that have been redeemed or cashed out prior to the most recent date for which data is available and for which the Shareholder Defendants provide share data pursuant to the Settlement Agreement, § 2.2.3 (the "Share Information Date").

b.   "Outstanding Shares" shall mean the total number of vested shares of WGA stock allocated to an individual Authorized Claimant as of the Share Information Date.

c.   "Total Aggregate Vested Shares" shall mean the total number of vested shares of WGA stock allocated to all Authorized Claimants as of the most recent date for which such data is available, plus the total number of vested shares of WGA stock

2

that have been redeemed or cashed out prior to the Share Information Date by all Authorized Claimants.

5.    **Phase I Distribution Date.** The Phase I Distribution Date is the date that falls sixty (60) days after entry of the Final Approval Order.

6.    **Form of Phase I Distribution**. Phase I Individual Distributions shall be distributed to the Authorized Claimants by the Settlement Administrator as follows:

a.    Phase I Individual Distributions shall be mailed to Authorized Claimants or sent or deposited pursuant to their Election Forms on or before the Phase I Distribution Date.

b.    Authorized Claimants will receive their Phase I Individual Distribution in the form of a check, unless they submit a completed Election Form at least 21 days before the Fairness Hearing, wherein they request that their distribution is deposited directly into or mailed via check to an individual retirement account or other eligible retirement plan.

c.    For Authorized Claimants who did not complete an Election Form at least 21 days before the Fairness Hearing, on or before the Phase I Distribution Date, the Settlement Administrator will issue a single check from the Settlement Fund and mail the check to the address on file for each Authorized Claimant or, in the case of ambiguity or uncertainty, to the address of such person as determined by the Settlement Administrator using commercially reasonable means. Upon issuing such a check to an Authorized Claimant, in a letter accompanying such check, the Settlement Administrator shall advise the Authorized Claimant that they alone bear responsibility for complying with any qualified domestic relations order that may

3

apply to the settlement payment.

d.  For Authorized Claimants who completed an Election Form at least 21 days before the Fairness Hearing indicating that their Individual Distribution should be deposited directly into or mailed via check for deposit into another eligible retirement plan, on or before the Phase I Distribution Date, the Settlement Administrator will initiate the deposit or issue a single check from the Settlement Fund and mail the check to the address provided by the Authorized Claimant for purposes of depositing the funds into another eligible retirement plan.

e.  For each check or deposit issued, the Settlement Administrator shall: (i) calculate and withhold any applicable taxes associated with the payments allocable to the Authorized Claimant; (ii) report such payments and remit such tax withholdings to the Internal Revenue Service and applicable state revenue agents; and (iii) issue appropriate tax forms to the Authorized Claimants.

f.  All checks issued in accordance with the distribution of Phase I Net Proceeds shall be valid for up to one-hundred-fifty (150) calendar days after their issue date, which is the "Check Expiration Date."

g.  Thirty (30) days before the Check Expiration Date, the Settlement Administrator will send an email or letter to any Authorized Claimants who have not yet cashed their checks, reminding them of the Check Expiration Date.

h.  If an Authorized Claimant requests that their check be reissued, the Settlement Administrator may, at the Settlement Administrator's sole discretion, reissue the check to the Authorized Claimant so long as the Phase II Distribution Date has not yet passed; once the Phase II Distribution Date has passed, no checks from the first

4

phase of distribution may be reissued. All funds from checks that are undelivered or that are not cashed before the date when both the Check Expiration Date and Discovery Reserve Vesting Date have passed shall be distributed in the second phase of distribution outlined in Paragraphs 8-10.

7.    **Calculation of Authorized Claimants' Phase II Distributions**. Only the following Authorized Claimants are "Phase II Authorized Claimants": 1) Authorized Claimants who cashed their checks from the first phase of distribution; 2) Authorized Claimants or who filled out a timely and complete Election Form; and 3) Authorized Claimants who had their checks reissued under Paragraph 6.h. To be a Phase II Authorized Claimant, this eligibility criteria must be met as of the date that falls thirty (30) days before the Phase II Distribution Date (or, at the sole discretion of the Settlement Administrator, another date that is no earlier than thirty (30) days before the Phase II Distribution Date). The Phase II Individual Distribution shall be calculated as follows:

Each Phase II Authorized Claimant shall have a "Phase II Weighting Factor" applied to them. The Phase II Weighting Factor shall be calculated as follows:

$$\frac{\text{Redeemed Shares} + \text{Outstanding Shares}}{\text{Total Phase II Aggregate Vested Shares}}$$

Each Phase II Authorized Claimant's "Phase II Individual Distribution" is an amount that shall be calculated as follows:

$$\text{Phase II Weighting Factor} \times \text{Phase II Net Proceeds}$$

The definitions in Paragraph 4 shall apply along with the following definitions:

a.    "Total Phase II Aggregate Vested Shares" shall mean the total number of vested shares of WGA stock allocated to all Phase II Authorized Claimants as of the Share

5

Information Date, plus the total number of vested shares of WGA stock that have been redeemed or cashed out prior to the Share Information Date by all Phase II Authorized Claimants.

b.  "Phase II Net Proceeds" shall mean any funds remaining in the Settlement Fund Account as of the Phase II Distribution Date, including any funds remaining from the Discovery Reserve and funds from uncashed checks.

8.    **Phase II Distribution Date.** The Phase II Distribution Date is the date that falls thirty (30) days after the Discovery Reserve Vesting Date or the date that falls thirty (30) days after the Check Expiration Date for the first phase of check distributions, whichever is later.

9.    **Form of Phase II Distribution.** Phase II Individual Distributions shall be distributed to Phase II Authorized Claimants by the Settlement Administrator as follows:

a.  On or before the Phase II Distribution Date, Phase II Individual Distributions shall be mailed to Phase II Authorized Claimants either in the form of a check to the address of such person as determined by the Settlement Administrator using commercially reasonable means, or, if the Phase II Authorized Claimant filled out an Election Form, by deposit or check pursuant to the Phase II Authorized Claimant's Election Form.

b.  Checks for this second phase of distribution shall expire one hundred fifty (150) days after their issue date, which is the "Phase II Check Expiration Date." Phase II checks may not be reissued.

c.  Within fourteen (14) days of the Phase II Check Expiration Date, the Settlement Administrator shall send any residual funds remaining in the Settlement Fund Account to the *cy pres* recipient, the Pension Rights Center. Plaintiffs' Counsel

shall provide mailing or wire-transfer instructions for the *cy pres* distribution.

10.    **Tax-Related Issues and General Responsibilities**

a.    With the exception of the Discovery Reserve, in no event shall any other part of the Settlement Fund be used to reimburse any Defendants, to offset expenses of a retirement plan, or to offset settlement-related costs incurred by any Defendant.

b.    The Settlement Administrator shall be responsible for making provisions for the payments and distributions discussed above, as well as responsible for all tax reporting, remittance, and/or withholding obligations, if any, for any amounts distributed.

c.    The payments made from the Settlement Fund to Authorized Claimants are intended to constitute restorative payments in accordance with Revenue Ruling 2002-45.

d.    The Defendants, their Counsel, Plaintiffs' Counsel, and the class representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in the Settlement Agreement. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law for all payments made under the Settlement Agreement. Each Authorized Claimant who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each Authorized Claimant shall hold the Settling Parties,

their Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Parties, their Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

e. Neither the Settling Parties, their Counsel, nor the class representatives shall have any responsibility or liability whatsoever with respect to: (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Amount or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the administration or allocation of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (vi) the payment or withholding of any taxes and/or expenses incurred in connection with the taxation of the Settlement Fund or tax reporting, or the filing of any tax filings.

11. **Modifications.** The Court may approve this Plan of Allocation, or modify it, without additional notice to the Class. Any order modifying the Plan of Allocation will be posted on the Settlement Website within ten (10) business days of the modification.

EXHIBIT D





# Robert A. Meyer

**Esq.**

*Mediator, Arbitrator, Court-Appointed Neutral (Referee/Special Master), Neutral Evaluator, Hearing Officer, Temporary Judge/Judge Pro Tem*

**Robert A. Meyer, Esq.** serves as a mediator in complex business litigation pending throughout the United States, including securities and derivative class actions, professional liability lawsuits against accounting and law firms, litigation involving banking and complex financial instruments, cases arising under ERISA, intellectual property disputes, consumer class actions, high-profile employment matters and other commercial disputes.

Mr. Meyer brings the skill set of both an experienced mediator and trial lawyer to his matters. He is a Fellow of the American College of Trial Lawyers and has represented both plaintiffs and defendants in securities litigation, class actions and derivative suits, intellectual property litigation (including copyright, trademark, and right of publicity lawsuits), attorneys' and accountants' professional liability lawsuits, and claims involving breach of contract and commercial fraud.

As a mediator for more than 12 years, Mr. Meyer has focused on building trust with clients and counsel. He comes to each session prepared and regularly conducts pre-mediation conference calls with counsel (and as necessary, with insurers). Mr. Meyer develops creative solutions when negotiations stall. He is persistent with follow-up after mediation sessions, keeping discussions alive, often achieving post-session settlements. Mr. Meyer is ranked on the exclusive "National Mediators" List, *Chambers USA* (2019-2024), where he is recognized for being an "extraordinarily effective [mediator] because he comes well prepared and his views carry a lot of credibility."

## ADR Experience and Qualifications

- Successfully mediated numerous securities lawsuits, in federal and state courts, involving both Fortune 500 companies and start-ups.  Cases include '34 Act class actions and IPO and SPO class actions under the '33 Act
- Mediation of numerous merger-related and derivative cases pending in Delaware Chancery Court and other courts throughout the country
- Mediation of complex antitrust and competition-related lawsuits
- Expertise in settling consumer class actions pending throughout the United States
- Leading mediator of ERISA lawsuits, including class actions, ESOP litigation and claims by the U.S. Department of Labor
- Extensive experience addressing insurance issues and working with insurance towers
- Mediations of complex business disputes across numerous industries, including financial services, technology, oil & gas, pharmaceuticals and medical devices, entertainment, healthcare, manufacturing retail and professional services
- Nearly 40 years of experience as a litigation attorney (for plaintiffs and defendants)

# Honors, Memberships, and Professional Activities

*Completed Virtual ADR training conducted by the JAMS Institute, the training arm of JAMS.*

- Recognized as a "Best Lawyer in Bet-the-Company Litigation," "Best Lawyer in Commercial Litigation," and "Best Lawyer in Litigation - Securities," *Best Lawyers in America*, 2023
- Named "Best Lawyer," *The Best Lawyers in America*, 2020-2024
- Included on the "National Mediators" List, *Chambers USA*, 2019-2024
- Named "Best Lawyer" in Bet-the-Company Litigation, Commercial Litigation and Securities Litigation, *The Best Lawyers in America*, published by Woodward White, Inc., 2010-2016
- Named "Los Angeles Litigation – Securities Lawyer of the Year," *Best Lawyers*, 2014
- Named in "Southern California Super Lawyers" in Business Litigation, Securities Litigation, and Entertainment & Sports, a *Thomson Reuters* business, 2004-2015; Listed in the Top 100 Southern California Super Lawyers, 2005
- Highest "AV Preeminent (5 out of 5)" Professional Rating, *Martindale-Hubbell Law Directory*
- Fellow, American College of Trial Lawyers
- Member, Central District of California Attorney Settlement Officer Panel
- Board of Directors, Public Counsel (the largest pro bono law office in the United States)
- Board of Directors, Attorneys Insurance Mutual (legal malpractice insurer)
- Frequent lecturer before bar associations and for conferences on various topics including mediation, legal ethics, and attorney malpractice

### ADR Profiles

- "Trust is Key," *Daily Journal*, ADR Profile, October 13, 2017

# Background and Education

- Partner, Chair of Professional Services Litigation and General Counsel, Loeb & Loeb LLP, 1975-2017
- J.D., Georgetown University Law Center, 1975
- B.A., *cum laude*, American University School of International Service, 1972

**Disclaimer**

This page is for general information purposes.  JAMS makes no representations or warranties regarding its accuracy or completeness.  Interested persons should conduct their own research regarding information on this website before deciding to use JAMS, including investigation and research of JAMS neutrals. See More

EXHIBIT E

## **NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

Western Global Airlines, Inc. ESOP Litigation
*Burnett v. Prudent Fiduciary Services, LLC*, C.A. No. 1:22-cv-00270-RGA/JLH (D. Del.)

### **Please read this notice carefully.**
### **A federal court authorized this notice.**
### **This is not a solicitation.**

You received this notice because the records of the Western Global Airlines, Inc. Employee Stock Ownership Plan indicate that you are or were a vested participant in the Plan at some point since its inception. Your rights may be affected by a proposed class action settlement of this lawsuit.

**Please read the following information carefully to find out what the lawsuit is about, what the terms of the proposed settlement are, what rights you have to object to the proposed settlement if you disagree with its terms, and what deadlines apply to the right to object to the proposed settlement.** This notice summarizes the settlement terms and provides information concerning your rights as a Class Member. The complete Settlement Agreement ("Settlement") and other information about this lawsuit are available at [WEBSITE] or by contacting the settlement administrator at [EMAIL] or [PHONE].

| SUMMARY OF YOUR LEGAL RIGHTS & OPTIONS |
|---|
| **OPTION #1: DO NOTHING.** You can do nothing and still receive the benefits of the Settlement if it is approved. If you held vested shares of Western Global Airlines ("WGA") stock in your ESOP account, you will automatically receive Settlement proceeds via check mailed directly to you or via rollover to another retirement account if you complete the required online rollover request. |
| **OPTION #2: OBJECT.** If you are not satisfied with any of the terms of the proposed Settlement, then you or your attorney may inform the Court by sending a letter or written statement by **[OBJECTION DEADLINE]**. You or your attorney may also attend the Fairness Hearing on [DATE] to explain your concerns to the Court. |

### **BASIC INFORMATION**

#### 1. What is a class action?

In a class action, one or more individuals file a lawsuit on behalf of a class of many other individuals who have similar claims. Here, David Burnett and David Nelson, two former employees of WGA who held WGA stock in their ESOP accounts, have brought this case seeking to represent all participants in the ESOP.

#### 2. Who is a member of the Class?

The Class is defined as: "all participants and beneficiaries of the Western Global Airlines, Inc. Employee Stock Ownership Plan at any time since its inception, excluding Defendants, their family members or beneficiaries."

Because this Lawsuit will be certified as a mandatory ("non-opt-out") class action, you cannot exclude yourself from the Class or the benefits of the Settlement.

**Questions? Call [PHONE] or visit [WEBSITE] or email [EMAIL]**

# THE LAWSUIT AND THE SETTLEMENT

## 3. What is this lawsuit about?

This lawsuit was filed in 2022 on behalf of participants in the WGA ESOP and their beneficiaries (the "Lawsuit"). The Lawsuit asserts claims against Prudent Fiduciary Services LLC, Miguel Paredes, James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13. The Lawsuit is pending in the U.S. District Court for the District of Delaware.

The Lawsuit asserts that Defendants violated a federal statute, the Employee Retirement Income Security Act of 1974 ("ERISA"), in connection with the ESOP's purchase of WGA stock in 2020 for approximately $510 million (the "ESOP Transaction"). Plaintiffs allege that the ESOP paid more than fair market value for WGA stock. Specifically, the Lawsuit alleges that Defendants violated their duties under ERISA § 404, 29 U.S.C. § 1104, ERISA § 405, 29 U.S.C. § 1105, ERISA § 406, 29 U.S.C. § 1106, and ERISA § 410, 29 U.S.C.§ 1110 in connection with the ESOP's purchase of WGA stock.

## 4. What are the Defendants' Positions Regarding the Allegations?

The Defendants deny all the allegations in the Lawsuit, none of which have been proven, deny any wrongdoing regarding the ESOP Transaction, and have vigorously defended the Lawsuit.

Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13 (collectively, the "Shareholder Defendants") assert that they have not violated any federal statute and deny that the ESOP paid more than fair market value for WGA stock. The Shareholder Defendants further assert that the only valuation information made available to them demonstrated that the WGA stock was being purchased for less than fair market value and that the independent third party valuation conducted as of December 31, 2021, based on WGA's operating performance for the first full year after the ESOP purchased the WGA Stock, reflects that the value of WGA Stock increased by 31%. The Shareholder Defendants assert that the purpose of the ESOP was to grant beneficial ownership in WGA to all of its eligible employees, at no out-of-pocket cost and without modification to existing employee benefit programs, such as the 401(k), and that the ESOP was an incremental employee benefit structured so that neither the ESOP nor the ESOP participants expended cash to satisfy ESOP funding obligations. The Shareholder Defendants summarily assert that they acted in good faith, in the best interests of WGA and the ESOP Participants, followed all of the recommended best practices – including those supported by the U.S. Department of Labor, and relied upon exceptionally qualified experts and advisors, in full compliance with all ERISA and ESOP requirements. The Shareholder Defendants further assert that they did not breach any fiduciary obligations, were not involved in the selection of the independent ESOP Trustee, and did not determine the value of the ESOP Shares which was independently and exclusively done by the ESOP Trustee.

Defendants Miguel Paredes and Prudent Fiduciary Services, LLC (collectively, the "Trustee Defendants") also deny that they have any liability to any of the WGA ESOP participants. The Trustee Defendants assert that they acted prudently, in good faith, and in the best interests of the WGA ESOP participants in connection with the ESOP Transaction, engaged in a thorough due diligence process prior to the ESOP Transaction with the assistance of highly-qualified financial and legal advisors, and zealously negotiated the terms of the ESOP Transaction on behalf of the ESOP. The Trustee Defendants further assert that the ESOP Transaction purchase price was within the range of fair market value for WGA's stock, and that the Trustee Defendants complied with ERISA and all other applicable laws with respect to the ESOP Transaction.

## 5. Why is there a Settlement?

The Court did not decide in favor of any party. Instead, Plaintiffs and the Defendants have agreed to a settlement of Plaintiffs' claims. That way, both sides avoided the cost and risk of a trial of those claims, and Class Members will get the value of the Settlement now, rather than continuing with the litigation where there is a chance the Class would receive nothing (i.e., if Plaintiffs ultimately lose the case). The Class Representatives and Class Counsel think the Settlement is in the best interest of all Class Members.

Notwithstanding the Shareholder Defendants' belief that they will prevail in the Action, they have agreed to this Settlement to fulfill their expressed intention of providing consideration to the Western Global ESOP Plan participants and their beneficiaries and to stop the significant time and expense attendant in protracted litigation and distraction from focusing their efforts on WGA's success. The Trustee Defendants also believe that they will prevail in the Action but have agreed to this Settlement to avoid the significant time and expense attendant in protracted litigation.

## 6. Why did I get this notice?

You received this Notice because, according to the ESOP's records, you are believed to be a Member of the Class. The Court has ordered that this Notice be sent to all Class Members to provide you with information about the Settlement and to inform you of your right to object to the Settlement and/or the motion for attorneys' fees, expense reimbursements, settlement administration costs, and service awards to the Class Representatives, which are described further below.

## THE SETTLEMENT RECOVERY

## 7. What does the Settlement provide?

If the Settlement is approved, the Defendants will pay a total of $14,500,000 (the "Settlement Amount") into an escrow account. After deducting any court-awarded attorneys' fees, expense reimbursements, settlement administration costs, and service awards, the rest of the Settlement Amount (the "Net Proceeds") will be paid to the Class. Class Members will receive a share of the Settlement Fund in proportion to the number of vested ESOP shares they held. In addition, there may be a second distribution in which any remaining funds from uncashed checks will also be paid to those Class Members who cashed their checks or received rollovers in the first distribution. If there are any funds remaining after this second distribution, they will be sent to the *cy pres* recipient, the Pension Rights Center.

The amount of attorneys' fees, expense reimbursements, settlement administration costs, and service awards will be determined by the Court, but attorneys' fees will not exceed 29% of the Settlement Amount.

These and other terms of the Settlement are summarized in this notice. The terms of the Settlement are set forth in full in two documents: (1) the Class Action Settlement Agreement dated July 8, 2024, between the Plaintiffs and Defendants James K. Neff, Carmit P. Neff, James K. Neff Revocable Trust Dated 11/15/12, Carmit P. Neff Revocable Trust Dated 11/15/12, Kelly S. Neff Trust Dated 1/1/10, Danielle J. Neff Trust Dated 1/1/10, and WGA Trust Dated 8/16/13; and (2) the Class Action Settlement Agreement dated September 20, 2024, between the Plaintiffs and Defendants Prudent Fiduciary Services, LLC, and Miguel Paredes. Collectively, these two documents are referred to as the "Settlement Agreements" or the "Settlement." The complete Settlement Agreements are available at [WEBSITE].

## 8. How will I get my Settlement benefits?

Under the proposed Settlement, the Net Proceeds will be allocated among Class Members in proportion to the total number of vested shares held in each Class Member's ESOP account. If the Settlement is approved, all Class Members will automatically be paid their share of the Net Proceeds. Class Members may elect to have their payment deposited

into an individual retirement account or other eligible retirement plan (a retirement "roll-over") by filling out an Election Form by [DATE]. Class Members who do not make this election will receive their payment by check. The Election Form and full Plan of Allocation are available at [WEBSITE].

## THE LAWYERS REPRESENTING YOU

### 9. Who represents the Class?

The Court has appointed lawyers from the law firms Cohen Milstein Sellers & Toll PLLC, Stris & Maher LLP, Nichols Kaster, PLLP, and Cooch and Taylor, P.A., to represent you and other Class Members. These lawyers are called Class Counsel.

You will not be charged for these lawyers' services. If you want to be represented by your own lawyer, you may hire one at your own expense. Information about Class Counsel and the work they did in prosecuting this case and negotiating the proposed Settlement is available at [WEBSITE].

### 10. How will the lawyers be paid?

From the beginning of the case, which was filed in 2022, to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the Settlement. Nor have they been reimbursed for any litigation expenses spent prosecuting the case. Class Counsel will therefore apply to the Court for an award of attorneys' fees and the reimbursement of litigation expenses. The total amount of attorneys' fees requested will not exceed 29% of the Settlement Amount. The Class Representatives will seek service awards in recognition of the time and effort they expended on behalf of the Class.

You may object to the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards through the objection procedures described below in Question 14. All requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards must be reviewed and approved by the Court, and the Court may decide to award less than the requested amount. The Court will consider any objections before deciding the amount of any awards for attorneys' fees and expenses or service awards.

All court documents related to the motion for attorneys' fees and expense reimbursements will be posted to [WEBSITE] by [DATE].

## INDEPENDENT FIDUCIARY

### 11. Will the Settlement be reviewed by anyone other than the Court?

Yes. The Settlement Agreements require an experienced Independent Fiduciary to review the Settlement on behalf of the ESOP and Class Members. An Independent Fiduciary is an impartial third party that specializes in ERISA issues and will review the proposed Settlement, including the terms of the Settlement, the value of the Settlement benefits described in Question 7 above, and whether the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards are fair and reasonable in the opinion of the Independent Fiduciary. However, the ultimate determination of whether the Settlement terms and attorneys' fees, expense reimbursements, settlement administration costs, and service awards are fair and reasonable is solely in the discretion of the Court. The Independent Fiduciary will submit a written report with its findings and its conclusion concerning whether the Settlement is fair and reasonable. If the Independent Fiduciary does not agree with any aspect of the Settlement, it will object in writing and explain the basis of that objection. The parties may attempt to resolve the concerns of the Independent Fiduciary if it objects. The Independent Fiduciary's written report will be filed with the Court before the deadline to object so that the written report may be considered by Class Members

4

and the Court. That report will be posted here: [WEBSITE].

## YOUR RIGHTS AND OPTIONS

### 12. What happens if you do nothing at all?

If you do nothing, and the Settlement is approved, you will receive the benefits of the Settlement as described in Question 7 above. If you would like to have your payment deposited into an individual retirement account or other eligible retirement plan, then on or before [DATE], you must complete the Election Form online at [WEBSITE]. Class Members who do not elect a rollover will be paid directly by check.

### 13. May I opt out of the Settlement?

No. If the Court approves the Settlement, you will be bound by it and will receive whatever Settlement recovery you are entitled to under its terms. You cannot exclude yourself from the Settlement, but you may tell Judge Richard G. Andrews what you don't like about the Settlement by filing an objection on or before [OBJECTION DEADLINE]. (See Question 14 below.)

### 14. How do I object to the Settlement?

You can submit written comments or an objection that explains what you do not like about the Settlement. You may also object to the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards, but it must be submitted on or before [OBJECTION DEADLINE]. Your objection must be in writing, and you must provide the following information to ensure that Judge Andrews receives your objection and can properly consider it:

1. Include the case name and number for this Action: *Burnett, et al. v. Prudent Fiduciary Services LLC, et al.*, C.A. No. 1:22-cv-00270-RGA/JLH;

2. Your full name, current address, and current telephone number. If you are represented by a lawyer, you need to also provide your lawyer's name, current address, and current telephone number;

3. Explanation of what you do not like about the Settlement or the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards, and why;

4. A statement of whether you intend to appear at the Fairness Hearing and the name of your counsel, if any, who will be appearing at the hearing;

5. A statement of whether your objection applies only to you, to a specific part of the Class, or to the entire Class; and

6. Copies of any documents that you believe support your objection.

Again, it is very important that you file your objection on or before [OBJECTION DEADLINE]. Failure to submit your objection to the Court and Counsel for the Parties (identified below) by this deadline shall constitute a waiver of your right to object. In other words, you cannot object to the Settlement or the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards after [OBJECTION DEADLINE].

On or before [OBJECTION DEADLINE], you must file or mail your objection to the Court at the Courthouse (address below). In addition, you must mail (via U.S. mail) copies of your objection to the Settlement Administrator and to Class Counsel at the addresses below. To ensure prompt receipt of your objection and avoid any mailing delays, you should also email the objection to the corresponding email addresses below.

**Questions? Call [PHONE] or visit [WEBSITE] or email [EMAIL]**

| To Clerk of Court: | To Class Counsel: | To the Settlement Administrator: |
|---|---|---|
| United States District Court for the District of Delaware 844 North King Street Unit 18 Wilmington, DE 19801-3570 | Brock J. Specht Nichols Kaster, PLLP IDS Center, 80 S 8th St Suite 4700, Minneapolis, MN 55402 bspecht@nka.com | [SETTLEMENT ADMINISTRATOR'S ADDRESS & EMAIL] |

| To Defendants, send to **each and all** of the below: | | |
|---|---|---|
| Lars C. Golumbic Sean C. Abouchedid Andrew D. Salek-Raham Groom Law Group, Chartered 1701 Pennsylvania Ave NW Suite 1200 Washington, D.C. 20006 lgolumbic@groom.com sabouchedid@groom.com asalek-raham@groom.com | John H. Newcomer, Jr. Morris & James, LLP 500 Delaware Avenue, Suite 1500 Wilmington, DE 19801-1494 Telephone: (302) 888-6975 Jnewcomer@morrisjames.com | David R. Johanson Douglas A. Rubel Hawkins Parnell & Young, LLP 1776 Second Street Napa, California 94559 (707) 299-2470 djohanson@hpylaw.com drubel@hpylaw.com |

## 15. When and where will the Court hold a hearing on the fairness of the Settlement?

The Court will hold a Fairness Hearing on [DATE] at [TIME], before Judge Richard G. Andrews in the United States District Court for the District of Delaware. The Fairness Hearing will occur at the J. Caleb Boggs Federal Building, 844 N. King Street, Courtroom 6A, Wilmington, DE 19801. At the Fairness Hearing, the Court will listen to any objections, comments, and arguments concerning the fairness of the proposed Settlement and the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards.

You do not need to attend the Fairness Hearing. But you are welcome to attend the Hearing to observe or to voice your views about the Settlement or the requested attorneys' fees, expense reimbursements, settlement administration costs, and service awards. If you plan to speak at the hearing to object, you must file a statement that you intend to appear at the Fairness Hearing on or before [OBJECTION DEADLINE], and include copies of any papers, exhibits, or other evidence you will present to the Court. Your statement of intention to appear at the Fairness Hearing must include all of the relevant information outlined in Question 14 above and must be filed with the Clerk of the Court and sent to the Settlement Administrator, to Class Counsel, and to the Defendants' Counsel at the addresses provided in Question 14 above.

Note: The date and time of the Fairness Hearing may change, but any changes will be posted at [WEBSITE].

## 16. May I speak at the hearing?

Yes, by sending a statement of intention to appear at the Fairness Hearing you are telling the Court that you would like to speak at the hearing. Again, your statement of intention to appear at the Fairness Hearing must include all relevant information outlined in Question 14, and must be submitted according to the process described in Question 14 above.

## 17. When will I get my Settlement benefits?

If the Judge approves the Settlement after the Fairness Hearing, it is still possible that someone appeals the approval of the Settlement. If that happens, an appeals court will review whether it agrees that the Settlement is fair and reasonable. Appeals take several months and sometimes more than a year to be resolved. Please be patient. If no one appeals the Judge's approval of the Settlement, the Settlement Administrator will begin distributing the benefits described in Question 7 approximately 60 days after approval is granted. If you elect a rollover into another

6

retirement account, there may be an additional delay for the payment to process.

## 18.  What is the effect of Final Approval of the Settlement?

If the Court finds that the Settlement is fair and reasonable, a final order and judgment dismissing the case will be entered in the Action. All of the Court's orders will apply to you and legally bind you, including the release of claims outlined in the Settlement Agreements, which can be found at [WEBSITE].

If the Settlement is approved, no Class Member will be permitted to continue to assert the Released Claims in any other litigation against the Released Parties. If you do not like any aspects of the Settlement Agreements or the requested attorneys' fees, expense reimbursements, settlement administration costs, or service awards, you may object as described in Question 14 above.

If the Settlement is not approved or is only approved in part, the case will proceed as if no settlement had been attempted or reached as to any potion not approved, and there is no assurance that Class Members will recover more than what the Settlement provides, or anything at all.

## 19.  Where can I get additional information?

This notice provides only a summary of information about the Settlement. For more detailed information, you may review the Settlement Agreements and other important court documents filed in connection with the proposed Settlement at [WEBSITE]. You can also get more information by calling the Settlement Administrator toll free at [PHONE]. The Settlement Agreements and all other pleadings and papers filed in the case are also available for inspection and copying during regular business hours at the office of the Clerk of Court, located at 844 N. King Street, Unit 18, Wilmington, DE 19801-3570.

Please do not contact the Court, Defendants, or WGA with questions about the Settlement. If you have questions, you can call [PHONE], send an email with your questions to [EMAIL], or visit [WEBSITE] for more information.

## 20. What if my address or other information has changed or changes?

It is your responsibility to inform the Settlement Administrator of your updated address or other information. You may do so by email to: [EMAIL] or by U.S. Mail to the following mailing address: [ADDRESS].

**Questions? Call [PHONE] or visit [WEBSITE] or email [EMAIL]**



# Corporate Resume

Simpluris, an award winning claims administrator, has administered over 9,000 matters, managed over $8 billion in settlement funds, and provided its services for over 15 years. Our beginning-to-end services include complete project management, mailings & notification campaigns, contact center, legal intake, data management, disbursements & tax reporting, among others.

## Services

### Class Action Administration

Simpluris class action and claims administration offers comprehensive settlement planning, execution, and reporting. When you bring a case to Simpluris, our team reviews each matter independently. Our subject matter experts leverage their experience to develop a settlement framework designed to meet the unique aspects of your matter. We take a consultative approach to address your challenges and support preliminary hearing preparation.

### Mass Arbitration Administration

Simpluris can provide the technology and operational fulfillment resources needed to manage mass arbitrations from intake to payment in a cost-effective and efficient manner. At Simpluris, we pride ourselves on having an average of 93.5% signed releases. We have experience administering some of the largest mass arbitration cases, including Uber, Lyft, Instacart, Grubhub, Postmates, and DoorDash. Simpluris delivers solutions for matters of any size and complexity.

### Regulatory Remediation

Whether internally initiated or formally required by a consent order, Simpluris aids respondents in meeting critical obligations and deadlines. Simpluris is prepared to plan and execute remediation actions tailored to your institution's size and needs. As a third-party administrator, we understand the importance of swift remediation and provide "white glove" customer service from planning, to execution, through final reporting.

### Legal Corporate Services

Simpluris' services scale and adapt to meet our client's challenges. We excel at comprehensive settlement administration and remediation; however, we understand that our client's needs include a combination of many legal corporate services. No matter how simple or complex, we ask you to bring us your unique challenges so we may develop a custom solution to fit your needs.

## Data Security

Simpluris is committed to the security and overall protection of its customer's data and information. We maintain SOC 1 and SOC 2 certification which requires us to adhere to strict policies and procedures surrounding information security including processing and storage of confidential customer data. Simpluris has and maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations (e.g. HIPAA, Gramm-Leach-Bliley Act, MA 201 CMR 17.00).

## Executive Team

Simpluris' history is rooted in class action settlement administration and our management team's experiences are vast and diverse. The Simpluris executive leadership team boasts more than 100 years of experience in corporate, financial and legal administration, including:

- Executive management of the largest legal administration operation in the world that produced 200+ million notifications, 10+ million claims and $5+ billion funds disbursed per year on average.

- A few of the most notable matters our leadership team has presided over include the largest data breach responses, corporate restructures and antitrust settlement administrations in US history.

- Oversight of the largest consent orders handed down from OCC, DOJ, CFPB & FTC over the last decade.

- Fostering hundreds of client relationships with the premier government entities, law firms and financial institutions in the world.

The Simpluris executive team - Kevin Lee, President, COO; Doug Norman, CFO; Zach Hoffman, Founder, CTO; Patrick Ivie, CRO; Wes Alford, SVP; and Paul Saroj, SVP - are experienced industry experts. Leveraging our past experiences, Simpluris is prepared to handle matters of every scope and scale.

## Technology

From Simpluris' inception, our founders had a vision to develop a single comprehensive platform, purpose-built to serve the legal administration industry. Today, our proprietary technology platform, named Cadence, increases data security, mitigates errors caused by siloed databases, and speeds processes by improving transparency and collaboration between departments. Cadence is an innovative and evolving administration engine that sets our case management apart from all other legal administrators. From data ingestion, noticing, and claims processing, through disbursement, taxation, and final reporting, our project management processes are conducted inside Cadence. We see the future of legal tech evolving and are continuously developing our solutions to meet the administration needs of tomorrow.

## Client Service

The Simpluris administration team is best known for their dedication to delivering premium service. When you partner with Simpluris, you work alongside a dedicated client service representative. This Simpluris team member will guide you through the settlement life cycle. Your client service representative is your administration conductor, adjusting the tempo as your case progresses. With a comprehensive view of your matter, your client service representative can respond swiftly to changes in your case, proactively notify you of upcoming milestones, and most importantly, be accountable for the successful completion of your matter.

Our team is available any time of day with offices across the nation, including two corporate hubs in **Costa Mesa, CA and Orlando, FL**.



(800) 779–2104
3194-C Airport Loop Dr.,
Costa Mesa, CA 92626
simpluris.com







EXHIBIT G



# Nichols Kaster, PLLP

## Firm Resume

### | Table of Contents

Firm Overview ........................................................................................................................... 2

Accolades ................................................................................................................................... 3

Judicial Recognition ............................................................................................................... 4

Notable Litigation Results ................................................................................................... 10

Nichols Kaster Attorneys ................................................................................................... 299

## Firm Overview

For more than forty-five years, Nichols Kaster has enjoyed a sterling reputation as a top employment and consumer plaintiffs' litigation firm. We have represented hundreds of thousands of employees and consumers nationwide on a variety of legal issues arising under both state and federal laws.

The Firm's National **Wage and Hour** team represents employees in class and collective actions seeking to recover unpaid wages in circumstances where employers misclassify workers or otherwise fail to compensate them for all hours worked, pursuant to minimum wage and overtime rates, or as required by contract. The Firm also represents groups of employees seeking to recover unpaid commissions and unlawfully pooled tips.

### Employee Representation

- Wage & Hour Violations
- 401(k) and Benefit Breaches
- Qui Tam/False Claims
- Wage Fixing
- Equal Pay Violations
- Harassment
- Discrimination
- Retaliation
- Medical leave
- Failure to Accommodate
- Federal Railway Safety Act Violations
- Breach of Contract
- Severance
- Non-Compete Agreements
- Defamation

Nichols Kaster represents workers and consumers who have endured **discrimination** and who have had their **civil rights** violated on either an individual or class-wide basis. The Firm's employment group is also dedicated to assisting individual employees in Minnesota and surrounding states with a variety of legal needs, including addressing discrimination; harassment; retaliation; accommodation and leave issues; contract, severance, and non-compete disputes; as well as defending against licensure complaints.

The Firm also assists employees and retirement plan participants in protecting their **401(k) investments and other benefits**. Nichols Kaster challenges breaches of fiduciary duty relating to excessive fees, underperforming funds, imprudently managed accounts, and failure to properly pay benefits.

### Consumer Representation

- Forced-Placed Insurance
- Credit Reporting
- Improper Background Checks
- Student Loans
- Predatory Lending
- Interest Overcharges and Misapplication of Loan Payments
- Billing Practices
- Deceptive Practices
- Debt Collection Violations

Nichols Kaster is dedicated to protecting consumer rights through its National **Consumer** Class Action team. Over the years, the Firm has represented consumers with a variety of violations, primarily on a class-wide basis. The Firm led the way in forced-placed flood and hazard litigation and with claims under the Fair Credit and Reporting Act.

Nichols Kaster also represents **whistleblowers and relators** who have "blown the whistle" on illegal activity. These cases involve the

reporting of possible government fraud, mishandling of toxic substances, violations of tax or securities laws, discrimination in education, failure to provide access to public facilities, and more.  Nichols Kaster represents individuals who have brought claims on behalf of the government against entities who have defrauded the government under the False Claims Act (also known as "qui tam" lawsuits).

No matter the type of claim, Nichols Kaster helps everyday people seek redress against big corporations.

## Accolades

The NATIONAL TRIAL LAWYERS AND ALM have named Nichols Kaster, PLLP the Employment Rights Law Firm of The Year.  According to an ALM spokesperson,

[T]he lawyers and law firms selected this year from more than 250 submissions have demonstrated repeated success in cutting-edge work on behalf of plaintiffs over the last 15 months.  They possess a solid track record of client wins over the past three to five years.  The 2020 Elite Trial Lawyers finalists delivered results for clients across a wide range of cases with some of the most difficult sets of facts, very challenging circumstances, often filing uphill battles for years.  Many were up against some of the most prominent defense firms on the globe… The winners stood out based on the uniqueness and importance of their cases as well as the results delivered for their clients.

The U.S. NEWS & WORLD REPORT has continued to name Nichols Kaster as a Best Law Firm® and honored individual lawyers at the Firm as Best Lawyers®, consecutively since 2012.  LAW360 has listed Nichols Kaster as a top plaintiffs' employment law firm, and MINNESOTA LAWYER has declared it one of Minnesota's top 100 firms.  In 2019, nine of Nichols Kaster's attorneys were named as part of the 500 leading plaintiff employment lawyers on Lawdragon.com's list of the nation's best employment lawyers.  In 2023, twelve of Nichols Kaster's attorneys were named Super Lawyers® and four Rising Stars by SUPER LAWYERS MAGAZINE.  Steve Smith and Matthew Frank were announced as the 2017 Minnesota Lawyers of the Year.  On Martindale Hubbell, the firm has a 5 out of 5 peer rating.

Together the National Law Journal and LAW.COM named Nichols Kaster a top 50 firm for Elite Trial Lawyers "that are doing the most creative and substantial work on the plaintiffs side."  *Introducing America's Elite Trial Lawyers,* THE NAT'L LAW J. (Sept. 8, 2014).

In 2009, Nichols Kaster was ranked as one of the top ten busiest FLSA firms in the country by Litigation Almanac 360, which conducted a study of over 500,000 federal cases and received input from more than 200 law firms. Nichols Kaster was the only plaintiffs' firm in the top ten.

## Judicial Recognition

Nichols Kaster provides employees and consumers with significant results, including substantial settlements, trial victories, and ground-breaking determinations on important legal questions. The Firm's attorneys fight hard for their clients, vigorously litigating complex actions against top national defense firms. Courts have recognized Nichols Kaster's successes and extensive experience and have appointed the Firm as lead or co-lead counsel on hundreds of class and collective actions. Below are just a few examples of this recognition.

*"...Class Counsel is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this."*

The Honorable Judge Michael H. Watson
*Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153 (S.D. Ohio, Feb. 18, 2021).

*And it's not inappropriate to say, at this juncture, how deeply appreciative the Court is of the lawyering here, and I'm appreciative of the lawyering in two most important respects. One, there's been outstanding advocacy here. I have, um, wrestled with the matters in dispute, found them most challenging, and counsel has behaved throughout with both high ethics and zeal and true advocacy on the part of their clients, and I don't want that to go without saying I appreciate it. At the same time, and equally important, we sometimes lose track in advocacy of the desirability of resolving differences. You people have proved yourselves skilled negotiators willing to compromise, realistic, and the Court honors that as well.*

The Honorable Judge William G. Young
*Moitoso v. FMR, LLC, et al.*, No. 1:18-cv-12122-WGY (USDC MA., Jan. 12, 2021).

*Class Counsel displayed skill and determination. It is unsurprising that only a few firms might invest the considerable resources to ERISA class actions such as this, which require considerable resources and hold uncertain potential for recovery.*

The Honorable Judge Catherine C. Eagles
*Sims v. BB&T Corp.*, No. 1:15-cv-841 (M.D.N.C., May 5, 2019).

*[C]lass counsel achieved a strong result through skillful litigation and settlement negotiation. After filing a detailed complaint and amended complaint, working through a substantial discovery process, litigating a motion to dismiss, and undergoing mediation and settlement discussions, class counsel obtained a settlement of $14 million and a mandatory request for proposal that will help ensure quality management of class members' 401(k) funds down the road. Regarding quality of representation, the litigation and settlement appear by all measures to be the work of skillful and experienced attorneys with significant expertise in the ERISA context.*

The Honorable Judge Nathanael M. Cousins
*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 5:16-cv-03698 (N.D. Cal., May 11, 2018).

*The high quality of Nichols Kaster's representation strongly supports approval of the requested fees. The Court has previously commended counsel for their excellent lawyering. The point is worth reiterating here. Nichols Kaster was energetic, effective, and creative throughout this long litigation. The Court found Nichols Kaster's briefs and arguments first-rate. And the documents and deposition transcripts which the Court reviewed in the course of resolving motions revealed the firm's far-sighted and strategic approach to discovery . . . Further, unlike in many class actions, plaintiffs' counsel did not build their case by piggybacking on regulatory investigation or settlement . . . The lawyers at Nichols Kaster can genuinely claim to have been the authors of their clients' success.*

The Honorable Judge Paul A. Engelmayer
*Hart v. RCI Hospitali Holdings, Inc.*, No. 09 Civ. 3043, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015)

*Claimant's counsel were not merely professional, but highly qualified and knowledgeable and were superb in gathering the evidence and set it forth so that an arbitrator would fully understand the import of each exhibit and the answer to each question in the face of equally qualified adversaries who had also shown themselves to be fully prepared. All counsel consistently interacted with co-counsel and opposing counsel in a professional manner recognizing the high level of everyone else's great competence and preparedness.*

The Honorable Michael S. Jordan (Ret.) (Arbitrator)
*Contreras v. Prime Comms Retail, LLC*, AAA No. 01-22-0001-1326 (Jan. 30, 2024)

*I want to commend all of you for the excellent work that you did in conjunction with the special master and the court's technical advisor . . . I'm satisfied that this settlement is fair and reasonable given all the risk and expense of further litigation . . . .*

Honorable Judge Kathryn Vratil
*Sibley v. Sprint Nextel Corp.*, No. 08-cv-2063 (D. Kan. Dec. 20, 2018)

*[T]he attorneys at Nichols Kaster, PLLP are qualified, experienced, and competent, as evidenced by their background in litigating class-action cases involving FCRA violations. . . . . As noted above, Plaintiffs' attorneys are experienced and skilled consumer class action litigators who achieved a favorable result for the Settlement Classes.*

The Honorable Chief Judge Deborah Chasanow
*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013)

*[T]his case's early resolution can partly be attributed to counsel's experience representing thousands of employees in wage and hour cases for thirty years, particularly within the oil and gas industry.*

The Honorable Judge Dale Drozd
*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157 (E.D. Cal. Nov. 2, 2017)

*Plaintiffs retained counsel with significant experience in prosecuting force-placed insurance cases, and other courts in this district have appointed them class counsel in force-placed insurance cases . . . Counsel have worked vigorously to identify and investigate the claims in this case, and, as this litigation has revealed, understand the applicable law and have represented their clients vigorously and effectively.*

The Honorable Magistrate Judge Laurel Beeler
*Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506, 2014 WL 2734953 (N.D. Cal. June 13, 2014)

*Thank you for all of your good work here. I know that it was really an extraordinarily complex case, and so well done.*

The Honorable Judge Kathryn Vratil
*Harlow v. Sprint Nextel Corp.*, No. 08-2222 (D. Kan. Dec. 10, 2018)

*[Nichols Kaster has] considerable experience in litigating wage and hour class and collective actions.*

*The award . . . follows efficient effort on the part of Class Counsel to achieve a sizeable recovery for the Class Members.*

The Honorable Magistrate Judge Katherine Menendez
*Allen v. All Temporaries, Inc.*, No. 16:cv-04409 (D. Minn. Feb. 14, 2018)

*[T]he quality of representation, as evidenced by the substantial recovery and the qualifications of the attorneys, is high.  As then District Judge Gerard E. Lynch recognized, Nichols Kaster is "a reputable plaintiff-side employment litigation boutique with a nationwide practice and special expertise prosecuting FLSA cases."*

The Honorable Judge Sidney H. Stein
*Febus v. Guardian 1st Funding Grp., LLC*, 870 F. Supp. 2d 337 (S.D.N.Y. 2012)

*Counsel provided zealous, proficient advocacy through more than four years of litigation.*

The Honorable David T. Schultz
*Rao v. St. Jude et al.*, No. 19-cv-923 (D. Minn. Dec. 27, 2023)

*[T]his court finds that counsel possess more than sufficient experience to represent Plaintiffs fairly and adequately in reaching a fair and equitable settlement in this FLSA collective action . . . The parties are represented by competent and reputable counsel.*

The Honorable Judge Tony N. Leung
*Mayfield-Dillard v. Direct Home Health Care*, No. 1:16-cv-3489 (D. Minn. Dec. 18, 2017)

*I think it was just some very efficient and good work on the part of the plaintiffs' attorney that brought you to the point [of settlement]."*

The Honorable Judge Josephine L. Staton
*Urakhchin v. Allianz Asset Mgm't of Am., L.P.*, No. 8:15-cv-01614 (C.D. Cal. July 27, 2018)

*Counsel's experience in vigorously litigating class/collective wage and hour actions, plus their experience with this industry were essential in obtaining this favorable and efficient result.*

The Honorable Magistrate Judge Jonathon E. Hawley
*Woods v. Club Cabaret, Inc.*, 1:15-cv-01213, 2017 WL 4054523 (C.D. IL May, 17, 2017)

*The settlement was the result of arm's-length negotiations between experienced counsel. Class Counsel is well known by this Court for their expertise in wage and hour litigation.*

The Honorable Judge Michael J. Davis
*Burch v. Qwest Commc'ns Intl.*, No. 06-03523 (D. Minn. Sept. 14, 2012)

*I want to say that both sides here have performed at an admirable level. And I wish that the lawyers of all cases would perform at your level. I say this to both of you, because you have you have been of assistance to the Court.*

The Honorable Judge William Alsup
*Hofstetter v. Chase Home Fin., LLC*, No. 10-01313 (N.D. Cal. Nov. 7, 2011) (transcript)

*The Court finds that counsel is competent and capable of exercising all responsibilities as Class Counsel for the Settlement Class.*

The Honorable Judge Richard H. Kyle
*Bible v. Gen. Revenue Corp.*, 12-CV-1236 (D. Minn. Jan. 7, 2014)

*Over the past two years, Class Counsel has been active in all stages of litigation and has particularly benefitted Plaintiffs through capable handling of motion practice. For example, Plaintiffs obtained summary judgment on a key issue involving the <u>Morillon</u> doctrine and defeated summary judgment on Defendants' <u>de minimis</u> defense.*

The Honorable Judge Virginia A. Phillips
*Cervantez v. Celestica Corp.*, No. 07-729, 2010 WL 11465133, \*7 (C.D. Cal. Oct. 29, 2010)

*[T]he combined experience of Plaintiffs' counsel as well as the fact that employment law, particularly the representation of employees, forms a large part of both the firm and counsel's practice persuades this Court that the law firm of Nichols Kaster, PLLP, and its attorneys Steven Andrew Smith and Anna P. Prakash will more than adequately protect the interests of the Class Members.*

The Honorable Magistrate Judge Tony N. Leung
*Fearn v. Blazin' Beier Ranch, Inc.*, No. 11-743 (D. Minn. Jan. 30, 2012)

*Plaintiffs have shown good cause under Rule 16(b) because Plaintiffs' new counsel has shown the necessary diligence. Plaintiffs brought on Nichols Kaster, an experienced employment law firm of high repute as lead counsel in May 2012. Since that time, Plaintiffs have made a concerted effort to comply with this Court's orders and deadlines.*

The Honorable Magistrate Judge Tony N. Leung
*Alvarez v. Diversified Main. Sys., Inc.*, No. 11-3106 (D. Minn. Aug. 21, 2012)

*Plaintiff's counsel are qualified, experienced attorneys that are fully capable of
conducting this class action litigation . . . they are highly qualified, knowledgeable
attorneys that are willing to invest the resources necessary to fully prosecute this case.*

The Honorable Judge Gary Larson
*Karl v. Uptown Drink, LLC*, No. 27-CV-10-1926 (Minn. Dist. Ct. Nov. 17, 2010)

*Plaintiffs' Counsel are qualified attorneys with extensive experience in class action and
wage and hour litigation and are hereby appointed as Class Counsel.*

The Honorable Judge Susan Richard Nelson of the U.S.D.C. D. Minn.:
*Alvarez v. Diversified Main. Sys., Inc.*, No. 11-3106 (D. Minn. Feb. 14, 2013) (appointing class counsel and
preliminarily certifying the class for settlement purposes).

*However, the difficulty of the legal issues involved [and] the skill and experience of
Plaintiffs' counsel in FLSA cases . . . make an enhancement of the lodestar amount
appropriate in this case.*

The Honorable Judge Thomas D. Schroeder
*Latham v. Branch Banking & Trust Co.*, No. 1:12-cv-00007, 2014 WL 464236 (M.D.N.C. Jan. 14, 2014)

*The Court must consider the work counsel has done in identifying or investigating
potential claims in the actions, counsels' experience in handling class actions and other
complex litigation and claims of the type asserted in the present action, counsels'
knowledge of the applicable law, and the resources counsel will commit to representing
the class. Fed.R.Civ.P. 23(g)(1)(C). After reviewing the record, the Court is satisfied that
the firms of Nichols Kaster, PLLP and Stueve Siegel Hanson LLP satisfy these criteria
and will adequately represent the interests of the class as counsel.*

The Honorable Judge Kathryn Vratil
*Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 677 (D. Kan. 2008)

*The Arbitrator also notes that the briefs submitted by Claimant's counsel and the
performance at the hearing by Claimant's counsel were of a very high quality.*

Arbitrator Joel Grossman, Esq.
*Green v. CashCall, Inc.*, JAMS Arbitration No. 1200047225 (JAMS Aug. 22, 2014)

*Plaintiffs' counsel are adequate legal representatives for the class. They have done work
identifying and investigating potential claims, have handled class actions in the past,*

*know the applicable law, and have the resources necessary to represent the class. The class will be fairly and adequately represented.*

The Honorable Judge Susan M. Robiner
*Spar v. Cedar Towing & Auction, Inc.*, No. 27-CV-411-24993 (Minn. Dist. Ct. Oct. 16, 2012)


*[Defendant] doesn't question whether Plaintiffs are represented by qualified and competent counsel, and it's obvious that they are. Plaintiffs' are represented by a national law firm, Nichols Kaster, that specializes in employment and class action law.*

The Honorable Judge Larry Alan Burns
*Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596 (S.D. Cal. 2010)



## Notable Litigation Results

### | Settlement Results

In *Bowlay-Williams v. Google*, No. 4:21-cv-9942 (N.D. Cal. Aug. 8, 2023), the court granted final approval of a settlement of $8,369,000 for workers who asserted that Google's failure to include the

value of vested restricted stock units in their overtime rate of pay denied them overtime wages. The court recognized the skill and risk involved in pursuing the novel claim against a large corporation.

In *Sullivan et al. v. County of Ramsey*, No. 62-cv-21-651 (Minn. Dist. Ct., Aug. 9, 2022), the Ramsey County Board of Commissioners approved a $1.455 million agreement to resolve discrimination claims brought by eight current and former correctional officers at the Ramsey County Adult Detention Facility. The correctional officers filed claims in February 2021 after they were segregated when former Minneapolis police officer Derek Chauvin was processed and held at the jail. The officers asserted claims of discrimination and hostile work environment based on their race and the color of their skin, as well as retaliation.

In *Moitoso v. FMR LLC*, 1:18-cv-12122 (D. Mass. Jan. 22, 2021), the court granted final approval of the parties' $28.5 million settlement in a case where plaintiffs alleged the defendants breached their fiduciary duties in violation of the Employee Retirement Income Security Act ("ERISA").

In *Intravaia v. National Rural Electric Cooperative Ass'n.*, No. 1:19-cv-00973 (E.D. Va. Feb. 2, 2021), the court granted final approval of the parties' $10 million settlement in a case where plaintiffs alleged the defendants breached their fiduciary duties in violation of ERISA.

In *Karpik v. Huntington Bancshares, Inc.*, 2:17-cv-1153 (S.D. Ohio Feb. 18, 2021), the court granted final approval of the parties' $10.5 million settlement, resolving plaintiffs' claims against defendants under ERISA.

In *Bhatia v. McKinsey & Co., Inc.*, 1:19-cv-01466 (S.D.N.Y. Feb. 17, 2021), the court granted final approval of the parties' $39.5 million settlement for a class of current and former participants in the McKinsey & Company, Inc. Profit-Sharing Retirement Plan and the McKinsey & Company, Inc. Money Purchase Pension Plan.

In *Reetz v. Lowe's Companies Inc.*, 5:18-cv-00075 (W.D.N.C. September 9, 2021), the court granted final approval of the $12.5 million settlement with defendant Lowe's Companies, Inc. for a class of current and former participants in the Lowe's 401(k) Plan.

In *Baker v. John Hancock Life Insurance Co. (U.S.A.)*, 1:20-cv-10397 (D. Mass. Sept. 30, 2021), the court granted final approval of the parties' $14 million settlement in a case where plaintiffs alleged the defendants breached their fiduciary duties in violation of ERISA.

In *Abdul-Ahad v. Associated Courier Inc. (d/b/a Street Fleet)* 20-cv-0607-HB (D. Minn, Feb. 26, 2020), the court granted final approval of the parties' $450,000.00 gross settlement, finding the settlement to be fair, reasonable, and adequate and further awarding plaintiffs' counsel's attorneys' fees, expenses, and service awards to the named plaintiffs.

In *Bowers v. BB&T Corp.*, No. 1:15-cv-00732 (M.D.N.C. May 6, 2019), the court granted final approval of the parties' $24 million settlement in a case where plaintiffs alleged the defendants breached their fiduciary duties in violation of ERISA.

In *Moreno v. Deutsche Bank Americas Holding Corp.*, 1:15-cv-09936 (S.D.N.Y. March 1, 2019), the court granted final approval of the parties' $21.9 million settlement in a case where plaintiffs alleged the defendants breached their fiduciary duties in violation of ERISA.

In *Sibley v. Sprint Nextel Corp.*, No. 08-cv-2063 (D. Kan. Dec. 20, 2018), the court granted final approval of a commissions settlement for retail store sales employees totaling $30.5 million.

In *Harlow v. Sprint Nextel Corp.*, No. 08-2222 (D. Kan. Dec. 10, 2018), the court granted final approval of a commissions settlement of $3,650,000 for business channel sales employees.

In *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 8:15-cv-01614 (C.D. Cal. July 30, 2018), the court granted final approval of the parties' $12 million settlement in a case where plaintiffs allege the defendants breached their fiduciary duties in violation of ERISA.

In *Johnson v. Fujitsu Technology Business of America, Inc.*, No. 5:16-cv-03698 (N.D. Cal. May 11, 2018), the court granted final approval of the parties' $14 million settlement, and approved a class of current and former participants in the Fujitsu Group Defined Contribution and 401(k) Plan

In *Vongkhamchanh v. All Temporaries Midwest, Inc.*, 17:cv-00976 (D. Minn. Apr. 27, 2018), the court approved a settlement for health care workers who would receive over 84% of their unpaid overtime wages, explaining that the Firm's "considerable experience litigating wage and hour class and collective actions, and informed opinions of the fairness of the settlement" provided support for approval of the hybrid state and federal action.

In *Main v. American Airlines, Inc.*, 4:16-cv-00473 (N.D. Tex. Feb. 21, 2018), the court granted final approval of the parties' $22 million settlement for a class of current and former participants in the American Airlines, Inc. 401(k) Plan.

In *Allen v. All Temporaries, Inc.*, No. 16:cv-04409 (D. Minn. Feb. 14, 2018), the court granted final approval of a Rule 23 class action and FLSA collective action for settlement of home health workers' overtime claims. The court noted that "Class Members will recover over 99% of their unpaid overtime wages after the deduction for attorneys' fees, costs, and a class-representative service payment."

In *Mayfield-Dillard v. Direct Home Health Care*, No. 1:16-cv-3489 (D. Minn, Dec. 18, 2017) the court approved the parties' joint motion for settlement approval finding that the settlement was a substantial benefit to the collective as the eligible individuals who accept the settlement will receive all their alleged overtime wage loss. The court found that "counsel possess more than sufficient experience to represent Plaintiffs fairly and adequately in reaching a fair and equitable settlement in this FLSA collective action" and that "[t]he parties are represented by competent and reputable counsel."

In *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157 (E.D. CA, Nov. 22, 2017), the court approved the settlement finding that $3,000,000 was fair and reasonable and reflected a settlement payoff of 92% of the estimated potential value of the class members' claims. The judge commended Nichols Kaster stating, "[T]his case's early resolution can partly be attributed to counsel's experience representing thousands of employees in wage and hour cases for thirty years, particularly within the oil and gas industry."

In *Henderson v. 1400 Northside Drive, Inc.*, No. 1:13-cv-03767 (N.D. Ga. Mar. 17, 2017), the Firm achieved a $1,360,000 settlement on the eve of trial on behalf of 37 male exotic dancers who were misclassified as independent contractors and required to pay to work through the imposition of mandatory house fees, fines, and tip-outs of other workers.

In *Vaughan v. M-Enterm't Props., LLC*, No. 1:14-CV-914 (N.D. Ga. May 16, 2017), the court approved a $1,100,000 settlement a week before trial for 28 female exotic dancers who the Court previously found were misclassified as independent contractors and were required to pay to work through fines, fees, and tip-outs to other workers.

In *Febus v. Guardian First Funding Group, LLC*, 90 F. Supp. 3d 240 (S.D.N.Y. Mar. 4, 2015), plaintiffs brought a motion to enforce a wage and hour settlement from which one of the individual defendants defaulted. The court ordered the defendant pay the amount due, imposed an additional thirty percent penalty on the amount due, and awarded interest. The court noted that Nichols Kaster had been "attempting, in vain, to collect," and emphasized that defendant "cannot avoid his contractual obligations because he has decided that the settlement terms no longer suit his interests."

In *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015). the court granted final approval of a class-wide $15,000,000 gross settlement, finding the settlement to be fair, reasonable, and adequate and further awarding plaintiffs' counsel's attorneys' fees, expenses, and service awards to the named plaintiffs and discovery participants.

In the consolidated lawsuits of *Casey v. Citibank, N.A.*, No. 5:12-cv-0820 (N.D.N.Y. Aug. 21, 2014) and *Coonan v. Citibank, N.A.*, No. 1:13-cv-00353, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014), the court granted final approval of an approximately $110,000,000 settlement on behalf of settlement classes who were force-placed with flood or hazard insurance by Citibank, N.A. The settlement also provides substantial injunctive relief, forbidding Citibank and its affiliates from accepting commissions or any other form of compensation in connection with force-placed insurance for a period of six years, places limits on the amount of insurance coverage that Citibank may require borrowers to maintain, and requires Citibank to offer class members the opportunity to reduce their flood insurance coverage if Citibank had increased their coverage amount to an amount in excess of the amount required under federal law. The court found the settlement to be "fair, reasonable, and adequate, in the best interests of the Settlement Classes" and overruled nine objections.

In *Bible v. General Revenue Corp.*, No. 12-cv-01236 RHK (D. Minn. June 27, 2014), the court granted final approval of a $1,250,000 settlement on behalf of approximately 134,000 class members, more than double the statutory cap for a Fair Debt Collection Practices Act class action.

In *Farmer v. Bank of America, N.A.*, No. 5:11-cv-00935 (W.D. Tex. Oct. 18, 2013), the court granted final approval of the parties' multi-million-dollar settlement with significant prospective injunctive relief, finally certifying a class of 25,000 Texas mortgagors who had been sent letters requesting proof of hazard insurance in violation of the language of their deeds of trust, and appointing Nichols Kaster as class counsel.

In *Singleton v. Domino's Pizza, LLC*, No. 8:11-cv-01823 (D. Md. Oct. 2, 2013), the court approved the parties' $2,500,000 million settlement for a class of over 50,000 under the Fair Credit Reporting Act in a case where plaintiffs alleged that the defendant employer had improperly procured consumer reports on employees and applicants and had failed to comply with the pre-adverse action notice requirements of the Act.

In *Ulbrich v. GMAC Mortgage*, No. 11-CIV-62424, 2013 WL 8692404 (S.D. Fla. May 10, 2013), the court granted final settlement approval and appointed Nichols Kaster as class counsel for a 2,000+ nationwide class. The case involved claims against GMAC Mortgage, LLC and Balboa Insurance Services, Inc. relating to force-placed wind insurance.

In *Eldredge v. City of Saint Paul*, No. 09-2018 (D. Minn. Aug. 29, 2011), plaintiff Eldredge reached a settlement of his case that was the second largest paid by the City of Saint Paul in an employment lawsuit.

In *Hofstetter v. JPMorgan Chase Bank, N.A.*, No. C- 10-01313, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011), Nichols Kaster was appointed class counsel for four classes encompassing approximately 40,000 mortgagors against Chase Bank. In the same case, Nichols Kaster secured an approximately $10,000,000 settlement for the classes. *Hofstetter*, 2011 WL 5545912 (N.D. Cal. Nov. 14, 2011).

## Appellate Achievements

In *Taylor v. Tesla, Inc.*, --- Cal.Rptr. 3d ----, 2024 WL 3735428 (Aug. 8, 2024), the Court of Appeal affirmed the trial court's denial of defendant's anti-SLAPP motion. The court held that the existence of a class action challenging race harassment at the defendant's factory did not justify the defendant's refusal to respond to California Labor Code requests for personnel files under California's anti-SLAPP statute. The court held: "Faced with many requests for information that had nothing to do with the allegations in [the class action], Tesla made no effort to produce anything. This suggests it viewed the [class action] as a convenient excuse to relieve itself of the burden of meeting statutory obligations that were independent of its . . . defense [in the class action]."

In *Oman v. Delta Air Lines, Inc.*, 2021 WL 351960 (9th Cir. Feb. 2, 2021) and the companion case *Ward v. United Airlines, Inc.*, 2021 WL 345578 (9th Cir. Feb. 2, 2021), the Ninth Circuit held that

California's wage statement and pay timing requirements apply to flight attendants who are based at California airports, rejecting the airlines' argument that compliance with these state laws would impermissibly burden interstate commerce. This ruling followed a decision from the California Supreme Court on certified questions, which held that California' wage statement and pay timing statutes apply to interstate employees who work less than 50% of their time in any one state if the employee's base of operations is in California. *See Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020); *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020).

In *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17 (1st Cir. 2018), the First Circuit reversed the district court's grant of defendants' directed verdict motion, holding that plaintiffs had met their burden of proving loss causation, and that plaintiffs' damages model constituted a viable measurement of the losses suffered by Putnam's employees as a result of defendants' fiduciary breaches.  The defendant field a writ of certiorari to the U.S. Supreme Court, and in *Putnam Investments, LLC v. Brotherston*, No. 18-926, 2020 WL 129535 (U.S. Jan. 13, 2020), the Supreme Court denied defendants' petition. The case is remanded to the district court for continued trial proceedings under the First Circuit's holding that the burden to prove causation is on defendants and plaintiffs presented sufficient evidence of losses to the plan as a result of defendants' mismanagement.

In *Ray v. County of Los Angeles*, 935 F.3d 703 (9th Cir. 2019), the Ninth Circuit ruled for the plaintiffs on two distinct issues. First, the Court upheld the District Court's ruling that the County of Los Angeles was not entitled to Sovereign Immunity as an arm of the state for its role in implementing the In-Home Supportive Services program for homecare workers in Los Angeles County. In so holding, the Court declined to overturn long-standing Ninth Circuit precedent outlining the "arm of the state" doctrine, and it determined that, under the existing five-factor test, four of the factors weighed against immunity for the County. In the second part of its ruling, the Court reversed the District Court's holding regarding the effective date of Department of Labor regulations governing homecare workers employed by third parties, holding that the regulations at issue were effective January 1, 2015, despite industry challenges to the regulations that were successful at the district court level but ultimately unsuccessful on appeal.

In *Wingate v. Metropolitan Airport Commission* A19-0226 (August 19, 2019), Wingate appealed the district court's summary judgment finding in favor of Metropolitan Airport Commission (MAC) dismissing the whistleblower claim. The court of appeals reversed the district court's decision ruling the evidence presented by Wingate including his positive performance reviews, his supervisor's remarks, MAC's promotion patterns, and a sergeant's similar report of retaliatory conduct support an inference that Wingate's engagement in protective activity was the true reason that MAC did not promote him to sergeant, thus raising a material fact dispute on the issue of pretext.

In *Moore v. City of New Brighton*, A18-2111, (July 29, 2019), the parties filed cross appeals where Moore appealed the district court's summary judgment decision and the city appealed the district court and the Court of Appeals subject-matter jurisdiction over the case.  In a published decision, the Minnesota Court of Appeals reversed the district court's summary judgment decision, finding that the evidence showing the city maintained the administrative, home-bound leave for a period so long and so

inconsistent with its purported reason for commencing the leave creates a material fact dispute as to whether the city's actions "penalized" the sergeant under the Minnesota Whistleblower Act and whether the city's reason is pretextual. Further, both the district court and the court of appeals rejected the city's jurisdictional argument and held that both courts have subject-matter jurisdiction over Moore's claim under the Minnesota Whistleblower Act.

*Frost v. BNSF Railway, Co.*, 914 F.3d 1189 (9th Cir. 2019), was tried to a jury in Montana in December 2016. Mr. Frost alleged that he was retaliated against when BNSF terminated his employment after he reported suffering from PTSD. Mr. Frost was diagnosed with PTSD after he was nearly struck by an oncoming train while repairing a section of the track after his supervisor released track authority but failed to inform him and his fellow crew members. Pursuant to the Defendant's request, the jury was provided an honest belief instruction and a defense verdict resulted. Mr. Frost appealed, arguing that the instruction was error because it conflicted with the clear language of the Federal Railway Safety Act ("FRSA") and granted the jury a short-cut to rule for BNSF while ignoring evidence of retaliation. The Ninth Circuit agreed. In a unanimous decision, the Ninth Circuit definitively held there was no requirement that FRSA plaintiffs separately prove discriminatory intent under the FRSA's contributing factor standard, and thus the instruction was error. The Ninth Circuit reversed the trial verdict and remanded for a new trial.

In *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847 (9th Cir. 2017), the Ninth Circuit reversed the district court's grant of summary judgment to the defendant, finding that the defendant's mortgage underwriters did not fit within the administrative exemption to the Fair Labor Standards Act and remanding for judgment in the plaintiffs' favor on the issue.

In *Clark v. Centene Co. of Texas, L.P.*, 656 F. App'x 688 (5th Cir. 2016) (per curiam), the U.S. Court of Appeals for the Fifth Circuit affirmed a lower court decision that appeals nurses do not fall within the administrative or professional exemptions of the FLSA overtime requirements.

In *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2d Cir. 2016), the U.S. Court of Appeals for the Second Circuit vacated and remanded the district court's dismissal of plaintiff's complaint, finding that plaintiff's had Article III standing to bring this action regarding the excessive fees for providing copies of plaintiffs' medical records charged by defendants, and stating that "because the complaint alleged that each name plaintiff "through [her or his] counsel' had "paid" the charges demanded for the records, and that the "ultimate expense" was borne by the plaintiffs, the complaint plausibly alleged that plaintiffs, as principals acting through their agents, had been injured by the alleged overcharges."

In *Monroe v. FTS USA, LLC*, 815 F.3d 1000 (6th Cir. 2016), the U.S. Court of Appeals for the Sixth Circuit upheld the lower court's denial of defendant's motion to decertify the collective and affirmed the trial verdict in favor of plaintiffs. The Sixth Circuit ruled that Plaintiff's presentation of representative testimony was appropriate at trial for proving liability for the collective and estimated average approach to calculating damages.

In *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015), *reh'g. en banc denied*, 807 F.3d 839 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607 (2016), the U.S. Court of Appeals for the Seventh Circuit reversed the district court's dismissal of plaintiff's complaint against a student loan guarantor for wrongfully charging collection fees on a defaulted student loan, finding that plaintiff's claims for breach of contract and for violations of the RICO Act were not preempted by the Higher Education Act, and stating that "a guaranty agency may not impose collection costs on a borrower who is in default for the first time but who has timely entered into and complied with an alternative repayment agreement."

In *Perez v. Mortgage Bankers Assoc.*, 135 S. Ct. 1199 (2015), the United States Supreme Court ruled unanimously in favor of a group of employees represented by Nichols Kaster. The Court upheld a Department of Labor interpretation granting minimum wage and overtime compensation for mortgage loan officers.

In *Karl v. Uptown Drink, LLC*, 835 N.W.2d 14 (Minn. Aug. 14, 2013), the Minnesota Supreme Court ruled that under Minnesota law, employers cannot require employees to reimburse them from their tips for items such as cash register shortages, unsigned credit card receipts, and customer walk outs. The Court also found that employees do not have to show that because of the deductions their wages fell below the minimum wage in order to prove a violation of Minn. Stat. § 181.79. In this case, the plaintiffs were over 750 employees who worked at three different bars/night clubs in Minneapolis. At a jury trial in 2011, the plaintiffs prevailed on their record-keeping and certain minimum wage claims, but lost on the unlawful deductions claims. Nichols Kaster appealed the deductions issue, and took it all the way to the Minnesota Supreme Court, where the Court agreed with plaintiffs and instructed the lower court to enter judgment on the plaintiffs' behalf on this claim.

In *Boaz v. Federal Express Customer Info. Services, Inc.*, 725 F.3d 603 (6th Cir. 2013), the U.S. Court of Appeals for the Sixth Circuit ruled that plaintiff, a FedEx project manager who had claimed that FedEx had failed to pay her overtime wages, in violation of the Fair Labor Standards Act, and paid her less than male coworkers performing the same job, in violation of the Equal Pay Act, could pursue her overtime and gender discrimination claims. The federal laws at issue provide employees three years to file a lawsuit and FedEx had plaintiff sign an application which stated that lawsuits had to be brought within 6 months or claims were lost.  The lower court had dismissed plaintiff's claims, citing the application. The Sixth Circuit unanimously sided with plaintiff, reversed the dismissal and remanded the case for trial.

In *Calderon v. GEICO General Insurance Co.*, 809 F.3d 111 (4th Cir. 2015), the U.S. Court of Appeals for the Fourth Circuit affirmed a district court's grant of affirmative summary judgment in favor of approximately one hundred current and former Security Investigators, finding that they were not covered by the administrative exemption. Specifically, the Appellate Court found that plaintiffs' primary job duty was not the performance of work directly related to general business operations.

In *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit struck down the district court's ruling that had dismissed plaintiff's claims. The court found

that plaintiff's allegations regarding excessive flood insurance and improper kickbacks had been properly alleged and that the case should proceed.

In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), the U.S. Supreme Court found in favor of the plaintiff and held that "an oral complaint of a violation of the Fair Labor Standards Act is protected conduct under the [Act's] anti-retaliation provision." This was a huge win for employees all over the country, as the Supreme Court's decision set a new FLSA anti-retaliation standard.

## | Trial Verdicts and Arbitration Awards

In *Contreras v. Prime Retail Comms, LLC*, AAA No. 01-22-0001-1326 (Nov. 26, 2023) an arbitrator awarded an individual Claimant $80,891.80 in unpaid overtime damages. Claimant worked as a store manager at one of Prime's retail stores that sold AT&T products. The arbitrator held that Prime suffered and permitted him to work off-the-clock in violation of the Fair Labor Standards Act. In a subsequent order, the arbitrator awarded Claimant's Counsel $120,631.91 in attorneys' fees and costs for the matter.

In *Rao v. St. Jude Medical S.C., Inc. et al.* No. 19-cv-923 (DTS) (D. Minn. Oct. 19, 2023), a jury awarded a medical device sales representative $39,030 in damages after finding that St. Jude breached his employment agreement and retaliated against him for participating in an internal investigation into a hostile work environment. The jury found against St. Jude on its counterclaim alleging that Rao violated a non-compete agreement.

In *Hendricks v. Total Quality Logistics, LLC*, No. 1:10-cv-649 (S.D. Ohio Sept. 26, 2023), a case consisting of over 4500 workers, the parties conducted a two-week bench trial regarding the defendant's liability for overtime pay under the FLSA and Ohio state law. The district court issued a trial order ruling in the plaintiff's favor on the defendant's exemption defense, finding the company and its owner liable for unpaid overtime and liquidated (or double) damages.

In *Sanders v. BNSF Railroad* Co., No. 17-cv-5106 (D. Minn. Dec. 16, 2021), following an eight-day trial, a jury in St. Paul, Minnesota awarded Plaintiff Don Sanders, a former track inspector with BNSF Railway Company, over $9.4 million in damages. The jury found that Sanders was retaliated against in violation of the Federal Railway Safety Act after he reported hazardous safety conditions on the railroad and reported harassment and retaliation to BNSF's Human Resources department. The jury awarded Sanders $611,797 in lost wages, $250,000 in emotional distress, and $8,600,000 in punitive damages.

In *Campbell v. Union Pacific.*, No. 18-cv-00522, (D. Id. Apr. 12, 2021), following a five-day trial in Pocatello, Idaho, a jury returned a $3.8 million verdict in favor of former Union Pacific employee, Thomas Campbell. The jury found in favor of Campbell on both his ADA discrimination and failure to accommodate claims. The jury awarded Campbell $312,591.23 in front pay, $2,500,000 in compensatory damages, and $1,000,000 in punitive damages.

In *Cummings v. Chevron Corp.*, JAMS Case No. 1100086694 (June 8, 2018), an arbitrator issued a final award in the amount of $511,533.95 in favor of Donnie Cummings, a Well Site Supervisor who worked for Chevron. The arbitrator ruled that Chevron misclassified Cummings as an independent contractor and also misclassified him as exempt from the overtime provisions of state and federal law. The arbitrator awarded Cummings $284,270.15 in unpaid overtime, liquidated damages, and meal and rest period premiums, and awarded attorneys' fees and costs in the amount of $227,263.80.

In *Kaiser v. Gortmaker et al.*, No. 15-cv-01030, (D.S.D. Dec. 21, 2017) following a five-day trial in Aberdeen, South Dakota, a six-person jury returned a $1.2 million verdict in favor of former South Dakota Division of Criminal Investigation agent, Laura Zylstra-Kaiser. At the conclusion of trial, the jury found in favor of Kaiser on both her retaliation and gender discrimination claims. The jury awarded Kaiser $311,812.00 in lost wages, $498,929.00 in lost retirement benefits, and $400,000.00 in emotional distress damages.

In *Clark v. Centene Company of Texas, LP*, 104 F. Supp. 3d 813 (W.D. Tex. 2015), upon the conclusion of a bench trial, the court awarded damages to a collective action of utilization review nurses. The court found that plaintiffs submitted sufficient evidence to create a just and reasonable inference as to overtime hours worked by the collective and awarded liquidated damages. This victory followed the court's order on the parties' cross-motions for summary judgment and defendant's motion for decertification last year, holding that the defendant misclassified its utilization nurses. 44 F. Supp. 3d 674 (W.D. Tex. 2014). The court ruled that plaintiffs are not exempt from the Fair Labor Standards Act's overtime laws and are thus eligible for overtime pay. The court further held that defendant's claim that each plaintiff's claim would need to be analyzed individually to determine liability and damages was without merit.

In *Rhodes v. CashCall*, JAMS Ref. No. 1200047475, *Garcia v. CashCall*, JAMS Ref. No. 1200047422, *Good v. CashCall*, JAMS Ref. No. 1200047220, and *Green v. CashCall, Inc.*, JAMS Ref. No. 1200047225 (2014), a JAMS arbitrator ruled that CashCall misclassified Rhodes and Green, loan processers, and Garcia and Good, underwriters, as exempt from the overtime requirements of California and federal law. The arbitrator awarded Rhodes $15,000 in unpaid overtime plus an additional $15,000 in liquidated damages, along with $88,179 in attorneys' fees and costs, Green was awarded $15,067.72 in damages, as well as $54,165.50 in attorneys' fees and costs. The arbitrator also awarded Garcia $10,000 in unpaid overtime plus an additional $10,000 in liquidated damages, along with $98,709 in attorneys' fees and costs, and Good was awarded $43,631 in unpaid overtime, as well as $50,627.49 in attorneys' fees and costs.

In *Walsten v. Shank Power Products Co., Inc.*, No. 19HA-CV-12-1094 (D. Minn. Sept. 9, 2013), a minority shareholder case, an advisory jury returned a $700,000 verdict for the plaintiff, finding for him on his claims for breach of fiduciary duty and violation of his reasonable expectation of continuing employment. The trial judge subsequently issued an order sustaining the $700,000 advisory verdict and awarding $200,000 in attorneys' fees.

In *Monroe v. FTS USA, LLC*, No. 2:08-cv-21 (W.D. Tenn. Oct. 2011), the jury found that defendants willfully violated the Fair Labor Standards Act by failing to pay nearly 300 cable installers for all overtime hours worked. The district court entered judgment with damages for the plaintiffs.

## Summary Adjudication

In *Learing v. Anthem*, 21-cv-2283- JWB-DJF (D. Minn. Mar. 22, 2024), the parties crossed moved for summary judgment on the defendant's affirmative exemption defenses. The court denied the defendant's motion and granted the plaintiff's. In addition to ruling in the plaintiff's favor on both of the defendant's administrative and professional exemption defenses, the court also concluded that defendant had not identified evidence that would support a verdict in its favor on a good-faith defense, and found liquidated damages to be appropriate.

In *Rao v. St. Jude Medical S.C., Inc.*, File No. 19-cv-923 (D. Minn. Sept. 27, 2022), the district court denied Defendants' motion for summary judgment in part, finding that there were triable issues of material fact on Plaintiff's retaliation, age discrimination, and breach of contract claims. The court granted Plaintiff's motion for summary judgment in part, dismissing Defendant's counterclaim that Plaintiff breached a confidentiality agreement, and limiting Defendant's counterclaim related to violation of a non-compete agreement to where Defendants could show alleged damages.

In *T.B. et al. v. Independent School District No. 112*, No. 19-cv-2414 (D. Minn. Aug. 1, 2022), the district court denied defendant school district's motion for summary judgment, finding that there were triable issues of material fact as to whether the district violated two students' civil rights by maintaining a racially hostile environment within its schools, failing to adequately respond to reports of race discrimination, and failing to provide school staff with proper training on how to respond to incidents of race discrimination.

In *Oman v. Delta Air Lines, Inc.*, --- F.Supp.3d ----, 2022 WL 4596624 (N.D. Cal. July 8, 2022), the court granted plaintiffs' motion summary judgment on their wage statement claims under Labor Code Section 226, holding that Delta knowingly and intentionally violated California law after it exhausted appeals and failed to correct its wage statements.

In *K.R. et al. v. Duluth Edison Public Schools Academy*, No. 19-cv-00999 (D. Minn. Mar. 16, 2022), the district court denied defendant school district's motion for summary judgment, finding that there were triable issues of material fact as to whether the district violated two students' civil rights under Title VI, the Minnesota Human Rights Act, and the Fourteenth Amendment to the U.S. Constitution pursuant to Section 1983.

In *Mass v. Regents of the University of California*, No. RG17879223 (Cal. Super. Ct., Alameda Cnty. Nov. 19, 2021), the court denied defendants' motion for summary judgment, finding that there were triable issues of material fact as to whether defendants as trustee/plan administrator owed a duty to the UCRP beneficiaries and the contours of any such duty, whether defendants breached the

alleged owed duty, and whether any breach by defendants caused members of the class to suffer any injury.

In *Deluca v. Farmers Ins. Exchange*, 386 F.Supp.3d 1235 (N.D. Cal. 2019), the court granted in part Plaintiffs' affirmative summary judgment motion and denied Defendant's summary judgment motion. The court found that Farmers could not satisfy either duties prong of the administrative exemption. As a result, the court determined that plaintiffs and class members were misclassified as exempt under state and federal law and are entitled to overtime premiums.

In *Rego v. Liberty Mutual Managed Care, LLC*, 367 F. Supp. 3d 849 (E.D. Wis. 2019), the court found as a matter of law that a defendant insurance company misclassified its utilization management nurses as exempt from overtime protections under the administrative and the professional exemptions. The plaintiffs primary job duty consisted of reviewing medical authorization requests against well-established guidelines to determine whether the criteria for medical necessity are satisfied. The court held in part that this work involved the performance of routine mental work, likened to inspection-type duties as opposed to bedside nursing.

In *Henderson v. 1400 Northside Drive, Inc.*, No. 1:13-cv-3767, 2016 WL 3125012 (N.D. Ga. June 3, 2016), the district court granted in part Plaintiffs' affirmative motion for summary judgment on the issues of: (1) whether the owner qualified as a joint employer, (2) the viability of the defendants' counterclaims, and (3) whether minimum wage damages includes recovery for fines, fees, and tipouts paid by the employee to the employer. In an earlier order, the court also the court granted plaintiffs' motion for partial summary judgment on the issues of: (1) the creative professional exemption, finding that defendants misclassified adult entertainers as exempt from the overtime and minimum wage requirements of the FLSA; and (2) offset, finding that defendants could not offset their minimum wage obligations with tips paid by customers to adult entertainers. 110 F. Supp. 3d 1318 (N.D. Ga. 2015).

In *Vaughan v. M-Enterm't Props., LLC*, No. 1:14-CV-914, 2016 WL 7365201 (N.D. Ga. Mar. 15, 2016), the district court granted in part exotic dancer plaintiffs' affirmative motion for summary judgment on the issues of (1) whether entertainers qualify as employees under the FLSA, (2) whether related entity defendants qualified as joint employers, (3) the viability of the defendants' offset defense, and (4) the viability of the defendants' counterclaims.

In *Heaton v. Social Finance, Inc.*, No. 3:14-cv-05191-the, 2015 WL 6003119 (N.D. Cal. Oct. 15, 2015), the court denied defendants' motion for summary judgment, finding that there were triable issues of fact as to whether defendants had violated the statutes at issue, whether the alleged violations were willful, and finding that defendants had failed to meet their burden as to plaintiffs' claims under the California Unfair Competition Law.

In *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09-Civ-3043, 2014 WL 6238175 (S.D.N.Y. Nov. 14, 2014), the court denied decertification of the FLSA Collective and Rule 23 Class of approximately 2,300 adult entertainers at Rick's Cabaret in New York and granted, in part, plaintiffs' affirmative

motion for partial summary judgment on damages, finding that no reasonable jury could conclude the Class was owed less than $10.8 million. This significant ruling came approximately one year after the court ruled that the Class and Collective Members are employees as a matter of law under the FLSA and New York Labor Law and that Rick's Cabaret violated both laws by failing to pay wages. The court further held that the money entertainers received from Rick's Cabaret's customers were tips and not service charges that could offset wage obligations and that Rick's Cabaret violated New York Labor Law by charging Class and Collective Members fines and fees as a condition of employment. 967 F. Supp. 2d 901 (S.D.N.Y. Sept. 10, 2013).

In *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2014 WL 2737990 (S.D. Ohio June 17, 2014), the court granted plaintiffs' motion for partial summary judgment, finding that the assigned real estate offices from where plaintiffs, who are current or former loan officers employed by defendant, worked where all serving as the "employer's place of business" under the outside sales exemption of the Fair Labor Standards Act. This established that an employee may work from multiple sites, not technically owned or operated by the employer, and each of those sites can be considered the "employer's place of business" under the regulations, therefore any work performed at these sites is not "outside" work under the outside sales exemption.

In *MacIntyre v. Lender Processing Services, Inc.*, No. 3:13-cv-89-J-25JBT (M.D. Fla. Apr. 29, 2014), the court granted affirmative summary judgment to plaintiff (a Minnesota resident) on a breach of contract claim for an unpaid bonus and used its discretion to enforce Minnesota state law for defendant's (a Florida company) failure to promptly pay wages. The court simultaneously denied defendant's motion to dismiss plaintiff's gender discrimination claims ruling, in part, that defendant's actions toward plaintiff constituted direct evidence of gender discrimination.

In *Huff v. Pinstripes, Inc.*, 972 F. Supp. 2d 1065 (D. Minn. 2013), the court ruled in plaintiffs' favor on cross-motions for summary judgment, finding that Pinstripes had violated the Minnesota Fair Labor Standards Act's provisions on tip-pooling by requiring its servers to share their tips with "server assistants," who act as servers' support staff at the restaurant.

In *Ernst v. DISH Network, LLC*, No. 12-8794–LGS (S.D.N.Y. Sept. 22, 2014), the court ruled on plaintiff's and two of the defendants' cross-motions for partial summary judgment, granting plaintiff's motion and denying defendants' motion. The court ruled that the summary report received by two of the defendants was a "consumer report" for purposes of the Fair Credit Reporting Act because it "communicated information bearing on Plaintiff's character, general reputation, or mode of living, and the information was collected and expected to be used for 'employment purposes.'"

In *Kirsch v. St. Paul Motorsports, Inc.*, No. 11-cv-02624, 2013 WL 1900620 (D. Minn. May 7, 2013), the court denied defendants' motion for summary judgment in its entirety, finding that plaintiff had put forth sufficient evidence for a prima facie claim of age discrimination.

In *Bollinger v. Residential Capital*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012), the court granted plaintiffs' motion for partial summary judgment, finding that defendants misclassified the

underwriter plaintiffs under the administrative exemption, and rejected defendants' argument that there was no evidence of willful violation of the FLSA, stating that "a jury could conclude that Defendants knowingly and recklessly" misclassified plaintiffs.

In *Clincy v. Galardi South Enterprises, Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011), the court granted plaintiffs' motion for partial summary judgment on the issue of misclassification, finding that defendants misclassified adult entertainers as independent contractors and that the entertainers were in fact employees covered by the FLSA.

## Class and Collective Certification

In *Midkiff v. Anthem*, 3:22-cv-417-HEH (E.D. Va. Sept. 5, 2024), the district court held an evidentiary hearing, receiving evidence and live testimony from employee and management witnesses on the plaintiff's motion for class certification. The court subsequently granted the plaintiff's motion and certified a class of utilization review nurses seeking overtime pay pursuant to Virginia's overtime law that was recently enacted in July 2021.

In *Brayman v. KeyPoint Government Solutions*, No. 18-cv-550-WJM-NRN (D. Colo. Apr. 17, 2024), the court denied the defendant's request to decertify the FLSA collective consisting of over 200 background investigators who allege they have not been paid for all of their hours worked in violation of the FLSA.

In *Learing v. Anthem*, 21-cv-2283- JWB-DJF (D. Minn. Mar. 22, 2024), the court certified a class of utilization review nurses who allege they were misclassified as exempt under Minnesota state law and appointed Nichols Kaster as Class Counsel. The court also denied the defendant's motion to decertify the FLSA collective.

In *Costa v. Apple, Inc.*, No. 23-cv-01353-WHO (N.D. Cal. Nov. 21, 2023) the court granted Plaintiffs' motion for the distribution of judicial notice to over 47,000 hourly employees. Plaintiffs' contended that Apple's failure to include the value of vested restricted stock units in the overtime rate of pay, violated the law.

In *MacDonald, et al. v. CashCall, Inc., et al.*, No. 2:16-cv-02781-MCA-ESK, Dkt 102 (D. N.J. Oct. 31, 2019) the court granted Plaintiffs' motion for class certification and appointed Nichols Kaster, PLLP class counsel in case involving more than 11,000 borrowers where Defendants are alleged to have violated usury law, the New Jersey Consumer Fraud Act, and RICO.

In *Brotherston v. Putnam Investments, LLC*, No. 1:15-cv-13825 (D. Mass. Dec. 13, 2016), the court certified a class of current and former participants in the Putnam Retirement Plan and appointed Nichols Kaster as class counsel. Plaintiffs alleged that Defendants mismanaged the plan and engaged in prohibited transactions in breach of their fiduciary duties under ERISA.

In *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 620 (D. Neb. 2019), Nichols Kaster won class certification and was appointed class counsel for a class of over 7,000 railroad employees who

plaintiffs alleged had been removed from their jobs in violation of the Americans with Disabilities Act

In *Ayala v. GEICO*, No. 7:18-cv-03583 (Dec. 5, 2018), the district court certified a collective class under the FLSA for Auto Adjuster Trainees who alleged they were not paid for all their overtime worked during training.

In *Bell v. Michigan Civil Service Commission and Jan Winters, State Personnel Director*, No. 17-003861-CV (Mich. Cir. Ct., Nov. 17, 2018), Nichols Kaster won class certification and was appointed class counsel for a class of over 600 African American applicants who plaintiffs alleged had been discriminated against by defendants through the use of their entry-level law enforcement examination.

In *Dunham-Sunde v. The Copper Hen Cakery*, No. 27-CV-17-17288 (D. Minn., Aug. 28, 2018), the court certified a class of over one hundred restaurant servers to pursue claims against a local restaurant for its unlawful tip-sharing practices in violation of the Minnesota Fair Labor Standards Act.

In *Deluca v. Farmers Ins. Exch.*, No. 17-cv-00034, 2018 WL 1981393 (N.D. Cal. Feb. 27, 2018), the court granted class certification of California state law overtime claims and related claims for a group of special investigators who allege that Farmers misclassified them as exempt from overtime. The court previously granted conditional certification of the plaintiffs' FLSA overtime claims.

In *Wildman v. American Century Serv., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017), the court certified a class of current and former participants in the American Century Retirement Plan and appointed Nichols Kaster as class counsel. Plaintiffs alleged that defendants breached their fiduciary duties and engaged in prohibited transactions.

In *Ganci v. MBF Inspection Svcs., Inc.*, 323 F.R.D. 249 (S.D. Ohio 2017), the court granted class certification of a class of pipeline inspectors who worked for MBF and were paid based on a day rate, who sought unpaid overtime under Ohio state law. The court had previously granted conditional collective certification of the plaintiffs' FLSA overtime claims. 2016 WL 5104891 (S.D. Ohio Sept. 20, 2016).

In *Moreno v. Deutsche Bank Americas Holding Corp.*, 1:15-cv-09936, 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017), the court certified a class of current and former participants in the Deutsche Bank Matched Savings Plan and appointed Nichols Kaster as class counsel.  Plaintiffs alleged that Defendants mismanaged the plan in breach of their fiduciary duties under ERISA.

In *Sims v. BB&T Corp.*, No. 1:15-cv-732, 2017 WL 3730552(M.D.N.C. Aug. 28, 2017), the district court certified a class of current and former participants in the BB&T Corporation 401(k) Savings Plan and appointed Nichols Kaster as co-class counsel.  Plaintiffs alleged that Defendants breached their fiduciary duties to the Plan.

In *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 8:15-cv-01614, 2017 WL 2655678 (C.D. Cal. June 15, 2017), the district court certified a class of current and former participants in the Allianz Asset Management of America L.P. 401(k) Savings and Retirement Plan and appointed Nichols Kaster as class counsel. Plaintiffs alleged that defendants improperly managed plan assets and breached their fiduciary duties.

In *Mayfield-Dillard v. Direct Home Health Care, Inc.*, No. 0:16-cv-3489, 2017 WL 945087 (D. Minn. Mar. 10, 2017), the district court granted Plaintiffs' motion for conditional certification, certifying a group of home health care workers who challenged Defendant's practice of paying straight-time only, for overtime hours worked.

In *McQueen v. Chevron*, No. C 16-02089, 2017 WL 8948943 (N.D. Cal. Feb. 21, 2017), the Court granted conditional certification of an FLSA collective for well site managers and drill site managers who performed services for Chevron throughout the country, rejecting Chevron's arguments that the various intermediary staffing companies and differing contractual terms put the workers on different footing.

In *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-cv-330, 2015 WL 7075971 (W.D. Tex. Oct. 5, 2015), the court granted plaintiffs' motion for conditional certification, conditionally certifying a class of employees alleging violations of the overtime wage provisions of the Fair Labor Standards Act by a multinational corporation that produces major commodities including oil and gas.

In *Miller v. Fleetcor Technologies Operating Co., LLC*, 118 F. Supp. 3d 1351 (N.D. Ga. 2015), the court denied defendant's motion for decertification, agreeing with plaintiffs that each individual claim and the case as a whole should be kept together, allowing plaintiffs to move forward as a collective group.

In *Pearsall-Dineen v. Freedom Mortgage Corp.*, No. 13-cv-06836-JEI-JS, 2014 WL 2873878 (D. N.J. June 25, 2014), the court conditionally certified the Fair Labor Standards Act overtime case as a collective action. The judge's order authorized notice of the lawsuit to be disseminated to all mortgage underwriters who worked for Freedom Mortgage in the last three years, providing them the opportunity to join the lawsuit and to assert their overtime claims against the defendant for failing to pay them overtime hours.

In *Ellsworth v. U.S. Bank, N.A.*, No. C 12-2506-LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014), the court issued a broad class certification ruling on behalf of plaintiff-borrowers who were force-placed with flood insurance. In its order, the court certified multi-state classes of borrowers spanning forty different states to pursue claims against U.S. Bank for breach of their mortgage agreements stemming from U.S. Bank's force-placed insurance practices. In addition, the court separately certified classes of borrowers in California and New Mexico to pursue claims against U.S. Bank and its force-placed insurance vendor, ASIC, for unjust enrichment, unfair business practices, and/or breach of the covenant of good faith and fair dealing.

In *Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372-SI (D. Or. Apr. 17, 2014), the court preliminarily approved a $31 million settlement for approximately 625,000 class members, the largest common fund settlement ever negotiated in a case involving force-placed flood insurance.

In *Ernst v. DISH Network, LLC*, No. 12-8794-LGS (S.D.N.Y. July 23, 2013), the court appointed Nichols Kaster as interim class counsel for the putative class with claims against Defendant Sterling Infosystems, Inc., finding that Nichols Kaster had "demonstrated it is able fairly and adequately to represent the interests of the putative class."

In *Gustafson v. BAC Home Loan Services, LP*, No. 8:11-cv-00915 (C.D. Cal. Feb. 27, 2013), Judge Josephine Staton Tucker appointed Nichols Kaster as co-lead interim class counsel for multiple putative classes in a force-placed insurance case against Bank of America and other defendants.

In *Spar v. Cedar Towing & Auction, Inc.*, Case No. 27-CV-11-24993 (D. Minn., Oct. 16, 2012), Nichols Kaster won class certification and was appointed class counsel for a class of approximately six thousand Minneapolis consumers who plaintiffs alleged had been charged illegal towing fees by defendant.

## Denial of Motions to Dismiss

In *Padilla v. Caliper Building Systems, LLC et al.*, No. 20-cv-00658 (SRN/KMM) (D. Minn., Sept. 21, 2020) the court denied defendant's motion to dismiss, holding that construction laborers working for a framing subcontractor through a labor broker plausibly alleged facts supporting joint employer status under federal and state law.

In *Jane Doe 1 et al v. Independent School District 31*, No. 20-cv-226 (SRN/LIB) (D. Minn. Aug. 14, 2020) the court denied defendant's motion to dismiss, finding that plaintiffs pled sufficient facts to support plausible Title IX, Section 1983, negligence, negligent supervision, and negligent retention claims. Specifically, the court found that the complaint plausibly alleged a duty of care arising from a special relationship between the school district and plaintiffs, taking into account the elevated status of the school official who sexually exploited plaintiffs, the egregiousness of the sexual exploitation that occurred on district-owned devices, and the fact that the district had clear notice. Further, the court found that plaintiffs plausibly alleged that the district's own conduct created a foreseeable risk of injury to plaintiffs and that the district owed them a duty to prevent the sexual harassment and bullying faced by plaintiffs after the school official's arrest. Additionally, the court held that the complaint plausibly alleged that the district acted with deliberate indifference, resulting in a hostile education environment and peer harassment under Title IX and Section 1983. Finally, plaintiffs sufficiently alleged a pattern of constitutional violations that put the district on notice that "its employees' responses to recurring sex discrimination were insufficient to protect Plaintiffs' constitutional rights."

In *Intravaia v. National Rural Electric Cooperative Association*, No. 1:19-CV-973, 2020 WL 58276 (E.D. Va. Jan. 2, 2020), the court denied defendants' motion to dismiss in full, holding plaintiffs

adequately alleged breaches of fiduciary duty and prohibited transactions under ERISA relating to the administration of the National Rural Electric Cooperative Association's 401(k) plan.

In *Reetz v. Lowe's Companies, Inc.*, No. 518CV00075, 2019 WL 4233616 (W.D.N.C. Sept. 6, 2019), the court denied defendants' motion to dismiss in substantial part, holding plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of the Lowe's 401(k) plan.

In *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2019 WL 7482134 (S.D. Ohio Sept. 26, 2019), the court denied defendants' motion to dismiss in substantial part and held that plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management and monitoring of Huntington Bank's 401(k) plan.

In *Belt v. P.F. Chang's*, No. 18-cv-03831 (E.D. Pa. Aug. 15, 2019), the court denied defendant's motion for judgment on the pleadings, holding that the DOL's new interpretation of the FLSA was unreasonable and not subject to deference, confirming that Plaintiffs had stated a claim for minimum wage violations due to P.F. Chang's failing to pay its servers the full minimum wage when they performed related yet untipped labor, such as side work, for more than 20% of their time in a workweek.

In *Nelsen v. Principal Global Investors Trust Co.*, No. 4:18-cv-00115 (S.D. Iowa, Jan. 24, 2019), the court denied defendants' motion to dismiss in substantial part, holding plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of Principal's collective investment trusts.

In *In re M&T Bank Corp. ERISA Litig.*, No. 16-cv-375, 2018 WL 4334807 (W.D.N.Y. Sept. 11, 2018), the court denied defendants' motion to dismiss in substantial part, holding plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of the M&T Bank Corporation Retirement Savings Plan.

In *Velazquez v. Massachusetts Fin. Servs. Co.*, 320 F. Supp. 3d 252 (D. Mass. 2018), the court denied defendants' motion to dismiss in substantial part and held that plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of the Massachusetts Financial Services Company MFSavings Retirement Plan and the Massachusetts Financial Services Company Defined Contribution Plan.

In *Beach v. JP Morgan Chase Bank*, No. 1:17-cv-00563 (S.D.N.Y. Mar. 28, 2018), the court denied defendants' motion to dismiss in substantial part and held that plaintiffs adequately alleged breaches of fiduciary duty under ERISA.

In *Wildman v. American Century Serv., LLC*, 237 F. Supp. 3d 902 (W.D. Mo. 2017), the court denied defendants' motion to dismiss, finding that plaintiffs adequately alleged breaches of fiduciary

duty and prohibited transactions by defendants in connection with the American Century Retirement Plan.

In *Johnson v. Fujitsu Technology Business of America, Inc.*, 250 F. Supp. 3d 460 (N.D. Cal. Apr. 11, 2017), the court denied defendants' motions to dismiss, and held that plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of the Fujitsu Group Defined Contribution and 401(k) Plan.

In *Moreno v. Deutsche Bank Americas Holding Corp.*, 1:15-cv-09936, 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016), the court denied defendants' motion to dismiss in substantial part and held that plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of the Deutsche Bank Matched Savings Plan.

In *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 8:15-cv-01614, 2016 WL 4507119 (C.D. Cal. Aug. 5, 2016), the court denied defendants' motion to dismiss in substantial part and held that plaintiffs adequately alleged breaches of fiduciary duty under ERISA relating to the management of the Allianz Asset Management of America L.P. 401(k) Savings and Retirement Plan.

In *Bowers v. BB&T Corporation*, No. 1:15-cv-732-CCE-JEP (M.D.N.C. Apr. 18, 2016), the court denied defendant's motion to dismiss, finding that plaintiff's allegations regarding Employment Retirement Income Security Act ("ERISA") violations related to defendant's management of plaintiffs' 401(k) Savings Plans are sufficient for litigation to move forward.

In *Brotherston v. Putnam Investments, LLC*, No. 1:15-cv-13825, 2016 WL 1397427 (D. Mass. Apr. 7, 2016), the court denied defendant's motion to dismiss, finding that plaintiff's allegations regarding Employment Retirement Income Security Act ("ERISA") violations related to defendant's management of plaintiffs' 401(k) Savings Plans are sufficient for litigation to move forward.

In *Johnson v. Casey's Gen. Stores, Inc.*, 116 F. Supp. 3d 944 (W.D. Mo. 2015), the court denied defendant's motion to dismiss, finding that plaintiff's allegations regarding Fair Credit Reporting Act violations and the willfulness of defendant's conduct sufficient for litigation to move forward.

In *Lengel v. HomeAdvisor, Inc.*, 102 F. Supp. 3d 1202 (D. Kan. 2015), the court denied defendant's motion to dismiss, finding that plaintiff's allegations regarding Fair Credit Report Act violations and the willfulness of defendant's conduct sufficient for litigation to move forward.

In *Holmes v. Bank of America, N.A.*, No. 3:12-cv-00487, 2013 WL 2317722 (W.D.N.C. May 28, 2013), the court denied four motions to dismiss plaintiffs' claims regarding force-placed insurance and allowing the case to proceed.

In *Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-cv-00673, 2012 WL 3096660 (W.D. Ky. July 30, 2012), a case regarding force-placed flood insurance, the court denied defendant's motion to dismiss, stating that the plaintiff's mortgage agreement did not explicitly provide that the lender's flood insurance requirement could change at will and that Kentucky contracts contain provisions

which can impose limits on discretion afforded by a contract, thus rejecting defendant's interpretation of plaintiff's mortgage agreement for purposes of the motion.



## Nichols Kaster Attorneys

| **Partner Biographies**

Rebekah L. Bailey is a tireless advocate dedicated to civil rights and social justice. She has helped tens of thousands of employees and consumers recover millions of dollars primarily in complex class and collective actions across the country. Rebekah has worked on the firm's wage and hour team and was a founding member of the consumer practice area as well as the firm's civil rights and impact litigation group. Rebekah has been recognized as a Minnesota Super Lawyer every year since 2014. Over the years, she has served on numerous trial and arbitration teams, successfully first-chairing her first bench trial. Rebekah has achieved several affirmative summary judgment determinations and certification decisions, including in *Rego*, *Dunham-Sunde*, *Henderson*, *Vaughan*, *Spar*, and *Norris-Wilson*, mentioned above. Rebekah leads the firm's e-discovery committee. She has spoken at national seminars on various topics, including electronic discovery, class litigation, arbitration, equal pay, and various wage and hour issues. Rebekah is a practical instructor for the University of Minnesota's Law & Practice course. She is a member of the District of Minnesota's Federal Practice Committee, and a board member for the Complex Litigation eDiscovery Forum. She is very involved in the ABA's Labor and Employment Law section. She serves as the employee vice chair of the section's treatise committee; she is an associate editor for the FLSA Committee's Mid-Winter Report; and she serves as a FLSL liaison to the ABA/LEL

CLE Coordinating & Resources Committee. *Education*: B.S. Grand Valley State University 2004 *magna cum laude*, J.D. University of Minnesota Law School 2008 *magna cum laude*.

Reena I. Desai is a partner at Nichols Kaster, PLLP, in the firm's Minneapolis office. She is a skilled and meticulous litigator, who has represented thousands of employees in class and collective actions to recover unpaid overtime, minimum wages, commissions, and other types of compensation. Reena has also advocated for employees in cases involving race, age and disability discrimination. She is a board member of a legal non-profit and frequently speaks at legal seminars and conferences across the country. Reena has dedicated the majority of her career to helping employees combat wage theft and recover unpaid overtime compensation, minimum wages, and other unpaid compensation. She has represented employees in a variety of industries, including investigators, home health care workers, loan officers, mortgage underwriters, field service technicians, sales representatives, and restaurant workers. Reena has also litigated discrimination cases on both a class and individual level, advocating for employees whose employers have discriminated against them because of their age, race or disability. Reena has been asked to share her knowledge and experience with her peers, serving as a speaker at several national conferences. She has lectured on topics including wage and hour litigation, electronic discovery issues, attorney-client privilege and mediation/settlement. Reena also serves on the Board of Directors for the Minnesota Justice Foundation, a legal non-profit in Minnesota, and has been named a Rising Star by Minnesota Super Lawyers every year since 2014. *Education*: B.A. George Washington University 2002 *magna cum laude*, J.D. University of Minnesota Law School 2007 *cum laude*.

Michele R. Fisher is a managing partner, and Chair of the Firm's Business Development and Marketing Groups, which originate class and collective actions and market the firm. Michele has dedicated her career to primarily litigating and arbitrating and wage and hour class and collective actions. She has represented tens of thousands of workers in over one hundred class and collective actions, and hundreds of arbitrations. Michele's energy, experience, and resourcefulness have made her a nationally recognized litigator and a popular lecturer on wage and hour issues. Michele created and manages arbitratorrater.com, a free website exclusively for employee and worker rights advocates.

Michele holds, and has held, many leadership positions to support and improve the profession. She is a Co-Chair and faculty member of the Practicing Law Institute's Wage & Hour Litigation and Compliance conference. She is an ABA Labor and Employment Law Section Councilmember, Council Liaison to the Trial Institutes Administrative Committee, Council Liaison to the Federal Labor Legislation Standards Subcommittee, Council Liaison to the Social Media Administrative Committee. She is a Fellow in the College of Labor and Employment Lawyers. Michele has served as the Co-Chair and Co-Chair Emerita of the ABA Labor and Employment Law Sections Annual Conference Planning Committee, Co-Chair of the ABA Labor and Employment Law Section's Federal Labor Standards Legislation Committee, Co-Editor-in-Chief of the ABA Labor and Employment Law Section's Federal Labor Standards Legislation Committee FLSA Midwinter Report, Co-Chair of the ABA Labor and Employment Law Section's

Revenue and Partnership Development Committee, Track Coordinator for the ABA Labor and Employment Law Section's annual conference, an editorial board member for BNA's the Fair Labor Standards Act Treatise, a chapter editor for BNA's Wage and Hour Laws: A State-by-State Survey, and an Advisory Board Member for the Center of Labor & Employment at NYU School of Law.

Michele is named to the Best Lawyers in America, Top 100 Super Lawyers, Top 50 Minnesota Woman Super Lawyers, Lawyers of Distinction, Top 10 Wage and Hour Lawyers, Top 100 High Stakes Litigators, Top 100 Civil Plaintiff Lawyers, Top 100 National Advocates/Top 20 Employment Law, and LawDragon 500 Leading Plaintiff Employment Lawyers. Michele volunteers as an attorney for foster children through the Children's Law Center. *Education*: B.A. St. Cloud State University 1997, J.D. William Mitchell College of Law 2000.

Matthew C. Helland is an experienced and tenacious litigator who has fought for workers' and consumers' rights throughout his career. Matt serves as the managing partner of Nichols Kaster's San Francisco office, where he focuses his practice on class and collective wage and hour cases filed in California and throughout the country. Handling both large class actions and individual matters throughout this career, Matt has developed a record of success in significant and complex litigation. Matt litigates each of his cases with the same zealous advocacy and passionate protection of his clients' rights, whether the case involves millions of dollars and thousands of clients, or thousands of dollars and one individual. In addition to representing workers across the country in wage and hour actions, Matt has also handled cases involving WARN Act violations, breach of contract, and severance negotiations. Matt is licensed in both California and Minnesota. Matt is an active volunteer at Workers' Rights Clinics through Legal Aid Work, where he supervises student attorneys in providing legal assistance to low wage workers. While attending the University of Minnesota Law School, Matt was a staff member and Managing Tribute Editor of the University of Minnesota Journal of Global Trade. He also participated in the Child Advocacy Clinic, representing the interests of children as a student attorney in both Family and Juvenile Court. *Education*: B.A. Rhodes College 2002 *magna cum laude*, J.D. University of Minnesota Law School 2005 *magna cum laude*.

James H. Kaster has tried well over 100 cases to verdict or decision. He has also handled many significant cases on appeal, including a successful case in front of the United States Supreme Court (*Kasten v. Saint-Gobain Performance Plastics Corp.*). He was ranked by Chambers USA as number one among plaintiffs' employment lawyers in Minnesota, was named Lawyer of the Year by Best Lawyers in 2012, and 2016, and has been listed by Super Lawyers of Minnesota as one of the top 10 lawyers in the State. Jim's success in the courtroom includes earning many million dollar and multi-million-dollar recoveries for plaintiffs. Jim is also a frequent lecturer before local, state, and national organizations on damage recovery and trial skills. He was selected as a Fellow of the American College of Trial Lawyers, a premier professional trial organization in America whose membership is limited to 1% of the trial lawyers in any state or province. He was also selected to be a member of the College of Labor and Employment Lawyers. *Education*: B.A. Marquette University 1976, J.D. Marquette University 1979.

Lucas J. Kaster is a skilled and seasoned trial lawyer focused on aggressive advocacy, creative solutions, and responsiveness to clients. As a member of Nichols Kaster's individual rights team, Lucas represents clients in a wide-range of employment matters, including harassment, retaliation and discrimination claims. Lucas also represents clients in civil rights claims, such as police misconduct and prisoner rights.  Over his career, Lucas has tried many cases to verdict or decision. Most recently, Lucas represented a South Dakota law enforcement officer in a retaliation and sexual harassment lawsuit that resulted in a $1.2 million jury verdict. In a separate lawsuit, Lucas represented four golf course employees who were subject to harassment and retaliation in a court trial that resulted in a plaintiff's verdict and treble damages under the Minnesota Human Rights Act ("MHRA"). Lucas uses this unique trial experience to drive litigation strategy and provide his clients the best possible representation. Lucas is also an experienced appellate advocate. In 2018, Lucas successfully argued before the Ninth Circuit Court of Appeals in *Michael Frost v. BNSF Railway Co.*, 9:15-cv-000124-DWM. The Ninth Circuit's decision addressed a hotly debated subject under the Federal Railway Safety Act ("FRSA"). The question before the Court was whether the honest belief instruction was proper because the FRSA's contributing factor standard required plaintiffs to separately prove discriminatory intent. In the opinion, the Ninth Circuit definitively held that there is no requirement that FRSA plaintiffs separately prove discriminatory intent, and thus the instruction was error.  Due to his experience, Lucas is a well-respected and sought-after speaker. Lucas is a frequent presenter at the ABA's Labor and Employment and Employment Rights and Responsibilities conferences. In February 2019, Lucas also spoke at the College of Labor and Employment Lawyer's Regional Program for the 4th and 11th Circuits in Charleston, South Carolina. Lucas participated in a three-member panel titled: *The #MeToo Movement One Year Later: Where Are We Now?* Lucas is a member Twin Cities Diversity in Practice's Emerging Leaders Group and a contributor to Nichols Kaster's training and marketing committees.  *Education:* B.A. Villanova University 2004, J.D. Marquette University Law School 2011.

Paul J. Lukas is one of the co-leaders of the firm's ERISA Class Action Team. Mr. Lukas also has extensive experience litigating class and collective actions and has tried over 50 cases over the course of his career. Mr. Lukas has been recognized by his peers as one of "The Best Lawyers in America" and is frequently named to the Minnesota Super Lawyers list. He also has had many publications and speaking engagements about issues and strategies for plaintiff class action lawyers and the plaintiffs' bar. *Education*: B.A. St. John's University 1988, J.D. William Mitchell College of Law 1991.

Matthew H. Morgan is a managing partner at Nichols Kaster.  Much of Matt's career has focused on litigating class and collective actions on behalf of individuals seeking minimum wage and overtime pay and fighting discrimination.  He has tried over thirty cases to verdict, including first-chairing a twenty-three-day age discrimination class action trial on behalf of nearly 1000 people against the federal government.  Since 2021, Matt has been named one of "The Best Lawyers in America," and recognized by Minneapolis/St. Paul Magazine and Twin Cities Business as a "Super Lawyer" every year since 2014. Matt formerly served as an   adjunct faculty member at William Mitchell College of Law (now Mitchell Hamline) teaching representation skills to first-year students and advanced advocacy to second- and third-year students.  Matt is a regular lecturer at legal seminars, focusing on litigation-related topics

including trials and taking 30(b)(6) depositions. *Education*: B.A. University of Minnesota 1996, J.D. William Mitchell College of Law 2000.

Anna P. Prakash represents everyday people against corporations and the government and uses her agility, intellect, and skill to pursue justice for her clients under a wide variety of laws and settings. Focusing on complex class actions and multi-plaintiff litigation, Anna has litigated civil rights cases in the employment, school, healthcare, and housing realms, including cases seeking freedom and damages resulting from race discrimination, discrimination against the trans community, and forced labor of immigrant workforces. She has represented employees seeking unpaid minimum wages and overtime, including in numerous cases on behalf of people in marginalized professions such as exotic dancers. Anna brings a high level of skill and intellect to the fight, and has achieved great success for her clients in state and federal courts around the country, including the summary judgment victories referenced above in *Huff, Hart*, and *Clincy*, successful appeal in *Bible v. United Student Aid Funds*, and the trial verdict in *FTS*. Anna also serves on the Board of Directors of the Public Justice Foundation, a nationwide charitable organization supporting high-impact lawsuits to combat social and economic injustice and protect the Earth's sustainability. She is a frequent speaker at national legal seminars, was an adjunct professor of legal writing at the University of Minnesota Law School for five years, and a past board member of the Minnesota chapter of the National Employment Lawyers' Association. *Education*: B.A. University of Michigan 2002, J.D. Cornell Law School 2005.

David E. Schlesinger David Schlesinger is an experienced attorney who has been recognized for the quality of his work for employees. He is an MSBA Certified Employment Law Specialist who has been selected as a Super Lawyer for the last seven years. He teaches Law in Practice at the University of Minnesota Law School and is the former president of the Minnesota Chapter of the National Employment Lawyers Association. David has successfully litigated a wide variety of employment claims, including several significant cases involving gender discrimination, cases under the Americans with Disabilities Act, and many other claims. His practice also includes an emphasis on the intersection of employment and business disputes, including litigation of breach of fiduciary duty and minority shareholder claims. He has effectively defended employees from non-compete and trade secret claims brought by their former employers. *Education*: B.A. Mary Washington College 2001 *cum laude*, J.D. University of Minnesota Law School 2006 *cum laude*.

Robert L. Schug is a partner on Nichols Kaster's Civil Rights and Impact Litigation team. Robert has more than a decade of experience litigating cases through trial in both court and arbitration. He has represented employees across the country on a variety of issues, including race, gender, and disability discrimination, employee misclassification, unpaid overtime, and unpaid wages. Robert previously served as Director of Litigation at the Impact Fund, a nationally recognized non-profit law firm in Berkeley, California devoted to achieving social justice through large scale impact litigation. He has been recognized as a Rising Star by Northern California and Minnesota Super Lawyers. He is licensed in California and Minnesota. *Education:* B.S. Middle Tennessee State University 2003 *summa cum laude*; J.D. William Mitchell College of Law 2006 *summa cum laude*.

Steven Andrew Smith has been named "Lawyer of the Year" for Employment Law in Minneapolis by Best Lawyers for 2021 and 2022, named "Attorney of the Year" twice by Minnesota Lawyer for his work protecting employees' rights, named one of "The Best Lawyers in America" each year since 2015, named to the Minnesota Super Lawyers "Top 100" list seven times, and named to the Minnesota Super Lawyers list each year since 2002. In 2020, Steve was elected as a Fellow of the College of Labor and Employment Lawyers. Steve was honored by the Minnesota Chapter of the National Employment Lawyers Association as the recipient of the 2014 Karla Wahl Dedicated Advocacy Award. The Award is given to recipients "for their ceaseless and courageous efforts" to protect and advance the rights of Minnesota employees. Steve was also the recipient of the 2011 Distinguished Pro Bono Service Award from the United States District Court for the District of Minnesota, was selected for the Merit Selection Panel regarding the Re-Appointment of U.S. Magistrate Judge Arthur J. Boylan (D. Minn. 2012), was further recognized in 2014 by the United States District Court and Chief Judge Michael J. Davis for his involvement in the Pro Se Project, a project by the United States District Court of Minnesota for assisting individuals representing themselves in federal court, and has received the Martindale Hubble AV Preeminent rating. Steve's trial experience includes trials to verdict in sexual harassment, whistleblower, reprisal/retaliation, commission, contract, gender discrimination, marital status discrimination, disability, and wage and hour claims. Steve has also litigated several notable cases having substantial effect on employees' rights under state and federal employment laws. Steve is often invited to lecture on employment issues both nationally and locally. He has also authored a number of articles on employment law issues such as sexual harassment in the workplace. *Education*: B.A. Concordia College 1990, J.D. William Mitchell College of Law 1995 *cum laude.*

Brock J. Specht is a member of Nichols Kaster's national class-action litigation team. He represents consumers, employees, and retirees in lawsuits against some of the country's largest corporations, holding these companies accountable when they fail to deal fairly and honestly with their employees and customers. His recent cases have led to the recovery of millions of dollars in retirement benefits for thousands of participants in 401(k) plans nationwide. Prior to joining the firm, Brock worked with a major Twin Cities law firm, and as a law clerk for two judges on the Minnesota Court of Appeals. Brock also has worked as a Special Assistant State Public Defender, *pro bono*, and as an Adjunct Professor of Law at the University of St. Thomas School of Law. *Education*: B.A. University of Minnesota 2002, J.D. University of St. Thomas School of Law 2007 *magna cum laude.*

Rachhana T. Srey is a Partner at Nichols Kaster, PLLP who has extensive litigation experience, primarily dedicating her legal practice to national wage and hour complex class and collective action employment litigation. She has been a zealous advocate for thousands of employees over her 20-year career, representing a wide variety of workers in many industries including those who work in healthcare, insurance, financial services, communications, retail, manufacturing, and security industries as well as federal sector employees. Rachhana's exceptional case management and advocacy skills, dedication to her clients, strong work ethic and outgoing personality have earned her the respect of her clients and of her colleagues in the legal community. Rachhana has tried several wage and hour cases, most notably obtaining a jury verdict that was upheld by the Sixth Circuit in favor of a group of nearly three hundred cable installers. In addition to her wage and hour practice, Rachhana has also litigated a

class age discrimination case venued at the EEOC. She is active in several organizations, holding leadership positions in a few. Rachhana is currently the Co-Chair of the National Employment Lawyer Association's ("NELA") Wage & Hour Committee. Rachhana is often invited to speak nationally and locally on a wide range of topics including class and collective action litigation and trial strategies, case management issues, , discovery issues, recent developments in the law, and age and gender discrimination. *Education*: B.A. University of Minnesota 2000, J.D. William Mitchell College of Law 2004 *cum laude*.

## Attorney Biographies

**Ben J. Bauer** is a member of Nichols Kaster's ERISA litigation team where he represents employees whose retirement accounts have been shortchanged due to excessive fees, imprudent investments, employer self-dealing, and general mismanagement. Prior to joining the firm, Ben clerked for Judge Tom Fraser in Hennepin County District Court. During law school, he interned for the Minnesota Department of Human Rights, the ACLU of Minnesota, and earned the Law School Public Service Award. Prior to law school, Ben taught 7th grade English in Tulsa, Oklahoma and continued to work in schools while completing his law degree in Mitchell Hamline's night program. *Education*: B.A., St. John's University, 2011, *magna cum laude*, J.D., Mitchell Hamline School of Law, 2017, *magna cum laude*.

**Laura A. Baures** belongs to Nichols Kaster's individual rights group and has worked in other groups within the firm including the Civil Rights and Impact and Wage and hour groups. Laura fights against discrimination and other unfair acts through litigating individual, class, collective, or joint actions in the areas of employment, education, and more. She is licensed in Minnesota and Wisconsin. Laura represents numerous job applicants and workers in matters arising under federal and state laws. She has class action trial experience. She also serves on the Diversity, Equity, and Inclusion Committee within the firm. Laura received her J.D. from William Mitchell College of Law. She discovered her passion for employment law while working as a manager prior to law school. *Education:* B.A. University of Wisconsin − Eau Claire *cum laude*, J.D. William Mitchell College of Law.

**Daniel S. Brome** worked with the California Labor Commissioner while in law school and served as the Editor-in-Chief of the Berkeley Journal of Employment and Labor Law, and as Director of the Workers' Rights Clinic. After law school, Daniel worked with a California law firm representing workers and unions in arbitrations and litigation. Daniel continues pursuing his passion for employment law at Nichols Kaster, working with the firm's national wage and hour team out of the San Francisco office. *Education:* B.A. Princeton University 2005, J.D. University of California Berkeley School of Law 2011.

**Grace Chanin** is a member of the firm's Qui Tam & Insurance practice group where she represents whistleblowers fighting against government fraud in complex False Claims Act litigation. Grace was also previously a member of the ERISA practice group, where she represented tens of thousands of employees, retirees, and beneficiaries in class-action ERISA litigation against some of the nation's largest banks, insurance companies, and investment management firms. By holding these corporations accountable, she has helped recover over $40 million for her clients. Grace is dedicated to

improving wellbeing in the legal community. Grace played a crucial role in establishing Nichols Kaster's Wellness Committee, where she leads the firm's wellness initiatives and provides access to wellness resources. She currently volunteers and serves on the Board of Directors for Lawyers Concerned for Lawyers (Minnesota's Lawyers Assistance Program), offering support to attorneys dealing with mental health challenges. Grace also serves as the co-chair of the American Association for Justice New Lawyers Division Mental Health Committee organizing nationwide wellbeing programs for plaintiffs' attorneys. Pro bono work is also a meaningful part of Grace's practice. Through the Volunteer Lawyers Network, Grace assists clients in expunging eviction records, facilitating access to safe and affordable housing. Grace's preferred pronouns are she/her/hers. *Education:* B.A., Minnesota State University 2012 *magna cum laude*, J.D. Mitchell Hamline School of Law 2018 *magna cum laude*.

**H. Clara Coleman** is a member of Nichols Kaster's National Wage and Hour litigation Team where she fights for employees' right to hard-earned wages. Prior to joining Nichols Kaster, Clara served an Attorney-Advisor to the Honorable Christopher Larsen at the U.S. Department of Labor, Office of Administrative Law Judges in San Francisco where she collaborated with ALJ Larsen to manage and decide employment-related matters. Clara also focused on the advancement of workers' rights throughout law school. She advocated for employees in her two clerkship positions at plaintiff-side employment firms, and represented a wage and hour client as a student-attorney for the Public Justice Advocacy Clinic. *Education:* B.A., Loyola University Maryland, *summa cum laude*; J.D., George Washington University School of Law, *with honors*.

**Joshua R. Cottle** is a member of Nichols Kaster's Civil Rights and Impact Litigation Team where Josh litigates class action cases involving discrimination, fraud, and other unfair business practices on behalf of employees, students, and other individuals. He has experience representing individuals, employees, and consumers in complex class and collective actions, including challenging disability-based discrimination and unfair business practices. *Education:* B.A. Grinnell College; J.D. University of Minnesota Law School.

**Patricia C. Dana** is a member of Nichols Kaster's ERISA litigation team where she represents current and former employees whose retirement accounts have been shortchanged due to excessive fees, imprudent investments, employer self-dealing, and general mismanagement. Prior to joining Nichols Kaster, she clerked for Justice Anne McKeig on the Minnesota Supreme Court. During law school, she was an editor of the *University of St. Thomas Law Journal*, worked as a law clerk at Mid-Minnesota Legal Aid, clerked for Judge Michael Browne in Hennepin County District Court, and received the Judge Earl R. Larson Award for excellence in the study of federal law and practice. Prior to law school, Patty represented Medicare and Medicaid recipients in administrative appeals at The Legal Aid Society in New York. *Education:* B.A., Carleton College, *cum laude*; J.D., University of St. Thomas, *summa cum laude*.

**Charles A. Delbridge** is a member of Nichols Kaster's Firm's Individual Rights team. He has substantial experience representing employees in both class actions and individual cases. Charlie is passionate about vindicating the rights of employees to be free from discrimination, harassment, and

retaliation. He has a particular interest in prosecuting disability discrimination cases, and he played an important role in successfully certifying a case that has been described as "one of the largest American with Disabilities Act class actions in history." Charlie has been recognized as a "Minnesota Rising Star" by *Super Lawyers* magazine, and an "Up & Coming Attorney" by *Minnesota Lawyer*. He is active in professional organizations, having served as a member of the Board of Directors of both the Minnesota State Bar Association and Minnesota Continuing Legal Education. *Education:* B.A. University of Wisconsin-Madison, J.D. William Mitchell College of Law, *magna cum laude*.

Steve Eiden is a member of Nichols Kaster's ERISA litigation team where he both represents employees whose retirement accounts have been shortchanged due to excessive fees, imprudent investments, employer self-dealing, and general mismanagement and assists with case research and analysis related to the same for the group. Prior to joining Nichols Kaster, Steve worked at Thrivent Financial supporting a team of Wealth Advisors. During his time at Thrivent, Steve obtained his Series 7 General Securities Representative and Series 66 Uniform Combined State Law licenses while assisting in quantitative and qualitative investment research and due diligence. Steve holds a degree in financial economics and minor in mathematics in addition to his law degree. *Education:* B.A. Gustavus Adolphus College, 2015, *magna cum laude*, J.D. University of St. Thomas School of Law, 2021, *magna cum laude*.

Laura A. Farley is a member of Nichols Kaster's individual rights litigation team and is dedicated to protecting the rights of current and former employees who face a wide-range of employment-related issues, including discrimination, harassment, retaliation, minority shareholder, and contract disputes. Prior to joining Nichols Kaster, Laura worked as an associate for a Minneapolis litigation firm, focusing on minority shareholder, employment, and contract disputes. During law school, Laura was on the Executive Board of the *Minnesota Law Review*, the board of the Women's Legal Student Association, and volunteered with the Advocates for Human Rights. Prior to attending law school, Laura worked for a Fortune 100 company in business-to-business sales supporting operations and logistics in small businesses. *Education:* B.A. University of St. Thomas 2010 *magna cum laude*, J.D. University of Minnesota Law School 2015.

Kate Fisher is Senior Counsel at Nichols Kaster, PLLP. Kate focuses her practice on representing Plaintiff-Relators in False Claims Act cases. Prior to this role, she served as the Case Development Attorney for Civil Rights and Impact Litigation Practice Group, where investigated new cases and worked with other members of the Group to advance litigation. Additionally, Kate formerly served as an Associate Attorney for the firm's Individual Practice Group, where she represented employees in a wide range of employment-related matters, including but not limited to, allegations of discrimination, harassment, retaliation, violations of the Family and Medical Leave Act, and whistleblower claims. In addition to her practice, Kate has also served as an Adjunct Professor at St. Thomas Law School and Mitchell Hamline School of Law. *Education*: B.A. College of St. Catherine 2006 summa cum laude; J.D. University of St. Thomas School of Law 2011 cum laude.

Jacob C. Harksen is a member of the Firm's Individual Rights practice. He represents clients in employment matters, including harassment, retaliation, and discrimination claims. Jacob previously represented workers and their unions while working for Seattle, Washington firm and as in-house

counsel for a nurses' union.  Prior to joining Nichols Kaster, Jacob clerked for the Honorable Eric C. Tostrud of the United States District Court for the district of Minnesota. *Education*: Jacob graduated magna cum laude from the University of Minnesota Law School, where he completed a concentration in labor and employment law.  During law school, he served as the Editor-in-Chief of the ABA Journal of Labor & Employment Law, interned for the National Labor Relations Board, taught Legal Writing as a Student instructor, and earned multiple awards for his legal writing and achievements in labor law. Prior to attending law school, Jacob earned his Master of Arts degree in creative writing and worked as a bookseller in Seattle, Washington.

Mary Clare Mulcahy is a member of Nichols Kaster's ERISA litigation team where she represents current and former employees whose retirement accounts have been shortchanged due to excessive fees, imprudent investments, employer self-dealing, and general mismanagement. Prior to joining the firm, Mary Clare clerked for Justice Natalie E. Hudson and Justice Margaret H. Chutich at the Minnesota Supreme Court. In law school, Mary Clare externed at the U.S. District Court for the District of Minnesota and worked as a pro bono clerk at a Minneapolis law firm. She was the Publications Editor of the *St. Thomas Law Journal*. *Education*: B.S., University of Wisconsin-Madison 2018, J.D., University of St. Thomas School of Law 2022 *summa cum laude*.

Caitlin L. Opperman is a member of Nichols Kaster's National Wage and Hour Litigation team, advocating for the rights of workers seeking unpaid wages in class and collective actions across the country.  Caitlin also represents individual employees in discrimination disputes.  Prior to joining the firm, Caitlin clerked for the Honorable Eric C. Tostrud of the United States District Court for the District of Minnesota and the Honorable Matthew E. Johnson of the Minnesota Court of Appeals.  During law school, Caitlin was a Robina Public Interest Scholar and worked as a student attorney at the Neighborhood Justice Center, Hennepin County Public Defender's Office, and University of Minnesota Child Advocacy and Juvenile Justice Clinic.  She also served as a managing and research editor of the **Minnesota Law Review**, president of the Women's Law Student Association, a research assistant in Professor Francis X. Shen's Neurolaw Lab, and a student legal writing instructor.  In 2018, Caitlin received the ABA-Bloomberg BNA Excellence in Health Law Award.  Prior to attending law school, Caitlin worked as a psychometrist in a neurology clinic. *Education*: B.A., Macalester College, 2012, *cum laude*; J.D. University of Minnesota Law School, 2018, *cum laude*.

Riley Palmer is a member of Nichols Kaster's individual rights litigation team and represents those who have experienced discrimination, whether at work, in public accommodation, or elsewhere. Riley represents plaintiffs in a wide range of issues, including discrimination, harassment, retaliation, and minority shareholder rights. Prior to joining the firm, Riley clerked for Alaska Superior Court Judge Amy Mead. During law school, Riley interned with Wisconsin Supreme Court Justice Rebecca Dallet, served as a managing editor of the *Wisconsin Law Review*, co-president of the Queer Law Students Association, and as a clinical student in the school's eviction defense clinic. While a law student, Riley also volunteered for Trans Law Help Wisconsin where she spearheaded various initiatives to help transgender Wisconsinites know their rights and better access resources. She was later appointed to sit on the organization's Board of Directors from 2021–22. Riley received multiple awards for pro bono

service to this and other nonprofit organizations. Prior to attending law school, Riley held various retail and customer service positions, worked in local government, in rural civil legal aid, and at a leading New York law firm. *Education:* B.A. Bates College 2016; J.D. University of Wisconsin Law School 2022, *cum laude.*

Gerald C. Robinson is Of Counsel in Nichols Kaster's Civil Rights and Impact Litigation team. After doing complex commercial litigation for several years, since 2005 Gerald's practice has been devoted exclusively to representing whistleblowers under the federal False Claims Act and similar laws. During that time, the cases he has worked on have recovered over $700 million for the Government. Gerald has represented whistleblowers in a wide range of industries, including pharmaceutical and medical device manufacturers, commercial and retail pharmacies, health care, defense contractors, and higher education. His cases have also tackled a wide-range of fraudulent schemes, including fraudulent inducement, kickbacks, bribery, price manipulation, medical upcoding, off-label marketing of drugs, loan and grant fraud, and goods and services that were substandard or never provided. Gerald has been a member of the whistleblower attorney group Taxpayers Against Fraud since 2005. Gerald is licensed in Minnesota, New Jersey and the District of Columbia, and is admitted to practice before the federal courts of appeals for the Third, Fourth, Eighth, Ninth and D.C. Circuits, and the United States Supreme Court. Gerald has briefed several dozen dispositive and other motions to federal District Courts, has briefed and argued three federal appeals, and petitioned one case to the U.S. Supreme Court. *Education*: B.A. University of Minnesota 1987, *cum laude*, Phi Beta Kappa, Phi Kappa Phi, Omicron Delta Kappa, Mortar Board, Golden Key; J.D. University of Minnesota Law School 1990.

Martin A. Sandberg is a member of the Qui Tam practice group representing whistleblowers in False Claims Act litigation who challenge fraudulent activity that corporations undertake. Martin also represents classes of employees and unserved communities in the Civil Rights and Impact Litigation practice group. Prior to joining Nichols Kaster, Martin worked briefly as a criminal defense attorney and clerked for the Honorable Richelle M. Wahi in the First Judicial District of Minnesota. In school, Martin externed with the St. Croix County District Attorney's Office, B.K. Law Group, and the Legal Assistance to Minnesota Prisoners Clinic. Martin was also a teaching assistant for Constitutional Law and is published in the Mitchell Hamline Law Rivew, where he was an associate and contributing editor. *Education:* A.A. University of Wisconsin-Barron County 2016, *magna cum laude*; B.A. University of Wisconsin-Eau Claire 2018, *magna cum laude*, Phi Sigma Alpha Political Science Honor Society, Omega Greek Honor Society, Delta Sigma Phi; J.D. Mitchell Hamline School of Law 2022, *cum laude.*

EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID BURNETT AND DAVID NELSON as representatives of a class of similarly situated persons and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | C.A. No. 1:22-cv-00270-RGA/JLH |
| Plaintiffs, | |
| v. | |
| PRUDENT FIDUCIARY SERVICES, LLC, MIGUEL PAREDES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, KELLY S. NEFF TRUST DATED 1/1/10, DANIELLE J. NEFF TRUST DATED 1/1/10 and WGA TRUST DATED 8/16/13, | |
| Defendants. | |

## <u>DECLARATION OF PETER K. STRIS</u>

COOCH AND TAYLOR, P.A.

Carmella P. Keener (#2810)
1007 N. Orange St., Suite 1120
P.O. BOX 1680
Wilmington, DE 19899-1680
(302) 984-3816
ckeener@coochtaylor.com

*Delaware Counsel for Plaintiffs*

Dated: September 20, 2024

I, Peter K. Stris, declare as follows:

1.     I am a Founding Partner of Stris & Maher LLP. Together with Cohen Milstein Sellers & Toll PLLC, Nicols Kaster, PLLP, and Cooch and Taylor, P.A., our firm is counsel for Plaintiffs and the putative class in this action.

2.     I am a member in good standing of the State Bar of California, and I am admitted to practice before this Court *pro hac vice*. This declaration is submitted in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. I make this declaration based on personal knowledge and if called at trial, could and would testify competently to the facts stated herein.

## Personal qualifications and experience

3.     I graduated from Harvard Law School in 2000 where I was an editor of the Harvard Law Review. I received my B.A. in music from the University of Pennsylvania in 1997.

4.     For over two decades, I have been representing participants and beneficiaries in high-stakes and high-profile ERISA cases. In recognition of that work, *Chambers USA* has given me its top spot (Star Individual) in its "Nationwide – ERISA Litigation: Mainly Plaintiffs" category.  https://chambers.com/legal-rankings/erisa-litigation-mainly-plaintiffs-usa-nationwide-5:3194:12788:1.  I am also one of the few plaintiff-side ERISA lawyers elected as a fellow of the American College of Employee Benefits Counsel. https://www.acebc.com/

5.     I frequently represent parties in precedent-setting ERISA cases before the U.S. Supreme Court. Those cases, five of which I personally argued, include:

(a)     ***Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1616 (2020).** Putative class action about the circumstances under which participants have standing to sue. Presented oral argument.

2

(b)    ***Gobeille v. Liberty Mutual Insurance Co.***, **136 S. Ct. 936 (2016).** Case about the scope of ERISA preemption. Oral argument presented by my law partner Bridget Asay.

(c)    ***Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan***, **136 S. Ct. 651 (2016).** Case about the scope of plan reimbursement rights. Presented oral argument.

(d)    ***US Airways, Inc. v. McCutchen***, **133 S. Ct. 1537 (2013).** Subrogation case that resolved an important question left open in *Sereboff* v. *Mid Atlantic Medical Services, Inc*.

(e)    ***Heimeshoff v. Hartford Life & Accident Ins. Co.***, **134 S.Ct. 604 (2013).** ERISA long-term disability case about whether parties can contractually alter the period of accrual for ERISA's statute of limitations.

(f)    ***Conkright v. Frommert***, **559 U.S. 506 (2010).** Case about the circumstances under which a plan administrator can lose *Firestone* deference. Presented oral argument.

(g)    ***LaRue v. DeWolff, Boberg & Assocs., Inc.***, **28 S. Ct. 1020 (2008).** Case about the scope of ERISA remedies under 502(a)(2) and (a)(3). *The New York Times* described the Court's decision as "one of the most important rulings in years on the meaning of the federal pension law known as ERISA." Presented oral argument.

(h)    ***Sereboff v. Mid Atl. Med. Servs., Inc.***, **126 S. Ct. 1869 (2006).** Case presenting a question about the meaning of "equitable" under ERISA section 502(a)(3)(B). Presented oral argument.

6.    I also represent parties in closely watched ERISA cases where the U.S. Supreme Court has called for the views of the Solicitor General. In addition to several of the merits cases discussed above, notable examples include: *ERISA Industry Committee v. City of Seattle, Washington*, No. 21-1019 (counsel of record for respondent, the City of Seattle) (CVSG on May

31, 2022) (U.S. recommended denial) (petition denied); *Doe 1 v. Express Scripts, Inc.*, No. 21-471 (counsel of record for petitioners) (CVSG on December 13, 2021) (U.S. recommended denial) (petitioned denied); *Convergex Group, LLC v. Fletcher*, No. 17-343 (U.S. 2018) (counsel of record for respondent) (U.S. recommended denial) (petition denied); *RJR Pension Investment Committee v. Tatum*, No. 14-656 (U.S. 2015) (counsel for respondent) (U.S. recommended denial) (petition denied); and *Blue Cross and Blue Shield of Montana, Inc. v. Fossen*, No. 11-1155 (U.S. 2013) (counsel for respondent) (U.S. recommended denial) (petition denied).

7.      I have prevailed in significant ERISA cases in virtually every circuit court of appeals. *E.g.*, **Second Circuit:** *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024) (obtained affirmance); *Sullivan-Mestecky v. Verizon Communications*, 961 F.3d 91 (2d Cir. 2020) (obtained reversal); *Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013) (obtained reversal); **Third Circuit:** *Henry v. Wilmington Trust NA*, 72 F.4th 499 (3d Cir. 2023) (obtained affirmance); **Fourth Circuit:** *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012) (obtained reversal); **Fifth Circuit:** *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023 (5th Cir. 2015) (obtained reversal); **Seventh Circuit:** *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021) (obtained affirmance); **Eighth Circuit:** *Rozo v. Principal Life Ins. Co.*, 949 F.3d 1071 (8th Cir. 2020) (obtained reversal); *Silva v. Metro. Life. Ins. Co.*, 762 F.3d 711 (8th Cir. 2014) (obtained reversal); **Ninth Circuit:** *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) (filed successful petition for rehearing to obtain affirmance of key holdings); *The Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019) (obtained reversal in part); **Tenth Circuit:** *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090 (10th Cir. 2023) (obtained affirmance); **Eleventh Circuit:** *Bd. of Trustees of Nat. Elevator Indus. Health Ben. Plan v.*

*Montanile*, 593 F. App'x 903 (11th Cir. 2014) (unfavorably affirmed on appeal, but later obtained reversal by U.S. Supreme Court).

8.    In addition to my ERISA appellate practice, I litigate complex ERISA cases in district courts throughout the country. Representative examples of ERISA class action litigation handled by me and my colleagues at Stris & Maher are discussed below in paragraph 11.

9.    I often write and speak, typically by invitation, about a sweeping range of ERISA topics. For example, Brendan Maher and I were invited to serve as two of the five co-authors of the Sixth Edition of *ERISA Litigation*. Published by Bloomberg BNA, *ERISA Litigation* is a leading treatise used by practitioners. I had primary responsibility for 11 of the book's 44 chapters covering topics including Excluded Plans, Enumerated Parties, Remedies, Preliminary Relief, Subject Matter Jurisdiction, Personal Jurisdiction, Class Actions, Insurance, Fees Litigation, Age Discrimination, and Misrepresentation.

## Firm background and experience

10.    Stris & Maher is a boutique law firm with a nationally recognized ERISA litigation practice. We are one of only three law firms in America ranked by *Chambers USA* in Band 1 for "ERISA Litigation: Mainly Plaintiffs" (Cohen Milstein is one of the other two).

11.    Our lawyers have significant experience litigating ERISA class actions on behalf of plaintiffs. We have served as class counsel or co-counsel in ERISA cases including:

(a)    ***Baleja v. Northrop Grumman Space and Mission Systems Corp. Salaried Pension Plan, et al.*, No. 5:17-cv-00235-JGB-SP (C.D. Cal.) (pending).** We developed this large ERISA class action (filed in 2017 in the Central District of California) challenging the application of an appreciated offset. The case raises issues similar to those in *Frommert v. Conkright*, No. 00-cv-06311 (W.D.N.Y.), a case we litigated for a decade

recovering over $22 million for plaintiffs. Our firm defeated multiple motions to dismiss, obtained class certification, and completed fact and expert discovery. However, the district court judge dismissed our clients' breach of fiduciary duty claim on summary judgment, and found against our clients on their benefits claim after a bench trial. We appealed. On August 19, 2024, the Ninth Circuit Court of Appeals reversed the district court's order granting summary judgment, remanded our clients' breach of fiduciary duty claim for trial, and concluded as a matter of law that our clients are entitled to a guaranteed minimum monthly benefit under the retirement plan at issue. The litigation continues.

(b)      ***Urlaub v. Citgo Petroleum Corp.*, 1:21-cv-04133 (N.D. Ill.) (pending).** We serve as co-counsel (with Cohen Milstein) in this certified class action alleging that the use of outdated mortality tables resulted in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects. We successfully defeated the defendants' motions to dismiss and for summary judgment, obtained class certification, and defeated the defendants' Rule 23(f) petition. The case is set for a bench trial later this year.

(c)      ***Scott v. AT&T Inc.*, 3:20-cv-07094-JD (N.D. Cal.) (pending).** We serve as co-counsel (with Cohen Milstein) in this putative class action alleging that AT&T systematically underpays pension benefits owed to married pension plan participants in violation of ERISA by using outdated actuarial assumptions to calculate their benefits. We successfully defeated the defendants' motion to dismiss. Motions for summary judgment and class certification are pending.

(d)      ***Tom v. Com Dev USA, LLC, et al.*, No. CV 16-1363 PSG (GJSx) (C.D. Cal. 2017).** We served as co-counsel in this certified class action alleging ERISA violations in the improper calculation, estimation, and payment of certain optional forms of benefits.

After discovery and briefing cross-motions for summary judgment, the case settled for roughly $4 million.

(e)    ***Dennard v. Transamerica Corp., et al.*, No. 1:15-cv-00030 (N.D. Iowa 2016).** We served as co-counsel in this excessive fee class action brought under ERISA. Our work helped bring about a settlement agreement that returned $3.8 million to the class and provided other valuable prospective relief.

(f)    ***Hendricks v. UBS Fin. Servs., Inc.*, No. 2:12-cv-606-JRG-RSP (E.D. Tex. 2013); *Eddingston v. UBS Fin. Servs., Inc.*, No. 2:12-cv-422-JRG-RSP (E.D. Tex. 2013).** We were appointed co-lead class counsel in this $200+ million ERISA lawsuit. In that role, we successfully briefed and argued motions before the Eastern District of Texas, defeating defendant's motion to dismiss and compel arbitration and obtaining class certification. On interlocutory appeal, the Fifth Circuit reversed the district court's denial of defendants' motion to compel arbitration.

(g)    ***Allen v. Honeywell Retirement Earnings Plan*, No. 2:04-cv-424-PHX-ROS (D. Ariz. 2012).** We served as co-counsel in this complex ERISA class action. Our work contributed to a settlement that returned $23.8 million to the class.

### Team members' backgrounds and qualifications

12.    In this action, we have staffed a team of experienced ERISA practitioners. In addition to myself, our team includes:

13.    **John Stokes.** John Stokes is a partner of Stris & Maher LLP. Mr. Stokes has particular expertise in the law of ERISA. He is ranked Band 2 in "ERISA Litigation: Mainly Plaintiffs" by *Chambers USA*. Mr. Stokes has successfully argued significant ERISA appeals throughout the country including in the Second Circuit (*Sullivan-Mestecky v. Verizon*

7

*Communications, Inc.*, 961 F.3d 91 (2020)), Fifth Circuit (*Coleman v. Brozen*, No. 23-10832 (2024) (settled after oral argument)), and Tenth Circuit (*Harrison v. Envision Mgmt. Holding, Inc. Bd.*, 59 F.4th 1090 (10th Cir. 2023). Mr. Stokes has also briefed and argued numerous dispositive motions in ERISA cases before the district courts, including in other ESOP cases and on behalf of Fortune clients. He is currently litigating several ESOP cases involving claims similar to those at issue here. Mr. Stokes received his J.D. from Yale Law School in 2014. After law school, Mr. Stokes served as a law clerk to the Honorable Raymond C. Fisher on the U.S. Court of Appeals for the Ninth Circuit and the Honorable Paul G. Gardephe on the U.S. District Court for the Southern District of New York. Mr. Stokes received his undergraduate degree in linguistics from Harvard University in 2011, where he graduated *summa cum laude* and Phi Beta Kappa.

14.    **Rachana (Radha) Pathak.** Radha Pathak is a partner of Stris & Maher LLP. She is a nationally recognized subject matter expert on the topic of ERISA and has worked on the firm's ERISA cases for over a decade. In 2017, she received *The Daily Journal*'s California Attorney Lawyer of the Year award for *Montanile v. Board of Trustees*, 136 S.Ct. 651 (2016), an ERISA case in which she served as counsel of record. While working as a tenured law professor, her ERISA publications include *Enough About the Constitution: How States Can Regulate Health Insurance Under the ACA*, 31 Yale L. & Pol'y Rev. 275 (2013), *Health Insurance and Federalism in Fact*, 28 ABA J. Lab. & Emp. L. 73 (2012), *Discretionary Clause Bans & ERISA Preemption*, 56 S.D. L. Rev. 500 (2011), *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89 (2009), and *Understanding and Problematizing Contractual Tort Subrogation*, 40 Loy. U. Chi. L.J. 49 (2008). Following her transition to private practice, Ms. Pathak continues to speak and publish on ERISA topics, most recently serving as moderator and panelist on the *ERISA Civil Procedure Update* delivered to the ABA Joint Committee on Employee Benefits (March 2022). Ms. Pathak

received her J.D., *cum laude*, from New York University Law School where she was an editor of the New York University Law Review. She received her B.A. in Political Science with honors from the University of California at Berkeley. After law school, she served as a judicial clerk to the Honorable Raymond C. Fisher of the United States Court of Appeals for the Ninth Circuit.

15.     **Tillman Breckenridge.** Tillman Breckenridge is a partner of Stris & Maher LLP. He is an experienced appellate lawyer whose practice includes a diverse range of matters. In 2018, he became the youngest fellow ever (and the first under 40) elected to the American Academy of Appellate Lawyers. He has been named to Savoy Magazine's Most Influential Black Lawyers in America; an honorary member of the Order of the Barristers; a Washington, D.C. SuperLawyer; and a member of Virginia's Legal Elite. Outside of his private practice, Mr. Breckenridge has served as an adjunct professor of law at William and Mary Law School, where he founded the Appellate & Supreme Court Clinic. He earned his J.D. from the University of Virginia School of Law, where he argued (successfully) his first appeal as a third-year student in the U.S. Court of Appeals for the Fourth Circuit in a case that presented an issue of first impression.

16.     **Victor O'Connell.** Victor O'Connell is a partner of Stris & Maher LLP. Since joining the firm in 2012, he has played a key role in virtually all of the firm's trial-level ERISA litigation and many of its ERISA appeals. He has also written about ERISA both from an academic perspective (including co-authoring *ERISA & Equity*, 29 A.B.A. J. Lab. & Emp. L. 125 (2013) and *Enforcing ERISA*, 56 S.D. L. Rev. 515 (2011)) and a practitioner perspective (including co-authoring several chapters for the Sixth Edition of *ERISA Litigation* and its supplements). Mr. O'Connell received his J.D. from University of Southern California Gould School of Law in 2012, where he was elected to the Order of the Coif and was a Southern California Law Review editor.

9

He received his B.S. in Business Administration from California State University Long Beach in 2006.

17.    For more than two years, we vigorously litigated this matter, including leading the briefing and presenting oral argument before Magistrate Judge Hall in successfully opposing defendants' motion to compel arbitration or to dismiss, and then successfully opposing defendants' objections to the magistrate judge's report and recommendation. We then led the successful defense of that result on appeal before the Third Circuit, which included significant motion practice on a number of contested issues before the court of appeals.

18.    To date, Stris & Maher's attorneys and staff have dedicated more than 1,200 hours to this matter. We have also advanced more than $80,000 in litigation expenses pursuing the interests of the Class, including (with co-counsel) engaging and advancing costs for bankruptcy counsel to ensure that plan participants' interests would not be prejudiced by the bankruptcy of Western Global Airlines, ultimately securing a complete carve-out of the claims in this action from the releases granted in connection with the bankruptcy. Throughout the litigation, the Shareholder Defendants vigorously denied all of Plaintiffs' allegations, asserted affirmative defenses, and otherwise vigorously defended their actions with respect to the Transaction.

19.    For the reasons discussed in our co-counsel's declarations, I believe the Settlement is fair, reasonable, and adequate.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 19, 2024.

_____

Peter K. Stris

10

EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID BURNETT AND DAVID NELSON as representatives of a class of similarly situated persons and on behalf of the WESTERN GLOBAL AIRLINES, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | C.A. No. 1:22-cv-00270-RGA/JLH |
| Plaintiffs, | |
| v. | |
| PRUDENT FIDUCIARY SERVICES, LLC, MIGUEL PARADES, JAMES K. NEFF, CARMIT P. NEFF, JAMES K. NEFF REVOCABLE TRUST DATED 11/15/12, CARMIT P. NEFF REVOCABLE TRUST DATED 11/15/12, KELLY S. NEFF TRUST DATED 1/1/10, DANIELLE J. NEFF TRUST DATED 1/1/10 and WGA TRUST DATED 8/16/13, | |
| Defendants. | |

**DECLARATION OF MICHELLE C. YAU IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF
LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**

I, Michelle C. Yau, declare as follows:

1.    I am a partner at Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Chair of Cohen Milstein's ERISA litigation practice group. Together with Cooch and Taylor, P.A., Stris & Maher LLP, and Nichols Kaster, PLLP, our firm is counsel for Plaintiffs and the Settlement Class[1] in this action. I am a member in good standing of the State Bar of Massachusetts and the District of Columbia, and I am admitted to practice before this Court *pro hac vice*.

2.    My firm has prosecuted this litigation on behalf of Plaintiffs since its inception. This declaration is submitted in support of Plaintiffs' Unopposed Motion and Incorporated Memorandum of Law for Preliminary Approval of Settlement and Certification of Settlement Class. I make this declaration based on personal knowledge and, if called at trial, could and would testify competently to the facts stated herein.

3.    I graduated from Harvard Law School where I was awarded several public interest fellowships, including the Heyman Fellowship for academic excellence and a demonstrated commitment to public service. I graduated Phi Beta Kappa with a B.A. in Mathematics from the University of Virginia.

---

[1] Unless otherwise indicated, capitalized terms here carry the same meaning as in the Settlement Agreement, attached as Exhibit A to the Declaration of Brock J. Specht.

4.      Prior to joining Cohen Milstein, I was an Honors Program Attorney at the Department of Labor where I enforced and administered a variety of labor statutes, including ERISA. Before law school, I also worked as a financial analyst on Wall Street where I received training in many areas, including finance, accounting, financial modeling, and stock valuation techniques. For the past eighteen years, my practice has consisted entirely of ERISA class action litigation. I am a senior editor of the fiduciary chapter of Employee Benefits Law, which is a well-known ERISA treatise published by *Bloomberg BNA*. I am also a frequent speaker on ERISA issues at conferences and webinars sponsored by the American Bar Association and the Practicing Law Institute as well as other organizations.

5.      Cohen Milstein is a leader in class action litigation generally and has a premier ERISA class action practice that is nationally recognized. Based on its many successes, Cohen Milstein was named as one of the ten "Most Feared Plaintiffs Firms" by *Law360*, and *Forbes* has called my firm a "class action powerhouse." In 2024, Cohen Milstein was named by *The National Law Journal* as an "Elite Trial Lawyer" finalist in numerous practice areas including "Plaintiffs' Law Firm of the Year" and "Class Action – Practice of the Year." The 2022 Edition of *U.S. News – Best Lawyers* "Best Law Firms" recognized Cohen Milstein among the "Top Firms Nationally." In 2021, *The American Lawyer* named Cohen Milstein a finalist for the "National Boutique / Specialty Litigation Department of the Year Award."  The firm

has also been named among the "Best Law Firms for Female Attorneys" in *Law360*'s 2023 "Glass Ceiling Report."

6.    Cohen Milstein's ERISA Practice Group, which I lead, has been devoted exclusively to litigating complex ERISA class actions for over twenty years and has played a significant role in the development of employee benefits law. Based on these successes, our ERISA team was named by *Law360* as "Practice Group of the Year – Benefits" in 2019, 2021, and 2022. Also, from 2022 through 2024, the leading attorney-ranking service *Chambers USA* gave Cohen Milstein its highest ranking for ERISA litigation on behalf of plaintiffs nationwide (Band 1). In conferring this honor, *Chambers USA* noted that "Cohen Milstein Sellers & Toll is highly regarded for its representation of plaintiffs in ERISA class actions. The firm is regularly sought out to represent plan participants and beneficiaries in a range of ERISA claims including breach of fiduciary duty."

7.    My team has successfully secured hundreds of millions of dollars for ERISA classes in lawsuits alleging fiduciary breach and prohibited transaction violations. For example, as lead trial counsel in an ERISA class action, I obtained a $32.5 million settlement in *Becker v. Wells Fargo & Co.*, No. 0:20-cv-02016, ECF 283 (D. Minn. Aug. 31, 2022) and a $19 million settlement received final approval on July 18, 2024 in *Krohnenhold v. New York Life Insurance Co.*, No. 1:21-cv-01778-JMF, ECF 202 (S.D.N.Y.). My firm also obtained a $15 million settlement

3

for an ESOP class in *Smith v. GreatBanc Trust Co.*, No. 1:20-cv-02350, ECF 163 (N.D. Ill. Aug. 8, 2023), and obtained an $8.7 million settlement in *Ahrendsen v. Prudent Fiduciary Services, LLC*, No. 2:21-cv-02157-HB, ECF 105 (E.D. Pa. June 22, 2023). We recently reached a class action settlement in principle in a similar ESOP case in *Hensiek v. Board of Directors of Casino Queen Holding Co.*, No. 3:20-cv-00377, ECF 537 (S.D. Ill. September 3, 2024).

8.    Cohen Milstein also served as co-lead counsel in *In re Merrill Lynch, & Co. Securities, Derivative and ERISA Litigation*, No. 07-cv-10268 (S.D.N.Y. 2009), which involved a public ESOP and claims that Merrill Lynch fiduciaries imprudently purchased and held inflated Merrill stock. We achieved a $75 million settlement for the class of ERISA plan participants.

9.    We represented an ERISA certified class in *In re Beacon Associates Litigation*, No. 09-cv-0777 (S.D.N.Y. 2013). At the fairness hearing, Judge McMahon praised the settlement: "And, yes, the fact that there was no objection to it reflects the hard work that all of you put into trying to get a global resolution of all of these cases[.] The settlement process really was quite extraordinary." She also applauded the outcome, stating, "In the history of the world there has never been such a response to a notice of a class action settlement that I am aware of, certainly, not in my experience."

10. I am currently representing ESOP participants asserting ERISA fiduciary breach and prohibited transaction claims similar to those here. *See, e.g., Zavala v. Kruse-Western, Inc., No. 1:19-cv-00239* (E.D. Cal. filed Feb. 19, 2019)*; Hensiek v. Bd. of Dirs. Of Casino Queen Holding Co.*, No. 3:20-cv-00377 (S.D. Ill. filed Apr. 27, 2020); *Harrison v. Envision Mgmt. Holding, Inc. Bd. Of Dirs.*, No. 1:21-cv-00304 (D. Colo. Filed Jan. 29, 2021); *Lloyd v. Argent Tr. Co.*, No. 1:22-cv-04129 (S.D.N.Y. filed May 23, 2022); *Ramirez v. AMPAM Parks Mechanical, Inc.*, No. 5:24-cv-01038 (C.D. Cal. filed May 16, 2024).

11. We have achieved favorable pretrial rulings in several of these cases. *Lloyd v. Argent Tr. Co.*, No. 1:22-cv-04129, 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022) (denying motion to compel arbitration and motion to dismiss for lack of standing); *Hensiek v. Bd. of Dirs. of Casino Queen Holding Co., Inc.*, No. 3:20-CV-00377, 2022 WL 263321 (S.D. Ill. Jan. 28, 2022) (denying motion to dismiss); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 593 F. Supp. 3d 1078 (D. Colo. 2022) (denying motion to compel arbitration); *Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731 (E.D. Cal. 2019) (denying in part motions to dismiss); *id.* 562 F. Supp. 3d 1059 (E.D. Cal. 2021) (denying motion for judgment on the pleadings and motion for summary judgment).

12. We have attained important and favorable opinions at the Courts of Appeals, and I personally have litigated two cases in the Supreme Court of the

United States. *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021);

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090 (10th Cir.

2023); *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020); *Advoc. Health Care Network

v. Stapleton*, 581 U.S. 468 (2017).

    13.    In addition to the cases referenced above, Cohen Milstein's Employee

Benefits Practice Group has served as class counsel in numerous other ERISA

class actions, including the following:

- *Urlaub v. CITGO Petroleum Corp.*, No. 21 C 4133, 2024 WL 2209538 (N.D. Ill. May 16, 2024);
- *Sweeney v. Nationwide Mut. Ins. Co.*, No. 2:20-CV-1569, 2024 WL 1340262 (S.D. Ohio Mar. 28, 2024)
- *Baird v. BlackRock Institutional Tr. Co.*, No. 17-CV-01892-HSG, 2021 WL 5113030 (N.D. Cal. Nov. 3, 2021);
- *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758 (2022);
- *Fuller v. SunTrust Banks, Inc.*, No. 1:11-cv-784, ECF 302 (N.D. Ga. July 20, 2020);
- *Overall v. Ascension*, No. 2:13-cv-11396, ECF 115 (E.D. Mich. Nov. 20, 2015);
- *Chavies v. Catholic Health E.*, No. 13-1645 (E.D. Pa. Apr. 29, 2016) (consolidated for settlement purposes with *Lann v. Trinity Health Corp.*, 8:14-cv-02237, ECF 111 (D. Md. May 31, 2017)));
- *Lann v. Trinity Health Corp.*, No. 8:14-cv-02237, ECF 111 (D. Md. May 31, 2017);
- *Medina v. Cath. Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017);
- *Griffith v. Providence Health & Servs.*, 2:14-cv-01720, ECFs 69, 70 (W.D. Wash. Mar. 21, 2017);
- *Holcomb v. Hosp. Sisters Health Sys.*, No. 3:16-cv-03282, ECF 67 (C.D. Ill. Feb. 25, 2019);
- *In re Wheaton Franciscan ERISA Litig.*, No. 16-04232, ECF 107 (N.D. Ill. Jan. 16, 2018);
- *Carver v. Presence Health Network*, No. 15-2905, ECF 134 (N.D. Ill. May 31, 2018);

- *Garbaccio v. St. Joseph's Hosp. Sys. & Med. Ctr. & Subsidiaries*, 2:16-cv-02740, ECF 116 (D.N.J. Mar. 6, 2018);
- *Smith v. OSF Healthcare Sys.*, 349 F. Supp. 3d 733 (S.D. Ill. 2018), *vacated and remanded*, 933 F.3d 859 (7th Cir. 2019);
- *Owens v. St. Anthony Med. Ctr., Inc*., No. 14-cv-4068, ECF 308 (N.D. Ill. Aug. 14, 2019);
- *Dooley v. Saxton*, No. 1:12-CV-1207, 2015 WL 13660568 (D. Or. Oct. 19, 2015);
- *Hodges v. Bon Secours Health Sys., Inc.*, No. 16-1079, ECF 117 (D. Md. Dec. 21, 2017);
- *Banyai v. Mazur*, No. 1:00-cv-09806, ECF 223 (S.D.N.Y. Nov. 18, 2008);
- *Chesemore v. All. Holdings, Inc.,* No. 09-CV-413-WMC, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016);
- *Hans v. Tharaldson*, No. 3:05-CV-00115, 2010 WL 1856267 (D.N.D. May 7, 2010);
- *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 3:05-cv-01151, 2016 WL 11575090 (D.N.J. June 28, 2016);
- *Slipchenko v. Brunel Energy, Inc.*, No. 4:11-cv-01465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015);
- *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008);
- *Simpson v. Fireman's Fund Ins. Co.*, 4:05-cv-00225, ECF 85 (N.D. Cal. Mar. 30, 2007);
- *Pfeifer v. Wawa, Inc.*, No. 2:16-cv-00497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018);
- *Redington v. Goodyear Tire & Rubber Co.*, No. 5:07CV1999, 2008 WL 3981461 (N.D. Ohio Aug. 22, 2008).

14.    Each of my colleagues at Cohen Milstein who are counsel of record in this case are seasoned class action litigators with experience handling high-profile ERISA cases such as this.

15.    Eleanor Frisch has worked almost exclusively on class-action litigation and appeals in the federal courts of appeals since graduating magna cum laude from the University of Minnesota Law School in 2014 and clerking for the United States

Court of Appeals for the Eighth Circuit. Eleanor was a lead author of plaintiffs' appeal brief in *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 31 (1st Cir. 2018), a successful appeal that resulted in a partial vacatur of the trial court's adverse judgment on plaintiffs' ERISA claims (and ultimately led to an eight-figure settlement post-appeal).

16.     Daniel Sutter was named an "Elite Trial Lawyers Rising Star" by the National Law Journal in 2023 and an "Associate to Watch" by Chambers USA in the area of plaintiffs-side ERISA Litigation from 2022 through 2024. He has extensive experience litigating ERISA class action cases since graduating from George Washington University Law School in 2016 and joining our Practice Group. Before that, he worked for Cohen Milstein as both a law clerk and analyst.

17.     Together with co-counsel, Cohen Milstein has vigorously prosecuted this action on behalf of Plaintiffs and the ESOP.

18.     Prior to filing the action in February 2022, we and our co-counsel conducted a thorough investigation of the relevant facts and claims.

19.     Plaintiffs' counsel has litigated this case vigorously. We defeated a motion to compel arbitration or, in the alternative, to dismiss the complaint, D.I. 25, 59, and successfully defended that ruling before the Third Circuit, *Burnett v. Prudent Fiduciary Services*, No. 23-1527, 2023 WL 6374192 (3d Cir. August 15, 2023).

20.    The Parties have met and conferred numerous times to attempt to resolve disputes without motion practice, which was indeed achieved for the vast majority of issues.

21.    Discovery has been more than sufficient to provide Plaintiffs with adequate information for purposes of settlement. Prior to reaching the Settlement, Defendants and third parties together had produced nearly 30,000 documents in response to Plaintiffs' requests for production and subpoenas, and both the Shareholder and Trustee Defendants had responded to interrogatories as well.

22.    Plaintiffs' counsel has reviewed foundational documents produced by Defendants related to the at-issue ESOP transaction, as well as thousands of documents produced in discovery, all of which provided an adequate information base for settlement negotiations. We also engaged a valuation expert to assist in our evaluation of the evidence and estimation of potential damages. Our analysis of these documents in advance of mediation allowed us to sufficiently evaluate the strengths and potential weaknesses of the claims prior to entering the Settlement.

23.    Throughout the litigation, the Shareholder and Trustee Defendants have vigorously denied all of Plaintiffs' allegations, asserted affirmative defenses, and otherwise vigorously defended their actions.

24.    On March 27, 2024, Plaintiffs' counsel and the Shareholder Defendants' counsel engaged in a private, full-day, in-person mediation facilitated

by JAMS mediator Robert A. Meyer. Plaintiffs and the Shareholder Defendants were able to resolve the claims as to the Shareholder Defendants that evening after a full day of negotiations. For the reasons explained above, I believe the Settlement that we reached is fair, reasonable, and adequate.

25.    On May 14, 2024, Plaintiffs' Counsel and the Trustee's counsel engaged in a private, in-person mediation facilitated by JAMS mediator Robert A. Meyer. We were not able to resolve the claims as to the Trustee Defendants on May 14 and thus the parties engaged in another all-day mediation with Robert A. Meyer from JAMS on July 29, 2024. The parties executed a term sheet that evening reflecting basic settlement terms. Thereafter, they negotiated a full settlement agreement, which I believe is fair, reasonable, and adequate.

26.    To date, Cohen Milstein's attorneys and staff have dedicated more than 1,630 hours to this matter, and Cohen Milstein has advanced more than tens of thousands of dollars in litigation costs, including expert fees, mediation fees, fees paid to bankruptcy counsel to protect the Settlement Class's interests, and travel costs. We will continue to advance the costs of litigation for our clients on behalf of the ESOP.

27.    Based on my experience overseeing this matter and ERISA class actions generally, I believe that this Settlement is in the Settlement Class's best interest.

28.    I am not aware of any conflicts of interest that would impair or impede our ability to represent the Settlement Class as we have done to date.

29.    Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the firm-wide resume for Cohen Milstein Sellers & Toll PLLC.

30.    I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  September 20, 2024          Respectfully submitted,

By: <u>*/s/ Michelle C. Yau*</u>
Michelle C. Yau (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com

# EXHIBIT 1



**Burnett v. Prudent Fiduciary Services, LLC, et al. (D. Del.)**

COHENMILSTEIN

cohenmilstein.com

COHEN**MILSTEIN**

# | About the Firm

**We are trailblazers in plaintiff-side and class action litigation, handling groundbreaking cases resulting in landmark decisions involving antitrust, securities, consumer rights, civil rights, and other far-reaching matters.**

We fight corporate abuse by pursuing litigation on behalf of individuals, investors, whistleblowers, small businesses, and other institutions in lawsuits that have raised significant and often novel legal issues.

With more than 100 attorneys in 10 practice areas in eight offices across the country, including Boston, Chicago, Minneapolis, New York, Palm Beach Gardens, Philadelphia, Raleigh, and Washington, we are recognized as one of the largest and most diversified plaintiffs' firms in the country.

We regularly litigate complex matters across a wide range of practice areas:

- Antitrust
- Civil Rights & Employment
- Complex Tort Litigation
- Consumer Protection
- Employee Benefits / ERISA
- Ethics and Fiduciary Counseling

- Human Rights
- Public Client
- Securities Litigation & Investor Protection
- Whistleblower/False Claims Act

In 2024, *Law360* recognized our Securities Litigation & Investor Protection practice as a "2023 Practice Group of the Year." *The National Law Journal* also named Cohen Milstein's Securities Litigation and Mass Torts practices "Practice of the Year" for 2024. *Chambers USA* and *Legal 500* have also consistently ranked Cohen Milstein as a "Top Tier Firm" and "Leading Firm" in Antitrust, Securities Litigation, Product Liability, Mass Torts, ERISA, and Employment Law.  The firm has also been named among the "Best Law Firms for Female Attorneys" in *Law360's* 2024 "Glass Ceiling Report."

Our attorneys, individually, are heralded as among the best in their practices by industry surveys and organizations, such as American Antitrust Institute, *The American Lawyer, Benchmark Litigation, Chambers USA, Global Competition Review, Law360, Lawdragon, Legal 500,* and *The National Law Journal*.

cohenmilstein.com

**COHEN**MILSTEIN

# | Employee Benefits / ERISA

Our nationally acclaimed Employee Benefits/ERISA attorneys represent the interests of employees, retirees, and plan participants or beneficiaries in their pursuit of economic justice.

Through often cutting-edge class actions, we address the mismanagement of employee retirement benefit plans governed by the Employee Retirement Income Security Act (ERISA), including:

- 401(k) plans
- Employee Stock Ownership Plans (ESOPs)
- Traditional pension plans

We also address mismanagement issues of other types of health and employee benefit plans.

## Recognition for Our Work

We have been recognized by the legal industry as one of the top ERISA plaintiffs' firms in the country:

- Chambers USA – Top Ranked Firm – ERISA Litigation (2022 - 2024)
- Law360 – Practice Group of the Year – Benefits (2019, 2021, 2022)
- Bloomberg BNA "Employee Benefits Law, the Nation's Main ERISA Treatise," Senior Editor, Michelle Yau
- Law360's Benefits Editorial Advisory Board – Michelle Yau (2022, 2023); Dan Sutter (2024)

---

Industry Commentary:

*"Cohen Milstein Sellers & Toll does first-class work and is very strong in this practice area."*

*"I view them as one of the best ERISA trial practices in the country, they are a joy to work with."*

Chambers USA

---

COHEN**MILSTEIN**

## Individual Accolades

- Chambers USA – "Top Ranked Individual, ERISA Litigation – Band 1" – Michelle Yau (2022 - 2024)

- Chamber USA – "Top Ranked Individual, ERISA Litigation – Band 1" – Kai Richter (2023, 2024)

- Chambers USA – "Associate to Watch, ERISA Litigation: – Dan Sutter (2022-2024)

- The AmLaw Litigation Daily - Litigator of the Week Runners-Up (Sept. 2021; Feb. 2023)

- Law360 – Benefits MVP – Michelle Yau (2021)

- The National Law Journal – Elite Trial Lawyers Rising Star – Dan Sutter (2023)

## Making an Impact

We have led some of the most significant ERISA-related litigation in recent U.S. history, including up to the U.S. Supreme Court. Precedent-setting decisions include:

- Defeating Motion to Compel Arbitration: Enforceability of arbitration clauses is a crucial issue for workers, which can entirely shift the dynamics of a case and their pursuit of economic justice. We have achieved precedent-setting decisions before the Third, Seventh, and Tenth Circuits – all addressing lower court rulings denying Defendants' motions to compel arbitration under ERISA. On October 10, 2023, the United States Supreme Court declined to review our 10th Circuit win in *Harrison v. Envision Management Holding, Inc. Boards of Directors, et al.* (D. Col.). To date, Cohen Milstein has won decisions striking down arbitration and class waivers in three appellate courts and five district courts.

- *In re Beacon Association Litigation*: Acted as ERISA Counsel for a certified class which settled their claims for $219 million, representing 70% of the Class members' out-of-pocket losses. The judge praised the settlement, describing the outcome as "extraordinary" and the praising the "hard work" done by plaintiffs' counsel, including Cohen Milstein.

We also have the unique capability to represent employees who purchased overvalued employer stock through employer-sponsored 401(k) retirement plans, given our extensive experience with securities fraud and investor protection litigation. While employees may pursue claims under securities fraud laws, ERISA provides additional rights and remedies to recover losses in 401(k) retirement plans.

COHEN MILSTEIN

## | Employee Benefits / ERISA Matters – Representative Matters

We have recovered hundreds-of-millions of dollars in damages for injured plaintiffs in some of the nation's most complex ERISA class actions.

### 401(K) Retirement Plans

- **Wells Fargo 401(k) Litigation (D. Minn.):**  Cohen Milstein achieved a $32.5 million settlement prior to class certification and expert discovery. On August 31, 2022, the Court granted final approval of the settlement, resulting in a recovery of 40% of estimated damages for the plaintiffs. The lawsuit alleged that Wells Fargo and its affiliates violated numerous provisions of ERISA by breaching their fiduciary duties and engaging in self-dealing transactions prohibited under ERISA.

- **BlackRock 401(k) Litigation (N.D. Cal.):** Cohen Milstein successfully settled this certified class action, in which plaintiffs alleged that the BlackRock 401(k) plan administrators engaged in corporate self-dealing—restricting plan options to BlackRock's own proprietary funds, and in many cases failing to provide the lowest cost versions of those funds. On November 3, 2021, the Court granted final approval of a $9.65 million settlement.

- **T. Rowe Price 401(k) Litigation (D. Md.):** Cohen Milstein successfully settled this certified class action, in which plaintiffs alleged that T. Rowe Price violated federal law and reaped millions of dollars in illicit fees by offering only T. Rowe Price's own in-house investment funds in the 401(k) Plan, failing to offer the lowest cost versions of those funds, and failing to even consider any funds from other companies that offered lower fees and better performance. On July 6, 2022, the Court granted final approval of the $7 million settlement.

- **New York Life 401(k) Plan Litigation (S.D.N.Y.):** Cohen Milstein represents employees and agents of New York Life Insurance in a class action against New York Life for allegedly

COHENMILSTEIN

mismanaging the 401(k) and engaging in corporate self-dealing and the prohibited transfer of employees' retirement assets by, among other things, impermissibly investing participants investments into the Fixed Dollar Account by default and improperly favoring and including New York Life's own in-house investment funds in its Plans, such as the MainStay Income Builder Fund, MainStay Epoch U.S. All Cap Fund and MainStay Epoch U.S. Small Cap Fund, thereby earning New York Life and its affiliates windfall profit. On July 18, 2024, the Court granted final approval of a $19 million settlement – approximately 25% of the alleged losses.

- GWA, LLC 401(k) Profit Sharing Plan Litigation (D. Conn.): Cohen Milstein represents participants in the GWA, LLC 401(k) Profit Sharing Plan, who allege that GWA, LLC and George A. Weiss breached their fiduciary duties and misused employee retirement plan assets to further their own pecuniary interest, in violation of ERISA.  Specifically, Plaintiffs allege that 100% of the Plan's investments (all of which are 401(k) assets) were and continue to be invested in "The Weiss Funds," which includes the company's flagship hedge fund named the "Weiss Multi-Strategy Partners Ltd." and the company's mutual fund named the "Weiss Alternative Multi-Strategy Fund," which generally "replicates" the hedge fund's strategy. On August 15, 2024, parties notified the court that they had reached a class-wide settlement-in-principle.

## Pension Plans

- Dignity Health Church Plan Litigation (N.D. Cal.): Cohen Milstein represented a certified class of defined benefit participants, which alleges that Dignity Health is improperly claiming that its pension plans are exempt from ERISA's protections because they are "church plans," and as a result has underfunded its plans by over $1.2 billion. In 2016, the Supreme Court agreed to hear arguments on consolidated church plan cases, and in June 2017, it reversed previous rulings and ordered plaintiffs, in this case, to file an amended complaint. On July 15, 2022, the Court granted final approval to the $100 million settlement.

- CITGO Pension Plan Litigation (N.D. Ill.): Cohen Milstein represents a certified class of participants and beneficiaries of the CITGO Petroleum Corporation Salaried and Hourly Employees Pension Plans, who allege CITGO violated ERISA by applying outdated mortality tables to the CITGO Plans to determine the value of joint and survivor annuities, resulting in married retirees receiving less than the actuarial

COHENMILSTEIN

equivalent of the benefit that ERISA protects. On May 6, 2024, the Court largely denied
CITGO's motion for summary judgment. Then, on May 16, the Court certified the class.

- **AT&T Pension Benefit Plan Litigation (N.D. Cal.):** Cohen Milstein represents a putative
  class of participants and beneficiaries in the AT&T Pension Benefit Plan, who allege
  that AT&T improperly calculated the pension benefits of certain retirees who retired
  early and/or took a joint and survivor annuity. As a result of the improper calculation,
  plaintiffs received a lower pension benefit than they were entitled to under ERISA. Class
  certification is pending court approval.

- **Intel Minimum Pension Plan Litigation (N.D. Cal.):** Cohen Milstein represents a putative
  class of pension plan participants and beneficiaries, who allege that the Intel
  Minimum Pension Plan utilized outdated mortality tables to determine the value of
  joint and survivor annuities, resulting in married retirees receiving less than the
  actuarial equivalent of the benefit that ERISA protects.

- **IBM Personal Pension Plan Litigation (S.D.N.Y.):** Cohen Milstein represents participants
  and beneficiaries of the IBM Personal Pension Plan, who allege that the IBM Personal
  Pension Plan uses outdated mortality tables to determine the value of joint and
  survivor annuities, resulting in married retirees receiving less than the actuarial
  equivalent of the benefit that ERISA protects in violation of ERISA.

- **Luxottica Group Pension Plan Litigation (E.D.N.Y.):** Cohen Milstein represents Luxottica
  pension plan participants in a putative class action, alleging that the plan used
  outdated mortality tables to determine the value of participants' joint and survivor
  annuities, resulting in married retirees receiving less than the actuarial equivalent of
  the benefit that ERISA protects.

- **Southern Company Pension Plan Litigation (N.D. Ga.):** Cohen Milstein represents
  participants and beneficiaries of the Southern Company Pension Plan, alleging that
  the Southern Company Pension Plan uses outdated mortality tables to determine the
  value of joint and survivor annuities and the amount it charges retirees for pre-
  retirement survivor annuities, resulting in married retirees receiving less than the
  actuarial equivalent of the benefit that ERISA protects.

**COHEN**MILSTEIN

## Employee Stock Ownership Plans (ESOPS)

- **Triad Manufacturing Inc. ESOP Litigation (N.D. Ill.):** Cohen Milstein represented participants and beneficiaries in the Triad Manufacturing ESOP who alleged that the ESOP's trustees breached their fiduciary duties in connection with the sale of Triad Manufacturing to the ESOP. In September 2021, the Seventh Circuit, in a precedent-setting decision, cited an exception to the Federal Arbitration Act that permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. On August 23, 2023, the court granted final approval of a $14.8 million settlement and granted class certification.

- **World Travel ESOP Litigation (E.D. Pa.):** Cohen Milstein represented a certified class of employee stock option plan participants and beneficiaries who allege that the founders of World Travel and the ESOP trustees created the ESOP and then sold 100% of the employees World Travel stock to the ESOP at an above-market price, saddling it with over $200 million in debt. On June 22, 2023, the Court granted plaintiffs unopposed motion for class certification and final approval of a $8.7 million settlement.

- **Envision Management Holding, Inc. ESOP Litigation (D. Col.):** Cohen Milstein represents Envision Management Holding ESOP participants, who allege the ESOP purchased Envision Management Holding stock at an inflated price, causing a multi-million-dollar loss to the ESOP. On February 9, 2023, A three-judge panel for the Tenth Circuit, in a 41-page published opinion, sided with Plaintiffs' argument, which was backed up by a U.S. Department of Labor amicus brief, that an arbitration provision tucked in Envision workers' ESOP plan impermissibly blocked remedies under ERISA, triggering an exemption in the Federal Arbitration Act, which permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. On October 10, 2023, the U.S. Supreme Court denied Defendants' petition to review the Tenth Circuit's decision, thereby affirming the lower court's March 24, 2022 ruling, which denied Defendants' motion to compel arbitration. On March 21, 2024, the court denied Defendants' motions to dismiss plaintiffs' class action lawsuit.

- **Casino Queen ESOP Litigation (S.D. Ill.):** Cohen Milstein represents ESOP participants who allege that the Board of Directors of CQ Holding Company, Inc. and related

**COHEN**MILSTEIN

defendants violated ERISA when they created an ESOP to buy their Casino Queen stock for $170 million, a significantly inflated price. In late 2021, the Seventh Circuit directed Defendants to voluntarily dismiss their appeal on the arbitration issue on the heels of our precedent-setting victory before the Seventh Circuit in *Smith v. GreatBanc Trust Company*, which cited an exception to the Federal Arbitration Act that permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. On September 3, 2024, parties notified the court that they had reached an agreement on material terms of a class action settlement.

- Western Milling ESOP Litigation (E.D. Cal.): Cohen Milstein represents participants and beneficiaries of the Western Milling Employee Stock Ownership Plan, who allege that the ESOP's trustees breached their fiduciary duties by engaging in risky investments in violation of ERISA, including purchasing 100% of Kruse-Western, Inc. company stock, which was valued at approximately 90% of the purchase price for several years after the ESOP Transaction.

- WBBQ ESOP Litigation (S.D.N.Y.): Cohen Milstein represents participants and beneficiaries of the W BBQ Holdings, Inc. Employee Stock Ownership Plan, who allege that the trustee of the WBBQ ESOP, Argent Trust Company and the company's owner, and controlling managers and shareholders breached their fiduciary duties, causing the ESOP to engage in transactions that are prohibited under ERISA and in connection with the sale of the company to the ESOP for an inflated purchase price that far exceeded its fair market value.

## Other Plans

- Johnson & Johnson Health Plan (D. N.J.): Cohen Milstein represents employees and participants in J&J's Health Plan, who accuse the pharmaceutical giant of mismanaging its own health plans' prescription drug program, costing employees millions of dollars in the form of higher payments for prescription drugs, higher out-of-pocket costs and co-pays, and, ultimately, lower wages in violation of ERISA.

- MassMutual Thrift Plan Litigation (D. Mass.): Cohen Milstein represents participants and beneficiaries of the MassMutual Thrift Plan in a class action against Massachusetts Mutual Life Insurance and other fiduciaries responsible for managing the MassMutual Thrift Plan, a defined contribution retirement plan. Plaintiffs allege that MassMutual

**COHEN**MILSTEIN

and other fiduciaries engaged in self-dealing in violation of ERISA, cost its employees tens of millions of dollars in retirement savings.

---

- Nationwide Savings Plan Litigation (S.D. Ohio): Cohen Milstein represents participants in the Nationwide Savings Plan in a certified class action, alleging that Nationwide improperly set its own compensation, earned impermissible profits at the expense of its employees, and exposed its employees' retirement savings to undue risk. On March 28, 2024, the Court granted class certification.

# COHEN MILSTEIN



## Michelle C. Yau

Partner

**WASHINGTON, DC**
T 202.408.4600
**myau@cohenmilstein.com**

**Michelle Yau,** chair of Cohen Milstein's Employee Benefits/ERISA practice, has spearheaded some of the most significant ERISA class actions in the nation.
Since 2022, *Chambers USA* has named her a "Top Ranked" individual in ERISA Litigation and in 2021, she was named a *Law360* Benefits MVP.  Michelle combines ardent dedication to protecting her clients' retirement assets with rare insight into complex financial transactions and actuarial issues, informed by her Wall Street and government experience.

Michelle is passionate about righting economic injustice and protecting pension plan participants. She has a unique background having served as an Honors Program Attorney at the Department of Labor where she enforced and administered a variety of labor statutes and working as a financial analyst at Goldman Sachs in the Financial Institutions Group of the Investment Banking Division. This experience has allowed Michelle to play an instrumental role in important financial litigation, including high-profile ERISA lawsuits emerging from the Madoff Ponzi scheme.

Michelle is a senior editor of the ERISA treatise published by *Bloomberg BNA, Employee Benefits Law*, and a member of the Benefits Editorial Advisory Board for *Law360*.

During law school, Michelle was awarded several public interest fellowships, including the Heyman Fellowship for academic excellence and a demonstrated commitment to federal public service. As an undergraduate, she was selected as an Echols Scholar and awarded the Student

**PRACTICE AREAS**
Employee Benefits / ERISA

**ADMISSIONS**
District of Columbia
Massachusetts

**EDUCATION**
Harvard Law School, J.D., 2003
University of Virginia, B.A., Phi Beta Kappa, 1997

**COHEN**MILSTEIN

Council Scholarship for leadership, academic achievement,
and community service.

### Beacon/Madoff ERISA Litigation

In re Beacon Association Litigation (S.D.N.Y.): Cohen Milstein represented the trustees and
participants of ERISA-covered employee benefit plans whose assets were invested by Beacon
Associates LLC I and Beacon Associates LLC II (the "Feeder Funds") in and lost money by investment
the investment schemes of Bernard L. Madoff, Bernard L. Madoff Investment Securities, LLC. On
March 15, 2013, the court granted final approval of a $219 million settlement to reimburse defrauded
investors.

### Dignity Health Church Plan Litigation

Dignity Health Church Plan Litigation (N.D. Cal.): We represented a certified class of defined benefit
participants, which alleges that Dignity Health is improperly claiming that its pension plans are
exempt from ERISA's protections because they are "church plans," and as a result has underfunded
its plans by over $1.2 billion. In 2016, the Supreme Court agreed to hear arguments on consolidated
church plan cases, and in June 2017, it reversed previous rulings and ordered plaintiffs, in this case,
to file an amended complaint. On July 15, 2022, the Court granted final approval to the $100 million
settlement.

### Wells Fargo 401(k) Litigation

Wells Fargo 401(k) Litigation (D. Minn.):  Cohen Milstein achieved a $32.5 million settlement prior to
class certification and expert discovery. On August 31, 2022, the Court granted final approval of the
settlement, resulting in a recovery of 40% of estimated damages for the plaintiffs. The lawsuit
alleged that Wells Fargo and its affiliates violated numerous provisions of ERISA by breaching their
fiduciary duties and engaging in self-dealing transactions prohibited under ERISA.

### Triad Manufacturing, Inc. ESOP Litigation

Triad Manufacturing, Inc. ESOP Litigation (N.D. Ill.): Cohen Milstein represented participants and
beneficiaries in the Triad Manufacturing ESOP who alleged that the ESOP's trustees breached their
fiduciary duties in connection with the sale of Triad Manufacturing to the ESOP. In September 2021,
the Seventh Circuit, in a precedent-setting decision, cited an exception to the Federal Arbitration Act
that permits a court to overrule an arbitration agreement if it blocks a party from being able to
bring claims under federal law. On August 23, 2023, the court granted final approval of a $14.8
million settlement and granted class certification.

cohenmilstein.com

COHEN MILSTEIN

### BlackRock 401(k) Retirement Plan Litigation

BlackRock 401(k) Litigation (N.D. Cal.): Cohen Milstein successfully settled this certified class action, in which plaintiffs alleged that the BlackRock 401(k) plan administrators engaged in corporate self-dealing—restricting plan options to BlackRock's own proprietary funds, and in many cases failing to provide the lowest cost versions of those funds. On November 3 2021, the Court granted final approval of a $9.65 million settlement.

### World Travel ESOP Litigation

World Travel ESOP Litigation (E.D. Pa.): Cohen Milstein represented a certified class of employee stock option plan participants and beneficiaries who allege that the founders of World Travel and the ESOP trustees created the ESOP and then sold 100% of the employees World Travel stock to the ESOP at an above-market price, saddling it with over $200 million in debt. On June 22, 2023, the Court granted plaintiffs unopposed motion for class certification and final approval of a $8.7 million settlement.

### T. Rowe Price 401(k) Litigation

T. Rowe Price 401(k) Litigation (D. Md.): On July 6, 2022 the Court granted final approval of the $7 million settlement in this certified ERISA class action. Participants in the T. Rowe Price 401(k) plan alleged that plan fiduciaries violated their duties under ERISA causing the participants to pay millions of dollars in illicit fees by offering only T. Rowe Price's own in-house investment funds in the 401(k) plan, failed to offer the lowest cost versions of those funds, and failed to consider funds from other companies that offered lower fees or better performance.

### New York Life Insurance Company 401(k) Litigation

New York Life 401(k) Plan Litigation (S.D.N.Y.): We represents employees and agents of New York Life Insurance in a class action against New York Life for allegedly mismanaging the 401(k) and engaging in corporate self-dealing and the prohibited transfer of employees' retirement assets by, among other things, impermissibly investing participants investments into the Fixed Dollar Account by default and improperly favoring and including New York Life's own in-house investment funds in its Plans, such as the MainStay Income Builder Fund, MainStay Epoch U.S. All Cap Fund and MainStay Epoch U.S. Small Cap Fund, thereby earning New York Life and its affiliates windfall profit. On March 21, 2024, in a text-only order, the court denied Defendants' motions to dismiss plaintiffs' class action lawsuit.

### Envision Management Holding, Inc. ESOP Litigation

Envision Management Holding, Inc. ESOP Litigation (D. Col.): Cohen Milstein represents Envision Management Holding ESOP participants, who allege the ESOP purchased Envision Management

cohenmilstein.com

**COHEN**MILSTEIN

Holding stock at an inflated price, causing a multi-million-dollar loss to the ESOP. On February 9, 2023, A three-judge panel for the Tenth Circuit, in a 41-page published opinion, sided with Plaintiffs' argument, which was backed up by a U.S. Department of Labor amicus brief, that an arbitration provision tucked in Envision workers' ESOP plan impermissibly blocked remedies under ERISA, triggering an exemption in the Federal Arbitration Act, which permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. On October 10, 2023, the U.S. Supreme Court denied Defendants' petition to review the Tenth Circuit's decision, thereby affirming the lower court's March 24, 2022 ruling, which denied Defendants' motion to compel arbitration. On March 21, 2024, the court denied Defendants' motions to dismiss plaintiffs' class action lawsuit.

### Casino Queen ESOP Litigation

Casino Queen ESOP Litigation (S.D. Ill.): Cohen Milstein represents ESOP participants who allege that the Board of Directors of CQ Holding Company, Inc. and related defendants violated ERISA when they created an ESOP to buy their Casino Queen stock for $170 million, a significantly inflated price. In late 2021, the Seventh Circuit directed Defendants to voluntarily dismiss their appeal on the arbitration issue on the heels of our precedent-setting victory before the Seventh Circuit in Smith v. GreatBanc Trust Company, which cited an exception to the Federal Arbitration Act that permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. As of June 28, 2023 the Court referred the case to mediation and stayed the case pending resolution of the mediation. On September 3, 2024, parties notified the court that they had reached an agreement on material terms of a class action settlement.

### CITGO Pension Plan Litigation

CITGO Pension Plan Litigation (N.D. Ill.): We represent a certified class of participants and beneficiaries of the CITGO Petroleum Corporation Salaried and Hourly Employees Pension Plans, who allege CITGO violated ERISA by applying outdated mortality tables to the CITGO Plans to determine the value of joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects. On May 6, 2024, the Court largely denied CITGO's motion for summary judgment. Then, on May 16, the Court certified the class.

### AT&T Pension Benefit Plan Litigation

AT&T Pension Benefit Plan Litigation (N.D. Cal.): Cohen Milstein represents participants and beneficiaries in the AT&T Pension Benefit Plan who allege that AT&T failed comply with ERISA's actuarial equivalence requirements when providing married participants joint and survivor annuities.

### IBM Personal Pension Plan Litigation

Cohen Milstein represents participants and beneficiaries of the IBM Personal Pension Plan, who allege that the IBM Personal Pension Plan uses outdated mortality tables to determine the value of

cohenmilstein.com

**COHEN**MILSTEIN

joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects in violation of ERISA.

### Intel Minimum Pension Plan Litigation

Berkeley v. Intel Corporation et al (N.D. Cal.): Cohen Milstein represents a putative class of pension plan participants and beneficiaries, who allege that the Intel Minimum Pension Plan utilized outdated mortality tables to determine the value of joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

### Luxottica Group Pension Plan Litigation

Luxottica Group Pension Plan Litigation (E.D.N.Y.): Cohen Milstein represents Luxottica pension plan participants in a lawsuit, alleging that the plan used outdated mortality tables to determine the value of participants' joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

### Nationwide Savings Plan Litigation

MassMutual Thrift Plan Litigation (D. Mass.): We represent participants and beneficiaries of the MassMutual Thrift Plan in a class action against Massachusetts Mutual Life Insurance and other fiduciaries responsible for managing the MassMutual Thrift Plan, a defined contribution retirement plan. Plaintiffs allege that MassMutual and other fiduciaries engaged in self-dealing in violation of ERISA, cost its employees tens of millions of dollars in retirement savings.

### Western Milling ESOP Litigation

Western Milling ESOP Litigation (E.D. Cal.): We represent participants and beneficiaries of the Western Milling Employee Stock Ownership Plan, who allege that the ESOP's trustees breached their fiduciary duties by engaging in risky investments in violation of ERISA, including purchasing 100% of Kruse-Western, Inc. company stock, which was valued at approximately 90% of the purchase price for several years after the ESOP Transaction.

### GWA, LLC 401(k) Profit Sharing Plan Litigation

GWA, LLC 401(k) Profit Sharing Plan Litigation (D. Conn.): We represent participants in the GWA, LLC 401(k) Profit Sharing Plan who allege that GWA, LLC and George A. Weiss breached their fiduciary duties and misused employee retirement plan assets to further their own pecuniary interest, in violation of ERISA. Specifically, Plaintiffs allege that 100% of the Plan's investments (all of which are 401(k) assets) were and continue to be invested in "The Weiss Funds," which includes the company's flagship hedge fund named the "Weiss Multi-Strategy Partners Ltd." and the company's mutual fund

cohenmilstein.com

**COHEN**MILSTEIN

named the "Weiss Alternative Multi-Strategy Fund," which generally "replicates" the hedge fund's strategy. On August 15, 2024, parties notified the court that they had reached a class-wide settlement-in-principle.

### WBBQ ESOP Litigation

WBBQ ESOP Litigation (S.D.N.Y): Cohen Milstein represents participants and beneficiaries of the W BBQ Holdings, Inc. Employee Stock Ownership Plan, who allege that the trustee of the WBBQ ESOP, Argent Trust Company and the company's owner, and controlling managers and shareholders breached their fiduciary duties, causing the ESOP to engage in transactions that are prohibited under ERISA and in connection with the sale of the company to the ESOP for an inflated purchase price that far exceeded its fair market value.

### Southern Company Pension Plan Litigation

Southern Company Pension Plan Litigation (N.D. Ga.): Cohen Milstein represents participants and beneficiaries of the Southern Company Pension Plan, alleging that the Southern Company Pension Plan uses outdated mortality tables to determine the value of joint and survivor annuities and the amount it charges retirees for pre-retirement survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

### AMPAM Parks Mechanical ESOP Litigation

Barrios, et al. v. AMPAM Parks Mechanical, Inc., et al. (S.D. Cal.): Cohen Milstein represents employee participants and beneficiaries of the AMPAM Parks Mechanical, Inc. Employee Stock Ownership Plan in a class action lawsuit alleging that AMPAM Parks Mechanical and the founders of AMPAM, Buddy Parks, John D. Parks, James Parks, and Jason Parks breached their fiduciary duties in the management of the ESOP in violation of ERISA.

cohenmilstein.com

# COHENMILSTEIN



## Daniel R. Sutter
Associate

**WASHINGTON, DC**
T 202.408.4600
dsutter@cohenmilstein.com

**Daniel R. Sutter** is an associate in Cohen Milstein's Employee Benefits/ERISA practice. He represents the interests of employees, retirees, plan participants and beneficiaries in ERISA cases across the country.

Prior to becoming an associate at Cohen Milstein, Dan served as a Legal Fellow in the firm's Employee Benefits practice, where he investigated, developed, and drafted complaints against major financial institutions for ERISA violations. Before that, Dan worked at Cohen Milstein as a law clerk (2013-2016) and as an analyst (2010-2016), where he researched and aided in the development of potential cases for a number of practices.

In law school, Dan was a member of the *Federal Circuit Bar Journal*, and he also worked as a law clerk at the Consumer Financial Protection Bureau, Legal Division, in the summer of 2015. He also studied at the London School of Economics.

**PRACTICE AREAS**
Employee Benefits / ERISA

**ADMISSIONS**
District of Columbia
Maryland

**EDUCATION**
The George Washington University Law School, J.D., 2016
The George Washington University, B.A., 2010

## Wells Fargo 401(k) Litigation
Wells Fargo 401(k) Litigation (D. Minn.):  Cohen Milstein achieved a $32.5 million settlement prior to class certification and expert discovery. On August 31, 2022, the Court granted final approval of the settlement, resulting in a recovery of 40% of estimated damages for the plaintiffs. The lawsuit alleged that Wells Fargo and its affiliates violated numerous provisions of ERISA by breaching their fiduciary duties and engaging in self-dealing transactions prohibited under ERISA.

## Triad Manufacturing, Inc. ESOP Litigation
Triad Manufacturing, Inc. ESOP Litigation (N.D. Ill.): Cohen Milstein represented participants and beneficiaries in the Triad Manufacturing ESOP who alleged that the ESOP's trustees breached their

cohenmilstein.com

# COHEN MILSTEIN

fiduciary duties in connection with the sale of Triad Manufacturing to the ESOP. In September 2021, the Seventh Circuit, in a precedent-setting decision, cited an exception to the Federal Arbitration Act that permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. On August 23, 2023, the court granted final approval of a $14.8 million settlement and granted class certification.

## BlackRock 401(k) Retirement Plan Litigation

BlackRock 401(k) Litigation (N.D. Cal.): Cohen Milstein successfully settled this certified class action, in which plaintiffs alleged that the BlackRock 401(k) plan administrators engaged in corporate self-dealing—restricting plan options to BlackRock's own proprietary funds, and in many cases failing to provide the lowest cost versions of those funds. On November 3 2021, the Court granted final approval of a $9.65 million settlement.

## New York Life Insurance Company 401(k) Litigation

New York Life 401(k) Plan Litigation (S.D.N.Y.): We represents employees and agents of New York Life Insurance in a class action against New York Life for allegedly mismanaging the 401(k) and engaging in corporate self-dealing and the prohibited transfer of employees' retirement assets by, among other things, impermissibly investing participants investments into the Fixed Dollar Account by default and improperly favoring and including New York Life's own in-house investment funds in its Plans, such as the MainStay Income Builder Fund, MainStay Epoch U.S. All Cap Fund and MainStay Epoch U.S. Small Cap Fund, thereby earning New York Life and its affiliates windfall profit. On July 18, 2024, the Court granted final approval of a $19 million settlement – approximately 25% of the alleged losses.

## CITGO Pension Plan Litigation

CITGO Pension Plan Litigation (N.D. Ill.): We represent a certified class of participants and beneficiaries of the CITGO Petroleum Corporation Salaried and Hourly Employees Pension Plans, who allege CITGO violated ERISA by applying outdated mortality tables to the CITGO Plans to determine the value of joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects. On May 6, 2024, the Court largely denied CITGO's motion for summary judgment. Then, on May 16, the Court certified the class.

## AT&T Pension Benefit Plan Litigation

AT&T Pension Benefit Plan Litigation (N.D. Cal.): Cohen Milstein represents participants and beneficiaries in the AT&T Pension Benefit Plan who allege that AT&T failed comply with ERISA's actuarial equivalence requirements when providing married participants joint and survivor annuities.

cohenmilstein.com

# COHENMILSTEIN

## GWA, LLC 401(k) Profit Sharing Plan Litigation

GWA, LLC 401(k) Profit Sharing Plan Litigation (D. Conn.): We represent participants in the GWA, LLC 401(k) Profit Sharing Plan who allege that GWA, LLC and George A. Weiss breached their fiduciary duties and misused employee retirement plan assets to further their own pecuniary interest, in violation of ERISA. Specifically, Plaintiffs allege that 100% of the Plan's investments (all of which are 401(k) assets) were and continue to be invested in "The Weiss Funds," which includes the company's flagship hedge fund named the "Weiss Multi-Strategy Partners Ltd." and the company's mutual fund named the "Weiss Alternative Multi-Strategy Fund," which generally "replicates" the hedge fund's strategy. On August 15, 2024, parties notified the court that they had reached a class-wide settlement-in-principle.

## Intel Minimum Pension Plan Litigation

Berkeley v. Intel Corporation et al (N.D. Cal.): Cohen Milstein represents a putative class of pension plan participants and beneficiaries, who allege that the Intel Minimum Pension Plan utilized outdated mortality tables to determine the value of joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

## Luxottica Group Pension Plan Litigation

Luxottica Group Pension Plan Litigation (E.D.N.Y.): Cohen Milstein represents Luxottica pension plan participants in a lawsuit, alleging that the plan used outdated mortality tables to determine the value of participants' joint and survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

## MassMutual Thrift Plan Litigation

MassMutual Thrift Plan Litigation (D. Mass.): Cohen Milstein represent participants and beneficiaries of the MassMutual Thrift Plan in a class action against Massachusetts Mutual Life Insurance and other fiduciaries responsible for managing the MassMutual Thrift Plan, a defined contribution retirement plan. Plaintiffs allege that MassMutual and other fiduciaries engaged in self-dealing in violation of ERISA, cost its employees tens of millions of dollars in retirement savings.

## Nationwide Savings Plan Litigation

MassMutual Thrift Plan Litigation (D. Mass.): We represent participants and beneficiaries of the MassMutual Thrift Plan in a class action against Massachusetts Mutual Life Insurance and other fiduciaries responsible for managing the MassMutual Thrift Plan, a defined contribution retirement plan. Plaintiffs allege that MassMutual and other fiduciaries engaged in self-dealing in violation of ERISA, cost its employees tens of millions of dollars in retirement savings.

# COHENMILSTEIN

## Southern Company Pension Plan Litigation

Southern Company Pension Plan Litigation (N.D. Ga.): Cohen Milstein represents participants and beneficiaries of the Southern Company Pension Plan, alleging that the Southern Company Pension Plan uses outdated mortality tables to determine the value of joint and survivor annuities and the amount it charges retirees for pre-retirement survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

## WBBQ ESOP Litigation

WBBQ ESOP Litigation (S.D.N.Y): Cohen Milstein represents participants and beneficiaries of the W BBQ Holdings, Inc. Employee Stock Ownership Plan, who allege that the trustee of the WBBQ ESOP, Argent Trust Company and the company's owner, and controlling managers and shareholders breached their fiduciary duties, causing the ESOP to engage in transactions that are prohibited under ERISA and in connection with the sale of the company to the ESOP for an inflated purchase price that far exceeded its fair market value.

cohenmilstein.com

# COHENMILSTEIN



## Eleanor Frisch
Associate

**MINNEAPOLIS**
T 612.807.1575
**efrisch@cohenmilstein.com**

**Eleanor Frisch,** an associate in Cohen Milstein's Employee Benefits/ERISA practice, represents the interests of employees, retirees, plan participants and beneficiaries in ERISA class-action lawsuits across the country.

Prior to joining Cohen Milstein, Eleanor spent several years at an appellate litigation boutique representing employees and consumers before the federal courts of appeals. Before that, they were an associate at a highly regarded national plaintiffs' law firm, where they represented clients in employee benefits/ERISA, employment and consumer class actions.

Before entering private practice, Eleanor served as a law clerk to the Honorable Roger L. Wollman on the U.S. Court of Appeals for the Eighth Circuit.

Eleanor is one of the founding board members of the Minnesota Disability Bar Association. They have moderated or spoken on a number of panels about disabilities in the legal profession and are committed to promoting equity and accessibility for attorneys with disabilities.

Some of their legal publications include:

- Coauthor, *Building a More Accessible Bar*, Minnesota State Bar Association (Jan. 30, 2023), *available at* https://www.lexblog.com/2023/01/30/building-a-more-accessible-bar/.

- Coauthor, "The Fair Labor Standards Act," ch. 2, Minnesota Continuing Legal Education, *The Complete*

**PRACTICE AREAS**
Employee Benefits / ERISA

**ADMISSIONS**
California
Minnesota

**EDUCATION**
University of Minnesota Law School, J.D., magna cum laude, 2104
Trinity University, B.A., magna cum laude, 2008

**COHEN**MILSTEIN

*Employment Lawyer's Quick Answer Book* (May 2017)

- *State Sexual Harassment Definitions and Disaggregation of Sex Discrimination Claims*, 98 Minn. L. Rev. 1943 (2014)

- Coauthor, *The Canary Sings Again: New Life for the Minnesota Whistleblower Act*, Bench & B. Minn. (Sept. 2013)

In law school, Eleanor was an executive board member of the *Minnesota Law Review* and a member of the Order of the Coif.

### New York Life Insurance Company 401(k) Litigation

New York Life 401(k) Plan Litigation (S.D.N.Y.): We represents employees and agents of New York Life Insurance in a class action against New York Life for allegedly mismanaging the 401(k) and engaging in corporate self-dealing and the prohibited transfer of employees' retirement assets by, among other things, impermissibly investing participants investments into the Fixed Dollar Account by default and improperly favoring and including New York Life's own in-house investment funds in its Plans, such as the MainStay Income Builder Fund, MainStay Epoch U.S. All Cap Fund and MainStay Epoch U.S. Small Cap Fund, thereby earning New York Life and its affiliates windfall profit. On July 18, 2024, the Court granted final approval of a $19 million settlement – approximately 25% of the alleged losses.

### Envision Management Holding, Inc. ESOP Litigation

Envision Management Holding, Inc. ESOP Litigation (D. Col.): Cohen Milstein represents Envision Management Holding ESOP participants in a lawsuit in connection with the sale of Envision Management Holding, Inc. to the ESOP at an inflated price, which caused a multi-million-dollar loss to the ESOP. On February 9, 2023, A three-judge panel for the Tenth Circuit, in a 41-page published opinion, sided with Plaintiffs argument — backed up by the U.S. Department of Labor, which participated as amicus on behalf of the plaintiffs in the case — that an arbitration provision tucked in Envision workers' ESOP plan documents impermissibly blocked remedies under ERISA. That triggered the so-called effective vindication doctrine under the Federal Arbitration Act, which permits a court to overrule an arbitration agreement if it blocks a party from being able to bring claims under federal law. On October 10, 2023, the U.S. Supreme Court denied Defendants' petition review the Tenth Circuit's decision, thereby affirming the lower court's March 24, 2022 ruling, which denied Defendants' motion to compel arbitration. On March 21, 2024, the court denied Defendants' motions to dismiss plaintiffs' class action lawsuit.

### MassMutual Thrift Plan Litigation

MassMutual Thrift Plan Litigation (D. Mass.): Cohen Milstein represent participants and beneficiaries of the MassMutual Thrift Plan in a class action against Massachusetts Mutual Life Insurance and other fiduciaries responsible for managing the MassMutual Thrift Plan, a defined contribution

cohenmilstein.com

**COHEN**MILSTEIN

retirement plan. Plaintiffs allege that MassMutual and other fiduciaries engaged in self-dealing in violation of ERISA, cost its employees tens of millions of dollars in retirement savings.

### Nationwide Savings Plan Litigation

MassMutual Thrift Plan Litigation (D. Mass.): We represent participants and beneficiaries of the MassMutual Thrift Plan in a class action against Massachusetts Mutual Life Insurance and other fiduciaries responsible for managing the MassMutual Thrift Plan, a defined contribution retirement plan. Plaintiffs allege that MassMutual and other fiduciaries engaged in self-dealing in violation of ERISA, cost its employees tens of millions of dollars in retirement savings.

### Southern Company Pension Plan Litigation

Southern Company Pension Plan Litigation (N.D. Ga.): Cohen Milstein represents participants and beneficiaries of the Southern Company Plan, alleging that the Southern Company Pension Plan uses outdated mortality tables to determine the value of joint and survivor annuities and the amount it charges retirees for pre-retirement survivor annuities, resulting in married retirees receiving less than the actuarial equivalent of the benefit that ERISA protects.

### AMPAM Parks Mechanical ESOP Litigation

Barrios, et al. v. AMPAM Parks Mechanical, Inc., et al. (S.D. Cal.): Cohen Milstein represents employee participants and beneficiaries of the AMPAM Parks Mechanical, Inc. Employee Stock Ownership Plan in a class action lawsuit alleging that AMPAM Parks Mechanical and the founders of AMPAM, Buddy Parks, John D. Parks, James Parks, and Jason Parks breached their fiduciary duties in the management of the ESOP in violation of ERISA.

cohenmilstein.com

EXHIBIT J

# COOCH AND TAYLOR P.A.

EDWARD W. COOCH JR.
1920-2010

DONALD C. TAYLOR
1930-2005

C. SCOTT REESE
BLAKE A. BENNETT
JAMES W. SEMPLE
R. BRUCE MCNEW
R. GRANT DICK IV
JEFFREY S. GODDESS
CARMELLA P. KEENER
DEAN ROLAND

ATTORNEYS AT LAW

THE NEMOURS BUILDING
1007 NORTH ORANGE ST.
SUITE 1120
P. O. BOX 1680
WILMINGTON, DE 19899-1680

WWW.COOCHTAYLOR.COM

T  302.984.3800
F  302.984.3939

## <u>THE FIRM</u>

Cooch and Taylor, one of Wilmington's oldest and most respected law firms, was founded in 1960 by Edward W. Cooch, Jr. and Donald C. Taylor.  Today it maintains a growing practice specializing in civil litigation.  Its diverse practice serves the local community as well as national entities.

Cooch and Taylor's Mission Statement best describes its overall approach to the practice of law:

To provide prompt and competent legal services to the Firm's clients in a professional manner in keeping with the highest standards of the legal profession at a cost that is fair both to the clients and to the lawyers and staff of the Firm.

To maintain a working environment for the lawyers and staff of the Firm which will enable and encourage each individual to mature and grow both as a professional and as an individual.

To encourage lawyers and staff to actively participate in professional and civic activities which will improve the competency, ethics and efficiency of the legal profession and the quality of life for all people.

The Firm has an established reputation for outstanding client service and an unrivaled work environment.

# PRACTICE AREAS

## *Litigation*

The professionals in Cooch and Taylor's Litigation Department have years of experience in the prosecution and defense of civil litigation. They regularly represent institutional and individual investors, national corporate clients, and local businesses in the full range of litigation in the Delaware courts. The Firm frequently relies upon its unique resources and experience in prosecuting class action and shareholder derivative actions in the Court of Chancery, the Delaware Supreme Court, and the District Court of Delaware.

## *Business and Commercial Bankruptcy*

Cooch and Taylor's Business and Commercial Bankruptcy practice has evolved and expanded during the last thirty years from primarily the representation of liquidating trustees to include broad involvement in a significant number of large Chapter 11 cases filed in the District of Delaware. While handling sophisticated matters, the Firm's bankruptcy attorneys pride themselves on providing personalized service to all their individual and corporate clients.

The practice has benefited from the leadership, knowledge and experience of Jeoffrey L. Burtch, who previously lead the department and served as a panel Chapter 7 trustee for over 15 years. Through its representation of Mr. Burtch, as well as other trustees and plan administrators, the department developed expertise in handling liquidation proceedings and many reorganizational and other commercial issues.

The bankruptcy attorneys also represent a broad array of creditors in Chapter 11 cases including secured and unsecured creditors, trade creditors, landlords, equipment lessors, governmental entities and others. They also represent parties in multiple types of bankruptcy litigation matters before the United States Bankruptcy Court, the United States District Court and the Third Circuit Court of Appeals. They have been involved in thousands of preference and fraudulent conveyance actions. Through these representations, the department has become adept at handling liquidation proceedings as well as reorganizational and other commercial, transactional and litigation issues.

In addition to the direct representation of clients, the department also provides Delaware local counsel services for out-of-state lawyers.

CARMELLA P. KEENER

**ADMISSIONS**
Delaware, 1990
Delaware District Court, 1990
Third Circuit Court of Appeals

**MEMBERSHIPS**
Delaware State Bar Association Combined Campaign for Justice, New Castle County Co-Chairperson (2006-2014); General Co-Chair (2015-2016); Lead Chair (2017)
Delaware State Bar Association Executive Committee (2008-2009); Community Legal Aid Society, Inc. (President, Vice-President); Federal Advisory Council re: Protection and Advocacy for Individuals With Mental Illness.


**PROFESSIONAL EXPERIENCE**
Carmella Keener began her legal career as a judicial law clerk in the Delaware Superior Court, managing complex construction claim and complex insurance coverage litigations for four judges. Since 1991, she has focused her practice in corporate and commercial litigation, representing stockholders in class and derivative litigations pending before the Delaware Court of Chancery. She has also served as Delaware counsel in admiralty, class action, and ERISA cases before the Delaware District Court, and in Bankruptcy cases in the Bankruptcy Court for the District of Delaware. Since 1991, she has represented a number of insurance companies in insurance coverage disputes in the Delaware Superior Court, including in the Complex Commercial Litigation Division.

Carmella has served on the e-Filing Subcommittee to the Court of Chancery Rules Committee, has served as the Lead Chair for the Delaware State Bar Association's Combined Campaign for Justice, and is a past member of the Executive Committee of the Delaware State Bar Association. She is Past President of the Board of Directors of Community Legal Aid Society, Inc. and a current member of its Board of Directors.

Carmella's recent successes in cases where she had a significant role include:

- A $16.25 million settlement of a derivative litigation alleging *Brophy* claims
- Summary judgment on behalf of an insurer in a complex insurance coverage case, which was affirmed on appeal to the Delaware Supreme Court
- Jury verdict on behalf of insurer on complex insurance coverage claim, affirmed on appeal to the Delaware Supreme Court
- Multi-million dollar settlement of a derivative litigation with an immediate distribution of the net proceeds to the shareholders
- A $52 million settlement of a class action on behalf of minority shareholders on the eve of trial on fiduciary duty claims in connection with a merger
- Settlement of claims after trial on behalf of minority shareholders cashed out for nominal consideration in a going-private transaction, which settlement resulted in gross additional consideration worth 6.7 times more than the original consideration
- Representing the indenture trustee of a bondholders committee and achieving on behalf of the committee partial summary judgment regarding issues of default under the indenture
- Summary judgment on behalf of insurance companies in coverage litigation regarding insurers' obligation to pay tobacco-related illness and death claims